**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| TONY KHOURY, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | No.: 1:17-cv-00916 |
| Plaintiff(s), | ) ) | **MEMORANDUM OF POINTS** |
| v. | ) ) ) | **AND AUTHORITIES IN SUPPORT OF MOTION OF THE** |
| FXCM INC., DROR NIV and ROBERT LANDE, | ) ) ) | **GLOBAL BROKERAGE INVESTOR GROUP FOR CONSOLIDATION,** |
| Defendants. | ) ) ) | **APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL** |
| YING ZHAO, Individually and on Behalf of All Others Similarly Situated, | ) ) | No.: 1:17-cv-00955 |
| Plaintiff(s), | ) ) | |
| v. | ) ) ) | |
| FXCM INC., DROR NIV and ROBERT N. LANDE, | ) ) ) | |
| Defendants. | ) ) | |
| DAVID BLINN, Individually and on Behalf of All Others Similarly Situated, | ) ) | No.: 1:17-cv-01028 |
| Plaintiff(s), | ) ) | |
| v. | ) ) ) | |
| FXCM INC., DROR NIV and ROBERT N. LANDE, | ) ) ) | |
| Defendants. | ) ) ) | |

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................................1

STATEMENT OF FACTS ......................................................................................................2

ARGUMENT ..........................................................................................................................6

    A.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL
           PURPOSES ..............................................................................................................6

    B.    THE GLOBAL BROKERAGE INVESTOR GROUP SHOULD BE
           APPOINTED LEAD PLAINTIFF ...........................................................................7

           1.    The Global Brokerage Investor Group is Willing to Serve as a
                  Class Representative ...................................................................................8

           2.    The Global Brokerage Investor Group Has the "Largest Financial
                  Interest" ....................................................................................................9

           3.    The Global Brokerage Investor Group Otherwise Satisfies the
                  Requirements of Rule 23 of the Federal Rules of Civil Procedure ...........10

           4.    The Global Brokerage Investor Group Will Fairly and Adequately
                  Represent the Interests of the Class and is Not Subject to Unique
                  Defenses ..................................................................................................12

    C.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE
           APPROVED ..........................................................................................................13

CONCLUSION......................................................................................................................13

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*A.F.I.K. Holding SPRL v. Fass*,
216 F.R.D. 567 (D. N.J. 2003).............................................................................9

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..........................................................................................12

*Baby Neal v. Casey*,
43 F.3d 48 (3d Cir. 1994)..................................................................................11

*Bassin v. Decode Genetics, Inc.*,
230 F.R.D. 313 (S.D.N.Y. 2005) ........................................................................7

*Beck v. Maximus, Inc.*,
457 F.3d 291 (3d Cir. 2006)..............................................................................11

*Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*,
252 F.R.D. 188 (S.D.N.Y. 2008) ........................................................................6

*Danis v. USN Communs., Inc.*,
189 F.R.D. 391 (N.D. Ill. 1999).........................................................................11

*Fischler v. Amsouth Bancorporation*,
176 F.R.D. 583 (M.D. Fla. 1997).......................................................................10

*Gluck v. Cellstar Corp.*,
976 F. Supp. 542 (N.D. Tex. 1997) ...................................................................10

*Greebel v. FTP Software*,
939 F. Supp. 57 (D. Mass. 1996) .......................................................................10

*In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*,
2004 U.S. Dist. LEXIS 10200 (E.D. Pa. Jun. 3, 2004)..........................................9

*In re Comverse Tech., Inc., Sec. Litig.*,
2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007) ........................................9

*In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC),
2009 U.S. Dist. LEXIS 69133 (S.D.N.Y. July 29, 2009) ...................................6, 7

*In re Olsten Corp. Sec. Litig.*,
3 F. Supp.2d 286 (E.D.N.Y. 1998) ..................................................................9, 10

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ..........................................................................10

*In re Tronox, Inc. Sec. Litig.*,
    262 F.R.D. 338 (S.D.N.Y. 2009) ..........................................................................6

*In re Vicuron Pharms., Inc. Sec. Litig.*,
    225 F.R.D. 508 (E.D. Pa. 2004) ..........................................................................9

*Janovici v. DVI, Inc.*, No. 03-4795,
    2003 U.S. Dist. LEXIS 22315 (E.D.Pa. Nov. 25, 2003) ..........................................9

*Johnson v. Celotex Corp.*,
    899 F.2d 1281 (2d Cir. 1990) ..........................................................................6

*Lax v. First Merch. Acceptance Corp.*,
    1997 U.S. Dist. LEXIS 11866 (N.D. Ill. Aug. 6, 1997) ..........................................9

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ..........................................................................6

*Osher v. Guess ?, Inc.*,
    2001 U.S. Dist. LEXIS 6057 (C.D. Cal. Apr. 26, 2001) ..........................................13

*Riordan v. Smith Barney*,
    113 F.R.D. 60 (N.D. Ill. 1986) ..........................................................................11

## **Statutes**

15 U.S.C. § 78u-4(a)(3)(B)(iii) .......................................................... *passim*

## **Rules**

Federal Rules of Civil Procedure Rule 23 .......................................................... *passim*

Federal Rules of Civil Procedure Rule 42 ..........................................................1, 6, 11

Movants Wendy Howell, Gene Segalis, John Dearborn, and Timothy Black (collectively, the "Global Brokerage Investor Group"), respectfully submit this Memorandum of Law in support of their motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA") and Rule 42 of the Federal Rules of Civil Procedure, for the entry of an Order:  (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing the Global Brokerage Investor Group as Lead Plaintiff on behalf of all persons and entities that purchased or otherwise acquired the securities of Global Brokerage, Inc. f/k/a FXCM, Inc. ("Global Brokerage", "FXCM" or the "Company") between March 15, 2012 and February 6, 2017, both dates inclusive (the "Class Period"); (3) approving Lead Plaintiff's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel; and (4) granting such other and further relief as the Court may deem just and proper.

## PRELIMINARY STATEMENT

Pursuant to the PSLRA, the Court is to appoint as Lead Plaintiff the movant who possesses the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   The Global Brokerage Investor Group, with losses of approximately $375,516, has the largest financial interest in the relief sought in this action.  The Global Brokerage Investor Group further satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure as it is an adequate representative with claims typical of the other Class members.   Accordingly, the Global Brokerage Investor Group respectfully submits that it should be appointed Lead Plaintiff.

1

## STATEMENT OF FACTS

Formerly known as FXCM, Global Brokerage is an agency that provides online foreign exchange (FX) trading and related services to retail and institutional customers. The Company acts as a credit intermediary, simultaneously entering into trades with the customer and the FX market maker, which allows customers to trade currency pairs on the over-the-counter foreign exchange markets.  The Company was founded in 2010 and is headquartered in New York, New York. Global Brokerage's stock trades on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "FXCM."

Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operational and compliance policies. Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) between September 4, 2009 through at least 2014, Global Brokerage's U.S. subsidiary engaged in false and misleading solicitations of its foreign exchange customers by concealing its relationship with its most important market maker and by misrepresenting that its "No Dealing Desk" platform had no inherent conflicts of interest with the Company's customers; (ii) Global Brokerage's U.S. subsidiary made false statements to the National Futures Association regarding the Company's relationship with the market maker; (iii) accordingly, Global Brokerage had misled investors with respect to the Company's adverse position to its retail customers; and (iv) as a result of the foregoing, Global Brokerage's public statements were materially false and misleading at all relevant times.

On February 6, 2017, the U.S. Commodity Futures Trading Commission ("CFTC") issued an order, fining Global Brokerage and its founding partners, Dror Niv and William Ahdout $7 million for defrauding retail forex customers. The CFTC order stated in relevant part:

Washington, DC – The U.S. Commodity Futures Trading Commission (CFTC) today issued an Order filing and settling charges against Forex Capital Markets, LLC (FXCM), its parent company, FXCM Holdings, LLC (FXCM Holdings), and two founding partners, Dror Niv, and William Ahdout, who were, respectively, Chief Executive Officer of FXCM and Managing Director of FXCM, (collectively, Respondents). FXCM's principal place of business is New York, New York; Niv resides in Connecticut; and Ahdout resides in New York.

***The CFTC Order finds that, between September 4, 2009 though at least 2014 (the Relevant Period), FXCM engaged in false and misleading solicitations of FXCM's retail foreign exchange (forex) customers by concealing its relationship with its most important market maker and by misrepresenting that its "No Dealing Desk" platform had no conflicts of interest with its customers. The Order finds FXCM, FXCM Holdings, and Niv responsible for FXCM making false statements to the National Futures Association (NFA) about its relationship with the market maker.***

***The Order requires Respondents jointly and severally to pay a $7 million civil monetary penalty and to cease and desist from further violations of the Commodity Exchange Act and CFTC Regulations, as charged.*** FXCM, Niv, and Ahdout agree to withdraw from CFTC registration; never to seek to register with the CFTC; and never to act in any capacity requiring registration or exemption from registration, or act as a principal, agent, officer, or employee of any person that is registered, required to be registered, or exempted from registration with the CFTC.

**"The CFTC Is Committed to Protecting Customers from Harm in the Markets It Regulates"**

"Full and truthful disclosure to customers and honest discourse with self-regulatory organizations such as NFA are vital to the integrity and oversight of our markets," said Gretchen L. Lowe, Principal Deputy Director and Chief Counsel of the CFTC's Division of Enforcement. "Today's action's demonstrates that the CFTC is committed to protecting customers from harm in the markets it regulates."

FXCM is registered with the CFTC as a Futures Commission Merchant and Retail Foreign Exchange Dealer. FXCM has been providing retail customers with access to over-the-counter forex markets through a proprietary technology platform and has acted as counterparty in transactions with its retail customers in which customers can buy one currency and simultaneously sell another. Both Niv and Ahdout were CFTC registrants during the relevant period.

***FXCM, under Niv's and Ahdout's direction and control, misrepresented to its retail forex customers that when they traded forex on FXCM's No Dealing Desk platform, FXCM would have no conflict of interest, the Order finds.*** In addition, according to FXCM's marketing campaign, retail customers' profits or

losses would have no impact on FXCM's bottom line, because FXCM's role in the customers' trades was merely that of a credit intermediary, the Order finds. ***FXCM further represented that the risk would be borne by banks and other independent "market makers" that provided liquidity to the platform, according to the Order.***

**FXCM's Undisclosed Interest**

***Contrary to these representations, the Order finds, FXCM had an undisclosed interest in the market maker that consistently "won" the largest share of FXCM's trading volume – and thus was taking positions opposite FXCM's retail customers.*** FXCM, the Order finds, formulated a plan in 2009 to create an algorithmic trading system, using an FXCM computer program that could make markets to FXCM's customers, and thereby either replace or compete with the independent market makers on FXCM's "No Dealing Desk" platform. Although FXCM eventually spun off the algorithmic trading system as a new company, in actuality the company remained closely aligned with FXCM, according to the Order. This market maker received special trading privileges, benefitted from a nointerest loan provided by FXCM, worked out of FXCM's offices, and used FXCM employees to conduct its business, the Order further finds.

The Order finds that FXCM and the market maker agreed that the market maker would rebate to FXCM approximately 70 percent of its revenue from trading on FXCM's retail forex platform. In total, through monthly payments from 2010 through 2014, the company rebated to FXCM approximately $77 million of the revenue it achieved. However, FXCM did not disclose to customers, among other things, that this company – FXCM's principal market maker – was a startup firm spun off from FXCM, the Order further finds.

**False Statements to the NFA**

***The Order also finds that FXCM willfully made false statements to NFA in order to conceal FXCM's role in the creation of its principal market maker as well as the fact that the market maker's owner had been an FXCM employee and managing director.*** The Order finds that during a meeting between NFA compliance staff and FXCM executives, Niv omitted to mention to NFA the details of FXCM's relationship with the market maker.

***The Order holds Niv and Ahdout liable for FXCM's fraud violations as "controlling persons" who were responsible, directly or indirectly, for FXCM's violations. Niv is also held liable for FXCM's false statements to NFA as a controlling person who was responsible directly or indirectly for those violations.*** FXCM Holdings is held liable for FXCM's fraud and false statement violations as principal of FXCM, the Order also finds.

The CFTC thanks NFA for its assistance in this matter.

(Emphases added.)

4

On that same day, Global Brokerage issued a press release, filed on Form 8-K with the SEC on February 7, 2017, entitled "FXCM US Reaches Settlement with NFA and CFTC," announcing the Company's withdrawal from U.S. markets. In the press release, Global Brokerage stated in relevant part:

> NEW YORK, February 6, 2017-- FXCM Inc. (NASDAQ:FXCM) ("FXCM") today announced simultaneous regulatory settlements with the National Futures Association ("NFA") and the Commodity Futures Trading Commission ("CFTC") against its U.S. subsidiary, Forex Capital Markets LLC and certain of its principals. FXCM Holdings, LLC was also named in the CFTC settlement. The named FXCM entities and principals neither admit nor deny the allegations associated with the settlements. ***The NFA settlement has no monetary fine, and the CFTC settlement has a $7 million fine.***
>
> ***FXCM will be withdrawing from business in the U.S. and has signed a nonbinding letter of intent with GAIN Capital Holdings, Inc. ("GAIN") under which GAIN would purchase FXCM's U.S. customer accounts. The*** transaction is subject to regulatory approval and a definitive agreement. FXCM and GAIN are working to determine the timing for the account transfer and expect to provide further information in that regard in the coming days. In 2016, FXCM's U.S. business had unaudited net revenues of approximately $48 million and generated an EBITDA loss, but the costs associated with the business will not be transferring to GAIN. There will be no changes to FXCM customers outside of the United States.
>
> Withdrawing from this business will free approximately $52 million in capital. Proceeds from the account sale and the release of capital will go toward the further repaying of FXCM's loan from Leucadia National Corporation.
>
> FXCM will for the interim period continue to service its U.S. customers and to provide top quality trade execution pending the customer-account sale and business withdrawal. FXCM will also be working diligently to be sure that an account transition to GAIN's retail brand, FOREX.com, will be orderly, expeditious and seamless. FXCM wants to express its most sincere thanks to those U.S. customers who have been with FXCM over the years and wish you all the best of luck following this transition.
>
> FXCM wants to stress that these settlements have no impact on any customer of FXCM's global businesses. FXCM and its global subsidiaries will continue to provide excellent execution and competitive pricing to its customers overseas through its award-winning technology, customer service and trading tools.

(Emphasis added.)

On this news, Global Brokerage's share price fell $3.40, or 49.64%, to close at $3.45 on February 7, 2017.

As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## ARGUMENT

### A.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED FOR ALL PURPOSES

Consolidation of related cases is appropriate, where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay and overlap in adjudication:

> Where actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all of the matters at issue in the actions; it may order all the actions consolidated; and it may make such order concerning proceedings therein as may tend to avoid unnecessary costs or delay. Fed. R. Civ. P. 42(a).  See also Manual for Complex Litigation (Third), § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact.  *See* Fed. R. Civ. P. 42 (a); *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993) (citing *Johnson v. Celotex Corp.*, 899 F.2d 1281, 1284 (2d Cir. 1990)); *In re Tronox, Inc. Sec. Litig.*, 262 F.R.D. 338, 344 (S.D.N.Y. 2009) (consolidating securities class actions); *Blackmoss Invs., Inc. v. ACA Capital Holdings, Inc.*, 252 F.R.D. 188, 190 (S.D.N.Y. 2008) (same). Differences in causes of action, defendants, or the class period do not render consolidation inappropriate if the cases present sufficiently common questions of fact and law, and the differences do not outweigh the interest of judicial economy served by consolidation. *See In re GE Sec. Litig.*, No. 09 Civ. 1951 (DC), 2009 U.S. Dist. LEXIS 69133, at *4–8

(S.D.N.Y. July 29, 2009) (consolidating actions asserting different claims against different defendants over different class periods).

The Related Actions at issue here clearly involve common questions of law **and** fact. Each action was brought against the Company, as well as certain officers and directors of the Company, in connection with violations of the federal securities laws.  Accordingly, the Related Actions allege substantially the same wrongdoing, namely that defendants issued materially false and misleading statements and omissions that artificially inflated the price of the Company's securities and subsequently damaged the Class when the Company's stock price crashed as the truth emerged.  Consolidation of the Related Actions is therefore appropriate.  *See Bassin v. Decode Genetics, Inc.*, 230 F.R.D. 313, 315 (S.D.N.Y. 2005) (consolidation of securities class actions is particularly appropriate in the context of securities class actions where the complaints are based on the same statements and the defendants will not be prejudiced); *In re GE*, 2009 U.S. Dist. LEXIS 69133), at *5 ("Consolidation promotes judicial convenience and avoids unnecessary costs to the parties.").

### B.   THE GLOBAL BROKERAGE INVESTOR GROUP SHOULD BE APPOINTED LEAD PLAINTIFF

The Global Brokerage Investor Group should be appointed Lead Plaintiff because it has the largest financial interest in the Action and otherwise meets the requirements of Rule 23. Section 21D(a)(3)(B) of the PSLRA sets forth procedures for the selection of lead plaintiff in class actions brought under the Exchange Act.  The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of the class action by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) &(ii).

Further, under 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court is directed to consider all motions by plaintiffs or purported class members to appoint lead plaintiff filed in response to any such notice.   Under this section, the Court "shall" appoint "the presumptively most adequate plaintiff" to serve as lead plaintiff and shall presume that plaintiff is the person or group of persons, that:

> (aa) has either filed the complaint or made a motion in response to a notice . . .;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
>  (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, the Global Brokerage Investor Group satisfies all three of these criteria and thus is entitled to the presumption that it is the most adequate plaintiff of the Class and, therefore, should be appointed Lead Plaintiff for the Class.

### 1.      The Global Brokerage Investor Group is Willing to Serve as a Class Representative

On February 7, 2017 counsel for plaintiff in the first of the above-captioned actions to be filed caused a notice to be published over *Business Wire* pursuant to Section 21D(a)(3)(A)(i) of the PSLRA, which announced that a securities class action had been filed against the defendants herein, and advised investors of Global Brokerage securities that they had until April 10, 2017 to file a motion to be appointed as Lead Plaintiff.   *See* Declaration of Jeremy A. Lieberman in Support of Motion of the Global Brokerage Investor Group for Consolidation, Appointment as Lead Plaintiffs, and Approval of Counsel ("Lieberman Decl."), Ex. A.

The Global Brokerage Investor Group has filed the instant motion pursuant to the Notice, and its members have attached Certifications attesting that they are willing to serve as

representative for the Class, and provide testimony at deposition and trial, if necessary.  *See* Lieberman Decl., Ex. B.  Accordingly, the Global Brokerage Investor Group satisfies the first requirement to serve as Lead Plaintiff of the Class.

### 2. The Global Brokerage Investor Group Has the "Largest Financial Interest"

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).

As of the time of the filing of this motion, the Global Brokerage Investor Group believes that it has the largest financial interest of any of the Lead Plaintiff movants based on the four factors articulated in the seminal case *Lax v. First Merch. Acceptance Corp.*, 1997 U.S. Dist. LEXIS 11866, at *7-*8 (N.D. Ill. Aug. 6, 1997) (financial interest may be determined by (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered).[1] The most critical among the Lax Factors is the approximate loss suffered. *See*, *e.g.*, *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 511 (E.D. Pa. 2004); *Janovici v. DVI, Inc.*, No. 03-4795, 2003 U.S. Dist. LEXIS 22315, at *39 (E.D.Pa. Nov. 25, 2003); *In re Am. Bus. Fin. Servs., Inc. Sec. Litig.*, 2004 U.S. Dist. LEXIS 10200, at *2–3 (E.D. Pa. Jun. 3, 2004); *A.F.I.K. Holding SPRL v. Fass*, 216 F.R.D. 567, 572 (D. N.J. 2003).

During the Class Period, The Global Brokerage Investor Group (1) purchased 385,876 shares of Global Brokerage securities; (2) expended $847,776 on its purchases of Global Brokerage securities; and (3) as a result of the disclosures of the fraud, suffered a loss of

---

[1] *See also In re Olsten Corp. Sec. Litig.,* 3 F. Supp.2d 286, 296 (E.D.N.Y. 1998).  *Accord In re Converse Tech., Inc., Sec. Litig.*, 2007 U.S. Dist. LEXIS 14878, at *22-*25 (E.D.N.Y. Mar. 2, 2007) (collectively, the "Lax-Olsten" factors).

$375,516 in connection with its Class Period purchases.  *See* Lieberman Decl., Ex. C.  Because the Global Brokerage Investor Group possesses the largest financial interest in the outcome of this litigation, it may be presumed to be the "most adequate" plaintiff.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).

### 3. The Global Brokerage Investor Group Otherwise Satisfies the Requirements of Rule 23 of the Federal Rules of Civil Procedure

Section 21D(a)(3)(B)(iii)(I)(cc) of the PSLRA further provides that, in addition to possessing the largest financial interest in the outcome of the litigation, Lead Plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

In making its determination that Lead Plaintiff satisfies the requirements of Rule 23, the Court need not raise its inquiry to the level required in ruling on a motion for class certification; instead a *prima facie* showing that the movant satisfies the requirements of Rule 23 is sufficient. *Greebel v. FTP Software*, 939 F. Supp. 57, 60 (D. Mass. 1996).  Moreover, "typicality and adequacy of representation are the only provisions relevant to a determination of lead plaintiff under the PSLRA."  *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 49 (S.D.N.Y. 1998) (citing *Gluck v. Cellstar Corp.*, 976 F. Supp. 542, 546 (N.D. Tex. 1997) and *Fischler v. Amsouth Bancorporation*, 176 F.R.D. 583 (M.D. Fla. 1997)); *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296.

10

The typicality requirement of Fed. R. Civ. P. 23(a)(3) is satisfied where the named representative's claims have the "same essential characteristics as the claims of the class at large." *Danis v. USN Communs., Inc.*, 189 F.R.D. 391, 395 (N.D. Ill. 1999).  In other words, "the named plaintiffs' claims [must be] typical, in common-sense terms, of the class, thus suggesting that the incentives of the plaintiffs are aligned with those of the class." *Beck v. Maximus, Inc.*, 457 F.3d 291, 295-96 (3d Cir. 2006) (quoting *Baby Neal v. Casey*, 43 F.3d 48, 55 (3d Cir. 1994) (noting that "factual differences will not render a claim atypical if the claim arises from the same event or practice or course of conduct that gives rise to the claims of the class members, and if it is based on the same legal theory.")).

The claims of the Global Brokerage Investor Group are typical of those of the Class.  The Global Brokerage Investor Group alleges, as do all class members, that defendants violated the Exchange Act by making what they knew or should have known were false or misleading statements of material facts concerning the Company, or omitted to state material facts necessary to make the statements they did make not misleading.  The Global Brokerage Investor Group, as did all members of the Class, purchased Global Brokerage securities during the Class Period at prices artificially inflated by defendants' misrepresentations or omissions and was damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory and arise from the same events and course of conduct as the Class claims, satisfy the typicality requirement of Rule 23(a)(3).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party "will fairly and adequately protect the interests of the class."  The class representative must also have "sufficient interest in the outcome of the case to ensure vigorous advocacy." *Riordan v. Smith Barney*, 113 F.R.D. 60, 64 (N.D. Ill. 1986); *Beck*,

457 F.3d at 296 (emphasizing that the adequacy inquiry "'serves to uncover conflicts of interest between named parties and the class they seek to represent.'") (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997)).

The Global Brokerage Investor Group is an adequate representative for the Class. There is no antagonism between the interests of the Global Brokerage Investor Group and those of the Class, and its losses demonstrate that it has a sufficient interest in the outcome of this litigation. Moreover, the Global Brokerage Investor Group has retained counsel highly experienced in vigorously and efficiently prosecuting securities class actions such as this action, and submits its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

**4.   The Global Brokerage Investor Group Will Fairly and Adequately Represent the Interests of the Class and is Not Subject to Unique Defenses**

The presumption in favor of appointing the Global Brokerage Investor Group as Lead Plaintiff may be rebutted only upon proof "by a purported member of the plaintiffs' class" that the presumptively most adequate plaintiff:

> (aa)   will not fairly and adequately protect the interest of the class; or
>
> (bb)   is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

15 U.S.C. § 78u-4(a)(3)(b)(iii)(I).

The ability and desire of the Global Brokerage Investor Group to fairly and adequately represent the Class has been discussed above.  The Global Brokerage Investor Group is not aware of any unique defenses defendants could raise that would render it inadequate to represent the Class. Accordingly, the Global Brokerage Investor Group should be appointed Lead Plaintiff for the Class.

12

### C.  LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Osher v. Guess?, Inc.*, 2001 U.S. Dist. LEXIS 6057, at *15 (C.D. Cal. Apr. 26, 2001).  The Court should interfere with Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Global Brokerage Investor Group has selected Pomerantz as Lead Counsel for the Class.  Pomerantz is highly experienced in the area of securities litigation and class actions, and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors, as detailed in the firm's resume.  *See* Lieberman Decl., Ex. D.  As a result of Pomerantz's extensive experience in litigation involving issues similar to those raised in the Related Actions, the Global Brokerage Investor Group's counsel have the skill and knowledge which will enable them to prosecute a consolidated action effectively and expeditiously.  Thus, the Court may be assured that by approving the selection of Lead Counsel by the Global Brokerage Investor Group, the members of the class will receive the best legal representation available.

### CONCLUSION

For the foregoing reasons, the Global Brokerage Investor Group respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Global Brokerage Investor Group as Lead Plaintiff for the Class; (3) approving Pomerantz as Lead Counsel for the Class; and (4) granting such other relief as the Court may deem to be just and proper.

Dated:   April 10, 2017

Respectfully submitted,

**POMERANTZ LLP**

*/s/ Jeremy A. Lieberman*
Jeremy A. Lieberman
J. Alexander Hood II
Hui M. Chang
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
Email:  jalieberman@pomlaw.com
           ahood@pomlaw.com
           hchang@pomlaw.com

**POMERANTZ LLP**
Patrick V. Dahlstrom
Ten South LaSalle Street, Suite 3505
Chicago, Illinois 60603
Telephone: (312) 377-1181
Facsimile: (312) 377-1184
Email:  pdahlstrom@pomlaw.com

*Counsel for Movants and*
*Proposed Lead Counsel for the Class*

**GOLDBERG LAW PC**
Michael Goldberg
Brian Schall
Sherin Mahdavian
1999 Avenue of the Stars, Suite 1100
Los Angeles, California 90067
Telephone: 1-800-977-7401
Fax: 1-800-536-0065
Email: michael@goldberglawpc.com
Email: brian@goldberglawpc.com
Email: sherin@goldberglawpc.com

*Additional Counsel for Movants*

**BRONSTEIN, GEWIRTZ**
**& GROSSMAN, LLC**
Peretz Bronstein
60 East 42nd Street, Suite 4600

14

New York, NY 10165
Telephone: (212) 697-6484
Facsimile (212) 697-7296
Email:  peretz@bgandg.com

*Additional Counsel for Movants*