**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA |
| | <u>CLASS ACTION</u> |
| | **ORAL ARGUMENT REQUESTED** |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
DEFENDANTS' MOTION TO STRIKE AND DISMISS PLAINTIFFS'
<u>CONSOLIDATED SECURITIES CLASS ACTION COMPLAINT</u>**

Israel Dahan
Peter Isajiw
Chelsea Corey
Evan C. Ennis
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036-2601
Tel: (212) 556.2100
Fax: (212) 556.2200

*Attorneys for Defendants Global Brokerage, Inc. f/k/a FXCM Inc.,
Dror Niv, William Ahdout, David Sakhai, Eduard Yusupov,
Janelle G. Lester, Robert Lande, Ornit Niv, Nicola Santoro, Jr.,
Margaret Deverell, David S. Sassoon, Kenneth Grossman,
James Brown, Ryan Silverman, Arthur Gruen, Robin E. Davis,
Eric LeGoff, and Bryan Reyhani*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................................... 1

ARGUMENT ................................................................................................................................... 2

I.      Plaintiffs' Opposition Further Supports The Court's Striking Of Plaintiffs' Allegations
        That Are Based Upon The Unadjudicated CFTC Order and the NFA Complaint ................ 2

II.     Plaintiffs' Opposition Confirms The Lack Of Any Materially False Or Misleading
        Statement Of Fact Or Omission By The Section 10(b) Defendants ..................................... 5

        A.      Plaintiffs Have Not Justified Their Improper Block Quoting And Lack Of
                Particularity ............................................................................................................ 5

        B.      Opinions Are Not Actionable Misstatements And Plaintiffs Have Not
                Adequately Alleged That Defendants Did Not Hold The Challenged
                Opinions ................................................................................................................. 6

        C.      Plaintiffs' Conclusory GAAP Allegations Are Unsupported ................................... 7

        D.      Plaintiffs' Allegations Regarding The Nature And Scope Of The Services
                Agreement Are Contradicted By Their Own Evidence And The Explicit
                Terms Of The Services Agreement ......................................................................... 9

        E.      Plaintiffs Acknowledge That FXCM Disclosed The Termination Of Its
                Services Agreement With Effex In 2014 ................................................................ 11

        F.      Niv's Alleged October 2013 Statements Are Not Evidence Of Falsity And
                Cannot Demonstrate Falsity Of Public Statements Made Prior To October
                2013 ...................................................................................................................... 12

III.    Plaintiffs' Opposition Confirms The Lack Of Scienter Allegations In The Complaint ...... 14

IV.     Plaintiffs' Opposition Does Not Demonstrate The Existence Of Control-Person
        Liability Against Any Of The Individual Defendants ....................................................... 16

        A.      Neither The Complaint Nor The Opposition Reveal That The Individual
                Defendants Are Control Persons ........................................................................... 16

        B.      Neither The Complaint Nor The Opposition Reveal Culpable Participation
                By The Individual Defendants .............................................................................. 18

        CONCLUSION ...................................................................................................................... 19

# TABLE OF AUTHORITIES

**CASES**                                                                                      **PAGE(S)**

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002) ............................................................................. 9

*ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*,
  493 F.3d 87 (2d Cir. 2007) ............................................................................. 11

*Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*,
  459 U.S. 519 (1983) ....................................................................................... 13

*Bruce v. Suntech Power Holdings Co. Ltd.*,
  No. 12-cv-04061, 2013 WL 6843610 (N.D. Cal. Dec. 26, 2013) ........................... 17

*City of Omaha Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012) ............................................................................. 7

*City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Ltd. Co.*,
  655 F. Supp. 2d 262 (S.D.N.Y. 2009) ............................................................... 8

*City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*,
  928 F. Supp. 2d 705 (S.D.N.Y. 2013) ............................................................... 7

*Fait v. Regions Fin. Corp.*,
  655 F.3d 105 (2d Cir. 2011) ........................................................................... 7

*Fraker v. Bayer Corp.*,
  No. 08-cv-1564, 2009 WL 5865687 (E.D. Cal. Oct. 6, 2009) ............................... 4

*Gotlin v. Lederman*,
  367 F. Supp. 2d 349 (E.D.N.Y. 2005) ............................................................. 2

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015) ............................................................. 9

*Ho v. Duoyuan Glob. Water, Inc.*,
  887 F. Supp. 2d 547 (S.D.N.Y. 2012) ............................................................. 3

*In OSG Sec. Litig.*,
  12 F. Supp. 3d 619 (S.D.N.Y. 2014) ............................................................... 3

*In re Alstom SA*,
  406 F. Supp. 2d 433 (S.D.N.Y. 2005) ............................................................. 16

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
  693 F. Supp. 2d 241 (S.D.N.Y. 2010) ............................................................. 9

*In re Bear Stearns Mortgage Pass-Through Certificates Litig.*,
  851 F. Supp. 2d 746 (S.D.N.Y. 2012) ............................................................. 3

*In re BioScrip, Inc. Sec. Litig.*,
  95 F. Supp. 3d 711 (S.D.N.Y. 2015) ............................................................... 19

*In re Braskem S.A. Sec. Litig.*,
  246 F. Supp. 3d 731 (S.D.N.Y. 2017) ........................................................ 16, 17

*In re CRM Holdings, Ltd. Sec. Litig.*,
No. 10-cv-975, 2012 WL 1646888 (S.D.N.Y. May 10, 2012) ................................. 14

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
No. 16-cv-3495, 2017 WL 4049253 (S.D.N.Y. June 28, 2017) .............................. 6

*In re Hi-Crush Partners L.P. Sec. Litig.*,
No. 12-cv-8557, 2013 WL 6233561 (S.D.N.Y. Dec. 2, 2013) ................................ 15

*In re JP Morgan Chase Sec. Litig.*,
363 F. Supp. 2d 595 (S.D.N.Y. 2005) ............................................................ 15

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) ......................................................... 9

*In re Lihua Int'l, Inc. Sec. Litig.*,
No. 14-cv-5037, 2016 WL 1312104 (S.D.N.Y. Mar. 31, 2016) ........................... 16

*In re Livent, Inc. Sec. Litig.*,
148 F. Supp. 2d 331 (S.D.N.Y. 2001) ........................................................... 18

*In re Platinum & Palladium Commodities Litig.*,
828 F. Supp. 2d 588 (S.D.N.Y. 2011) ........................................................... 2

*In re WorldCom, Inc. Securities Litigation*,
294 F. Supp. 2d 392 (S.D.N.Y. 2003) ........................................................... 19

*In re UBS AG Sec. Litig.*,
No. 07-cv-11225, 2012 WL 4471265 (S.D.N.Y. Sept. 28, 2012) .......................... 4

*James v. Correct Care Solutions*,
No. 13-cv-0019, 2013 WL 5730176 (S.D.N.Y. Oct. 21, 2013) ............................ 10

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001) ....................................................................... 14

*L-7 Designs, Inc. v. Old Navy, LLC*,
647 F.3d 419 (2d Cir. 2011) ....................................................................... 10

*Lapin v. Goldman Sachs Grp., Inc.*,
506 F. Supp. 2d 221 (S.D.N.Y. 2006) ........................................................... 18

*Ledford v. Rapid–American Corp.*,
No. 86-cv-9116, 1988 WL 3428 (S.D.N.Y. Jan. 8, 1988) ................................... 2

*Maverick Fund, L.D.C. v. Comverse Tech.*, Inc.,
801 F. Supp. 2d 41 (E.D.N.Y. 2011) ............................................................. 17

*McIntire v. China MediaExpress Holdings, Inc.*,
927 F. Supp. 2d 105 (S.D.N.Y. 2013) ....................................................... 3, 14

*Menaldi v. Och-Ziff Capital Management Group LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016) ........................................................... 18

*Schorr v. Dopico*,
205 F. Supp. 3d 359 (S.D.N.Y. 2016) ..................................................... 5, 8, 13

*SEC v. First Jersey Sec., Inc.*,
  101 F.3d 1450 (2d Cir. 1996) ............................................................................... 16

*Silsby v. Icahn*,
  17 F. Supp. 3d 348 (S.D.N.Y. 2014 ...................................................................... 12

*Special Situations Fund III QP, L.P. v. Deloitte Touch Tohmatsu CPA, Ltd.*,
  33 F. Supp. 3d 401 (S.D.N.Y. 2014) ...................................................................... 18

*U.S. v. Gilbert*,
  668 F.2d 94 (2d Cir. 1981) ..................................................................................... 2

**STATUTES**                                                                     **PAGE(S)**

FED. R. CIV. P. 15(a)(2) .............................................................................................13

Defendants Global Brokerage, Inc. f/k/a FXCM Inc. ("FXCM" or the "Company") and Dror Niv, William Ahdout, David Sakhai, Eduard Yusupov, Janelle G. Lester, Robert Lande, Ornit Niv, Nicola Santoro, Jr., Margaret Deverell, David S. Sassoon, Kenneth Grossman, James Brown, Ryan Silverman, Arthur Gruen, Robin E. Davis, Eric LeGoff, and Bryan Reyhani (collectively, the "Individual Defendants," and together with FXCM, the "Defendants") submit this reply memorandum of law in further support of their motion to strike significant portions of Plaintiffs' Consolidated Securities Class Action Complaint (the "Complaint" or "Compl.") pursuant to Federal Rules of Civil Procedure 12(f) and 11(b)(3) and to dismiss the Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), and in response to Plaintiffs' Opposition to the foregoing motions.[1]

## PRELIMINARY STATEMENT

Plaintiffs' entire Opposition can be boiled down to one truism: "Because I said so." According to Plaintiffs, the Complaint should survive dismissal because the Court is bound to accept as true their allegations of wrongdoing, which they essentially copied from an unadjudicated regulatory complaint and settlement consent order, no matter how conclusory or factually unsupported. But that is not the law. Under the Federal Rules and the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Plaintiffs have a heightened pleading obligation and must put forth *particularized facts* that demonstrate, among other things, Defendants' falsity, scienter, control, and culpable participation in the alleged fraud. As demonstrated below and in Defendants' opening brief (the "Motion" or "Mot."), Plaintiffs have not come close to satisfying this pleading burden. In fact, the premises for most of the allegations of wrongdoing are belied by the very sources Plaintiffs rely upon and other evidence

---

[1] All capitalized terms not defined herein adopt the meaning ascribed to them in the Complaint.

of which the Court can take judicial notice.  Accordingly, the Court can and must dismiss the Complaint.

## ARGUMENT

### I. PLAINTIFFS' OPPOSITION FURTHER SUPPORTS THE COURT'S STRIKING OF PLAINTIFFS' ALLEGATIONS THAT ARE BASED UPON THE UNADJUDICATED CFTC ORDER AND THE NFA COMPLAINT

Defendants made an adequate showing in their opening brief that their motion to strike should be granted.  Allegations cribbed from unadjudicated, no-admit no-deny settlements with regulators are not *facts* and courts considering *U.S. v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981)— upon which Plaintiffs rely—have explicitly rejected the admission of such allegations.  *See, e.g.*, *In re Platinum & Palladium Commodities Litig.*, 828 F. Supp. 2d 588, 594 (S.D.N.Y. 2011) (quoting *Gilbert* and reasoning that Rule 408 bars evidence of a compromise to prove liability for a claim, and in the pleading at hand "Plaintiffs quote extensively from the CFTC Order, indicating an express purpose to employ the CFTC Order to prove liability.").  Indeed, allegations taken from such settlements and complaints are misleading, of no evidentiary value, and can be stricken under Rule 12(f).  *See Platinum*, 828 F. Supp. 2d at 593 (quoting *In re Merrill Lynch & Co., Inc. Research Reports Sec. Litig.*, 218 F.R.D. 76, 78 (S.D.N.Y. 2003)) ("[R]eferences to preliminary steps in litigations and administrative proceedings that did not result in an adjudication on the merits or legal or permissible findings of fact are, as a matter of law, immaterial under Rule 12(f)[.]"); *Gotlin v. Lederman*, 367 F. Supp. 2d 349, 363 (E.D.N.Y. 2005) ("[C]ourts hold that references in pleadings to agreements with state or federal agencies may properly be stricken on a Rule 12(f) motion."); *Ledford v. Rapid–American Corp.*, No. 86-cv-9116, 1988 WL 3428, at *1 (S.D.N.Y. Jan. 8, 1988).  And while the existence of such settlements, or Defendants' knowledge of the existence of such settlements, may be admissible, that is *not* at all what Plaintiffs seek to admit here.  Instead, Plaintiffs seek to have the Court

adopt as proven fact *all* the allegations contained in the unadjudicated CFTC Order and NFA Complaint and establish liability based on such allegations.  That is not permitted and would be highly prejudicial to Defendants.

Plaintiffs incorrectly assert that Defendants' requested relief has been "squarely rejected" and rely upon District Court cases that are easily distinguishable.  Opp. at 10.[2]  In *In OSG Sec. Litig.*, 12 F. Supp. 3d 619, 620 (S.D.N.Y. 2014), for example, the plaintiffs sought to amend their pleadings with select additional scienter allegations from a civil action in an effort to strengthen their claims.  Here, Plaintiffs do not seek to utilize the CFTC Order and NFA Complaint as *additional* supporting allegations, but instead to form the *primary*, and nearly sole, basis of their securities fraud claims against Defendants.  Similarly, in *In re Bear Stearns Mortgage Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, n.24 (S.D.N.Y. 2012), the court— acknowledging the strength of the complaint allegations at issue in that case—noted that "[e]ven if the Court struck every [paragraph that relies upon another complaint], the TAC would still contain sufficient factual allegations to plead claims under Sections 11 and 12(a)(2)."  In stark contrast, as Defendants have demonstrated, if all paragraphs in the Complaint that refer to or rely upon the CFTC Order and NFA Complaint are stricken, there would be virtually no remaining factual allegations.  Mot. at 18; Ex. F.[3]

---

[2] As Defendants acknowledged in their opening brief, there is a split among District Courts in this Circuit as to the extent *Lipsky* can be applied to strike allegations from other unadjudicated complaints.  Mot. at 16, n. 8.  However, Defendants submit that this case is most similar to the facts in cases where allegations that refer to or rely upon unadjudicated consent orders have been excluded.

[3] Similarly, Plaintiffs rely on *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 123 (S.D.N.Y. 2013), and *Ho v. Duoyuan Glob. Water, Inc.*, 887 F. Supp. 2d 547, 563 (S.D.N.Y. 2012) for the proposition that courts have held that it is appropriate to rely on short seller reports.  *See* Opp. at n.6. But again, the distinguishing factor between that precedent and this case is the quantum of evidence presented to support the plausibility of the claims at issue. In *McIntire*, the plaintiffs relied not only on short seller reports, but also letters from the

As Defendants explained in their opening brief, this case and Plaintiffs' Complaint are analogous to the posture in *Platinum*. *See* Mot. at 16-17. In *Platinum*, the Honorable William H. Pauley III struck allegations that "simply recast the CFTC's findings and [were] derived wholesale from the CFTC Order," reasoning that "[t]hese allegations [were] paradigms of the type of pleading prohibited by *Lipsky* and its progeny." *Platinum*, 828 F. Supp. 2d at 593-94. The court in *Platinum* further reasoned that "[a]lthough the CFTC Order included certain factual findings, it nevertheless was the product of a settlement between the CFTC and the Respondents, not an adjudication of the underlying issues in the CFTC proceeding. Plaintiffs are therefore prohibited from relying on the CFTC Order to plead the 'underlying facts of liability.'" *Id.* at 594. The same result should occur in this case.

Plaintiffs cannot, and should not, be allowed to satisfy their heightened pleading burden in a securities fraud case by regurgitating, nearly word-for-word, unadjudicated allegations from other proceedings. Accordingly, Defendants respectfully request their motion to strike Complaint allegations that refer to or rely upon the CFTC Order or the NFA Complaint pursuant to Rule 12(f) be granted.[4]

---

defendant's outside auditor, the resignation of the defendant's outside auditor, and the withdrawal of the relevant audit opinion (*see McIntire*, 927 F. Supp. 2d at 123)—a stark contrast to Plaintiffs' Complaint that relies nearly exclusively on the unadjudicated CFTC Order. In *Ho* the plaintiffs' primary evidence of misstatements was not the short seller reports, but a number of glaring discrepancies between defendant's SEC filings and its SAIC filings in China (*Ho*, 887 F. Supp. 2d at 567-68)—yet Plaintiffs here present no inconsistencies in FXCM's public statements.

[4] While Defendants acknowledge the requirements of Rule 11(c)(2), Plaintiffs' counsel's violation of their "nondelegable responsibility" imposed by Rule 11 was included as an alternate basis to strike allegations because other courts have found complete adoption of allegations in other proceedings to be sanctionable conduct and have stricken such pleadings pursuant to Rule 11(b). As a result, "parroted allegations" like these "for which counsel has not conducted independent investigation" are properly disregarded on a motion to dismiss. *See In re UBS AG Sec. Litig.*, No. 07-cv-11225, 2012 WL 4471265, at *17 n. 17 (S.D.N.Y. Sept. 28, 2012) (A court "need not consider parroted allegations for which counsel has not conducted independent

## II. PLAINTIFFS' OPPOSITION CONFIRMS THE LACK OF ANY MATERIALLY FALSE OR MISLEADING STATEMENT OF FACT OR OMISSION BY THE SECTION 10(b) DEFENDANTS

Plaintiffs concede that their Section 10(b) and Rule 10b-5 claim are governed by the heightened pleading standards of Rule 9(b).  *See* Opp. at 16.  Plaintiffs are correct that "allegations in a complaint are deemed to be true for the purposes of a motion to dismiss," but they forget that courts "need not credit such allegations where they are wholly conclusory or rely on unreasonable inferences and unwarranted deductions."  *Schorr v. Dopico*, 205 F. Supp. 3d 359, 363 (S.D.N.Y. 2016), *aff'd*, 686 F. App'x 34 (2d Cir. 2017).  Here, Plaintiffs attempt to abuse the motion to dismiss standard, asking this Court to credit even their most implausible and conclusory allegations.

### A. Plaintiffs Have Not Justified Their Improper Block Quoting And Lack Of Particularity

As Defendants' pointed out in their opening brief, Plaintiffs seek to establish falsity through long block quotations taken from FXCM's public filings, followed by a form conclusory mantra that the entire block quote was materially false and misleading.  *See* Mot. at 12-13, 24. Plaintiffs try to defend their conduct by arguing that each of their admittedly "lengthy selections" is "positively replete with false or misleading statements."  Opp. at 17-18.  Though Plaintiffs are free to argue that every opinion and statement FXCM ever made regarding the operation of its NDD trading platform was false and misleading, that does not absolve them from explaining with particularity *why* each and every statement in the block quote is indeed false or misleading. *See* 5 U.S.C. § 78u–4(b)(1) (requiring, *inter alia*, that complaints "specify each statement alleged

---

investigation."); *see also Fraker v. Bayer Corp.*, No. 08-cv-1564, 2009 WL 5865687, *3-4 (E.D. Cal. Oct. 6, 2009) (allegations in complaint do not satisfy Rule 11 requirements where they were derived from FTC consent decree and cease-and-desist order, which stood "for the entire body of substantive allegations").  Defendants note that the Motion does not request monetary sanctions or ask that specific attorneys be reprimanded.

to have been misleading" and explain why each statement is misleading). Plaintiffs' Complaint is strikingly similar to the complaint Judge Analisa Torres recently dismissed after finding that "the complaint replete with such block quotations . . . fails to demonstrate with specificity how any of the statements are allegedly false [and] employs the same conclusory formula . . . four separate times in the complaint to cover *all* of the allegedly material misrepresentations." *In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16-cv-3495, 2017 WL 4049253, at *5 (S.D.N.Y. June 28, 2017) (emphasis in original).  Similarly, Plaintiffs' Complaint should be found to not satisfy the particularity requirement imposed by the PSLRA and Rule 9(b).

**B.  Opinions Are Not Actionable Misstatements And Plaintiffs Have Not Adequately Alleged That Defendants Did Not Hold The Challenged Opinions**

According to Plaintiffs, the "heart" of their case is FXCM's supposed misrepresentation that its NDD platform "would be free from conflicts of interest because FXCM would not be on the other side of the trade or have any financial interest in the trade."  Opp. at 17.  But Plaintiffs' allegations are in fact contradicted by the *actual* text of the disclosures they allege to be false. FXCM *never* stated that its NDD platform "would be *free from conflicts of interest*."  Instead, FXCM stated an opinion:  FXCM "believes that [the NDD] aligns our interests with those of our customers and reduces our risks."  Compl. ¶¶ 159, 185, 206, 226;  Mot. at 26-27.  Nor can Plaintiff direct the Court to a statement by FXCM that it would have no financial interest in its customers' trades—because FXCM made no such representation.

Instead, Plaintiffs attempt to avoid the fact that the "heart" of their claims turns on a non-actionable statement of opinion by arguing that opinion statements can be actionable if the speaker knows the statement to be false.  Opp. at 19.  But nowhere do the Plaintiffs' provide any factual support—*i.e.*, documentary evidence or conflicting statements—demonstrating that Niv, Ahdout or Lande did *not* believe that FXCM's NDD model aligned its interests with those of its

customers, or that they knew that there was no reasonable basis to believe in such alignment. For this reason, Plaintiffs' reliance on *City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, 928 F. Supp. 2d 705, 717 (S.D.N.Y. 2013), is misplaced.  Opp. at 19.  In *City of Westland*, MetLife senior executives testified that they *knew* MetLife's reserves were insufficient to meet its life insurance policy obligations and that there was no reasonable basis to believe the estimates, and MetLife issued a corrective disclosure to this effect.  *See id.* at 714, 717.  Here, Defendants have never disavowed their opinion that FXCM's NDD model aligned the Company's interests with those of its customers, nor has there been a corrective disclosure.

Thus, as in *Fait v. Regions Fin. Corp.*, Plaintiffs have not "plausibly allege[d] that defendants did not believe the statements regarding [the NDD] at the time they made them."  655 F.3d 105, 112 (2d Cir. 2011); *see also City of Omaha Neb. Civilian Employees' Ret. Sys. v. CBS Corp.*, 679 F.3d 64, 68-69 (2d Cir. 2012) (affirming dismissal of securities fraud complaint that was "devoid even of conclusory allegations that defendants did not believe in their statements of opinion regarding CBS's goodwill at the time they made them").[5]

## C.   Plaintiffs' Conclusory GAAP Allegations Are Unsupported

Plaintiffs' allegations of misrepresentations related to supposed GAAP violations rely entirely on its conclusory and lone view that Defendants should have disclosed Effex as a VIE and/or that Defendants should have disclosed "related party transactions" with Effex.  *See, e.g.*, Compl. ¶¶ 106-110, 119, 127, 154, 164, 201, 230.  As demonstrated in Defendants' opening brief, conclusory allegations of GAAP violations are not enough to allege a material misstatement.  *See City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Grp. Pub. Ltd.*

---

[5] Plaintiffs state that due to the Effex relationship, the Company's "risks were higher than they would be without that relationship."  Opp. at 18.  Not surprisingly, Plaintiffs provide absolutely no factual support for this conclusory assertion.  Even the CFTC and NFA did not make any such assertion in the CFTC Order and the NFA Complaint.

*Co.*, 655 F. Supp. 2d 262, 270 (S.D.N.Y. 2009).   Plaintiffs attempt to avoid this pleading deficiency by arguing that because they allege that Effex was a VIE or a related party those conclusory statements must be taken as true, or that at the very least they raise "issues of fact that cannot be resolved on a motion to dismiss."  Opp. at 26-27.  But again, Plaintiffs ignore that they must make plausible allegations and cannot simply rely on unreasonable inferences or unwarranted deductions.  *See Schorr*, 205 F. Supp. 3d at 363.

What is even more troublesome than the conclusory fashion in which Plaintiffs proceed, is that these supposed GAAP violations are contradicted by the very "evidence" upon which Plaintiffs rely.  The CFTC Order—on which Plaintiffs admittedly base the vast majority of their Complaint—did not allege that FXCM violated GAAP.  *See* Compl. Ex. 1.  Indeed, the CFTC acknowledged that FXCM had no ownership interest in Effex; acknowledged that FXCM was entitled to payment based on trading volume and not based on a percentage of Effex's profits; and did not allege that FXCM had voting rights.  Compl. Ex. 1 at 5.  The fact that FXCM had no ownership interest in Effex is further confirmed by the Services Agreement itself.[6]   In the absence of an ownership interest, it is implausible to conclude that Effex should be considered a VIE under ASC 810 or a "related party" under ASC 850.

In their Opposition, Plaintiffs also underplay the importance of the fact that—even after the CFTC Order and the NFA Complaint were publicly released—FXCM has never been required by its auditor or by a regulator to restate its prior year financial statements with respect

---

[6] *See* Exhibits K, L to the Supplemental Declaration of Israel Dahan ("Supp. Dahan. Decl."). The Services Agreement states that during the term of the agreement "Effex . . . covenants to FXCM . . . [that] John Dittami ("Owner") shall remain the *sole owner* actual and beneficial of 100% of the membership interest of Effex."  Supp. Dahan Decl. L at Sect. 8.3 (emphasis added). Likewise, the Services Agreement provides that "[n]othing in this Agreement shall constitute or be deemed to establish a partnership, joint venture, association or employment relationship between the Parties hereto[.]"  *Id.* at Sect. 16.

to its accounting treatment of its contractual relationship with Effex. This is a key distinguishing factor between the case here and the precedent Plaintiffs have cited. *Cf. In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 257-58 (S.D.N.Y. 2010) (discussing corrective disclosures made by Ambac which caused a stock price drop). Plaintiffs' argue, relying on precedent from outside the Second Circuit, that the absence of a restatement does not necessarily end a plaintiff's claims as to GAAP violations where the plaintiff otherwise fulfills the requirements of the PLSRA. Opp. at 25-26.[7] However, as explained in Defendants' opening brief (Mot. at 32-33), courts in this Circuit have found that in the absence of a restatement Plaintiffs' must provide "objective facts" supporting their assertion that Defendants violated GAAP. *See, e.g.*, *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x 7 (2d Cir. 2016). Plaintiffs have not alleged such objective facts in their Complaint, but instead rely on their conclusory, self-serving position that the Company violated GAAP.

### D.    Plaintiffs' Allegations Regarding The Nature And Scope Of The Services Agreement Are Contradicted By Their Own Evidence And The Explicit Terms Of The Services Agreement

Plaintiffs accuse Defendants of lobbing "a bevy of inaccurate and inapposite distractions" at the Court, but it is Plaintiffs who have taken the liberty of misstating the facts and even the unadjudicated allegations made by the CFTC and NFA. Opp. at 16.[8]

---

[7]  The cases cited by Plaintiffs are inapposite as they contain the type of objective facts clearly not present here. For example, in *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002), the Plaintiffs were able to point to specific statements by the company's executives that contradicted their accounting for reserves. And in *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1242-43 (N.D. Cal. 2008), the plaintiffs' complaint primarily depended on allegations by the defendant corporation's former comptroller, who was an accountant, that the defendant had overstated its inventory and understated the costs of production, and that these misstatements caused the company's statements of gross profit, net income, and total assets to be materially misleading.

[8]  As it is Plaintiffs' practice to twist their own evidence, Defendants thought it would be helpful to provide the Court a chart of Plaintiffs' own Complaint allegations as compared to allegations

9

*First*, Plaintiffs' Opposition persists in inaccurately describing the Services Agreement as "pre-negotiated kickbacks" approximating 70 percent of Effex's profits from trading on FXCM's NDD platform.  Compl. ¶¶ 70, 75; Opp. at 20.  Yet, even the CFTC Order describes the Services Agreement as providing "that [Effex] would make monthly payments to FXCM in the amount of $21 per million dollars of trading volume executed by [Effex]."  Compl. Ex. 1 at 4.  In other words, the Services Agreement was exactly what the Company described—a pay-for-flow agreement based upon trading volume—not a profit sharing agreement.

Indeed, a review of the express language of the Services Agreement confirms that FXCM did not have a profit sharing agreement with Effex.  With this reply brief, Defendants attach a copy of the March 1, 2010 and the May 1, 2010 Services Agreements between FXCM and Effex.  Supp. Dahan Decl. Exs. K, L (respectively).[9]  The March 1, 2010 Services Agreement explicitly provides that "[Forex Capital Markets, LLC] shall receive from Effex a fee equal to $21.00 USD per one million units of Base Currency . . . for the aggregated volume of Transactions executed via the Trading System[.]"  The May 1, 2010 Services Agreement is materially the same in every respect, except that FXCM Holdings, LLC is substituted for Forex Capital Markets, LLC, and there is an acknowledgement that the March 1, 2010 Services Agreement is superseded.  Supp.

---

in the CFTC Order and NFA Complaint—both of which Plaintiffs have attached to their Complaint.  *See* Compl. Exs. 1-2.  Plaintiffs cannot deny that the Court may consider documents attached to their pleading on a motion to dismiss.  *See James v. Correct Care Solutions*, No. 13-cv-0019, 2013 WL 5730176, at *3 (S.D.N.Y. Oct. 21, 2013).   And as Exhibit F merely reorganizes Plaintiffs' own allegations and "evidence" into a digestible format for the Court in order to highlight Plaintiffs' inconsistencies, it is therefore appropriate as an aid to the Court in its consideration of Defendants' motion.

[9]  Plaintiffs explicitly requested that Defendants provide copies of these documents in their opposition.  *See* Opp. at n.9.  Although the focus should be on the pleadings in considering a motion to dismiss, courts will deem the complaint to include "any written instrument attached to it as an exhibit, materials incorporated in it by reference, and documents that, although not incorporated by reference, are 'integral' to the complaint."  *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

Dahan Decl. Ex. L at 1.  Thus, Plaintiffs' conclusory assertion that FXCM had an undisclosed profit sharing agreement with Effex is unfounded and belied by the plain terms of the Services Agreement.

*Second*, Plaintiffs contend that FXCM's disclosures were false and misleading because "FXCM also took positions adverse to its customers via Effex and earned profits from such trading."  Opp. at 18.  This contention is likewise unsupported by any facts and is actually contradicted by the evidence.  As demonstrated by the terms of the Services Agreement, Effex did not provide FXCM with a share of its profits from trades and FXCM did not take any trading position adverse to its customers.  FXCM was paid by Effex based on the aggregate customer order volume, not the outcome of any individual customer trades.  And the fact that FXCM made money based upon order flow was not a secret.  As Plaintiffs acknowledge, FXCM repeatedly disclosed in its public filings and its discussion of "retail trading revenue" that it made money from liquidity providers based on order flow.  *See* Dahan Dec. Exs. A at 74; B at 42, F-17; C at 36, 40, 45, 51; H at 45, 65, F-16; G at 46, 74, F-18; Compl. ¶¶ 124, 134, 135, 143, 144, 152, 160, 162, 169, 186, 188, 199, 208.

### E.   Plaintiffs Acknowledge That FXCM Disclosed The Termination Of Its Services Agreement With Effex In 2014

In their Opposition, Plaintiffs acknowledge that FXCM publicly disclosed the termination of its pay-for-flow agreements in August 2014;[10] yet, Plaintiffs continue to assert that FXCM's

---

[10] In their Opposition, Plaintiffs object to this Court taking judicial notice of the portions of the various SEC filings that Defendant appended to their Motion.  *See* Opp. at 36-37; *see also* Dahan Decl. Exs. A, B, C, E, H, and J.  But it is hornbook law that this Court can take judicial notice of the very documents to which Plaintiffs point to in support of their allegations of wrongdoing by Defendants.  *See, e.g.*, *ATSI Commc'ns Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) ("[W]e may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, legally required public disclosure documents filed with the SEC, and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").  Plaintiffs also argues that the "Court should take judicial notice of the

statements after that date were false and misleading.  *See* Opp. at 27-28.  In support of this proposition the Opposition points solely to language in the CFTC Order stating that FXCM's pay-for-flow relationship with Effex "continued 'through *at least* 2014.'"  Opp. at 28.  But the CFTC did not make any specific allegation or present any evidence that FXCM received any payments or had an improper relationship with Effex after August 2014.  And though Plaintiffs allege that the termination of pay-for-flow is irrelevant because pay-for-flow provided FXCM with "only pretextual payments approximating Effex's profits from trading against FXCM customers" (Opp. at 27-28), they neither provide factual support for this proposition, nor demonstrate how such payments survived the termination of the Services Agreement in August 2014.[11]  Instead, in their Opposition, Plaintiffs themselves limit payments received by FXCM from Effex to the period between 2010 and 2014.  *See* Opp. at 31.

### F. Niv's Alleged October 2013 Statements Are Not Evidence Of Falsity And Cannot Demonstrate Falsity Of Public Statements Made Prior To October 2013

In their opening brief, Defendants established that it is illogical for any alleged October 2013 misstatement by Niv to serve as supporting evidence for alleged misstatements made prior to October 2013.  *See* Mot. at 30.  Plaintiffs have not even attempted to respond to this argument.

---

filings not for the truth of the matters asserted, but rather to establish the existence of the filings and the fact of their contents."  Opp. at 37.  But in a securities case challenging the adequacy of FXCM's disclosures, this Court may obviously consider what those disclosures actually were. *See, e.g.*, *Silsby v. Icahn*, 17 F. Supp. 3d 348, 359-61 (S.D.N.Y. 2014) (reviewing the contents of the defendants public disclosures and finding that the disclosures were broad enough to cover the misstatements as to which the plaintiffs complained).  And with respect to the August 2014 disclosure that FXCM terminated its pay-for-flow arrangements (Dahan Decl. Ex. C), Defendants pointed to the existence of this disclosure and Plaintiffs failure to put forth any fact that would establish that this disclosure was materially false or misleading.

[11] Again, despite the fact that Plaintiffs' allegations are clearly contradicted by even the meager support upon which their Complaint relies, Defendants attach a letter agreement, signed by FXCM's general counsel and Effex's chief executive officer, terminating the May 1, 2010 Services Agreement effective as of August 1, 2014.  *See* Supp. Dahan Decl., Ex. N.

Instead, in their Opposition, Plaintiffs have deviated from their pleadings in the Complaint to assert that Niv's alleged misstatements in October 2013 are not actionable misstatements, but instead mere evidence of the alleged falsity of FXCM's public statements regarding the operation of its NDD model. *See* Opp. at 22, *cf.* Compl. ¶¶ 94-98, 268 (discussing alleged misstatements made to the NFA in a subsection entitled "Defendants' False and Misleading Class Period Statements to Regulators" and incorporating all "false statements specified above" as the basis for Count I). A plaintiff cannot alter or amend its pleadings in a motion. *See Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged."). And, at this point in the case, Plaintiffs may only amend with Defendants' written consent or the Court's leave. *See* FED. R. CIV. P. 15(a)(2). Accordingly, Plaintiffs' Opposition argument regarding Niv's alleged October 2013 statements should be disregarded. Further, the assertion that Niv "lied" is a legal conclusion that is not afforded the benefit of every inference on a motion to dismiss, instructing that such conclusory allegations should be disregarded. *See Schorr*, 205 F. Supp. 3d at 363.

But even if we were forced to accept the unsupported conclusion that Niv "lied" to the NFA by "neglect[ing] to mention any of the [alleged details] concerning FXCM's relationship with Effex and Dittami" (Compl. ¶ 94, which is an allegation stemming solely from unadjudicated regulatory allegations), such a "lie" still would not serve as evidence that FXCM made any misrepresentation about the operation of its NDD model in public filings. At most, such an omission by Niv is only evidence of that omission. The nature of FXCM's or Niv's relationship with Effex's CEO does not implicate how FXCM's NDD model operated.

III.    **PLAINTIFFS' OPPOSITION CONFIRMS THE LACK OF SCIENTER ALLEGATIONS IN THE COMPLAINT**

Plaintiffs' Opposition does not argue, and therefore concedes, that the Complaint does not allege motive and opportunity to commit fraud by the Section 10(b) Defendants.  *See* Opp. at 28-31.  Therefore, Plaintiffs' "circumstantial allegations [of scienter] must be correspondingly greater."  *Kalnit v. Eichler*, 264 F.3d 131, 142 (2d Cir. 2001).  Here, rather than plead objective facts demonstrating "a state of mind approximating actual intent" to defraud investors, *McIntire v. China MediaExpress Holdings, Inc.*, 927 F. Supp. 2d 105, 120 (S.D.N.Y. 2013), Plaintiffs continue to rely on conclusory allegations that are contradicted by their own "evidence" and the unadjudicated allegations contained in the CFTC Order and the NFA Complaint.

Plaintiffs argue that "[s]cienter can be inferred when an executive has 'access to information' that would reveal the fraud" and "Defendants do not dispute that Niv, Adhout, and Lande had access to information concerning FXCM's relationship with Effex."  Opp. at 28-29 (citing *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000)).  This argument is nonsensical.  The fact that these individuals were aware of the Effex pay-for-flow relationship does not prove that they intended to defraud investors about this relationship.  Indeed, as discussed above and in the opening brief, the Company did not defraud investors about its pay-for-flow arrangement with Effex and there are absolutely no facts showing these individuals knew the Company was doing so.[12]  All Plaintiffs do is cite to, and rely upon, certain unadjudicated allegations made in the CFTC Order and NFA Complaint concerning Niv and Ahdout, which are insufficient to establish

---

[12] Notably, in *Novak*, the plaintiffs pointed to specific facts and documentary sources, as well as multiple confidential sources, that substantiated their scienter allegations.  *Id.* at 312-13.  Those types of allegations are not present here.

scienter.[13]   *See In re CRM Holdings, Ltd. Sec. Litig.*, No. 10-cv-975, 2012 WL 1646888, at *26-27 (S.D.N.Y. May 10, 2012).   Critically,  Plaintiffs' allegation that Niv, Ahdout, and others at FXCM "devised a plan" to profit off of their customers via kickbacks (Opp. at 29) is not even supported by the CFTC Order itself, which made no such allegation regarding FXCM's relationship with Effex.  *See* Compl. Ex. 1, at 3.

Plaintiffs' "core operations theory of scienter" is also unavailing, as only a small percentage of FXCM's revenue was derived from its relationship with Effex.  Opp. at 30-31. Though retail trading did make up the most significant portion of FXCM's yearly revenues between 2010 and 2014, Plaintiffs vastly overstate the significance of the $80 million received from Effex during those years, describing it as "a significant part of this all-important revenue segment."  Opp. at 31.  But given that FXCM's revenue from its retail trading business was well over $300,000,000 for each of those years (Supp. Dahan Decl. Ex. M), revenues that Plaintiffs allege FXCM received pursuant to the Services Agreement accounted for a mere 4.6 percent of FXCM's retail trading revenue during that period.   Therefore, the proposition that FXCM's relationship with Effex, and its accounting treatment thereof, was at the "core" of FXCM's business is simply not sustainable.  *See In re JP Morgan Chase Sec. Litig.*, 363 F. Supp. 2d 595, 628 (S.D.N.Y. 2005) (finding plaintiffs alleged no basis for inferring that defendant knew trades were not bona fide where they alleged "no facts suggesting that the accounting treatment of the Mahonia transactions as trades rather than loans was at the core of JPM Chase's business"); *but cf. In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-cv-8557, 2013 WL 6233561 (S.D.N.Y. Dec.

---

[13]  Plaintiffs contend that Lande's scienter is evident from his knowledge of the monies FXCM received from Effex and participation in the "cover up" of such relationship from investors and the regulators.  Opp. at 29-30.  But as shown in the opening brief, and not disputed by Plaintiffs, neither the CFTC nor the NFA claimed that Lande engaged in any wrongdoing or attempted to mislead investors with respect to the Effex relationship.

2, 2013) (a contract was within the "core operations" of the defendant when it accounted for 18% of defendant's projected 2012 revenues).[14]

## IV.   PLAINTIFFS' OPPOSITION DOES NOT DEMONSTRATE THE EXISTENCE OF CONTROL-PERSON LIABILITY AGAINST ANY OF THE INDIVIDUAL DEFENDANTS

Plaintiffs concede that in order for their Section 20(a) claims to survive they must allege both a primary violation by the controlled person, control of the primary violator by the Individual Defendants, and that the control person was a culpable participant in the fraud perpetrated by the controlled person.  *See* Opp. at 32; *see also SEC v. First Jersey Sec., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996).[15]   Putting aside the fact that the Complaint does not adequately plead a primary violation of Section 10(b) for the reasons stated above and in the opening brief, Plaintiffs' Section 20(a) claims as to all of the Individual Defendants also fail because the Complaint does not adequately allege control or culpable participation.

### A.   Neither The Complaint Nor The Opposition Reveal That The Individual Defendants Are Control Persons

Contrary to Plaintiffs' assertions in their Opposition, the Complaint does not "exhaustively detail[]" the Non-10(b) Individual Defendants' participation in the management of FXCM.   Opp. at 33.   Indeed, the only allegations Plaintiffs point to in their Complaint to substantiate allegations of control on the part of the Non-10(b) Individual Defendants are

---

[14]   In their Opposition Plaintiffs do not seek to establish scienter based on the Company's supposed violations of GAAP.  But to the extent Plaintiffs seek to make such argument, it fails for the reasons discussed in Defendants' opening brief.  *See* Mot. at 38-39.

[15]   Plaintiffs' argument that their Section 20(a) claims are more appropriately decided at summary judgment is also incorrect.  Courts in this district, including this Court, have routinely dismissed Section 20(a) claims at the motion to dismiss stage where the allegations are as flimsy as the ones presented here.  *See, e.g.*, *In re Lihua Int'l, Inc. Sec. Litig.*, No. 14-cv-5037, 2016 WL 1312104, at *18 (S.D.N.Y. Mar. 31, 2016) (Abrams J.); *In re Alstom SA*, 406 F. Supp. 2d 433 (S.D.N.Y. 2005); *In re Braskem S.A. Sec. Litig.*, 246 F. Supp. 3d 731, 771 (S.D.N.Y. 2017).

paragraphs listing the signatories to various SEC filings, and paragraphs describing statements made on FXCM's website that are *not* attributed to any Individual Defendant. *Id.*

It is true that certain Non-10(b) Individual Defendants did sign certain 10-Ks, and that Sassoon signed various proxy statements. Defendants acknowledged as much in their opening brief. *See* Mot. at 42. But Plaintiffs' allegations are not limited to these public filings, and Plaintiffs fail to explain how the Non-10(b) Individual Defendants exercised "control" as to SEC filings they did *not* sign. *See, e.g.*, *Braskem*, 246 F. Supp. 3d at 771-72 (finding plaintiffs sufficiently alleged control as to 20-Fs the defendant had signed, but dismissing Section 20(a) claims as to 6-K filings he did not sign in the absence of concrete allegations as to his responsibility for, or actions with respect to those filings). Other than their job titles, which are not a sufficient basis to allege control, Plaintiffs provide no concrete allegations regarding the Non-10(b) Individual Defendants' connection to, or responsibility for, those filings they did not sign. *See id.* (dismissing Section 20(a) claim where except for conclusory allegations "that the company's executive board members were responsible for all necessary corporate functions, including public filings" because there were "no concrete allegations as to [defendant's] activities in connection with, or responsibility for such filings").

In their Opposition, Plaintiffs also fail to address the absence of any allegation in the Complaint that would justify a finding that Janet Lester and Ornit Niv, who did not sign *any* SEC filing at issue, should be considered "control" persons for purposes of a Section 20(a) claim. Nor does the Opposition even address the fact that there is no credible basis to hold the Individual Defendants liable for statements that took place *before* they joined, or *after* they left, FXCM. *Maverick Fund, L.D.C. v. Comverse Tech.*, Inc., 801 F. Supp. 2d 41, 61 (E.D.N.Y. 2011); *Bruce v. Suntech Power Holdings Co. Ltd.*, No. 12-cv-04061, 2013 WL 6843610, at *8 (N.D. Cal. Dec.

26, 2013).  And since, as described above, FXCM's pay-for-flow arrangement with Effex ended in 2014, Plaintiffs cannot credibly assert Section 20(a) claims against the Individual Defendants for any supposed misstatements *after* that date.

### B. Neither The Complaint Nor The Opposition Reveal Culpable Participation By The Individual Defendants

Plaintiffs' Opposition applies the incorrect standard to the culpable participation inquiry. The question is not whether the Individual Defendants had "power and influence," but whether Plaintiffs have alleged particularized facts demonstrating "conscious misbehavior or recklessness." *Special Situations Fund III QP, L.P. v. Deloitte Touch Tohmatsu CPA, Ltd.*, 33 F. Supp. 3d 401, 438 (S.D.N.Y. 2014).  Plaintiffs have failed to do so here, at least with respect to any of the Non-10(b) Individual Defendants.[16]

In fact, as to the vast majority of the Non-10(b) Individual Defendants, the only allegation of culpable participation to which Plaintiffs point in their Opposition is that they signed certain SEC filings.  *See* Opp. at 35.  But merely alleging a defendant's signature on an SEC filing is not enough to allege culpable participation.  *See, e.g.*, *In re Livent, Inc. Sec. Litig.*, 148 F. Supp. 2d 331 (S.D.N.Y. 2001) (dismissing Section 20(a) claims against director defendants who signed SEC filings based on the failure to allege culpable participation); *In re Alstom SA*, 406 F. Supp. 2d 433, 501 (S.D.N.Y. 2005) (finding that a CFO who signed financial

---

[16]  Plaintiffs' argument that their culpable participation allegations should be evaluated under the more lenient Rule 8 standard should be disregarded.  This Court, and a number of others in this district, have found that plaintiffs must "plead culpable participation with the same particularity [with which] they must plead scienter under the PSLRA."  *Lihua Int'l*, 2016 WL 1312104, at *18; *see also Lapin v. Goldman Sachs Grp., Inc.*, 506 F. Supp. 2d 221, 244-49 (S.D.N.Y. 2006) (agreeing "with the line of cases that applies Second Circuit precedent to hold that 'culpable participation' is a pleading requirement to state a section 20(a) claim, and that it must be plead *[sic]* with the same particularity as scienter under section 10(b)").

statements was a control person, but dismissing Section 20(a) claim based on plaintiffs' failure to allege culpable participation).[17]

And Plaintiffs' attempts to defend their culpable participation allegations as to Lester and Ornit Niv—who did not sign *any* SEC filings—are comical.  Opp. at 34-35.  Not only do Defendants dispute the characterization of Lester's statements to the NFA as misleading, but Plaintiffs fail to explain how a *post hac* statement to the NFA demonstrates culpable participation in the alleged scheme itself.  Moreover, Plaintiffs' conclusory allegation that Ornit Niv was "intimately knowledgeable with respect to the marketing materials published by the Company and facilitated the misstatements set forth therein" (Opp. at 34-35) is belied by their citation to their own Complaint, which contains no such allegation.

## <u>CONCLUSION</u>

For all the foregoing reasons, the Defendants respectfully request that the Court grant their motion to strike and dismiss Plaintiffs' Complaint in its entirety.

---

[17]  The cases cited by Plaintiffs are not on point.  In *Menaldi v. Och-Ziff Capital Management Group LLC*, 164 F. Supp. 3d 568, 587 (S.D.N.Y. 2016), the plaintiffs alleged that the Section 20(a) defendants had actual knowledge of the SEC-DOJ investigation that was the subject of the representations, and the plaintiffs had alleged a Section 10(b) claim against one of those defendants.  *In re BioScrip, Inc. Sec. Litig.*, 95 F. Supp. 3d 711, 741-42 (S.D.N.Y. 2015) applies a much more lenient approach to culpable participation than this Court has previously applied.  And the court in *In re WorldCom, Inc. Securities Litigation*, 294 F. Supp. 2d 392, 419-20 (S.D.N.Y. 2003), did not perform a culpable participation analysis.

KING & SPALDING LLP

*/s/ Israel Dahan*
Israel Dahan
Peter Isajiw
Chelsea Corey
Evan C. Ennis
1185 Avenue of the Americas
New York, NY 10036
Tel: (212) 556-2100
Fax: (212) 556.2200
idahan@kslaw.com

*Attorneys for Defendants Global Brokerage, Inc. f/k/a FXCM Inc., Dror Niv, William Ahdout, David Sakhai, Eduard Yusupov, Janelle G. Lester, Robert Lande, Ornit Niv, Nicola Santoro, Jr., Margaret Deverell, David S. Sassoon, Kenneth Grossman, James Brown, Ryan Silverman, Arthur Gruen, Robin E. Davis, Eric LeGoff, and Bryan Reyhani*

## CERTIFICATE OF SERVICE

I hereby certify that, on October 18, 2017, the foregoing *Reply Memorandum of Law In Further Support of Defendants' Motion to Strike and Dismiss Plaintiffs' Consolidated Class Action Complaint* was electronically delivered to all counsel of record via the Southern District of New York's CM/ECF system.

*/s/ Israel Dahan*