# Exhibit O

I31JGLOM                          Motions

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    IN RE:  GLOBAL BROKERAGE, INC.
     f/k/a FXCM, Inc. SECURITIES LITIGATION  17 Civ. 916  RA
4                                            17 Civ. 955  RA
                                             17 Civ. 1028 RA
5                                            17 Civ. 2506 RA

6    ------------------------------x

7

8

9                                            March 1, 2018
                                             11:07 a.m.
10

11

12   Before:

13                        HON. RONNIE ABRAMS,

14                                            District Judge

15

16                        APPEARANCES

17

18   THE ROSEN LAW FIRM,
          Attorneys for plaintiffs
19   BY:  PHILLIP KIM, Esq.
          JOSH BAKER, Esq.
20               Of counsel

21

22   KING & SPALDING,
          Attorneys for defendants
23   BY:  PAUL R. BESSETTE, Esq.
          ISRAEL DAHAN, Esq.
24               Of counsel

25

```
 1              (In open court)

 2              (case called)

 3          THE COURT:  Good morning.  I scheduled today's

 4   conference to discuss defendants' motion to dismiss and the

 5   motion to strike.  Defendants requested oral argument.  I do

 6   believe that I have enough information at this point to rule,

 7   but that being said, I am happy to hear either or both of you

 8   out and can keep an open mind.  If you would like to be heard,

 9   I am happy to hear you.

10          MR. BESSETTE:  Thank you, your Honor.  Would you

11   rather I speak from counsel table or the podium?

12          THE COURT:  Whatever your preference is.  Just speak

13   into the microphone, please.  Thank you.

14          MR. BESSETTE:  I'll be brief since you said you fully

15   have taken a look at the issues.  I just want to underscore

16   that the motion to strike, it is not clearcut based on the case

17   law in this circuit.  We had Lipsky on one side --

18          THE COURT:  And there is a split in the district.

19          MR. BESSETTE:  There is.  The most important, the

20   crucial point I think to be made here is that none of the

21   plaintiffs' cases, OSC, any of the others they've cited, allow

22   the wholesale cutting and pasting of another no-admit, no-deny

23   settlement or other complaints.

24              At most both Gilbert and some of the district court

25   cases from Gilbert say, sometimes bolstering allegations for
```

1    scienter or knowledge or some other aspect, it may be

2    appropriate to cite those, but no case in this district or in

3    the Second Circuit allows what plaintiffs are trying to do,

4    which is the wholesale cutting and pasting of another

5    settlement into this case.

6            THE COURT:  Let me ask you a question.  Is the real

7    problem with this complaint from your perspective really a

8    problem with 12 (b)(6), in the sense is it the cutting and

9    pasting, or is it the fact they haven't added particularized

10   facts they need to include?

11           MR. BESSETTE:  I think that is an excellent.  It is

12   really both.  As Judge Torres noted in the Deutsche Bank case,

13   if you don't particularize the allegations especially for

14   securities fraud, unlike the no-admit, no-deny settlements with

15   the regulators and complaints which are consumer facing, not

16   investor actions under 10b-5 governed by PSLRA, you can't

17   block-quote a bunch of statements and give the block, the

18   notation on for every block of false and misleading statements

19   they're false and misleading for the same reasons.

20           You can see that very easily, and we underscored this

21   in the brief and it brings the point home that, for example, in

22   some of the block-quotes, plaintiffs say well, there are false

23   and misleading statements in the 2011 10-Ks, 2012 10-Qs and

24   10-K, and the 2013 10-Qs for the first two quarters, and those

25   are false and misleading because of statements Mr. Niv made

 1     after, in October 2013.  That shows you the reason you can't

 2     have these block-quotes in a style in which plaintiffs have

 3     done, and they haven't done any additional work beyond what is

 4     in those settlements, and that is why it is a 12 (b)(6) PSLRA

 5     problem.

 6                 THE COURT:  Thank you.

 7                 Would you like to be heard, Mr. Kim.

 8                 MR. KIM:  Yes, your Honor, just briefly to address

 9     some of the arguments Mr. Bessette had made.

10                 I think the issue of whether a securities fraud

11     complaint can contain the allegations here of the regulatory

12     complaint, I believe if you look at the Lipsky case and make a

13     close reading of the Lipsky case, it makes clear it is limited

14     to the facts of that case.

15                 In that case, what happened was there was an SEC

16     complaint that involved a different registration statement that

17     was then the one that was at issue.  The court there affirmed

18     the striking of that complaint because it was immaterial, and

19     because that SEC complaint had nothing to do with the

20     registration statement at issue, and that as a result, it

21     shouldn't be considered.

22                 That is a similar reading that Judge Cote had in the

23     VNB Realty case and Bank of America.  In that case, she says

24     the issue isn't really -- the way she read that case is the

25     limited reading of that case, not the broad application of it.

1    She did credit the allegations in a related complaint and then

2    looked at it whether or not it met the PSLRA requirement.

3          What is different in this case is this isn't just a

4    regulatory action where someone got a slap on the wrist.  I

5    have seen a lot of consent order settlements that are very

6    vague, that say this person violated some various regulatory

7    rules and, as a result, we're punishing them.

8          This has specific findings of fact, and if you look at

9    the Rule 11 cases, the K-1 case that talks about whether you

10   can rely on an SEC complaint or regulatory action, logically it

11   makes sense that you can because the fact that FXCM set up

12   Effex Capital, gave them a $2 million interest-free loan, that

13   is a fact that will be admissible at some point, right?

14         It is not a fact that is going to be inadmissible

15   later on.  That is a fact that if the New York Times had

16   written an article, if they had written an article and said we

17   looked into FXCM and this is what we found, we found they set

18   up Effex Capital, which turned out to be a sham, that Effex

19   Capital was set up by FXCM, there were secret commissions, that

20   Effex Capital received favorable treatment, and that FXCM was

21   driving the trading volume up to 50 percent of the trading

22   volume to Effex Capital, an entity that they had a 70 percent

23   interest insofar as they got 70 percent of the profits of FXCM.

24         So the notion that, you know, the notion that now FXCM

25   didn't control Effex Capital or that they were unknowing of the

1     wrongful conduct is just not plausible on the facts.  I think

2     the crux of their argument is well, you can't consider it, but

3     I don't think any of the cases cited on the 12 (f) issue take

4     the position that you shouldn't look at the underlying either

5     complaint, the underlying findings of fact to determine on a

6     case-by-case basis, to determine whether the court would credit

7     such allegations.

8             The Second Circuit said that in this case, with these

9     facts, you know, they're going to be stricken, not that in

10    every case.  I would say in this case, this is a situation

11    where this is a very serious fraud.  Let's not forget as a

12    result of these penalties, these people agreed to never work in

13    the industry again, and then this company agreed as a part of a

14    resolution, and with findings of fact, that they would no

15    longer operate in the United States.

16            When the information hit the market, the stock went

17    down 50 percent.  This is not some sort of a little regulatory

18    issue that we're trying to trump up into a securities fraud.

19    This is a very serious fraud.  It appears from the regulatory

20    material that the NFA and CFTC was investigating for a long

21    time.  The findings of fact indicate there was evidence they

22    cite, they cite e-mails, and if you look at some of the

23    language in the cases that reject pleadings, they always say

24    something we shouldn't consider a complaint at the preliminary

25    stages.

1            From what I can tell and from these orders, it was

2     clear that the CFT and NFA conducted extensive discovery.  We

3     allege in the complaint there are examinations in 2013, they

4     were asking questions about this for years, and it wasn't until

5     the end of the class period when this information came out.

6            One other thing to put Lipsky in context, that was

7     from 1977.  That was not a PSLRA case.  That is not a case here

8     where discovery is stayed, arguably back then they could have

9     conducted discovery.  It would have been a little suspicious

10    that they would talk about a registration statement that wasn't

11    even the one at issue, and presumably they had the tools at

12    hand to conduct discovery.  It would have been fair for a court

13    to say that is immaterial.  We don't have that situation here.

14    I don't think in a PSLRA case where discovery is stayed, you

15    know, the defendants can have it both ways.

16            Unless the court has any other questions?

17            THE COURT:  Just one question that is not related to

18    what we were just talking about.  Do you concede the

19    relationship between Effex and FXCM, whatever the nature of

20    that relationship, ended in 2014?

21            MR. KIM:  Well, I concede that the defendants contend

22    that they canceled this contract which we claim was part of the

23    sham transaction.  I think the NFA says something like we

24    believe this continued through at least 2014.

25            In the complaint, we say we believe it continued

through 2016, but clearly if you take a fair look at the
complaint, most of the facts that we have of particularity deal
with conduct from 2014 and before.

THE COURT:  All right.  Thank you very much.

Nothing that has been said today changes my view in
terms of the complaint and the motion to dismiss.  The parties
are both familiar with the consolidated class action complaint
and the facts alleged therein, so I am not going to recite them
here on the record.  In the interest of moving the case along
quickly, I am going to jump into the legal issues and I am
going to rule orally today.  I encourage you all to obtain a
transcript of today's ruling.

For the reasons that I will explain, I am denying
defendants' motion to strike, and I am granting defendants'
motion to dismiss, but I am going to do so without prejudice
and I am going to grant plaintiffs' leave to amend.  When they
do so, plaintiffs should carefully consider defendants'
arguments in this oral ruling and respond appropriately in
their proposed amended complaint or their amended complaint, as
I'm authorizing them to file one, if they have a good-faith
basis for doing so.

As the parties are aware, claims under Section 10(b)
of the Exchange Act must meet the requirements of Rule 9(b) of
the Federal Rules of Civil Procedure and of the Private
Securities Litigation Reform Act (PSLRA), 15 U.S.C. Section

I31JGLOM                         Motions

1    78u-4(b).  Rule 9(b) requires a plaintiff to, among other

2    things, specify the statements that the plaintiff contends were

3    fraudulent and explain why the statements were fraudulent.

4          ATSI Communications, Incorporated 493 F.3d at 99.  The

5    PSLRA similarly requires a plaintiff specify each statement

6    alleged to have been misleading and the reason or reasons why

7    the statement is misleading.  That is from Section 78u-4(b)(1).

8          To state a claim under Section 10(b), Rule 10b-5, and

9    Section 20 (a), plaintiffs must allege the defendants:

10         One, made misrepresentations or omissions of material

11   fact;

12         Two, with scienter;

13         Three, in connection with the purchase or sale of the

14   securities;

15         Four, upon which plaintiffs relied; and

16         Five, that the plaintiffs' reliance was the proximate

17   cause of their injuries.  ATSI, 493 F.3d at 105.

18         First I'll briefly address defendants' motion to

19   strike all the allegations drawn from the unadjudicated CFTC

20   ordered and NFA complaint.

21         As the parties recognize and as we discussed this

22   morning, there is a split within this district as to how to

23   interpret the Second Circuit's Lipsky case.  That is 551 F.2d

24   887.  I reviewed the relevant cases, and I am most persuaded by

25   the judges who have adopted a narrower reading of Lipsky.  In

particular, I found particularly persuasive Judge Cote's

reading of Lipsky in the VNB Realty case, 2003 WestLaw 5179197,

with which Judge Torres also agreed in the Deutsche Bank case,

2017 WestLaw 4049253.

As Judge Cote explained, Lipsky does not create a per

se rule that all excerpts from unadjudicated consent orders and

complaints must stricken.  Rather, the question should be, as

always, whether Rule 12(f) applies.  That rule permits striking

a complaint only of redundant, immaterial, impertinent or

scandalous matters, and as the Circuit explained in Lipsky,

motions to strike should be denied unless it can be shown that

no evidence in support of the allegation would be admissible

and there is a strong reason to strike the complaint.

Although the consent order and complaint on which

plaintiffs rely here may not be admissible evidence themselves,

at this stage I agree with plaintiffs that they need only

allege facts that, upon their information and belief, will

likely lead to admissible evidence in discovery.  See in re:

OSC Securities Litigation, 12 F.Supp.3d at 622.  If plaintiffs

uncovered evidence of their allegations through discovery, that

evidence would likely be material and relevant.  Thus,

defendants have failed to show there is a strong reason to

strike the complaint, and I am denying their motion.

I'll note, however, that fraud allegations can be made

upon information and belief only where the matters alleged are

I31JGLOM                    Motions

1    peculiarly within the opposing party's knowledge and plaintiffs

2    state with particularity all facts on which that belief is

3    formed, as they're required to do under 15 U.S.C. Section

4    78u-4(b)(1).  See the Loreley case, 797 F.3d, at 180.

5           Plaintiffs certainly could do a better job in their

6    complaint of stating with particularity all facts on which

7    their information and belief is founded and is stating the

8    basis or fair view the information is peculiarly within the

9    defendants' knowledge.  If plaintiffs fail to substantiate

10   their allegations with specific facts as necessary under the

11   PSLRA Rule 9, however, that will be a problem under Rule

12   12(b)(6) and not under 12(f).  Plaintiffs will have an

13   opportunity to provide more detailed allegations, to the extent

14   that they can do so, in good faith because I am granting

15   defendants' motion to dismiss without prejudice, for the

16   reasons I'll now explain.

17          Before I turn to the substance of defendants' motion

18   to dismiss, I'll briefly address the parties' disputes over

19   what external materials are appropriate for me to consider at

20   this stage.  Even on a motion to dismiss, the court may

21   consider any written instrument attached to the complaint,

22   statements or documents incorporated into the complaint by

23   reference, legally required public disclosure documents filed

24   with the SEC, and documents possessed by or known to the

25   plaintiff and upon which it relied in bringing this suit.

I31JGLOM                        Motions

1    That's from ATSI Communications, 493 F.3d at 98.

2              Accordingly, I am taking judicial notice of the

3    existence and internal contents of all publicly available,

4    legally required SEC filings that the parties have submitted.

5    I am denying, however, defendants' request to take judicial

6    notice of the various other documents they attach to their

7    motion papers.  I am doing so without prejudice for now,

8    because none of the documents are necessary to my decision

9    today.

10             Because I am not considering the exhibits that are not

11   SEC filings for now, I am denying plaintiffs' request to file a

12   sur-reply to respond to those documents.

13             In defendants' motion, they argue that the complaint

14   must be dismissed under Rule 12(b)(6) on the basis plaintiffs

15   have failed to plead with sufficient facts, failed to plead

16   sufficient facts to state a claim under Rule 10b-5, and Section

17   20(a).

18             As for defendants' 10b-5 arguments, they first argue

19   that plaintiffs have failed to satisfy the PSLRA and Rule

20   9(b)'s heightened pleading requirements for identifying and

21   explaining the allegedly fraudulent statements.  In particular,

22   defendants note how the complaint uses long block-quotes from

23   the relevant filings and then simply repeats an identical

24   explanation for why those long excerpts are fraudulent or

25   misleading.

1          I agree with defendants on this point.  The Second

2     Circuit has repeatedly stated that plaintiffs must demonstrate

3     with specificity why and how individual statements are false.

4     Simply stating that they're false is not enough.  See the

5     Rombach case, 355 F.3d at 174.

6          Similarly, this Court should not have to search the

7     long quotations in the complaint for particular false

8     statements and then determine on its own initiative how and why

9     the statements were false and how other facts might show a

10    strong inference of scienter.  That is a quote from the Boca

11    Raton Firefighters case, 506 Fed.App'x at 38.

12         Yet that is exactly what the complaint here requires.

13    Plaintiffs' block-quote long statements from the FXCM's SEC

14    filings throughout their complaint.  And then plaintiffs

15    explain why those block-quoted statements are false with the

16    same paragraph listing the same four reasons for every set of

17    statements despite the fact that those statements vary,

18    sometimes slightly and sometimes significantly from filing to

19    filing.

20         Indeed, an identical paragraph with those purported

21    reasons is pasted in 12 places in the complaint.  Paragraphs

22    126; 136; 146; 153; 163; 174; 189; 200; 209; 220; 229; and 242.

23         The four reasons listed in those paragraphs are as

24    follows:

25         One, from September 4th, 2019 through at least 2016,

I31JGLOM                    Motions

1   FXCM engaged in false and misleading solicitations of its

2   retail foreign exchange customers by concealing its

3   relationship with its most important market-maker, Effex, and

4   by misrepresenting that its NDD platform had no conflicts of

5   interest with its customers;

6          Two, FXCM was earning illicit profits on its NDD

7   platform, as it was on both sides of its customers' trades

8   through its arrangements with Effex, in direct contravention to

9   its stated core business;

10          Three, FXCM and defendant made false statements to NFA

11   about the company's relationship with Effex;

12          Four, as a result, defendants' statements about FXCM's

13   business operations and prospects were materially false and

14   misleading and/or lacked a reasonable basis at all relevant

15   times.

16          The same four reasons are also listed as explanations

17   for why defendants' Sarbanes Oxley certifications are false and

18   misleading in 13 other places, with just one additional

19   purported reason, which was that, "the accompanying financial

20   statements were false as they failed to consolidate Effex and

21   failed to disclose material related-party transactions

22   involving Effex."

23          These four or five -- and I am referring to these as

24   explanations of falsity -- are applied indiscriminately to a

25   wide range of different types of statements.  Yet the

I31JGLOM                    Motions

1    explanations fail to actually explain why many of those types

2    of statements are false.

3         For example, plaintiffs repeatedly cite as fraudulent

4    SEC filings where FXCM states the percentage of its total net

5    revenues or total trading revenues that its retail trading

6    segment accounted for, but it is unclear from the complaint why

7    plaintiffs are saying that those statements are false and

8    misleading.  I can't tell whether plaintiffs are contesting the

9    precise percentage quoted, let alone why plaintiffs believe

10   that any such misstatement was material or why they believe

11   there was scienter as to those particular statements.  If

12   plaintiffs are complaining only about the emphasis defendants

13   placed on the importance of the retail trading revenue, then

14   they still have not explained with particularity why that was a

15   misrepresentation.

16        Similarly, plaintiffs completely fail to explain in

17   their complaint, as opposed to in their papers responding to

18   defendants' motion to dismiss, why defendants' statements of

19   their belief that their agency model aligns their interests

20   with those of their customers was materially false or

21   misleading to investors.

22        Plaintiffs concede in their papers that if this is a

23   statement of opinion, plaintiffs must plead the defendants did

24   not actually hold that belief to plead its falsity, but nowhere

25   in the complaint do they actually make such allegations.

1       There are many other examples of statements listed or

2   block-quoted as misleading or false, with no particularized

3   explanation.  Some of those statements change slightly but

4   perhaps materially from section-to-section in the complaint

5   compared just, for example, the block-quoted text in Paragraphs

6   152 and 162, for example, but there is no explanation of how or

7   why these differences might matter.

8       There are other parts of the complaint that similarly

9   failed to meet the heightened pleading standard, and I am not

10  going to go through all of these problems now.

11      In short, plaintiff cannot circumvent Rule 9 and the

12  PSLRA simply by, "Employing the same conclusory formula

13  multiple separate times to cover all of the allegedly material

14  misrepresentations" a quote from the Deutsche Bank case, 2017

15  WestLaw 4049253.

16      Plaintiffs complaint, thus, "does not comport with our

17  exhortation that plaintiffs must demonstrate with specificity

18  why and how each statement is materially false or misleading.

19  Boca Raton Firefighters, 506 Fed.App'x at 37-38.

20      And if plaintiffs seek to allege certain material

21  omissions, they must allege a duty to disclose particular

22  facts.  See In re Lululemon Securities Litigation, 14 F.Supp.

23  3d at 572.  Moreover, even if I were to consider the four or

24  five reasons cited by plaintiffs, those reasons are extremely

25  conclusory and at times have no conceivable relation to the

 1    statements they purport to explain.

 2            For example, it is unclear to me why FXCM and

 3    Defendant Niv's allegedly false statement to the NFA about the

 4    company's relationship with Effex could explain why FXCM's

 5    other statements in its SEC filings were false.  The

 6    plaintiffs' generalized explanation all of defendants'

 7    statements about FXCM's business operations and prospects were

 8    materially false and misleading and/or lacked a reasonable

 9    basis at all relevant times because of the allegedly sham

10    relationship between FXCM and Effex is far from the level of

11    specificity required by Rule 9 and the PSLRA.

12            To survive a motion to dismiss under these standards,

13    plaintiffs need to make it clear what exactly they're saying

14    was false and misleading and they need to allege specific facts

15    demonstrating that falsity.  The conclusory and circular

16    reasoning currently in the complaint falls well short of that

17    standard.

18            Furthermore, plaintiffs must allege facts allowing

19    this Court to conclude that the statements were false at the

20    time that they were made.  See in re:  Lululemon Securities

21    Litigation, 14 F.Supp.3d at 571.  If the plaintiffs amend their

22    complaint, they should be sure to specifically allege the time

23    period during which they say defendants had the allegedly

24    improper relationship with Effex and to state the facts upon

25    which they base those allegations.

1         Defendants also argue that plaintiffs have failed to

2    allege scienter with particularity.  For the reasons I've

3    already said, it is difficult to allege scienter with

4    particularity when the fraudulent misstatements or omissions

5    have not been identified or explained with particularity, but

6    even as to the statements which plaintiffs have arguably

7    identified and explained sufficiently, they must do more to

8    properly plead scienter.

9         Generally speaking, plaintiffs can allege scienter by

10   establishing motive and opportunity or by demonstrating the

11   strong circumstantial evidence of conscious misbehavior or

12   recklessness.  See the ECA case, 553 F.3d at 198.  In their

13   papers, plaintiffs seem to concede that they have not alleged

14   motive and opportunity, but rather focus on the individual

15   defendants' access to information about the alleged true nature

16   of the relationship between FXCM and Effex Capital and alleged

17   attempts to cover up the purported relationship.  When

18   plaintiffs rely on the "strong circumstantial evidence" test

19   without alleging motive, the strength of the circumstantial

20   allegations must be correspondingly greater.  That is a quote

21   from the ECA case, 553 F.3d at 198.

22        To allege fraudulent intent under plaintiffs' theory,

23   plaintiffs must do more than allege the individual defendants

24   were aware of the order-flow arrangement with Effex.  Plaintiff

25   must allege sufficient facts as to each defendant to make it

I31JGLOM                        Motions

1    cogent and at least as compelling as any opposing inference

2    that the defendants' statements, whatever they were, were made

3    with fraudulent intent.  Part of that was a quote from the

4    Tellabs case, 551 U.S. at 314.

5         I am not persuaded at this point plaintiffs have met

6    the pleading requirement.  When plaintiffs amend their

7    complaint, they should clarify exactly what facts form their

8    basis for believing each defendant was not acting on a

9    good-faith basis and their attempts to preserve corporate

10   formalities between Effex and FXCM were legally and financially

11   sufficient to avoid fraudulent statements.  Plaintiffs must

12   also focus on why there was intent to defraud investors as

13   opposed to customers.

14        Now I'll turn to plaintiffs' Section 20(a) claims

15   against the individual defendants.  Although I can dismiss this

16   claim on the same grounds that I've articulated already, I am

17   going to further advise plaintiffs that as I explained in the

18   Lihua International Securities Litigation, 2016 WestLaw

19   1312104, plaintiffs must plead culpable participation by each

20   of the individual defendants with particularity in order to

21   state a claim under Section 20(a).

22        Thus, plaintiffs must do more than simply state, as

23   they have done in the current complaint, each of the

24   individuals was aware of or recklessly disregarded the fact

25   that the false and misleading statements were being issued

I31JGLOM                    Motions

 1  concerning the company.  Rather, plaintiffs must allege facts

 2  sporting a strong inference of scienter for each particular

 3  alleged misrepresentation.  They have not done so in the

 4  current version of the complaint.  This, therefore, is an

 5  alternative ground for dismissing the 20(a) claims without

 6  prejudice.

 7          Look, I can imagine ways in which some of the

 8  statements buried in the block-quotes from defendants' annual

 9  reports may be actionable, but plaintiffs need to tease apart

10  the statements in the various filings, organize them in a

11  useful way, and explain why and how exactly each particular

12  statement or category of statements was fraudulent.  And then

13  they need to provide specific facts supporting a strong

14  inference of scienter for those statements.

15          To the extent the plaintiffs are relying on

16  information and belief as they seek discovery of admissible

17  evidence going forward, they must also state with particularity

18  the facts on which they are basing their information and belief

19  as well as the basis for their view that the knowledge they

20  seek is particularly within defendants' possession.

21          For these reasons, I am denying the motion to strike.

22  I am granting the motion to dismiss with prejudice.  I am also

23  denying plaintiffs' request to file a sur-reply.  I'll allow

24  plaintiffs to amend their complaint, and I hope that they take

25  the opportunity to respond in good faith to the arguments

I31JGLOM                    Motions

 1  defendants have already raised as well as the points that I've

 2  made in this ruling.

 3          How much time do you think you need?

 4          MR. KIM:  35 days, your Honor, just so that we can get

 5  the transcript and parse through the decision.

 6          THE COURT:  That is fine.  I want to say April 6th.

 7          MR. KIM:  That works.

 8          THE COURT:  If I said "with prejudice," I meant

 9  "without prejudice."  I think I was just looking at the

10  transcript.  I think I misspoke.  It is clearly without

11  prejudice because I am granting leave to amend.  You will have

12  until April 6th to file your amended complaint, and how long

13  would defendants like to respond?

14          MR. BESSETTE:  If we can have 30 days, your Honor?

15          THE COURT:  That is fine.  So why don't we say May 7th

16  is the Monday, so why don't we say May 7th for a responsive

17  pleading.  Is there a need for a red-line version of the

18  amended complaint from defendants' perspective?

19          Is that not necessary?

20          MR. DAHAN:  Your Honor, if it is going to be a

21  wholesale rewrite, probably not.  I am sure we can figure it

22  out.

23          THE COURT:  Why don't we figure it out.  Assume we'll

24  get the amended complaint by April 6th, have responsive

25  pleading by May 7th, and to the extent you feel it is

1    necessary, you'll let me know.  All right.  Are there any

2    applications at this time?

3              MR. KIM:  Not from plaintiff, your Honor.

4              MR. BESSETTE:  No, your Honor.

5              THE COURT:  All right.  Thanks.  Have a nice

6    afternoon, all.

7              (Court adjourned)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25