# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM, Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA |

Master File No. 1:17-cv-00916-RA

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED CONSOLIDATED SECURITIES CLASS ACTION COMPLAINT**

CLASS ACTION

ORAL ARGUMENT REQUESTED

This Document Relates To:  All Actions

Paul R. Bessette
Israel Dahan
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036-2601
Tel:  (212) 556.2100
Fax: (212) 556.2200

Rebecca Matsumura, *pro hac vice*
KING & SPALDING LLP
500 W. 2nd Street Suite 1800
Austin, Texas 78701
Tel: (512) 457.2000
Fax: (512) 457.2100

*Attorneys for Defendants Global Brokerage, Inc. f/k/a/ FXCM, Inc., Dror Niv, William Ahdout and Robert Lande*

## <u>TABLE OF CONTENTS</u>

ARGUMENT ................................................................................................................................1

I.     Plaintiffs' Opposition Confirms The Lack Of Any Materially False Or Misleading Statement Of Fact Or Omission By Defendants ....................................................................1

       A.     Defendants' Challenged Opinions Concerning The Company's Agency-Trading Model Are Not Actionable Misstatements ................................................1

       B.     There Were No Secret Profit-Sharing Payments Between Effex And FXCM ........................................................................................................................2

       C.     No "Objective Facts" Support a GAAP Violation By FXCM .............................5

       D.     FXCM Had No Duty to Disclose Regulatory Investigations ...............................9

II.    Plaintiffs' Opposition Confirms The Lack Of Scienter By Defendants ..........................10

III.   Plaintiffs' Opposition Confirms The Absence Of  Loss Causation ..................................13

CONCLUSION ........................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*60223 Tr. v. Goldman, Sachs & Co.*,
  540 F. Supp. 2d 449 (S.D.N.Y. 2007)........................................................................................14

*Aldridge v. A.T. Cross Corp.*,
  284 F.3d 72 (1st Cir. 2002)........................................................................................................7

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
  693 F. Supp. 2d 241 (S.D.N.Y. 2010).........................................................................................8

*Baena v. Woori Bank*,
  515 F. Supp. 2d 414 (S.D.N.Y. 2007).......................................................................................12

*Basic, Inc. v. Levinson*,
  485 U.S. 224 (1988)...................................................................................................................4

*In re Citigroup, Inc. Sec. Litig.*,
  330 F. Supp. 2d 367 (S.D.N.Y. 2004).......................................................................................10

*City of Pontiac Policemen's and Fireman's Ret. Sys. v. UBS AG*,
  752 F.3d (2d Cir. 2014)........................................................................................................9, 12

*In re Deutsche Bank Aktiengesellschaft Sec. Litig.*,
  No. 16 Civ. 3495 (AT), 2017 WL 4049253 (S.D.N.Y. June 28, 2017).....................................9

*ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*,
  553 F.3d 187 (2d Cir. 2009).........................................................................................11, 12, 13

*Employees' Ret. Sys. v. Embraer S.A.*,
  No. 16 CIV. 6277 (RMB), 2018 WL 1725574 (S.D.N.Y. Mar. 30, 2018)...............................12

*Faulkner v. Verizon Commc'ns., Inc.*,
  156 F. Supp. 2d 384 (S.D.N.Y. 2001).........................................................................................3

*Frederick v, Mechel OAO*,
  475 F. App'x 353 (2d Cir. 2012) ..............................................................................................13

*Furlong v. Long Is. Coll. Hosp.*,
  710 F.2d 922 (2d Cir. 1983)........................................................................................................3

*In re Galena Biopharma, Inc. Sec. Litig.*,
  117 F. Supp. 3d 1145 (D. Or. 2015) .........................................................................................12

*Harris v. AmTrust Fin. Servs., Inc.*,
  135 F. Supp. 3d 155 (S.D.N.Y. 2015)......................................................................................7

*Janbay v. Canadian Solar, Inc.*,
  No. 10 Civ. 4430(RWS), 2012 WL 1080306 (S.D.N.Y. Mar. 30, 2012) ...............................15

*Kalnit v. Eichler*,
  264 F.3d 131 (2d Cir. 2001)....................................................................................................12

*Kyrstek v. Ruby Tuesday, Inc.*,
  No. 3:14-cv-01119, 2016 WL 1274447 (M.D. Tenn. Mar. 31, 2016)......................................4

*In re LDK Solar Sec. Litig.*,
  584 F. Supp. 2d 1230 (N.D. Cal. 2008) ...............................................................................7, 8

*Lewy v. SkyPeople Fruit Juice, Inc.*,
  No. 11 CIV. 2700 PKC, 2012 WL 3957916 (S.D.N.Y. Sept. 10, 2012) ....................3, 5, 8, 11

*In re Lions Gate Entm't Corp. Sec. Litig.*,
  165 F. Supp. 3d 1 (S.D.N.Y. 2016).....................................................................................9, 10

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F. Supp. 3d 144 (S.D.N.Y. 2015)....................................................................................13

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
  797 F.3d 160 (2d Cir. 2015)....................................................................................................14

*Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*,
  277 F. Supp. 3d 500, 518–19 (S.D.N.Y. 2017).......................................................................12

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
  568 F. Supp. 2d 349 (S.D.N.Y. 2008).....................................................................................14

*Mineworkers' Pension Scheme v. First Solar Inc.*,
  881 F.3d 750 (9th Cir. 2018) ..................................................................................................15

*North Collier Fire Control & Rescue District Firefighter Pension Plan v. MDC Partners, Inc.*,
  No. 15 Civ. 6034 (RJS), 2016 WL 5794774 (S.D.N.Y. Sept. 30, 2016)...................................7

*Novak v. Kasaks*,
  216 F.3d 300 (2d Cir. 2000)......................................................................................................7

*Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*,
  135 S. Ct. 1318 (2015)...............................................................................................................2

*In re Paincare Holdings Sec. Litig.*,
  No. 6:06-cv-362-Orl-28DAB, 2007 WL 1229703 (M.D. Fla. April 25, 2007).........................3

*In re Refco, Inc. Sec. Litig.*,
   503 F. Supp. 2d 611 (S.D.N.Y. 2007)........................................................................6

*Rieckborn v. Jefferies LLC*,
   81 F. Supp. 3d 902 (N.D. Cal. 2015) ........................................................................4

*Schorr v. Dopico*,
   205 F. Supp. 3d 359 (S.D.N.Y. 2016)....................................................................3, 7

*Szulik v. Tagliaferri*,
   966 F. Supp. 2d 339 (S.D.N.Y. 2013)......................................................................12

*Vanleeuwen v. Keyuan Petrochems., Inc.*,
   No. 13 CIV. 6057 PAC, 2014 WL 3891351 (S.D.N.Y. Aug. 8, 2014) ....................6

*In re Wachovia Equity Sec. Litig.*,
   753,  F. Supp. 2d 326 (S.D.N.Y. 2011)....................................................................13

*In re Winstar Commc'ns*,
   No. 01 CV 3014(GBD), 01 CV 11522, 2006 WL 473885 (S.D.N.Y. Feb. 27,
   2006) .........................................................................................................................15

*Wyche v. Advanced Drainage Sys., Inc.*,
   No. 15 CIV. 5955 (KPF), 2017 WL 971805 (S.D.N.Y. Mar. 10, 2017) .................12

**Rules and Statutes**

17 C.F.R. § 5.10 ...............................................................................................................6

17 C.F.R. § 5.11 ...............................................................................................................6

Fed. R. Civ. P. 9(b) .........................................................................................................1

Private Securities Litigation Reform Act..............................................................1, 7, 12, 13

**Other Authorities**

Fin. Accounting Standards Bd., *FAS No. 57: Related Party Disclosures* (Mar.
   1982) ...........................................................................................................................8

Defendants FXCM, Niv, Ahdout, and Lande[1] submit this reply memorandum of law in further support of their motion to dismiss the SAC, and in response to Plaintiffs' Mem. of Law in Opp'n to Defs.' Mot. to Dismiss Pls.' Second Am. Consol. Sec. Class Action Compl., ECF No. 122 ("Opp'n" or "Opposition").   The Court gave Plaintiffs a second chance to allege non-conclusory facts supporting a claim for securities fraud against Defendants, and even gave specific guidance about the types of non-conclusory facts Plaintiffs would need to allege in order to overcome the fatal shortcomings of their prior complaint.    As described below, Plaintiffs have failed to meet that challenge and continue to rely on self-serving, wholly conclusory allegations and ignore or misstate facts that totally undermine their contention that Defendants committed securities fraud.  Accordingly, the Court should dismiss the SAC, with prejudice.

## ARGUMENT

I.     **Plaintiffs' Opposition Confirms The Lack Of Any Materially False Or Misleading Statement Of Fact Or Omission By Defendants**

Plaintiffs attempt to meet their heightened pleading burden under the PSLRA and Rule 9(b) by arguing that  Defendants (i) misled investors about FXCM's agency-trading model, (ii) lied about the "true" nature of its order-flow payments, (iii) violated GAAP, and (iv) failed to timely disclose the CFTC and NFA investigations.  Opp'n at 11–22.  As described below and in Defendants' opening brief, Defendants did not engage in any such wrongdoing or falsity.

A.     **Defendants' Challenged Opinions Concerning The Company's Agency-Trading Model Are Not Actionable Misstatements**

According to Plaintiffs, the "foremost falsehood" in FXCM's public filings is the characterization that its agency-trading model "would be free from conflicts of interest because FXCM would not have a financial interest in the opposing side of the trades."  Opp'n at 11–12.

---

[1]  Defined terms have the meaning ascribed to them in Defs.' Mem. of Law in Supp. of Defs.' Mot. to Dismiss the Second Am. Consol. Sec. Class Action Compl., ECF No. 118 ("Mot.").

But Plaintiffs' allegations are in fact contradicted by the actual text of the disclosures they allege to be false. FXCM never stated that its agency-trading model "would be free from conflicts of interest." Instead, FXCM stated the following opinion: FXCM "believe[s] that [the agency-trading model] aligns our interest with those of our customers and reduces our risks." SAC ¶ 146. FXCM believed in that opinion statement when made, and Plaintiffs have alleged no facts demonstrating otherwise. Nor do Plaintiffs direct the Court to a statement by FXCM that it would have no financial interest in its customers' trades — because FXCM made no such representation.

Not surprisingly, Plaintiffs ignore the fact that their central claim turns on a non-actionable statement of opinion. Indeed, nowhere in the Opposition do Plaintiffs address, let alone establish, that they have met *Omnicare*'s requirements to plead an actionable statement of opinion. Under *Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, an opinion statements if actionable only if: (1) "the speaker did not hold the belief she professed"; (2) "the supporting fact[s] supplied were untrue"; or (3) "the speaker omits information whose omission makes the opinion statement misleading to a reasonable investor." 135 S. Ct. 1318, 1326–27, 1332 (2015). Plaintiffs provide no factual support — *i .e.* documentary evidence or conflicting statements — demonstrating  that Niv, Ahdout, or Lande did *not* believe that FXCM's agency-trading model aligned its interests with those of its customers, or that they knew that there was no reasonable basis to believe in such alignment. *See infra* § II (discussing scienter). Moreover, because Plaintiffs have failed to allege secret profit-sharing payments, as explained below, this opinion statement was not misleading.

### B.   There Were No Secret Profit-Sharing Payments Between Effex And FXCM

Defendants explained in their opening brief that after FXCM spun-off Effex as an independent company in March 2010, Effex made order flow payments to FXCM until August 1,

2014, when FXCM discontinued that practice.  Mot. at 4–6.  Such order flow payments were repeatedly disclosed in FXCM's public filings, *id.* at 4–5, and did not violate any regulatory requirement or law.  *Id.* at 21.  Plaintiffs do not — and cannot — contest these facts.  Instead, they regurgitate the assertion that the order flow payments were essentially secret profit-sharing payments between Effex and FXCM.  Opp'n. at 12–13.  But Plaintiffs' mere say-so does not meet their burden to plead particularized facts contradicting or rendering misleading Defendant's public statements.  Indeed,  the "Federal Rules do 'not permit conclusory statements to substitute for minimally sufficient factual allegations.' "  *Schorr v. Dopico*, 205 F. Supp. 3d 359, 363 (S.D.N.Y. 2016) (quoting *Furlong v. Long Is. Coll. Hosp.*, 710 F.2d 922, 927 (2d Cir. 1983)).  In other words, Plaintiffs cannot simply label as nefarious or "pretextual" a commercial relationship that is on its face not fraudulent.[2]

For Plaintiffs to plead adequately a profit-sharing relationship, they must plead a mechanism by which Effex actually shared its profits with FXCM.  It is not enough to allege that FXCM monitored Effex's profits; monitoring is not sharing.  The order flow payments are the only payments that Effex allegedly made to FXCM.[3]  If these payments were really profit-

---

[2]  *See Lewy v. SkyPeople Fruit Juice, Inc.*, No. 11 CIV. 2700 PKC, 2012 WL 3957916, at *18–19 (S.D.N.Y. Sept. 10, 2012) (rejecting as unsupported by sufficient facts the plaintiffs' "secret-control theory"); *In re Paincare Holdings Sec. Litig.*, Lead Case No. 6:06-cv-362-Orl-28DAB, 2007 WL 1229703, at *7 (M.D. Fla. April 25, 2007) (granting motion to dismiss where "Plaintiff allege[d] no facts (as opposed to bald conclusions) sufficient to support an inference that the Company's disclosed reason for the restatement . . . was a pretext."); *Faulkner v. Verizon Commc'ns., Inc.*, 156 F. Supp. 2d 384, 400 (S.D.N.Y. 2001) (granting motion to dismiss where the plaintiffs asserted that the company revised quarterly results as a "pretext" but pled "no facts from which it could be inferred" that the revision was a ploy).

[3]  For this reason, none of the statements made after the cessation of order flow payments in August 2014 are actionable.  In support of extending the putative class period, the Opposition points solely to language in the CFTC Order stating that FXCM's pay-for-flow relationship with Effex "lasted 'through *at least* 2014.' "  Opp'n at 22–23.  But the CFTC did not make any specific allegation or present any evidence that FXCM received any payments from Effex after August 2014.  And though Plaintiffs argue that "[j]ust because one profit-sharing mechanism *may* have ceased . . . does not mean that [the] Company . . .

sharing payments, then the amounts paid would have fluctuated based on Effex's profits. Plaintiffs admit, however, that the payments made to FXCM were based solely on customer trading volume, SAC ¶ 55, and the Services Agreements confirm this fact, *see* Dahan Decl. Exs. K, L.[4]  "[T]he court need not accept as true 'allegations that contradict matters properly subject to judicial notice.' " *Rieckborn v. Jefferies LLC*, 81 F. Supp. 3d 902, 913 (N.D. Cal. 2015) (citation omitted); *see also Kyrstek v. Ruby Tuesday, Inc.*, No. 3:14-cv-01119, 2016 WL 1274447, at *6 (M.D. Tenn. Mar. 31, 2016) (dismissing allegations where "the facts available to the Court . . . directly contradict[ed] Plaintiffs' allegations . . .").

Further, Plaintiffs cannot dispute that FXCM disclosed that it received order flow payments.  *See* Mot. at 4–5 (citing SEC filings).  So Plaintiffs are left in the untenable position of arguing that they were misled because FXCM referred in these disclosures to "market makers" (plural) when it received order flow payments from only a single market maker.  But the securities laws require disclosure only of material information, and Plaintiffs have not alleged (and could not plausibly allege) that the difference between "market maker" and "market makers" would have changed the total mix of information available to investors.  *See Basic, Inc. v. Levinson*, 485 U.S. 224, 232–33 (1988).

And if "FXCM directed Effex to limit itself to only 45–50% of the trading volume" as Plaintiffs contend (Opp'n at 14), this undermines Plaintiffs' claim that FXCM shared Effex's profits:  FXCM would want to maximize Effex's share of its trading volume if it indeed earned a portion of Effex's profits.  On the other hand, FXCM would be concerned about allowing a

---

abandoned its improper profit-sharing relationship" (*id.* at 23), they neither provide factual support for this proposition nor demonstrate how such payments survived the termination of the Services Agreement in August 2014.

[4] Plaintiffs do not contest, and thus concede, that the Court may properly consider these agreements in deciding this motion.

separately-controlled company to capture so much of its business.  Depending so much on a separate company for FXCM's core business would make FXCM's viability dependent upon Effex's — a risk a separately owned and controlled company would not be willing to take.

Plaintiffs' remaining allegations also fail to support a secret profit-sharing scheme.  The "amounts billed as 'P&L'" Plaintiffs cite in their Opposition are the invoices for order flow discussed above.  *See* SAC ¶¶ 61–64.  The manner in which FXCM approximated its profit and loss — an internal number not released to investors — reflects the unremarkable proposition that order flow payments, by their definition, would be expected to rise in tandem with the liquidity maker's volume.  Specifically, FXCM would expect both numbers to increase as FXCM routes more orders to the liquidity provider.  Finally, "Plaintiffs do not explain why events surrounding the founding of [Effex] in 20[09–2010] have any relevance to its ownership in [2012]," at the start of the Class Period.  *Lewy*, 2012 WL 3957916, at *18.

In sum, because Plaintiffs have not alleged that any payments were made from Effex to FXCM that were calculated based on Effex's profit, they have alleged only that FXCM received order flow payments from a liquidity provider — a fact repeatedly disclosed to investors.

### C.    No "Objective Facts" Support a GAAP Violation By FXCM

Defendants' opening brief established that Plaintiffs alone contend that FXCM violated GAAP by failing to treat Effex as a related party or variable interest entity.  Mot. at 16–19.  In response, Plaintiffs misrepresent that "government action call[ed FXCM's] accounting position into question."  Opp'n at 18.  But neither the CFTC nor the NFA discussed FXCM's accounting practices in their settlement complaint or order.  *See* SAC Exs. 1, 2.  Notably, if the CFTC believed that FXCM was violating GAAP it could have accused FXCM of violating CFTC regulations requiring regulated companies to report GAAP-compliant information about

affiliates.  *See* 17 C.F.R. §§ 5.10, 5.11.  Plaintiffs provide no explanation why the CFTC would have omitted these rules from its Order if it suspected that FXCM had violated them.

Throughout their Opposition, Plaintiffs underplay the importance of the fact that — even after the CFTC Order and the NFA Complaint were publicly released — FXCM has never been required by its auditor or by a regulator to restate a prior year financial statement with respect to its accounting treatment of its contractual relationship with Effex.  Again, Plaintiffs provide no explanation why the Company's outside auditors, EY, would not have required a restatement if FXCM's financial statements were not GAAP-compliant.  This is a key distinguishing factor between this case and the precedent Plaintiffs have cited.  *Cf. In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 657 (S.D.N.Y. 2007) (allegedly misleading financial statements were "disavow[ed]"); *Vanleeuwen v. Keyuan Petrochems., Inc.*, No. 13 CIV. 6057 PAC, 2014 WL 3891351, at *2 (S.D.N.Y. Aug. 8, 2014) (allegedly misleading financial statements were restated).[5]

It is obvious, however, why Plaintiffs persist in pursuing a GAAP violation, despite the fact that the CFTC, the NFA, and EY found no such violation:  Without a GAAP violation, their secret profit-sharing theory unravels.  If Plaintiffs' "secret-control theory" is correct, and FXCM shared Effex's profits, then FXCM must have violated GAAP.  By logical implication, if FXCM did not violate GAAP, then Plaintiffs' secret-control theory fails.  Despite the centrality of this claim to Plaintiffs' theory of the case, Plaintiffs do not meet this Circuit's requirements to adequately plead securities fraud based on a GAAP violation.

---

[5] Further, because Plaintiffs have failed to allege a corrective disclosure, their claims based on alleged GAAP violations must be dismissed for failure to plead loss causation.  *See infra* § III.

Defendants' opening brief explained these requirements.  Mot. at 16–19.  Rather than applying this standard, Plaintiffs argue, based on precedent from outside the Second Circuit,[6] that the absence of a restatement does not necessarily end a plaintiff's claims as to GAAP violations where the plaintiff otherwise fulfils the requirements of the PSLRA.  Opp'n at 17–18.[7]  But as explained in Defendants' opening brief (Mot. at 17), courts in this Circuit have found that in the absence of a restatement plaintiffs must provide "objective facts" supporting their assertion that defendants violated GAAP.  *See, e.g.*, *North Collier Fire Control & Rescue District Firefighter Pension Plan v. MDC Partners, Inc.*, No. 15 Civ. 6034 (RJS), 2016 WL 5794774, at *11 (S.D.N.Y. Sept. 30, 2016) (citation omitted); *Harris v. AmTrust Fin. Servs., Inc.*, 135 F. Supp. 3d 155, 172 (S.D.N.Y. 2015), *aff'd*, 649 F. App'x at 7 (2d Cir. 2016).  Plaintiffs have not adequately alleged such objective facts.

First, Plaintiffs plead only one "fact" in support of their assertion that Effex was a VIE: that "FXCM was entitled to and did receive 70% of Effex's profits."  Opp'n at 15.  But this is their conclusion, and it is not entitled to deference on a motion to dismiss.  *See Schorr*, 205 F. Supp. 3d at 363.  Further, as described *supra* § I B, this conclusion is not supported by the pleaded facts.

---

[6] The standard Plaintiffs recite is related to when GAAP violations can be used to plead *scienter*, not whether the plaintiffs adequately pleaded that a GAAP violation occurred.  Opp'n at 17.  This is an entirely separate issue:  In Plaintiffs' cases, a GAAP violation is assumed for purposes of the scienter analysis.  *E.g.*, *Novak v. Kasaks*, 216 F.3d 300, 309 (2d Cir. 2000).  Here, the Court must decide in the first instance whether or not a GAAP violation has been adequately pleaded.

[7] The out-of-Circuit cases cited by Plaintiffs are inapposite either for the reason discussed *supra* n.6 or because they contain the type of objective facts clearly not present here.  For example, in *Aldridge v. A.T. Cross Corp.*, 284 F.3d 72 (1st Cir. 2002), the Plaintiffs were able to point to specific statements about pricing practices by the company's executives supporting an inference that they improperly accounted for reserves.  *Id.* at 79–82; *see also infra* n.10 (discussing *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230 (N.D. Cal. 2008)).

Second, in support of their assertion that FXCM was required to disclose transactions with Effex as "related party" transactions, Plaintiffs list various allegations and conclusions from their Complaint with no analysis of how and whether these facts are relevant to the analysis of whether Effex was an "affiliate."  Opp'n at 16.[8]  In fact, an "affiliate" is defined as "a party that, directly or indirectly through one or more intermediaries, controls, is controlled by, or is under common control with an enterprise."  *See Lewy*, 2012 WL 3957916, at *18 (quoting Fin. Accounting Standards Bd., *FAS No. 57: Related Party Disclosures* (Mar. 1982) ¶24a).  *None* of the allegations Plaintiffs marshalled in its Opposition or SAC relate to control.  *Cf.* Opp'n at 16. In fact, the CFTC acknowledged that FXCM had no ownership interest in Effex and did not allege that FXCM had voting rights.  *See* SAC Ex. 1 at 7.[9]  The Services Agreement confirms that FXCM had no ownership interest in Effex.  Suppl. Dahan Decl. Ex. L §§ 8.3.  Therefore, Plaintiffs have failed to allege an actionable GAAP violation.[10]

---

[8]  Further, as Plaintiffs admit, even related party transactions are only subject to disclosure if they are material.  Opp'n at 16.  Plaintiffs make no attempt to argue that FXCM's transactions with Effex were material, nor could they because revenues that Plaintiffs allege FXCM received pursuant to the Services Agreement accounted for a small portion of FXCM's retail trading revenue during that period.  *Compare* SAC ¶ 11 (alleging nearly $80 million of payments from Effex to FXCM between 2010 and 2014) *to* Dahan Decl. Ex. M (showing annual revenue from retail trading of over $300 million, for a total of $1.2 billion during the same time frame.)

[9]  Plaintiffs dismiss the CFTC's finding that Dittami was the "100 percent owner of [Effex]" as "merely a description of the pretextual arrangement by which FXCM spun off Effex . . . ."  Opp'n at 19.  In fact, the statement that Dittami was the 100 percent owner of Effex is *not* found in the CFTC's description of the Services Agreement.  *See id.* at 5.  Rather, the CFTC cites the ownership of Effex as a fact contradicting information provided to it by an FXCM employee.  *Id.* at 7.  In any event, while the Court must take as true all facts alleged by the Plaintiff, their *conclusion* that the Services Agreement was a pretext for FXCM's secret control of Effex is not entitled to the same deference.  *See* cases cited *supra* n. 3.

[10]  In their Opposition, Plaintiffs cite one instance in the Second Circuit where the court found a GAAP violation adequately pleaded notwithstanding the fact that the defendant company did not restate its financial statements: *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 272–73 (S.D.N.Y. 2010).  In that case, however,  the plaintiffs submitted an expert analysis concluding that defendants violated GAAP.  *Id.*  Similarly, in *In re LDK Solar Sec. Litig.*, the plaintiffs' complaint primarily depended upon allegations by the defendant corporation's former comptroller, who was an accountant,

### D.        FXCM Had No Duty to Disclose Regulatory Investigations

Plaintiffs admit, as they must, that FXCM had no general duty to disclose ongoing regulatory investigations.  Opp'n at 20–21; Mot. at 21-22; *see also City of Pontiac Policemen's and Fireman's Ret. Sys. v. UBS AG*, 752 F.3d 173, 184 (2d Cir. 2014) ("*UBS*") ("Disclosure is not a rite of confession" and "companies do not have a duty 'to disclose uncharged, unadjudicated wrongdoing.' " (citations omitted)).  Instead, they argue that FXCM's regulatory filings "created the false and misleading impression that [FXCM] was not ***currently*** under regulatory investigations" by disclosing that regulatory action was a risk factor facing the Company.  Opp'n at 20 (emphasis in original).  This argument fails as a matter of law because FXCM's risk disclosures accurately identified that investigative activity was ongoing.

Since 2012, FXCM's Forms 10-K disclosed that "regulators and self-regulatory organizations . . . conduct regular examinations of our business to monitor our compliance with these regulations."[11]   In light of this disclosure, "[t]he SAC at most pleads that defendants disclosed an investigation was ongoing, but refused to provide details.  This is not a case where the defendants selectively disclosed information and omitted known adverse facts that would undermine the truth of the disclosures.  Here, the statements acknowledged there were pending claims or legal proceedings . . . ."  *In re Lions Gate Entm't Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 12 (S.D.N.Y. 2016) (internal record citations omitted); *see also In re Deutsche Bank Aktiengesellschaft Sec. Litig.*, No. 16 Civ. 3495 (AT) (BCM), 2017 WL 4049253, at *7 (S.D.N.Y. June 28, 2017) ("A company is not obliged to disclose uncharged illegal conduct even as it [makes] . . . 'statements about regulatory investigations.' " (citation omitted)).

---

that the defendant had overstated its inventory and understated costs in violation of GAAP.  584 F. Supp. 2d at 1242–43.

[11] Bessette Supp. Decl. Ex. Q 2012 10-K at 14; Ex. R, 2013 10-K at 12; Ex. S, 2014 10-K at 14.

Moreover, as Plaintiffs admit, FXCM disclosed the NFA and CFTC investigations in its Q3 2016 10-Q.  SAC ¶ 167.  While Plaintiffs complain that this disclosure "soft-played" the investigations (Opp'n at 20), "the federal securities laws do not require a company to accuse itself of wrongdoing," *In re Citigroup, Inc. Sec. Litig.*, 330 F. Supp. 2d 367, 377 (S.D.N.Y. 2004) (citation omitted), or "to hypothesize the worst results of the investigation," *Lions Gate*, 165 F. Supp. 3d at 14–15.  Further, FXCM's characterization of the risk facing it from these investigations is an opinion statement under *Omnicare,* and Plaintiffs do not even attempt to meet *Omnicare*'s requirements to plead an actionable statement of opinion.  Therefore, because none of FXCM's statements related to investigations was misleading, Plaintiffs have failed to allege a duty to disclose the regulatory investigations.

## II.     Plaintiffs' Opposition Confirms The Lack Of Scienter By Defendants

Plaintiffs make no effort to engage with the questions this Court previously raised about their flawed theory of scienter.  First, Plaintiffs nowhere "clarify exactly what facts form their basis for believing each defendant was not acting on a good-faith basis and their attempts to preserve corporate formalities between Effex and FXCM were legally and financially [in]sufficient to avoid fraudulent statements."  Oral Op. at 19:6–11.  Plaintiffs admit that while FXCM initially planned to develop Effex in-house, when the compliance department raised concerns about the potential conflict of interest, FXCM "restructured" Effex and spun it off as independent "to specifically address those concerns."  Opp'n at 25–26.  This new relationship was formalized in the Services Agreements.  Dahan Decl. Exs. K, L.

Plaintiffs rely on a litany of continued contact and alleged advantages to suggest scienter, *see id.*, but do not meet their heightened pleading burden.  A court in this District recently explained that a similar "secret-control theory" was not a more compelling inference than the inference that Defendants "tried to comply with the law . . . as they reasonably understood it":

> Essentially, plaintiffs ask the Court to infer that, because certain defendants had ownership interests in Yingkou before and after the formal agreement to purchase Yingkou, but not at the time the transaction was completed, there must have been a secret mechanism by which those defendants profited from the transaction-through "money laundering." This speculation does not approach the cogency of the alternative explanation, to wit, that the defendants tried to comply with the law on related party transactions as they reasonably understood it.

*Lewy*, 2012 WL 3957916, at *21. Even if the effort to separate Effex was in fact insufficient to avoid misstatements — and FXCM contests this — Plaintiffs' "secret-control theory" is not as plausible as the opposing inference that FXCM attempted to comply with the law but failed. For this reason alone, the SAC should be dismissed.[12]

Second, Plaintiffs all but ignored the Court's admonition to "focus on why there was an intent to defraud *investors* as opposed to customers." Oral Op. at 19:11–13 (emphasis added). In a footnote, Plaintiffs explain only that FXCM made the allegedly false and misleading statements "in its public reports filed for the benefit of investors." Opp'n at 25 n.6. This response misunderstands the argument raised in Defendants' opening brief. *See* Mot. at 28–29. Even if FXCM engaged in the scheme described in the SAC — and it did not — the benefits of that scheme inured to the benefit of FXCM and its shareholders. *See ECA, Local 134 IBEW Joint Pension Tr. of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 198 (2d Cir. 2009) ("*JPMC*") ("[E]arning 'excessive' fees in a competitive marketplace (for as long as it lasts)—far from defrauding the shareholders—actually benefits the shareholders."); *see also id.* at 203 ("It seems implausible to have both an intent to earn excessive fees for the corporation and also an intent to defraud Plaintiffs by losing vast sums of money."). Not every bad, or even illegal,

---

[12] In any event, Lande should be dismissed from the case, as there is no allegation that he had any involvement with Effex. Mot. at 24–25. Indeed, neither the CFTC nor the NFA claimed that Lande engaged in any wrongdoing with respect to the Effex relationship. Finally, because Plaintiffs have failed to allege any GAAP violation, *supra* § I C, Lande's knowledge of accounting information similarly fails to support an inference as to his scienter. *Cf.* Opp'n at 27–29.

action by a public company is securities fraud.[13]   Rather, as the Court rightly noted in her Oral

Opinion, the scienter required to commit securities fraud must be the specific intent to defraud

*investors* — not customers, competitors, or regulatory agencies.  *See JPMC*, 553 F.3d at 198

("[T]he facts alleged must support an inference of an intent to defraud the plaintiffs rather than

some other group" (citing *Kalnit v. Eichler*, 264 F.3d 131, 140–41 (2d Cir. 2001)).[14]   Plaintiffs

have failed to plead this state of mind.

      Third, the alleged and unfounded GAAP violations do not contribute to an inference of

scienter.  It is undisputed that FXCM's financial statements were audited by EY and they did not

find any GAAP violations.   Plaintiffs have not sued EY, nor have they alleged that FXCM

misled EY about its relationship with Effex.   With respect to the Individual Defendants,

"Plaintiff[s] ha[ve] not pleaded additional supporting allegations indicating that Defendants also

possessed and ignored contrary facts or obvious 'red flags.'  To the contrary, Plaintiff[s] ha[ve]

pleaded a 'green light':  . . . the Company's independent auditor . . . found no issues . . . ."

*Wyche v. Advanced Drainage Sys., Inc.*, No. 15 CIV. 5955 (KPF), 2017 WL 971805, at *17

(S.D.N.Y. Mar. 10, 2017), *aff'd*, 710 F. App'x 471 (2d Cir. 2017).   Finally, because "Plaintiffs

---

[13]  *See, e.g.*, *UBS*, 752 F.3d at 184; *JMPC*, 553 F.3d at 194; *Menaldi v. Och-Ziff Capital Mgmt. Grp. LLC*, 277 F. Supp. 3d 500, 518–19 (S.D.N.Y. 2017); *Employees' Ret. Sys. v. Embraer S.A.*, No. 16 CIV. 6277 (RMB), 2018 WL 1725574, at *5–7 (S.D.N.Y. Mar. 30, 2018).

[14]  For this reason, Plaintiffs' cases holding that "attempts by a defendant to 'cover up' fraud also constitute evidence of scienter" (Opp'n at 27) are inapposite.  In these cases, the defendant allegedly misled the SEC, the regulatory agency charged with protecting Plaintiffs.  *E.g.*, *In re Galena Biopharma, Inc. Sec. Litig.*, 117 F. Supp. 3d 1145, 1161 (D. Or. 2015); *Szulik v. Tagliaferri*, 966 F. Supp. 2d 339, 365 n.20 (S.D.N.Y. 2013).  An action to hide information from the SEC would be suggestive of intent to defraud investors because of that agency's purview.  Further, these cases both involve insider stock sales and other indicia of scienter not pleaded in this case.  By contrast, Plaintiffs cite no case finding that misleading an agency not charged with protecting the plaintiff investors is sufficient to plead scienter in the absence of stock sales and other indicia of scienter.  *But see Menaldi*, 277 F. Supp. 3d at 518 ("[T]he mere possibility that Cohen's cover-up may have delayed the SEC's investigation does not furnish the necessary link between his deceptive act and the purchase or sale of securities.").  Finally, *Baena v. Woori Bank*, 515 F. Supp. 2d 414 (S.D.N.Y. 2007), is not a securities fraud case and therefore irrelevant to whether a "cover up" is evidence of scienter under the PSLRA.

fail to allege sufficient facts to support an inference that [FXCM] knew that the failure to report [Effex] as a related party was inaccurate," they have failed to show that any Defendant had scienter with respect to any alleged GAAP violation.  *See JPMC*, 553 F.3d at 202.[15]

## III.   Plaintiffs' Opposition Confirms The Absence Of  Loss Causation

Defendants' opening brief established that Plaintiffs have failed to plead *any* corrective disclosure of the alleged GAAP violations and failed to consider the impact of the SNB Flash Crash on their loss causation allegations.  Mot. at 32–34.  In response, Plaintiffs (i) assert that Defendants cannot now challenge the sufficiency of their loss causation allegations, (ii) make no effort to identify any facts that would allow the Court to apportion the loss given the market crash, and (iii) misstate the requirements to plead loss causation for the alleged GAAP violations.  Opp'n at 32–34.  As a preliminary matter, despite Plaintiffs' insinuations, there is nothing improper about the fact that Defendants did not challenge loss causation in the first round of motion to dismiss briefing.  *Cf. id.* at 32.  Further, while the Opposition discusses the standard for pleading loss causation, it makes no attempt to apply that standard to the SAC.  *Cf. id.* at 32–33.  Plaintiffs' only argument that it meets this Circuit's requirements is their unsupported say-so:  "That is precisely what the SAC alleges here."  *Id.* at 33.  This conclusory argument does not

---

[15] The "core operations theory" also does not support an inference of scienter.  *Cf.* Opp'n at 31.  First, that theory applies when a plaintiff has pleaded facts that contradict a defendant's public statements, but the defendant denies knowledge of those facts.  *See Frederick v, Mechel OAO*, 475 F. App'x 353, 356 (2d Cir. 2012) (describing the "core operations theory").  Here, Defendants do not allege forgetfulness, but rather that the "facts" alleged by Plaintiffs do not contradict their public statements.  *See supra* § I.  Further, only a small percentage of FXCM's revenue was derived from its relationship with Effex.  *Compare* SAC ¶ 11 (alleging nearly $80 million of payments from Effex to FXCM between 2010 and 2014) *to* Dahan Decl. Ex. M (showing annual revenue from retail trading of over $300 million, for a total of $1.2 billion over the same time frame.)  Pleading scienter requires more than a "cursory" attempt "to delineate what constitutes a 'core' [FXCM] operation."  *See In re Wachovia Equity Sec. Litig.,* 753 F. Supp. 2d 326, 360–61 (S.D.N.Y. 2011).  Finally, "the 'core operation' theory at most constitutes 'supplemental support' for alleging scienter but does not independently establish scienter," and courts have recognized that even this limited use of the theory arguably does not comport with the scienter requirements of the PSLRA.  *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 163 & n.11 (S.D.N.Y. 2015); *Frederick*, 475 F. App'x at 356.

meet Plaintiffs' burden to allege facts "to support the inference that they 'would have been spared all or an ascertainable portion of [their] loss absent the [alleged] fraud.' " *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 188–89 (2d Cir. 2015). The Court is not required to search the SAC to find allegations to substantiate Plaintiffs' claim.

In any event, the SAC does not allege facts allowing the Court to infer that an "ascertainable portion" of Plaintiffs' loss was caused by the alleged fraud. The Class Period runs from March 15, 2012 to February 6, 2017. SAC ¶ 1. On March 15, 2012, FXCM's stock price was $123.80 per share, and FXCM's stock reached a high of $197.60 per share on September 27, 2013. *See* Bessette Supp. Decl. Ex. T, Class Period Historical Stock Prices. Nearly all of that value was lost in the SNB Flash Crash; on January 20, 2015, FXCM's stock closed at $16.00 per share. *Id.* The stock price never again reached its pre-Flash Crash prices. *See id.* No facts in the SAC suggest that it is possible to apportion the stock drop that occurred during the Class Period between the market-wide crash and the alleged fraud.

That the SNB Flash Crash occurred in the *middle* of the Class Period rather than the *end* does not change this analysis. *Cf.* Opp'n at 32. "The essential point is that by the time of the disclosures which allegedly caused  the economic loss (as defined by the loss causation doctrine) the stock had already lost almost all its value. . . .  This . . . loss of value occurred during the time when the alleged false and misleading comments . . . were being issued.  The complaint does not even refer to the phenomenon of the . . . loss of the stock's value, much less attempt to explain it as related to loss causation." *See 60223 Tr. v. Goldman, Sachs & Co.*, 540 F. Supp. 2d 449, 461 (S.D.N.Y. 2007); *see also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 568 F. Supp. 2d 349, 364–65 (S.D.N.Y. 2008) ("[T]he Complaint neglects to address the fact that, during the

'relevant time period' . . . CMGI's stock lost nearly all of its value."). Plaintiffs' utter failure to plead loss causation merits dismissal of the SAC.

Finally, because neither FXCM nor either regulator alerted the market to any accounting irregularities, and Plaintiffs have not alleged any other corrective disclosure, they have failed to plead adequately loss causation for any alleged GAAP violation. Whatever losses FXCM's stock suffered during the Class Period, none of these losses can be blamed on investors' knowledge that FXCM improperly accounted for its relationship with Effex. *See, e.g.*, *Janbay v. Canadian Solar, Inc.*, No. 10 Civ. 4430(RWS), 2012 WL 1080306, at *16 (S.D.N.Y. Mar. 30, 2012) (loss causation for GAAP violation inadequately pleaded where "None of CSI's partial disclosures discussed CSI's [allegedly misstated] financials.").[16]

## CONCLUSION

For all of these reasons, the SAC should be dismissed. Because Plaintiffs had notice of each of these deficiencies from Defendants' prior round of briefing, and chose not to correct them in the SAC, the dismissal should be with prejudice.

---

[16] Plaintiffs' cases are inapposite. In *In re Winstar Commc'ns*, the alleged corrective disclosures specifically discussed the defendant company's accounting practices. No. 01 CV 3014(GBD), 01 CV 11522, 2006 WL 473885, at *5 (S.D.N.Y. Feb. 27, 2006). *Mineworkers' Pension Scheme v. First Solar Inc.* did not involve any alleged GAAP violations. 881 F.3d 750 (9th Cir. 2018). By contrast, *Janbay* and the cases cited in Defendants' opening brief discuss the standard to plead loss causation when GAAP violations are alleged.

Dated:  June 21, 2018

KING & SPALDING LLP

/s/  Paul R. Bessette
Paul R. Bessette
Israel Dahan
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York  10036-2601
Tel:  (212) 556.2100
Fax: (212) 556.2200

Rebecca Matsumura, *pro hac vice*
KING & SPALDING LLP
500 W. 2nd Street Suite 1800
Austin, Texas 78701
Tel: (512) 457.2000
Fax: (512) 457.2100

*Attorneys for Defendants Global Brokerage, Inc.
f/k/a/ FXCM, Inc., Dror Niv, William Ahdout and
Robert Lande*

## CERTIFICATE OF SERVICE

I hereby certify that, on June 21, 2018, the foregoing Defendants' Reply Memorandum of Law In Further Support of Their Motion to Dismiss The Second Amended Consolidated Securities Class Action Complaint was electronically delivered to all counsel of record via the Southern District of New York's CM/ECF system.

/s/  Paul R. Bessette
Paul R. Bessette