**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1: 17-cv-00916-RA |
| | CLASS ACTION |
| This Document Relates To: All Actions | |

**STIPULATION AND [PROPOSED] ORDER ESTABLISHING**
**THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND**
**ELECTRONICALLY STORED INFORMATION ("ESI")**

Pursuant to the agreement reached between Plaintiffs and Defendants herein, this Court adopts and orders the following Protocol relating to the Production of paper Documents and Electronically Stored Information (collectively "Discoverable Information") in these Proceedings, which binds all parties and their counsel of record in this action, whether they currently are involved or become so in the future (collectively, the "Parties"). This Protocol governs discovery of ESI in this case and incorporates relevant provisions of the Federal Rules of Civil Procedure and the Local Rules for the Southern District of New York regarding the management of ESI and, as set forth herein, supplements those sources of authority. The failure of this Protocol to address any particular issue is without prejudice to any position that a Party may take on that issue. The proportionality standard set forth in Rule 26(b)(1) of the Federal Rules of Civil Procedure shall apply to discovery in this action.

I.      **DEFINITIONS**

a.      "Action" means the above-captioned matter, and any and all cases consolidated or coordinated with it.

b.      "Electronically stored information" ("ESI") shall have the same definition as set

1

forth in Federal Rule of Civil Procedure 34.

      c.      "Documents" shall have the same definition as set forth in Federal Rule of Civil Procedure 34 and the Southern District Local Rules.

      d.      "Email" means electronic messages sent or received  via messaging applications, including, but not limited to, Microsoft Outlook, Google Gmail, or Lotus Notes, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to preserve or collect such ESI.

      e.      "Instant Messages" means communications sent via chat client or SMS, including but not limited to Bloomberg Chat, Google Talk, WhatsApp, Yahoo! Messenger, AOL Instant Messenger, Blackberry Messenger, ICQ, Pidgin, Line, Audium, Trillian, or any proprietary instant messaging system, though the inclusion of any platform, program, client, or software as an example herein will not obligate any Party to preserve or collect such ESI.

      f.      "Identify" (with respect to Persons) means to give, to the extent known, the Person's full name, present or last known address, and when referring to a natural Person, additionally, the present or last known place of employment and job title or role. Once a Person has been identified in accordance with this subparagraph, only the name of that Person need be listed in any subsequent response or log entry.

      g.      "Native format" means and refers to the file structure of a document created by the original creating application (in contrast to a Static Image, which is a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems, such as .tiff or .pdf).

      h.      "Metadata" means (i) information associated with or about a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such

native file which describes the characteristics, origins, or usage of the electronic file; and (ii) information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved, or otherwise manipulated by a user of such system.

i.      "Load file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load File will also contain data relevant to the individual Documents, including extracted and user created Metadata, as well as OCR or Extracted Text, should such data be available.

j.      "OCR File" means optical character recognition file which is created by software used in conjunction with a scanner that is capable of reading text-based paper/hard copy documents and making such documents searchable using appropriate software.

k.      "Extracted Text" means the text extracted from a native document, and includes all header, footer and document body information when available. A "Text File" is a file containing the full text of native files extracted directly from the native file, or, in the case of paper/hard copy documents subject to OCR, a file containing the text resulting from the OCR.

l.      "Media" means an object or device, including but not limited to a disc, tape, computer or other device, on which data is or was stored.

m.      "Parties" collectively shall mean all named parties to any action in these Proceedings, including any Party added or joined to any complaint in these Proceedings, as well as named parties to actions that may be consolidated into or coordinated with the above-captioned Action.

n.      "Production" or "Produced" includes any exchange of documents or electronically

stored information between the Parties, whether voluntarily or in response to a formal or informal request.

o.      "Search Term" means a combination of words (including synonyms) and phrases designed to capture potentially relevant ESI, and includes strings of words and phrases joined by proximity and Boolean connectors.

p.      "Static Image" means or refers to a representation of ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) image is an example of a Static Image.

q.      "Structured Data" means ESI stored in a structured format, such as databases or data sets according to specific form and content rules as defined by each field of the database.

r.      "Unstructured Data" refers to free-form data which either does not have a data structure or has a data structure not easily readable by a computer without the use of a specific program designed to interpret the data, such as word processing documents, slide presentations, email, and image files.

**II.      Scope**

a.      **General.**  The procedures and protocols outlined herein govern the Production of discoverable information by all Parties.  The Parties will take reasonable steps to comply with this agreed-upon protocol for the Production of Documents and Electronically Stored Information ("Protocol"), and the principles of proportionality and reasonableness shall at all times govern the production of ESI.  All Productions made pursuant to this Protocol are subject to the Discovery Confidentiality Stipulation and Order entered by the Court on July 24, 2019 (ECF No. 144) ("Confidentiality Order"), and any further protective orders or privilege orders entered in these Proceedings.  Nothing in this Protocol is intended to be an exhaustive list of discovery obligations

or rights of a Party requested to produce discoverable information ("Producing Party") or a Party requesting discoverable information ("Requesting Party").   This Order does not govern any procedures or criteria used to define or limit the scope of production such as any technology-assisted culling or review process. Nothing in this Order establishes any agreement as to any search protocol, including which sources shall be searched for Documents, Email, or Instant Messages. The Parties agree to meet and confer to negotiate a mutually agreeable search protocol and written agreement reflecting same.

The production specifications in this Order apply to documents that are produced in the first instance in this Action.  To the extent any Party is required to or agrees to produce Documents in this Action that originally were collected or produced in other cases or government investigations, such Documents may be produced in the same format in which they originally were collected or produced and need not contain Metadata fields that were not included originally.

Moreover, the terms and specifications of this Order shall only apply to productions made after the date of entry of this Order.  Productions in this Action that were delivered before the date of entry of this Order are exempt from the terms of the Order, unless the Producing Party and Receiving Party otherwise agree. To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure, local rules, or applicable state and federal statutes, they shall be controlling.

b.      **Limitations and Non-Waiver**.  The Parties and their attorneys intend by this Protocol to make the mutual disclosures promised herein.  The Parties and their attorneys do not intend by this Protocol to waive their rights to any protection or privilege, including the attorney-client privilege and the work-product doctrine.  All Parties preserve their attorney-client privileges, work product protection, and other privileges.  The Parties and their attorneys are not waiving, and

specifically reserve, the right to object to any discovery request on any grounds.  Further, nothing in this Protocol shall be construed to affect the admissibility of Discoverable Information.  All objections to the discoverability or admissibility of any Discoverable Information are preserved and may be asserted at any time.

        c.      **Reservation of Rights**.  For the avoidance of doubt, the inclusion of any platform, program, application, or software in Section I is merely by way of example and does not create any independent obligation or commitment to preserve or collect ESI from such platform, program, application, or software.  The parties reserve all rights to object to any demand to collect or produce ESI from any or all of the examples listed in Section I.

        d.      **Modification by Agreement**.  Any practice or procedure set forth herein may be varied by agreement of affected Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of Discoverable Information.  Any Party added or joined to any complaint in this Action and any Party to actions that may be consolidated into or coordinated with the above-captioned matter after the date of this Protocol that seeks to deviate from Protocol set forth herein must obtain leave of Court to do so unless all affected Parties otherwise consent in writing.  Before seeking Court intervention, Plaintiffs and all affected Defendants shall meet and confer in good faith regarding any modification.

        e.      **Modification by Court Order**. Nothing in this Protocol waives the right of any Party to petition the Court for an Order modifying its terms upon good cause shown, provided, however, that counsel for such party must first meet and confer with the counsel for the opposing party and the parties shall use reasonable best efforts to negotiate an exception from or modification to this Agreement and Order prior to seeking relief from the Court.

### III.   PRESERVATION

Consistent with, and without diminishing, the Parties' obligations under Rule 26(f), the Parties shall continue to meet and confer regarding the scope of preservation, including custodians, data sources, date ranges, and categories of information that have been or should be preserved in connection with this litigation. The Parties will disclose categories or sources of responsive information that they have reason to believe have not been preserved or should not be preserved and will explain with specificity the reasons to support such a belief. The Parties will identify and describe sources likely to contain responsive information that a party asserts should not be searched or are not reasonably accessible and will explain the reasons for such assertions. No party should object to the discovery of ESI on the basis that it is not reasonably accessible because of undue burden or cost unless the objection has been stated with particularity, and not in conclusory or boilerplate language. Wherever the term "reasonably accessible" is used herein, the party asserting that ESI is not reasonably accessible should be prepared to specify facts that support its contention. The Parties will disclose third party sources, if any, likely to contain discoverable information.

Absent agreement to the contrary, discovery of ESI should proceed in the following sequence: 1) after receiving requests for production of ESI, the parties should search their ESI, other than that initially identified as not reasonably accessible, and produce responsive ESI within the parameters of Fed. R. Civ. P. 26(b)(2)(C); 2) searches of or for ESI identified as not reasonably accessible should not be conducted until the prior step has been completed.

The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and meet and confer regarding such request.

Nothing in this agreement shall be interpreted to relieve a party of its obligations to preserve documents under the Federal Rules.

## IV.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

The Parties shall continue to meet and confer in an effort to conduct discovery in the most efficient and effective manner. Specifically, the Parties will attempt in good faith to come to an agreement on methods used to identify responsive information. The Parties will meet and confer regarding any proposed limitations on the scope of discovery, including custodians, custodial and non-custodial sources, date ranges, file types, or any additional proposed method to limit documents for review (*i.e.*, search terms, technology-assisted-review, predictive coding). The Parties agree that the grounds for objections to preservation, collection and production shall be supported by specific information. The Parties will not seek Court intervention without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

a.    **Sources**. The Parties will meet and confer regarding the custodial and non-custodial data sources likely to contain responsive information. The Parties will identify and describe any relevant electronic systems and storage locations. The Parties will also disclose and describe any document retention policies or practices (*e.g.*, retention schedules or policies, auto-delete functions, routine purging, mailbox size limits) or other practices likely to impact the existence or accessibility of responsive documents or electronically stored information. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodial or non-custodial sources be searched and meet and confer regarding such request. Nothing in this agreement shall be interpreted to relieve a party of its obligations to preserve documents under the Federal Rules.

b.      **Identification of Custodians**.  The Parties will identify all persons whose files are likely to contain documents and ESI relating to the subject matter of this Action. This will include a description of the proposed custodians' job title and their connection to the issues in the Action. The Parties will continue to meet and confer to identify all persons whose files are likely to contain documents and ESI relating to the subject matter of this litigation. The Requesting Party shall have the right to request that files from additional custodians be searched. The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and meet and confer regarding such request.

c.      **Easily Segregable Documents**. Documents or categories of documents that are easily identifiable and segregable shall be collected without the use of search terms or other agreed upon advanced search methodology (*e.g.*, analytics, predictive coding, and technology-assisted-review). The Producing Party will indicate which categories of documents will be produced with and without the use of search terms or other advanced search methodology. Where potentially responsive ESI shall be searched through the use of search terms, the Parties agree to follow the process identified below and the Parties shall meet and confer regarding any proposed deviation.

d.      **Search Terms**.  Where the Parties agree that potentially responsive ESI shall be searched through the use of search terms, the Parties will meet and confer to arrive at an agreed-upon set of serch terms. The Requesting Party will provide a list of proposed search terms, which will contain all search terms that it believes would lead to the identification of relevant documents. The Producing Party will provide any additional search terms that it believes are necessary to identify responsive documents.  The Producing Party will provide a search term hit list or hit report after global de-duplication.  The Parties will use best efforts to agree to a set of search terms.  The

Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that additional search terms be run from additional custodial or non-custodial sources be searched and meet and confer regarding such request.

## V.   PRODUCTION OF STRUCTURED DATA

Where a discovery request requires production of Structured Data, in lieu of producing structured data systems or applications, the Parties shall meet and confer on the content and format of a data extraction from such Structured Data source.  The Parties shall discuss and attempt to agree upon the sets of data or fields to be included in the extraction and the format in which data extracted from the data source shall be produced.  The Producing Party shall generate a sample report of such extracted data for review by the Requesting Party or counsel upon agreement of the parties as to the fields to be produced and the format of production.  The Parties reserve all rights to object, including but not limited to objections for relevance, undue burden, and/ or inaccessibility.

## VI.   PRODUCTION OF DOCUMENTS ORIGINATING AS PAPER

The following production specifications apply to documents that existed in paper format prior to production ("hard copy documents") that are being produced electronically.  This Protocol creates no obligation, however, upon a Producing Party to convert hard copy documents into electronic form. Documents that originated as paper but which were scanned and maintained electronically by a Party prior to inception of this Action shall be produced in accordance with Part V of this Protocol.  The Parties agree to produce in the formats described below, to the extent reasonably practicable and not unduly burdensome.  These formats are deemed to be productions in reasonably usable form.  If particular Documents warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents.

Production of Documents in the reasonably usable form set out in this Protocol need not be organized and labeled to correspond to the categories in the requests.

a.      **TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

b.      **Unitizing Documents**. In scanning paper documents, to the extent it is practicable, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (*i.e.*, paper documents should be logically unitized).  For example, documents stored in a binder, folder, or similar container (each a "container") should be produced in the same order as they appear in the container. The front cover of the container should be produced immediately before the first document in the container.  The back cover of the container should be produced immediately after the last document in the container.  The parties will undertake reasonable efforts to, or have their vendors, logically unitize documents correctly, and will commit to address situations of improperly unitized documents.

c.      **Parent-Child Relationships**. The parties agree that if any part of a document or its attachments is responsive, the entire document and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, immunity, trade secret, or privacy laws.  Attachments that include confidential information and that are entirely non-responsive and not relevant to the subject matter of the Complaint may be withheld and a slipsheet placeholder provided.  Parties shall take reasonable steps to ensure that parent-child relationships within a document family (the association between an attachment and its parent document) are preserved.  The child-document(s) should be consecutively produced immediately after the parent-

11

document.  Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

       d.      **OCR**. To the extent that documents that exist in paper or hard copy format have been run through optical character recognition ("OCR") software, the full text shall be provided on a document-level in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files should be provided in a "Text" folder. To the extent that a document is redacted, the text files should not contain the text of the redacted portions.

       e.      **Unique IDs**. Each TIFF image should have a unique filename, which corresponds to the Bates number of that page.  The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

       f.      **Data Load Files**. Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters.  Concordance-compatible image and data load files should be provided in a "Data" folder.

       g.      **Metadata**.  Each of the Metadata and coding fields set forth in Appendix A that can reasonably and technically be extracted from a Document shall be produced for that Document. The Parties are not obligated to populate manually any of the fields in Appendix A if such fields cannot be extracted from a Document and its context in the source data, with the exception of the

following, if available: (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) AllCustodian, and (f) HashValue.

      h.    **Color**. Documents containing color need not be produced in color in the first instance. However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests.

## VII.    PRODUCTION FORMAT FOR UNSTRUCTURED ELECTRONICALLY STORED INFORMATION

      The Parties agree to produce in the formats described below, to the extent reasonably practicable and not unduly burdensome. These formats are deemed to be productions in reasonably usable form. If particular Documents warrant a different format, the Parties will meet and confer to determine a mutually acceptable production format for such Documents. Production of Documents in the reasonably usable form set out in this Protocol need not be organized and labeled to correspond to the categories in the requests.

      a.    **TIFFs**. Documents should be produced as single-page, black and white, group IV TIFFs imaged at 300 dpi. The document's original orientation should be maintained (i.e., portrait to portrait and landscape to landscape). Bates numbers, confidentiality designations (in accordance with the protective order governing the case), and redactions (to the extent they are necessary) should be burned into the image. TIFF image files should be provided in an "Images" folder.

      b.    **Extracted Text Files**. The full text of native files should be extracted directly from the native file (not OCR) and should be delivered in an appropriately formatted text file (.txt) that is named to match the first bates number of the document. Text files should be provided in a "Text"

folder. To the extent that a document is redacted, the document should undergo OCR after the text has been redacted in order to remove the redacted text.

        c.      **Unique IDs**. Each image should have a unique filename, which corresponds to the Bates number of that page. The filename should not contain any blank spaces and should be zero-padded (*e.g.*, ABC-000001), taking into consideration the estimated number of pages to be produced.  If a Bates number or set of Bates numbers is skipped in a production, the Producing Party will so note in a cover letter or production log accompanying the production.  Bates numbers will be unique across the entire production and prefixes will be consistent across all documents a party produces in the litigation.

        d.      **Parent-Child Relationships and Email Threading**. The parties agree that if any part of an Email or its attachments is responsive, the entire Email and attachments will be produced, except any attachments that must be withheld or redacted on the basis of privilege, immunity, trade secrecy, or privacy laws.  Attachments that include confidential information and that are entirely non-responsive and not relevant to the subject matter of the Complaint may be withheld and a slipsheet placeholder provided.  Parties shall take reasonable steps to ensure that the relationship between attachments, enclosures, embedded files, and/or exhibits to any parent document are preserved. The child-document should be consecutively produced immediately after the parent-document. Each document shall be produced with the production number for the first and last page of that document in the "BegBates" and "EndBates" fields of the data load file and with the "BegAttach" and "EndAttach" fields listing the production number for the first and last page in the document family.

        Email threads are email communications that contain prior or lesser-included email communications that also may exist separately in the Party's electronic files. The Parties agree that

removal of wholly-included, prior-in-time, or lesser-included versions from potential production will reduce all Parties' costs of document review, production, and litigation-support hosting. Accordingly, each Party may produce or list on any required privilege log only the most inclusive email threads.

Following production of most inclusive email threads, and for good cause, a receiving Party may make reasonable requests, with respect to most-inclusive email threads particularly identified in the requests, for metadata associated with individual prior or lesser-included emails within the identified most inclusive email threads. The Producing Party shall cooperate reasonably in responding to any such requests.

e.     **Metadata.** The Parties agree that metadata will be produced for all ESI, whether produced in Native Format or Static Image formats.  Appendix A sets forth the minimum metadata fields that must be produced to the extent that metadata exists for a particular document.  To the extent that metadata does not exist, is not reasonably accessible or available, or would be unduly burdensome to collect, nothing in this ESI Protocol shall require any party to extract, capture, collect or produce such data except the following, if available:  (a) BegBates, (b) EndBates, (c) BegAttach, (d) EndAttach, (e) AllCustodian, and (f) HashValue.  If metadata is redacted or withheld, the Producing Party will so inform the Requesting Party and record the redaction on any privilege log prepared by the Producing Party; redacted metadata shall be preserved.

f.     **Production of Documents in Native Format**.

1.     The processed native for all spreadsheets (*i.e.*, MS Excel, .CSV, or similar), and electronic information containing audio or video components should be produced and linked to the database by the metadata field "NativeLink."

2.      Presentation files will be processed to TIFF format showing comments, hidden slides, speakers' notes and similar data. In addition to TIFF images, native files will be provided for presentation files.  The native file will be named as the first Bates number of the respective document. The corresponding load file shall include native file link information for each native file that is produced.

3.      The Requesting Party may ask for certain other documents and/or databases initially produced in TIFF format to be produced in their native format in the event that the TIFF format is not reasonably usable.  The Requesting Party shall identify the documents by their Bates numbers and the documents should be produced in their unaltered native format.

4.      Where native files are produced in lieu of TIFF images, each native file will be assigned a unique Bates number. The Producing Party will produce a placeholder (a single-page TIFF slip sheet indicating that the native item was produced) along with the file itself in native format. The placeholder will be branded with the production number in the lower right hand corner and the phrase "PRODUCED IN NATIVE ONLY" branded in the center of the page. The Producing Party will also brand any confidentiality or similar endorsements in the lower left hand corner of the placeholder.

5.      If documents that the Parties have agreed to produce in native format need to be redacted, the Parties will use good-faith efforts to implement redactions while ensuring that proper formatting and usability are maintained and will meet and confer if any dispute arises. During the pendency of the litigation, an electronic copy of the original unredacted data shall be securely preserved in such manner so as to preserve without modification, alteration, or addition the content of such data (including any metadata

associated therewith).  The Parties agree that they shall use their good-faith best efforts to minimize redaction in order to preserve the intelligibility and usability of the unredacted portions of affected documents. Where the Requesting Party in good faith believes that redaction renders any unredacted portion of the document unclear or susceptible to misinterpretation, or deprives the reader of context necessary to a full and fair interpretation of the text, the Parties shall meet and confer in good faith in an attempt to resolve the issue.

g.      **Request for Native Files.** Other than as specifically set forth above, a Producing Party need not produce documents in native format. If good cause exists for the Requesting Party to request production of certain documents in native format, the Requesting Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format; and (2) an explanation of the need for reviewing such documents in native format. The Producing Party shall not unreasonably deny such requests. The Producing Party shall produce an overlay to ensure that the "NativeLink" entry in the data load file indicates the relative file path to each Native File in such production, and all extracted text and applicable metadata fields.

h.      **Password Protected Files.** The Parties will make reasonable efforts to ensure that all encrypted or password-protected Documents are successfully processed for review and production. To the extent encrypted or password-protected Documents are successfully processed, the Parties have no duty to identify further the prior encrypted status of such Documents.  To the extent such Documents are not successfully processed despite reasonable efforts, including reasonable efforts to obtain passwords, a placeholder TIFF image may be produced in place of each such Document indicating that security protection could not be removed.  Upon request from the Requesting Party, the Parties shall meet and confer in good faith regarding reasonable efforts

or mechanisms to remove such security protection or the production of available Metadata.

      i.      **Data Load Files**. Documents should be provided with an Opticon Cross-Reference File and Concordance data load file using standard Concordance delimiters.  All rows will contain the same number of delimiters and fields. The multi-value field delimiter must be consistent across all fields. For example, if the CC field contains semi-colons between email addresses, the Tag field should also contain semi-colons.  Concordance-compatible image and data load files should be provided in a "Data" folder. Parties have the option to exchange sample load files. If this exchange occurs, the Requesting Party will have 14 days to respond with load file change requests. Nothing in this Order will limit the parties from discussing load file changes throughout the course of the litigation.

      j.      **Deduplication**. "Duplicate ESI" means files that are exact duplicates based on the files' MD5 or SHA-1 hash values. A Party needs produce only a single copy of responsive Duplicate ESI. When the same Duplicate ESI exists in the files of multiple custodians, those persons shall be listed in the Custodian field. Entire document family groups may constitute Duplicate ESI. De-duplication shall not break apart families. Documents may be deduplicated at the family-group level provided that (i) only exact (bit-by-bit) duplicates are subject to deduplication; (ii) the Producing Party identifies the additional custodians in an Additional Custodian metadata field; and (iii) an email that includes content in the BCC or other blind copy fields shall not be treated as a duplicate of an email that does not include content in the BCC or other blind copy field, even if all remaining content in the email is identical.

      k.      **Production of Audio and Video Recordings**. If audio and/or video recordings are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the audio and/or video recording and/or, to the extent a Producing Party objects to

producing responsive audio and video recordings on grounds of undue burden, regarding the basis for the claim of undue burden.

l.   **Production of Transcripts**. If deposition or other transcripts are responsive, the parties should meet and confer to determine a mutually agreeable format for producing the transcripts.

m.   **Custodian or Originating Source**. The custodian or originating source shall be identified in the Custodian field of the database load files. Documents found in the possession of a natural person (or on a natural person's hardware or storage media) should be produced in such fashion as to identify the natural person. Documents found in the possession of a department, group, entity, or other common facility (*e.g.*, office, file room, archive, network storage, file share, back-up, hard drive, etc.) should be produced in such a fashion as to identify the department, group, entity, or facility. A Producing Party shall use a uniform description of a particular custodian across productions.

n.   **Color**. Documents containing color need not be produced in color in the first instance. However, if good cause exists for the Requesting Party to request production of certain documents in color, the Requesting Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format; and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests.

o.   **Foreign Language**. Foreign language text files and metadata should be delivered with the correct encoding to enable the preservation of the documents' original language.

p.   **Date Format**. Producing Parties shall make reasonable efforts to process all ESI with a single time zone and a date and time setting that is consistent across all of the Parties'

productions and shall make reasonable efforts for that time zone to be Eastern Standard Time or Greenwich Mean Time.  The Parties agree to meet and confer in good faith with regard to any issues arising from this aspect of production that may arise.

 q. **Production Media**. The preferred means of producing documents is via secure FTP or secure file share. However, documents may also be produced via CD, DVD, flash drive, or hard drive. To the extent possible, physical media should be protected before it is produced.

 r. **Naming Convention for Production Media**. Whether produced via secure FTP, file share, or physical media, the files produced should be combined into a compressed file such as .zip, .rar, etc. The compressed file should be named so as to indicate the Producing Party, the date of the production, and the sequence of the production (*e.g.*, "GLBR Production 20191010-001").

 s. **Replacement Productions**. Any replacement production will be transmitted with a cover letter or email to identify the production as a replacement and cross-reference the BegBates and EndBates of the documents being replaced. If the replacement production is being transmitted by physical media, the media shall include the phrase "Replacement Production."

 t. **Encrypted Data**. To the extent a production is encrypted before it is produced, the Producing Party shall contemporaneously transmit the credentials necessary to decrypt the data.

**VIII. ASSERTIONS OF PRIVILEGE**

 a. Subject to the principles of proportionality and reasonableness, Privilege Logs shall be provided containing the following information:

  1. a sequential number associated with each Privilege Log record;

  2. the date of the document;

  3. the Bates numbers of documents redacted;

4.      to the extent possible, the identity of all persons who sent, authored, signed or otherwise prepared the document, and identification of which of them are attorneys;

5.      to the extent possible, the identity of all persons designated as addressees or copyees and identification of which of them are attorneys;

6.      a description of the contents of the document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the document and the basis of the claim of privilege or immunity;

7.      the type or nature of the privilege asserted (*i.e.*, attorney-client privilege; work product doctrine).

| Privilege Log #/ Bates # | Date | Author | From or Sender | Recipient | CC | BCC | Privilege Log Description | Privilege |
|---|---|---|---|---|---|---|---|---|
|  |  |  |  |  |  |  |  |  |
|  |  |  |  |  |  |  |  |  |

b.      **Logging of Document Families.** Where multiple members of a document "family" (e.g., an email attaching a memorandum or other document, etc.) are withheld or redacted on the grounds of privilege, immunity or any similar claim, these families may be jointly logged as a single entry on the privilege log with an indication in the description field that describes the family relationship.  For document families in which fewer than all of the documents are withheld or redacted as privileged or protected, the privilege log entry for the withheld document(s) shall identify the Bates number of the produced family member.

c.      The following documents presumptively need not be included on a privilege log:

1.      Communications exclusively between a party and its outside counsel regarding this litigation; and

2.      Work product created by outside counsel, or by an agent of outside counsel other than a party, regarding this Action and created after commencement of this Action.

d.      In the interest of the parties' time, and to minimize litigation costs, the parties shall in good faith negotiate the exclusion of any other categories of documents that while technically responsive and privileged are relatively irrelevant to the issues in the litigation.  Should the creation of a Privilege Log become unreasonably burdensome, the parties shall in good faith negotiate an alternative approach.

## IX.     INADVERTENT DISCLOSURE OF ATTORNEY-CLIENT PRIVILEGED OR WORK-PRODUCT PROTECTED INFORMATION

a.      **Clawback Procedures**. If, in connection with the Action, information subject to a claim of attorney-client privilege or attorney work-product protection is inadvertently disclosed ("Inadvertently Produced Privileged Document"), the disclosure of the Inadvertently Produced Privileged Document is not a waiver or forfeiture of any claim of privilege or work product protection that a Party would otherwise be entitled to assert with respect to the Inadvertently Produced Privileged Document and its subject matter. Any claim regarding Inadvertently Produced Privileged Document shall be subject to the terms of the Confidentiality Order.  The producing Party should maintain unaltered copies of all such returned materials under the control of Counsel of record.

b.      **Limitations and Non-Waiver.**  Nothing in this Order limits the right of any Party to petition the Court for an *in camera* review of the Inadvertently Produced Privileged Document.

1.      This provision is procedural and return of materials pursuant to this Protocol is without prejudice to any substantive right to assert, or oppose, waiver of any protection against disclosure. Nothing in this Order limits the right of any Party to petition the Court

22

for an Order finding that disclosure was not inadvertent or that the holder of the privileged or protected information failed to take reasonable steps to prevent disclosure.

## X.   COST ALLOCATION

Pursuant to Federal Rule of Civil Procedure 26, the parties generally presume that the Producing Party bears all costs of preservation, retrieval, and production of its reasonably accessible ESI and there may be cost-sharing or cost-shifting, upon agreement of the Producing and Requesting Parties or upon proper motion and Order of the Court, as to ESI that is not reasonably accessible.

## XI.   THIRD PARTY DOCUMENTS

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this Protocol with the subpoena and state that the Parties to the litigation have requested that third Parties produce documents in accordance with the specifications set forth herein.  The Issuing Party shall produce any documents obtained pursuant to a non-Party subpoena to the other Parties. If the non-Party production is not Bates-stamped, the Issuing Party will brand the non-Party production images with unique prefixes and Bates numbers or otherwise identify native files prior to producing them to the other Parties per the technical specifications outlined in this Protocol. Nothing in this Protocol is intended to or should be interpreted as narrowing, expanding, or otherwise affecting the rights of the Parties or third Parties to object to a subpoena.

## XII.   AUTHENTICATION

The Parties will meet and confer regarding an authentication stipulation concerning documents produced in the Action.

Dated: November 4, 2019                     Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**              **KING & SPALDING LLP**

/s/ Phillip Kim                          /s/ Chelsea Corey
Phillip Kim                              Paul R. Bessette
Laurence M. Rosen                        Rebecca Matsumura
Joshua Baker                             500 West 2nd Street, Suite 1800
275 Madison Avenue, 34th Floor           Austin, Texas 78701
New York, New York 10016                 Tel: (512) 457-2000
Telephone: (212) 686-1060                Email: pbessette@kslaw.com
Fax: (212) 202-3827                      rmatsumura@kslaw.com
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com             Israel Dahan
Email: jbaker@rosenlegal.com             Evan Clair Ennis
                                         1185 Avenue of the Americas, 34th Floor
*Lead Counsel for Lead Plaintiffs*       New York, NY 10036
                                         Tel: (212) 556-2100
**WOLF HALDENSTEIN ADLER FREEMAN**       Email: idahan@kslaw.com
**& HERZ LLP**                           eennis@kslaw.com
Matthew M. Guiney
270 Madison Avenue                       Chelsea Corey
New York, NY 10016                       300 S Tryon Street, Suite 1700
Tel: (212) 545-4600                      Charlotte, NC 28202
Email: guiney@whafh.com                  Tel: (704) 503-2600
                                         Email: ccorey@kslaw.com
*Additional Counsel*
                                         *Attorneys for Defendants*

PURSUANT TO STIPULATION, IT IS SO ORDERED.


Dated: _____          _____
                                        Hon. Ronnie Abrams
                                        United States District Judge

## APPENDIX A: REQUIRED METADATA FIELDS

To the extent they are available, the File metadata values that are to be extracted and produced are [1]:

| Field Name | Sample Data | Description |
|---|---|---|
| FIRSTBATES | EDC0000001 | First Bates number of native file document/email |
| LASTBATES | EDC0000001 | Last Bates number of native file document/email **The LASTBATES field should be populated for single page documents/emails. |
| ATTACHRANGE | EDC0000001 - EDC0000015 | Bates number of the first page of the parent document to the Bates number of the last page of the last attachment "child" document |
| BEGATTACH | EDC0000015 | First Bates number of attachment range |
| ENDATTACH | EDC0000015 | Last Bates number of attachment range |
| PARENT_BATES | EDC0000001 | First Bates number of parent document/Email **This PARENT_BATES field should be populated in each record representing an attachment "child" document |
| CHILD_BATES | EDC0000002; EDC0000014 | First Bates number of "child" attachment(s); can be more than one Bates number listed depending on the number of attachments **The CHILD_BATES field should be populated in each record representing a "parent" document |
| CUSTODIAN | Smith, John | Email: Mailbox where the email resided Native: Name of the individual or department from whose files the document originated |
| FROM | John Smith | Email: Sender Native: Author(s) of document **semi-colon should be used to separate multiple entries |

---

[1] These metadata fields are as specified in the U.S. Securities Exchange Commission Production requirements (Rev 06/2019).

| TO | Coffman, Janice; LeeW [mailto:LeeW@MSN.com ] | Recipient(s) **semi-colon should be used to separate multiple entries |
|---|---|---|
| CC | Frank Thompson [mailto: frank_Thompson@cdt.co m] | Carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| BCC | John Cain | Blind carbon copy recipient(s) **semi-colon should be used to separate multiple entries |
| SUBJECT | Board Meeting Minutes | Email: Subject line of the email Native: Title of document (if available) |
| FILE NAME | BoardMeetingMinutes.do cx | Native: Name of the original native file, including extension |
| DATE_SENT | 10/12/10 | Email: Date the email was sent Native: (empty) |
| TIME_SENT/TIME_ ZONE | 07:05 PM GMT | Email: Time the email was sent/ Time zone in which the emails were standardized during conversion. Native: (empty) **This data must be a separate field and cannot be combined with the DATE_SENT field |
| TIME_ZONE | GMT | The time zone in which the emails were standardized during conversion. Email: Time zone Native: (empty) |
| LINK | D:\001\ EDC0000001.msg | Hyperlink to the email or native file document **The linked file must be named per the FIRSTBATES number |
| MIME_TYPE | D:\001\ EDC0000001.msg | The content type of an email or native file document as identified/extracted from the header |
| FILE_EXTENEN | MSG | The file type extension representing the email or native file document; will vary depending on the format |
| AUTHOR | John Smith | Email: (empty) Native: Author of the document |
| LAST_AUTHOR | Jane Doe | Email: (empty) Native: Last Author of the document |

| DATE_CREATED | 10/10/10 | Email: (empty)<br>Native: Date the document was created |
|---|---|---|
| TIME_CREATED_TIME_ZONE | 10:25 AM GMT | Email: (empty)<br>Native: Time the document was created including time zone<br>**This data must be a separate field and cannot be |
| DATE_MOD | 10/12/10 | Email: (empty)<br>Native: Date the document was last modified |
| TIME_MOD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last modified including the time zone<br>**This data must be a separate field and cannot be |
| DATE_ACCESSD | 10/12/10 | Email: (empty)<br>Native: Date the document was last accessed |
| TIME_ACCESSD/TIME_ZONE | 07:00 PM GMT | Email: (empty)<br>Native: Time the document was last accessed including the time zone<br>**This data must be a separate field and cannot be |
| PRINTED_DATE | 10/12/10 | Email: (empty) Native: Date the document was last printed |
| FILE_SIZE | 5,952 | Size of native file document/email in KB |
| PGCOUNT | 1 | Number of pages in native file document/email |
| PATH | J:\Shared\SmithJ\October Agenda.doc | Email: (empty)<br>Native: Path where native file document was stored including original file name. |
| INTFILEPATH | Personal Folders\Deleted Items\Board Meeting Minutes.msg | Email: original location of email including original file name.<br>Native: (empty) |
| INTMSGID | <000805c2c71b$75977050$cb 8306d1@MSN> | Email: The email header information<br>Native: (empty) |
| HEADER | Return-Path: <example_from@dc.edu> X-SpamCatcher-Score:1[X] Received:from[136.167.40.119] (HELO dc.edu) by fe3.dc.edu (CommuniGate Pro | Email: The email header information<br>Native: (empty) |

| | | |
|---|---|---|
| | SMTP4.1.8) with ESMTP-TLS id 61258719 for example_to@mail.dc.edu; Mon, 23 Aug 2004 11:40:10 - 0400 Message-ID: <4129F3CA.2020509@dc .edu> Date: Mon, 23 Aug 2005 11:40:36 -400 From: Taylor Evans <example_from@dc.edu> User-Agent:Mozilla/5.0 (Windows;U; Windows NT 5.1; en-US;rv:1.0.1) Gecko/20020823 Netscape/7.0 X-Accept-Language:en-us,en MIME-V ersion:1.0 To: Jon Smith <example_to@mail.dc.ed u> Subject:Business Development Meeting Content-Type: text/plain;charset=us-ascii; format=flowed Content-Transfer-Encoding:7bit | |

| MD5HASH | d131dd02c5e6eec4693d9a 069 8aff95c 2fcab58712467eab400458 3eb 8fb7f89 | MD5 Hash value of the document. |
|---------|------------------------------------------------------------------------|---------------------------------|
| OCRPATH | TEXT/001/EDC0000001.txt | Path to extracted text of the native file |

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November 2019, a true and correct copy of the foregoing **STIPULATION AND [PROPOSED] ORDER ESTABLISHING  THE PROTOCOL FOR THE PRODUCTION OF DOCUMENTS AND ELECTRONICALLY STORED INFORMATION ("ESI")** was served by CM/ECF to the parties registered to the Court's CM/ECF system.


/s/ Phillip Kim_____
Phillip Kim