# EXHIBIT 5



**U.S. COMMODITY FUTURES TRADING COMMISSION**
Three Lafayette Centre
1155 21st Street, NW, Washington, DC 20581
www.cftc.gov

Office of Proceedings

RECEIVED CFTC

Office of Proceedings
Proceedings Clerk
1:31 pm, Oct 16, 2019

|  |  |
|---|---|
| SHANNON D. O'BRIEN,<br>Complainant,<br><br>v.<br><br>FOREX CAPITAL MARKETS,<br>LLC, d/b/a FXCM,<br>Respondent. | *<br>*<br>*<br>*<br>*   CFTC Docket No. 17-R006<br>*   **Served electronically**<br>*<br>*<br>*<br>* |

## INITIAL DECISION &
## ORDER DISMISSING THE COMPLAINT

*Before:*       Kavita Kumar Puri, Judgment Officer
                Commodity Futures Trading Commission
                Washington, D.C.

*Appearances:*  Shannon O'Brien, *self-represented litigant*
                Syracuse, NY
                For Complainant

                William Johnson, Esq.
                Israel Dahan, Esq.
                King & Spalding LLP
                New York, NY
                For Respondent

Shannon O'Brien, appearing in this forum as a self-represented litigant and by way of a summary proceeding, seeks between $26,853 and $30,000 in damages for his "trading commissions" over the life of his account.[1] He alleges these losses

---

[1] *See* Compl. Schedule A. Complainant's actual purported trading commissions amount to $36,757.24, but he elected to limit his damages claim in order to use the summary

were caused by "the willful deception in connection with services rendered." Compl. Schedule A (Feb. 8, 2017). This deceptive practice is, according to Complainant, related to "[t]he utilization of HFT Co. as a liquidity provider," which posed a "conflict of interest" that was not disclosed. Compl. Schedule B (Feb. 24, 2017).

To substantiate these allegations, O'Brien attaches: (1) a schedule of his losses and commissions from 2012 through 2017; (2) an FXCM Summary Statement from November 29, 2012 through February 24, 2017; (3) an unattributed, undated article entitled *FXCM and CEO Drew Niv Banned from US: Full details of FXCM's several years of trading against customers;* (4) an article posted on the Zero Hedge blog entitled *Largest Retail FX Broker FXCM Banned By CFTC, Fined $7 Million For Taking Positions Against Clients* (Feb. 6, 2017); (5) and an alert from www.forexscamalerts.com entitled *FXCM Permanently Banned From The USA – Fined $7 Million* (August 29, 2017).

In its defense, FXCM produced FXCM's 10-K for the fiscal year ending December 31, 2014 (FXCM 2014 10-K); an FXCM client agreement, dated October 26, 2012 (FXCM Client Agreement); an FXCM Annual Report for 2010 (FXCM 2010 Annual Report); the Commodity Futures Trading Commission's Order Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act, Making Findings, and Imposing Remedial Sanctions, CFTC Dkt. No. 17-09 (Feb. 6, 2017) (CFTC Consent Order); and a declaration by Evan Milazzo, Chief Technology

---

decisional procedure. He elected to limit his damages even further in his Response to Respondent's Motion for Summary Judgment and Cross Motion for Summary Judgment (August 29, 2017).

2

Officer of FXCM from 2002 through December 2016, dated May 17, 2017, attesting that O'Brien received the best bid or offer available from FXCM's eligible liquidity providers, including trades in which HFT Co. (HFT) served as the liquidity provider.

After carefully considering the record, I am dismissing the Complaint.

## I. Summary of Parties and Proceedings

A. The Parties

Complainant Shannon O'Brien is a resident of Syracuse, New York. Although he does not state when and with what amount he opened an account with Respondent, he does attach a schedule of trading losses and commissions starting in 2012, Compl. Schedule A, as well as a statement summary from November 29, 2012 through February 24, 2017, Compl. Schedule B.

Respondent Forex Capital Markets d/b/a/ FXCM (FXCM) was registered with the Commission as a Futures Commission Merchant (FCM) and Retail Foreign Exchange Dealer (RFED), until March 10, 2017. *See* NFA Basic Research, *available at* https://www.nfa.futures.org/basicnet/Details.aspx?entityid=uy8vi7mVysc%3d&rn=N. On February 6, 2017, the Commission entered the CFTC Consent Order with FXCM finding, among other things, a conflict of interest existed from its "pay-for-flow" agreement with HFT. *See infra* at 5-6. In accordance with the settlement and Consent Order, FXCM has been permanently barred from registering with the Commission and NFA since March 10, 2017. *Id.*

3

B. Procedural History

O'Brien filed his Complaint on February 8, 2017, and a complaint supplement on February, 24, 2017. Respondent FXCM filed its Motion to Dismiss, Answer and Affirmative Defenses on May 19, 2017. Eugene Smith, Director of this Office, denied that Motion on June 22, 2017. Director Smith noted, however, that nothing prevented FXCM from refiling its motion once the case had been formally assigned to my docket. Respondent refiled its Motion to Dismiss on August 8, 2017, after the case was assigned to me for adjudication.

Discovery then commenced. O'Brien requested no discovery of FXCM before the discovery deadline, which was August 30, 2017. Notice of Summary Proceeding 4-5 (July 31, 2017). FXCM, in contrast, served interrogatories, requests for admission, and document requests on August 16, 2017. O'Brien did not answer these discovery requests except to append the three articles noted above and to enter a narrative response to FXCM's Motion to Dismiss.

In his response, O'Brien asserts that this forum is meant for "arbitration" and refers to me as the "arbitrator." O'Brien Response and Cross Motion for Dismissal at 1-2. He also implies that I am "in a position to know if HFT had the ability to 'see into' FXCM clients' existing positions." *Id.* He also states that the "crux of this proceeding will be . . . the lack of disclosures to customers, including [himself]," because "no rational person would ever place trades with a forex dealer wherein there was and did occur an undisclosed counter party." *Id.* at 2-3

4

After carefully reviewing the parties' discovery submissions and pleadings, I am converting Respondent's Motion to Dismiss into a Motion for Summary Disposition, *see* Commission Rule 12.310, and dismissing the Complaint.

## II. Background Regarding Commission's Settlement with FXCM

Although O'Brien never expressly relies on the CFTC Consent Order, the allegations disclosed in that Order underlie this case and the articles that O'Brien did produce as evidence. That CFTC Consent Order was entered into on February 6, 2017 upon an Offer of Settlement made by FXCM, among others. FXCM neither admitted nor denied the following findings or conclusions set forth in the CFTC Consent Order.

According to the CFTC Consent Order, from September 4, 2009 through at least 2014, FXCM represented to its customers that if they traded through FXCM's No-Dealing Desk platform, FXCM's role in the transaction would pose no conflict of interest because the risk of those trades would be borne by independent liquidity providers. CFTC Consent Order at 2. In other words, contrary to FXCM's traditional model in which FXCM took positions opposite its customers' trades (in essence betting against their trades), FXCM's No-Dealing Desk model claimed to eliminate the inherent conflict of interest between it as the forex broker and its customer by using third-party market makers (or liquidity providers). *Id.* at 3. In this No-Dealing Desk model, therefore, FXCM's role would be reduced to an impartial credit intermediary with no stake in the outcome of the trade. *See, e.g.*, Motion to Dismiss Ex. 1 (FXCM 2014 10K) at 73.

5

However, one of those "independent" third-party market-makers—HFT—was launched by FXCM. Not only was HFT started by FXCM, but it remitted monthly payments to FXCM totaling about 70% of the profits HFT generated trading through FXCM's retail trading platform. CFTC Consent Order at 2-4. In other words, according to the CFTC Consent Order, HFT was sharing most of the profits it earned on FXCM's platform with FXCM itself. These "pay-for-flow" arrangements between HFT and FXCM allowed HFT to capture the largest share of FXCM's trading volume. *Id.* at 6. The Commission found that this relationship between HFT and FXCM meant that FXCM did have a conflict of interest when customers were trading through its No-Dealing Desk platform, contrary to its customer disclosures. *Id.* at 6-8. The agreements between FXCM and HFT were discontinued sometime in 2014, though the precise time is not specified in the record. Motion to Dismiss at 9; CFTC Consent Order at 2.[2]

### III. Findings of Fact

FXCM charged O'Brien $0 in commissions before August 1, 2014. *See* Compl. Schedule A; Resp. Ex. 5 (Milazzo Decl. ¶¶ 6-7 (May 17, 2017)). O'Brien paid commissions on his trading activity only between October 27, 2014 and August 24, 2015, and those amounted to $36,750. *Id.* ¶¶ 6, 10 & Attachment A (O'Brien Account Summary). However, of those total commissions, $9,897 were charged on

---

[2] Although O'Brien does not raise NFA's simultaneous action against FXCM, NFA also issued a Complaint against FXCM, among others, on February 6, 2017—the same day the CFTC Consent Order was issued—that alleged substantially the same facts, as well as the settlement agreement FXCM entered into with NFA on the same day. As in the CFTC Consent Order, FXCM settled NFA's charges without admitting them.

6

the No-Dealing Desk using a liquidity provider other than HFT. *Id.* ¶ 11. This leaves $26,853 in commissions in which HFT took either side of the trade. *Id.* ¶ 12. And O'Brien received the best prices available from FXCM's liquidity providers, including HFT, to fulfill these trades on the No-Dealing Desk. *Id.* ¶¶ 14-16 & Attachments B-C.

## IV. Legal Analysis and Conclusions

Reading O'Brien's complaint both liberally and generously, he argues that his losses stemmed from FXCM's nondisclosure of its relationship with HFT. He essentially contends that he would not have suffered any losses because he would have never opened an account with FXCM had he known about the relationship between FXCM and HFT. O'Brien Response and Cross Motion at 3. Respondent counters that this case should be dismissed because O'Brien cannot demonstrate the elements of fraud. I find that O'Brien's evidence of misconduct is not admissible to prove that misconduct, and that he has therefore not proven, by a preponderance of the evidence, misconduct by FXCM that proximately caused any or all of his account losses.

   A. <u>Because the CFTC Consent Order and Articles Referencing the Order Do Not Constitute Evidence of Misconduct in This Reparations Matter, O'Brien Has Not Proved, by a Preponderance of the Evidence, Any Violation of the CEA that Proximately Caused Him Damages.</u>

In order to show fraud under the CEA, a complainant must show that respondent "willfully deceive[d] or attempt[ed] to deceive the other person by any means whatsoever." CEA § 4b(a)(2); 7 U.S.C. § 6b(a)(2)). This deceit must be proved by a preponderance of the evidence. *In re Citadel Trading Co.*, CFTC Nos.

7

77-8, 80-11, 1986 WL 66170, *9 (CFTC May 12, 1986) (noting judge must determine "what the preponderance of the evidence shows most likely did happen").

Here, however, O'Brien does not provide any supporting evidence for his claims of fraud and non-disclosure other than articles describing the CFTC Consent Order. But courts, including the Commission, have held that consent orders cannot be used as evidence in subsequent litigation because the consenting party has agreed to certain terms in exchange for the cessation of litigation—no court or adjudicatory forum has actually made any findings of fact as a result of litigation and the defendants neither admit nor deny the facts contained in those orders. *See e.g.*, *United States v. Armour & Co.*, 402 U.S. 673, 681-682 (1971) (holding courts cannot read consent decrees as if "plaintiff established factual claims and theories in litigation"); *In the Matter of Mates*, CFTC Dkt. No. 79-10, 1980 WL 15665 at *3 (CFTC Dec. 2, 1980) (finding that because respondent "consented . . . to a statement of finding and . . . certain sanctions solely for purposes of terminating the SEC action and without admitting any allegation of wrongdoing, [Commission] may not rely upon the order as evidence."); *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[A] consent judgment between a federal agency and a private corporation which is not the result of an actual adjudication of any of the issues [cannot] be used as evidence in subsequent litigation between that corporation and another party.").[3]

---

[3] This analysis does not address situations in which a settling party in fact admits the facts set forth in a Consent Order, which could constitute a public admission of wrongdoing.

8

In other words, no facts have been proven by the CFTC Consent Order where the settling party neither admitted nor denied the allegations. They therefore cannot be treated as proven facts in subsequent litigation. And if the CFTC Consent Order's allegations cannot be treated as facts, certainly the allegations contained in any articles describing that CFTC Consent Order cannot be admitted as facts in subsequent litigation.

Even assuming O'Brien had shown by a preponderance of the evidence that FXCM had deceived him, he has not shown that such deceit proximately caused him damages, as he must under 7 U.S.C. Section 18. "In determining whether proximate cause exists, the Commission looks . . . to whether the loss was a reasonably probable consequence of respondents' conduct." *Muniz v. Lassila*, CFTC No. 87-R395, 1992 WL 10629, *7 (CFTC Jan. 17, 1992) (internal quotation marks and citations omitted). But here there is no evidence that O'Brien's commissions were caused by FXCM's nondisclosure of its relationship with HFT other than O'Brien's assertion that he would not have invested with FXCM at all. And that assertion is weak. First, O'Brien received the best price with respect to his trades even when HFT was the liquidity provider, suggesting that the purported conflict of interest between HFT and FXCM had no adverse impact on his account. Given there was no adverse impact on his account, it is difficult to believe O'Brien nonetheless would have foregone doing all business with FXCM. Second, and more importantly, the purportedly inappropriate relationship between FXCM and HFT ceased some time in 2014, and all of O'Brien's supposed damages were incurred in

9

the period between October 27, 2014 and August 24, 2015. Without any evidence that the inappropriate relationship existed at the time his damages were incurred, non-disclosure of that relationship could not have caused those damages. In short, O'Brien's cursory response that he would not have invested with FXCM at all does not sufficiently tie his commissions (which is the measure of his damages) to the alleged nondisclosure by a preponderance of the evidence.

In fact, O'Brien never showed any intention to prosecute his claims in this reparations proceeding other than bringing to this Office's attention the CFTC Consent Order. He was expressly informed by the Office of Proceedings website that "*[t]he Judgment Officer will not investigate your case for you. You must collect and submit to the Judgment Officer* all information and evidence supporting your claim of a violation along with your calculation of damages." *See* https://www.cftc.gov/ConsumerProtection/reparationsprogram/index.htm. Despite this admonition, O'Brien failed to serve any discovery requests on FXCM, instead attempting to foist that responsibility on the Judgment Officer by arguing that the Judgment Officer would have better access to FXCM's records. But O'Brien never requested those records in the first place as he was both authorized and empowered to do. And he made no attempts to "prove any alleged violation proximately causing damages by a *preponderance of the evidence*" as this Office informed him he must. Notice of Summary Proceeding at 1 (July 31, 2017) (emphasis in original).[4]

---

[4] From his repeated reference to me as the "arbitrator" rather than "adjudicator" or "Judgment Officer," and his unwillingness to comply with the discovery requests submitted by FXCM, it appears he may have misunderstood the nature of these proceedings, despite having been notified of his burdens of proof and the procedures he was to use to meet those burdens.

10

## CONCLUSION

O'Brien's evidence of fraud is inadmissible and he has not proven a violation of the Commodity Exchange Act by a preponderance of the evidence. Even if he had, he has failed to show any nexus between that purported fraud and his damages by a preponderance of the evidence. Respondent's Motion to Dismiss is therefore GRANTED and O'Brien's case is DISMISSED.

Dated: October 16, 2019

_____
Kavita Kumar Puri
Judgment Officer