UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM, Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA |
| | CLASS ACTION |
| | ORAL ARGUMENT REQUESTED |
| This Document Relates To:  All Actions | |

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE REPORTS, TESTIMONY, AND OPINIONS OF JOHN E. BARRON

Israel Dahan
Peter Isajiw
Evan Ennis
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Tel:  (212) 556.2100
Fax: (212) 556.2200

Chelsea Corey
KING & SPALDING LLP
300 S. Tryon Street, Suite 1700
Charlotte, North Carolina 28202
Tel: (704) 503.2575
Fax: (704) 503.2622

*Attorneys for Defendants Global Brokerage, Inc. f/k/a/ FXCM, Inc., Dror Niv, and William Ahdout*

<u>**TABLE OF CONTENTS**</u>

PRELIMINARY STATEMENT ................................................................................. 1

BACKGROUND ..................................................................................................... 2

LEGAL STANDARD ............................................................................................. 5

ARGUMENT ......................................................................................................... 7

    I.     Barron's Factual Narrative Is Unhelpful And Should Be Excluded ..................... 7

    II.    Barron's VIE Opinions Are Unreliable And Should Be Excluded ...................... 8

          A.    Barron Does Not Follow The GAAP-Prescribed Methodology To Determine Whether VIE Consolidation And Disclosure Is Required ................................................................................................. 8

          B.    Barron's VIE Opinions Are Conclusory, Unsupported By The Factual Record, And Based On Speculation And Conjecture ................. 13

    III.   Barron's Related Party Opinions Are Conclusory And Inadmissible ................. 17

    IV.   Barron Usurps The Fact Finder In Opining On Materiality ................................ 18

    CONCLUSION ............................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                          **Page(s)**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
   303 F.3d 256 (2d Cir. 2002)..................................................................................................6, 8

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993)...................................................................................................5, 6, 8

*Feinberg v. Katz*,
   No. 01 CIV. 2739 (CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007)....................2, 18, 19

*In re Fosamax Prods. Liab. Litig.*,
   645 F. Supp. 2d 164 (S.D.N.Y. 2009).........................................................................6

*General Electric Co. v. Joiner*,
   522 U.S. 136 (1997)................................................................................................13

*Highland Cap. Mgmt., L.P. v. Schneider*,
   379 F. Supp. 2d 461 (S.D.N.Y. 2005)........................................................................7, 18

*Jarvis v. Ford Motor Co.*,
   No. 92 CIV. 2900 (NRB), 1999 WL 461813 (S.D.N.Y. July 6, 1999) ...................................6

*LinkCo, Inc. v. Fujitsu Ltd.*,
   No. 00 Civ. 7242, 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ...........................................7

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008).....................................................................................13

*Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*,
   No. 95 CIV. 3901,1999 WL 946354 (S.D.N.Y. Oct. 19, 1999) .................................................7

*Nimely v. City of N.Y.*,
   414 F.3d 381 (2d Cir. 2005).....................................................................................5, 13

*In re Rezulin Prod. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004).........................................................................7

*Ruggiero v. Warner-Lambert Co.*,
   424 F.3d 249 (2d Cir. 2005).....................................................................................6

*Taylor v. Evans*,
   No. 94 Civ. 8425, 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997)................................................7

*United States v. Dukagjini*,
   326 F.3d 45 (2d Cir. 2003).......................................................................................6

*United States v. Williams*,
    506 F.3d 151 (2d Cir. 2007)..............................................................................5

**Statutes**

Exchange Act Section 10(b) .................................................................................3

Exchange Act Section 20(a).................................................................................3

Fed. R. Evid. 403 .................................................................................................5

Fed. R. Evid. 702 .............................................................................................5, 6

Rule 10b-5............................................................................................................3

**Other Authorities**

ASC Topic 810, *Consolidation*............................................................................2

ASC Topic 850, *Related Party Disclosures* .......................................................3

Defendants Global Brokerage Inc. f/k/a FXCM Inc. ("FXCM" or the "Company"), Dror Niv and William Ahdout (collectively, "Defendants") respectfully submit this memorandum of law in support of their Motion to Exclude the Reports, Testimony, and Opinions of John E. Barron (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs proffer John E. Barron ("Barron") as an accounting expert and seek to rely on his two reports and deposition testimony to support their allegations that FXCM violated Generally Accepted Accounting Principles ("GAAP") during the Class Period by failing to (1) consolidate Effex Capital, LLC ("Effex") as a variable interest entity ("VIE") and make related disclosures or, in the alternative, (2) disclose Effex as a related party as well as make related party disclosures concerning FXCM's business relationship and transactions with Effex.  As detailed below, Barron's reports, testimony, and opinions should be excluded because the opinions he provides therein are conclusory, unhelpful to the trier of fact, and simply unreliable.

To begin with, nearly two-thirds of Barron's initial report is nothing more than his one-sided and misleading summary of background "facts" that are properly presented through percipient witnesses, rather than an individual with no first-hand knowledge.  Courts in this Circuit routinely exclude such extensive factual narratives by an expert witness.  But more significantly, Barron's actual opinions themselves are conclusory and unreliable.  In particular, Barron

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████ Similarly, Barron

rests his opinion ████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

1

████████████████████████████████████████████████████

████████████████████████████

Lastly, Barron seeks to offer opinions that would usurp the role of the fact finder. Specifically, Barron opines ████████████████████████████████████████████ ████████████████████ Opinions on materiality, a complex factual and legal question appropriately determined by the fact finder, are improper from an accounting expert. As one court put it, in a ruling that could be adopted for Barron's proposed opinion on materiality, Barron "manages in a single sentence to both usurp the trial judge's function of instructing the jury on the law and tell the jury what result to reach on the facts: a breathtaking *tour de force* of inadmissibility." *Feinberg v. Katz*, No. 01 CIV. 2739 (CSH), 2007 WL 4562930, at *26 (S.D.N.Y. Dec. 21, 2007).

Accordingly, for these reasons, the Court should grant Defendants' motion and exclude the reports, testimony, and opinions of Barron.

## **BACKGROUND**

GAAP is a set of accounting principles promulgated by the Financial Accounting Standards Board ("FASB"), an independent body designated by the SEC to set accounting standards for public companies. The Accounting Standards Codification ("ASC") is the source of GAAP for public companies. GAAP requires a company that has a controlling financial interest in another entity to consider whether that other entity must be consolidated into the company's financial statements. The authoritative guidance on the consolidation of VIEs is codified in ASC Topic 810, *Consolidation* ("ASC 810"). ASC 810 requires a multi-step analysis in order to conclude that an entity should be consolidated on a reporting entity's financial statements as a VIE. This multi-step analysis is further discussed below in Argument Section II.A, and also described in Exhibit 2 attached hereto. GAAP also requires that a company that has significant transactions with parties

that are related or are under common control make certain disclosures about those transactions. The authoritative guidance on related party disclosures is codified in ASC Topic 850, *Related Party Disclosures* ("ASC 850").

Plaintiffs claim that FXCM's public filings contained materially false and misleading statements and omissions in violation of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder, as well as Section 20(a) of the Exchange Act, based on, among other alleged disclosure violations, violations of GAAP. *See* ECF No. 181 ¶¶ 131-145. The Class Period as defined in Plaintiffs' Third Amended Complaint ("TAC") is March 15, 2012 to February 6, 2017. *Id.* ¶ 1. Plaintiffs have retained Barron to serve as their expert witness on matters relating to FXCM's compliance with GAAP. Barron submitted an expert report dated April 21, 2021 (the "Barron Report"), was deposed on June 7, 2021, and submitted a rebuttal report on July 12, 2021 (the "Rebuttal Report").

The large majority of Barron's Report is comprised of a lengthy factual narrative spanning from paragraph 18 to paragraph 114 of his 150-paragraph report. In that almost 100-paragraph factual narrative, characterized as ████████████████████████████████████ ████████████ Barron selectively summarizes documents and testimony that he believes are supportive of his opinions.

Regarding the VIE consolidation and disclosure issue, Barron opines that ██████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ Ex. 1, Barron Report

¶ 11.[1]  In support of this opinion, Barron concludes that █████████████████████████
████████████████████████████████████████████████████████████████████████████
██████████████████████  *Id.* ¶ 11.1.  Further, according to Barron, ████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

*Id.* ¶ 11.2.  Barron then concludes that, ███████████████████████████████████████
███████████████████████████████████████████████████████████  *Id.* ¶ 11.3.

       According to Barron, ████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████████

*Id.* ¶ 12.  Barron then qualifies this opinion by stating ███████████████████████████
████████████████████████████████████████████████████████████████████████████
████████████████████████  *Id.*  Significantly, financial statements related to the fiscal year ended
December 31, 2010 are **not** within the Class Period and Plaintiffs have not alleged those
disclosures to be misstated.

       Regarding the related party disclosure issue, Barron opines that █████████████████
████████████████████████████████████████  because ████████████████████████████████
████████████████████████████████████████████████████████████████████████████
███████████████████████████████████  *Id.* ¶ 7.  According to Barron, █████████████

---

[1] Citations to "Ex. __" are to the exhibits attached to the September 9, 2021 Declaration of
Israel Dahan in Support of Defendants' Motion to Exclude the Reports, Testimony, and Opinions
of John E. Barron.



*Id.* Further, Barron concludes that ███████████████████████████

██████████ *Id.* Barron then opines that ███████████████████ (*id.* ¶ 10), ███████████████████████████████████████████████ *Id.* ¶ 9.

## **LEGAL STANDARD**

The Federal Rules of Evidence require courts to serve as gatekeepers to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). Federal Rule of Evidence 702 governs whether an expert witness's testimony is admissible. It provides that proffered testimony is only admissible if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. "[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied[.]" *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007); *see also Nimely v. City of N.Y.*, 414

F.3d 381, 397 (2d Cir. 2005).  In addition, under Federal Rule of Evidence of 403, relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury."  Fed. R. Evid. 403.

With respect to the analysis as to whether an expert's opinions will be helpful to the trier of fact, it is improper for an expert to present "a narrative of the case" or "an historical commentary of what happened."  *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009) (expert not permitted "to merely read, selectively quote from, or 'regurgitate' the evidence") (citations omitted); *see also United States v. Dukagjini*, 326 F.3d 45, 54 (2d Cir. 2003) (explaining that parties cannot "unfairly provid[e] . . . an additional summation by having the expert interpret the evidence") (internal citations and quotations omitted).

Regarding reliability, this assessment "focuses on whether the reasoning or methodology underlying the testimony is scientifically valid.  The expert's testimony must be grounded in the methods and procedures of science and must be more than unsupported speculation or subjective belief."  *Jarvis v. Ford Motor Co.*, No. 92 CIV. 2900 (NRB), 1999 WL 461813, at *2 (S.D.N.Y. July 6, 1999).  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *see also Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005).

As demonstrated below, the opinions of Barron are neither helpful to the trier of fact nor reliable; thus, they should be excluded.

## ARGUMENT

### I.    Barron's Factual Narrative Is Unhelpful And Should Be Excluded

"[A]n expert cannot be presented to the jury solely for the purpose of constructing a factual narrative based upon record evidence."  *Highland Cap. Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d 461, 469 (S.D.N.Y. 2005).  Thus, courts in the Second Circuit routinely exclude extensive factual narratives by an expert that a "lay juror is equally capable of constructing."  *Taylor v. Evans*, No. 94 Civ. 8425, 1997 WL 154010, at *2 (S.D.N.Y. Apr. 1, 1997); *see also In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 551 (S.D.N.Y. 2004); *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551, at *1-*2 (S.D.N.Y. July 16, 2002); *Media Sport & Arts s.r.l. v. Kinney Shoe Corp.*, No. 95 CIV. 3901, 1999 WL 946354, at *3 (S.D.N.Y. Oct. 19, 1999).

In his Report, Barron provides a lengthy factual narrative—spanning more than 40 of its 68 pages—that ███████████████████████████████████████████ ██████████████████████████████████████████████████████ ███████████.  As Professor Linsmeier describes in his report, ███████████████ ██████████████████████████████████████████████████████ ███████████████████████████████████ █████████████████ ██████████████████████████████████████████████████████ ██████████████████████████████

Barron's lengthy background section (paragraphs 18 through 114 of the Report) is precisely the type of factual narrative courts routinely exclude because it is properly presented through percipient witnesses rather than through an expert.  In fact, "the glosses that [Barron] interpolates into his narrative are simple inferences drawn from uncomplicated facts that serve only to buttress plaintiffs' theory of the case."  *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 551 (finding plaintiffs' expert's testimony on the factual background to be inadmissible).

Moreover, Barron's incomplete and one-sided presentation of "facts," many of which are irrelevant to a GAAP analysis or outside the Class Period, is also likely to confuse or mislead a jury.  Thus, in accordance with well-established precedent, Barron's narrative of the facts should be found inadmissible under Federal Rules of Evidence 702 and 403.

## II.   Barron's VIE Opinions Are Unreliable And Should Be Excluded

### A.   Barron Does Not Follow The GAAP-Prescribed Methodology To Determine Whether VIE Consolidation And Disclosure Is Required

The Second Circuit has opined that "when an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony." *Amorgianos*, 303 F.3d at 266 (citation omitted).  Moreover, an expert's opinions and testimony should be excluded when he fails to adhere to the proper methodology for reaching those opinions.  *Id.* at 268-69 (affirming the district court's exclusion of expert testimony because the expert's opinion rested on faulty assumptions due to his failure to apply his stated methodology reliably to the facts of the case).

With respect to the applicable methodology for assessing GAAP compliance with VIE consolidation and disclosure standards, Barron recognizes that ASC 810, ████████████ ████████████████████████████████████████ Ex. 1, Barron Report ¶ 136.  As described in Professor Linsmeier's Expert Report, ████████████████████████ ████████████████████████████████████████████████████ ████ Ex. 2, Linsmeier Report ¶ 63.  The analytical steps to be performed are:

- First, is the entity considered for consolidation a VIE?

- Second, does the reporting entity have a variable interest in the VIE?

- Third, is the reporting entity the primary beneficiary of the VIE?

Although Barron recognizes ██████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████   *See, e.g., id.* ¶ 63.

Step One:  Is the Entity Considered for Consolidation a VIE?

The first step of the ASC 810 VIE analysis requires consideration of whether the entity considered for consolidation (here, Effex) is a VIE.  *See* Ex. 2, Linsmeier Report ¶¶ 38-43; Ex. 3, Barron Rebuttal ¶ 40.  This requires analysis of ██████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████   *See* Ex. 2, Linsmeier Report ¶ 38 and Ex. 1A.

In addressing this first step, Barron summarily concludes that ████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

███████████   Ex. 1, Barron Report ¶ 11.1.  This reductive and incomplete analysis is not supported by a substantive analysis of Dittami's equity at risk in Effex or the amount of equity investment that was sufficient to fund Effex's operations.

In order to properly analyze equity at risk one must consider the following:  ██████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████



See Ex. 2, Linsmeier Report ¶¶ 39, 40.  Barron makes no determination whatsoever ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████  In other words, Barron simply fails to perform a GAAP

analysis of equity at risk—a necessary step before making any conclusion regarding consolidation

under GAAP.[2]

Having failed to analyze the sufficiency of the equity that Effex's equity holders had at

risk, Barron also failed to analyze the equity holders' power and obligation to absorb losses and

receive returns.  Though Barron acknowledges ████████████████████████████████

████████ (Ex. 1, Barron Report ¶ 138), ████████████████████████.  In his Rebuttal

Report, ████████████████████████████████████████████████████████████

████████████████.  Ex. 3, Barron Rebuttal ¶ 63.  However, as noted above, Barron's analysis

of the equity at risk is insufficient, and given his failure to analyze Effex's equity holders' power

and obligation to absorb losses, Barron has no basis under GAAP to conclude that Effex was a

VIE.

---

[2] In his Rebuttal Report, Barron attempted to supplement his analysis by asserting that ████████
███████████████████████████████████████████████████████████████████████
████████████████████  Ex. 3, Barron Rebuttal ¶ 50.  Yet, this supplemental analysis offers no
actual support for Barron's opinions because ████████████████████████████████████████
████████████████████████████████████

Step Two:  Does the Reporting Entity have a Variable Interest In the VIE?

Assuming the entity is a VIE—which Barron has not shown—the second step of the ASC 810 analysis considers whether the reporting entity (here, FXCM) has a variable interest in the VIE (here, Effex, assuming it is a VIE in the first place).  Ex. 2, Linsmeier Report ¶¶ 44-45; Ex. 3; Barron Rebuttal ¶ 40. ████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ Ex. 2, Linsmeier Report ¶ 45; Ex. 3, Barron Rebuttal ¶ 65.

In his Report, Barron skips this step entirely.  Yet, in his Rebuttal Report, Barron concludes, ████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████ Ex. 3, Barron Rebuttal ¶ 66.  The Services Agreement, agreed to among FXCM and Effex, provides that:

████████████████████████████████████████████████████████

Ex. 5, March 1, 2010 Services Agreement; Ex. 6, May 1, 2010 Services Agreement.  How Barron is able to arrive at the conclusion that ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ (see Ex. 4, John E. Barron Deposition Transcript taken June 7, 2021 ("Barron Tr.") at 68:10-13), ████████████████  ████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████



██████████████████████████████████████████████ *See id.* at

68:14-69:17.

     Nonetheless, Barron attempts to argue that ███████████████████████

██████████████████████████████████████████████ Ex. 3,

Barron Rebuttal ¶ 68. ██████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████ Ex. 7, John Dittami

Deposition Transcript taken April 8, 2016 ("Dittami CFTC Tr.") at 83:21-84:18; Ex. 8, Affidavit

of John Dittami dated June 1, 2017 ("Dittami Affidavit") ¶ 13.  Further, as Barron acknowledged

at his deposition, ██████████████████████████████████████

█████ (*see* Ex. 4, Barron Tr. at 130:8-131:17)—███████████████████

██████████████████████████████████████ ███████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *See* Ex. 1, Barron Report ¶¶ 32, 47, 51, 58, 59; Ex. 3,

Barron Rebuttal ¶¶ 14, 68, 69.  Yet, Barron also asserts that ███████████████████

██████████████████████████████████████████████ Ex. 3,

Barron Rebuttal ¶ 33 (emphasis added).  And Barron acknowledged at his deposition that █████████

███████████████████████████████████ *See* Ex. 4, Barron Tr. at 69:2-10.

Simply put, Barron's conclusion ████████████████████████████████

[REDACTED]

[REDACTED]

Step Three:  Is the Reporting Entity the Primary Beneficiary of the VIE?

Assuming the reporting entity is shown to have a variable interest in a VIE, the final question under ASC 810 is whether the reporting entity is the primary beneficiary of the VIE.  *See* Ex. 2, Linsmeier Report ¶¶ 46-52; Ex. 3, Barron Rebuttal ¶ 40.  The relevant question is whether

[REDACTED]

[REDACTED]

[REDACTED]  Ex. 2, Linsmeier Report ¶ 47; Ex. 3, Barron Rebuttal ¶ 71.  [REDACTED]

[REDACTED]

[REDACTED]

[REDACTED]

**B.      Barron's VIE Opinions Are Conclusory, Unsupported By The Factual Record, And Based On Speculation And Conjecture**

Opinions that are conclusory, "without factual basis and . . . based on speculation or conjecture are . . . inappropriate material for consideration . . . ." *Major League Baseball Properties, Inc. v. Salvino*, *Inc.*, 542 F.3d 290, 311 (2d Cir. 2008); *see also Nimely*, 414 F.3d at 396-97. 2005.  Moreover, a court should disallow expert testimony where it concludes "there is simply too great an analytical gap between the data and the opinion proffered." *General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (citation omitted).  Barron's Report and Rebuttal Report are rife with conclusory opinions that are either entirely unsupported or directly contradicted by

documents or testimony that he fails to address.  Such conclusory opinions must be excluded as they are unreliable and misleading.

By way of example, in support of his opinion that FXCM was the primary beneficiary of Effex, Barron opines that ███████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ Ex. 1, Barron Report ¶ 145.  Yet, Barron fails to explain ████████████████████████████████████████████████████████ ████████████████████████████████████████ To the contrary, Dittami provided sworn testimony that:

> Since its inception, I have been the managing member and have made all major decisions regarding Effex. This includes, but is not limited to, hiring, admitting and expelling members, establishing banking relationships, determining employee and independent contractor compensation, handling tax matters, selecting office locations, client onboarding (including competitors of FXCM), vendor selection, prime broker selection and implementing measures to protect Effex's intellectual property ("Intellectual Property").
> . . .
> Effex's operations were never controlled by FXCM. In this regard, Effex: a. hired, fired and paid in excess of 30 employees and consultants; b. maintained its own independent bank accounts; c. independently capitalized its prime broker relationship; d. supplied all of its operating capital and risk capital; e. provided Forex ("FX") retail pricing and execution services to over 30 counterparts in addition to FXCM, including FXCM's competitors; f. owned and/or leased all of its computers, servers and other equipment; g. utilized its own confidential, proprietary trading software to facilitate all of its OTC Forex trades; h. owned managed, operated, maintained, updated and modified its own trading system; i. leased its own office space; j. had sole discretion to accept or reject trades; k. retained all of Effex's trading profits; l. assumed liability for all trading and operating losses and potential losses; m. filed its own tax returns; n. other than Dittami, no person or entity ever guaranteed any of Effex's obligations; and o. had no common employees with FXCM.

Ex. 8, Dittami Affidavit ¶¶ 9, 15.

Moreover, ███████████████████████████████████████████████████████ Barron states ████████████████████████████████████████████████████████████



Ex. 1, Barron Report ¶ 109 (emphasis added).   Again, Barron's

Ex. 9, John Dittami Deposition Transcript taken January 21, 2021 ("Dittami Tr.") at 158:2-161:2; Ex. 10, Dror Niv Deposition Transcript taken May 25, 2016 ("Niv CFTC Tr.") at 155:10-163:7.  Per this testimony,

*id.*  It is inexplicable how Barron could form a belief that

Further, in support of his opinion that

Ex. 1, Barron Report ¶ 144.  Once again, Barron's conclusion is unsupported.  Indeed, Barron

- Ex. 7, Dittami CFTC Tr. at 207:17–208:7.

- John Dittami gave sworn testimony that, "[w]ithin a few months [of its formation], Effex: (i) reimbursed FXCM for the [funds it had invested in the development of Effex's trading system] (in May 2010); (ii) ceased using the credit facility made available to Effex by FXCM through the above-referenced prime of prime customer account (in June 2010); (iii) entered into a prime broker agreement with Citibank (in July 2010); (iv) canceled the Note which guaranteed the credit made available to Effex by Citibank (in July 2010); and (v) commenced operations in Belfast, Ireland (October 2010)."  Ex. 8, Dittami Affidavit ¶ 7.

Thus, Dittami's testimony, which Barron does not meaningfully address in his Report,

███████████████████████████████████████████████████████████

███████████████████████

Similarly, in support of his conclusion that ████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████████████████ Ex. 1, Barron Report ¶ 150.  Even if

it were true that ██████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ Ex. 2, Linsmeier Report ¶ 30 (quoting FASB Concept

Statement No. 8).

Likewise, Barron claims that ██████████████████ (Ex. 1, Barron Report ¶ 7) and ██████

████████████████████ (*id.* ¶ 33).  When asked at his deposition about the basis for his

position that █████████████████████████████████████████████████████████

████████████████ Ex. 4, Barron Tr. at 136:9-10 (emphasis added).   Yet again, Barron's

███████████████████████████████████████████████████████████

█████████

- ████████████████████████████████████████ Ex. 9, Dittami Tr. at 42:21-43:3;

- ████████████████████████████████████ *Id.* at 43:7-10; and

- Provided a sworn statement that he "formed Effex as an independent forex liquidity provider to compete with other liquidity providers." Ex. 11, Reply Affidavit of John Dittami dated August 21, 2017 ("Dittami Reply Affidavit") ¶ 3.

Barron's Report does not meaningfully address this evidence. Barron's conclusory opinions are based on nothing more than speculation and conjecture, and, therefore, are misleading and unhelpful to the fact finder. Accordingly, these conclusory opinions should be excluded.

### III.  Barron's Related Party Opinions Are Conclusory And Inadmissible

Barron's opinion that ██████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████████ *See* Ex. 1, Barron Report ¶ 127. Barron's conclusory premise is based on his finding that: ██████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████

Barron, however, refuses to engage with the fact that certain of these findings are directly controverted by sworn testimony and documents, and that ███████████████████████ ████████████████████████ For example, as discussed above, ████████████████ ██████████████████████████████████████████ *See* Ex. 9, Dittami Tr. at 42:21-43:3; Ex. 7, Dittami CFTC Tr. at 30:7-9, 207:17-25. ███████████████████████████████████ ███████████ Ex. 7, Dittami CFTC Tr. at 41:24-43:15. In fact, ████████████████████ ████████████████████ Ex. 7, Dittami CFTC Tr. at 34:14-35:9 ██████████ ███████████████████████████████████████████████ Further, ███████████████████████████████████████████████████████████

 Ex. 12, Dror Niv Deposition Transcript taken February 11, 2021 ("Niv Tr.") at 121:23-122:4; Ex. 8, Dittami Affidavit ¶¶ 7, 15.  In other words, █████████████████████████████████████████████████ █████████████████████████████████████████ Finally, ████████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████████████ ████████████████████████████████ If that were the case, every small company with a significant contract would be transformed into a related party of its contractual counterparty. Furthermore, Barron ignores the fact that ████████████████████████████████ ███████████████████████████████████████████ *See* Ex. 12, Niv Tr. at 156:12-19.

Thus, the cornerstone of Barron's related party analysis is a conclusory opinion that is unsupported and, in fact, contradicted by the evidence.  Moreover, Barron's deliberate confusion of the relevant timeline and inability to provide opinions during the time period relevant to Plaintiffs' claims will profoundly confuse a jury and, coordinately, prejudice Defendants. Accordingly, Barron's related party opinions should be excluded under Rules 702 and 403.

## IV.   Barron Usurps The Fact Finder In Opining On Materiality

An expert's application of legal principles to the facts of the case, resulting in an opinion that the securities laws have been violated, "usurps the jury's role in finding the facts and applying those facts to the law as instructed by the court" and is the "type of expert testimony that is not permitted." *Highland Cap. Mgmt., L.P.*, 379 F. Supp. 2d at 470-71 (internal quotation marks and citation omitted).  For example, in *Feinberg v. Katz*, the court granted defendant's motion to exclude the testimony of the plaintiff's expert, a CPA, opining that defendants' alleged omissions

and misrepresentations from its financial statements were "material."  2007 WL 4562930, at *10.
As the court observed, "it is clear from [the expert's] report (stating that the alleged omission and
misrepresentations at issue are 'material'  . . . ) that he is applying legal principles to the facts of
the case . . . . [and] has crossed the line between a permissible conclusion as to an ultimate issue
of fact and an impermissible legal conclusion." *Id.* at *11.  Said differently, "[a]n expert witness's
opinion may not merely tell the jury what result to reach and it may not usurp the trial judge's
function of instructing the jury on the law." *Id.* at *7 (quotation marks and citations omitted).

As in *Feinberg*, Barron has provided an opinion ██████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████ Ex. 1, Barron Report ¶ 10 (emphasis added).  And
Barron's  opinion ███████████████████████████████████████████████
██████████████████████████████████████████   ████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
██████████████████████████████ *Id.* ¶ 12 (emphasis added).  Indeed, according
to Barron, ███████████████████████████████████████████████████████
███████████████████████████████████████████ *Id.* ¶ 13 (emphasis
added).  In offering these opinions Barron has entirely usurped the jury's role and has applied legal
principles  to  facts.    Paradoxically,  Barron  offers  these ██████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

███████████████████████████████████████ *Id.*

¶ 120.

Simply put, Barron's opinions ██████████████████████████

████████████████████████████████████████

█████████████████████████

## **CONCLUSION**

For all the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to exclude the Report, Rebuttal Report, testimony, and opinions of Plaintiffs' proffered accounting expert, John E. Barron.

Dated: September 9, 2021

KING & SPALDING LLP

*/s/ Israel Dahan*
Israel Dahan
Peter Isajiw
Evan C. Ennis
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Tel: (212) 556.2100
Fax: (212) 556.2200

Chelsea Corey
KING & SPALDING LLP
300 S. Tryon Street, Suite 1700
Charlotte, North Carolina 28202
Tel: (704) 503.2575
Fax: (704) 503.2622

*Attorneys for Defendants Global Brokerage, Inc. f/k/a/ FXCM, Inc., Dror Niv, and William Ahdout*