# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 17-CV-00916-RA-BCM |
| This Document Relates To: All Actions | CLASS ACTION |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT JOHN BARRON

# **TABLE OF CONTENTS**

I.  INTRODUCTION ................................................................................................. 1

II.  LEGAL STANDARD ........................................................................................ 3

III.  ARGUMENT ..................................................................................................... 4

A.  Barron is Qualified to Offer His Opinions as an Accounting Expert ................................... 4

B.  Barron's Factual Narrative Is Appropriate and Necessary to Explain the Basis for His Expert Opinions ................................................................................................. 5

i.  Barron's Presentation of the Facts Supporting His Opinions Is Proper ............................. 6

ii.  The Applicable GAAP, SEC Rules and Other Professional Guidelines Required Barron to Consider Relevant Evidence ................................................................................. 9

C.  Barron's Accounting Opinions are Reliable, Supported by Evidence, Likely to be Helpful to the Factfinder, and Should Be Admitted ........................................................ 12

i.  Barron's VIE Opinions are Supported by Evidence and Reasonable Inferences from Evidence in the Record and Grounded in Extensive Experience and Subject-Matter Expertise ......................................................................................................... 12

ii.  Barron's VIE Opinions Apply and Are Supported by U.S. GAAP ................................. 14

1.  Barron Systematically Analyzed Relevant Guidance on U.S. GAAP to Determine that Effex was a VIE ................................................................................................ 14

2.  Barron's Conclusion that Effex Should have been Consolidated and Reported as a VIE is Supported by the Evidence ................................................................................. 17

D.  Barron's Conclusion That FXCM Should Have Disclosed Effex and Dittami as Related Parties Is Supported by Ample Evidence and  Informed by Barron's Extensive Experience 20

E.  Barron Is Qualified to Opine on Materiality under U.S. GAAP, and Such Opinion Will Assist the Factfinder in Ascertaining Materiality of Defendants' Misstatements Under the Securities Laws ................................................................................................ 22

IV.  Conclusion ......................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ajala v. W.M. Barr & Co., Inc.*,
  No. 16-CV-2615 (VEC), 2018 WL 6322147 (S.D.N.Y. Dec. 4, 2018).......................................20

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
  303 F.3d 256 (2d Cir. 2002)...........................................................................................3, 16

*Borawick v. Shay*,
  68 F.3d 597 (2d Cir. 1995).............................................................................................3, 16

*Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*,
  239 F.3d 179 (2d Cir. 2001)...........................................................................................3, 16

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993)........................................................................................2, 3, 16, 21

*Feinberg v. Katz*,
  No. 01 CIV. 2739(CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007)...................................22

*Highland Cap. Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005).......................................................................................8

*In re Joint E. & S. Dist. Asbestos Litig.*,
  52 F.3d 1124 (2d Cir. 1995)......................................................................................................3

*In re REMEC Inc. Sec. Litig.*,
  702 F. Supp. 2d 1202 (S.D. Cal. 2010).....................................................................................7

*In re Rezulin Prod. Liab. Litig.*,
  309 F. Supp. 2d 531 (S.D.N.Y. 2004)...............................................................................4, 7, 8

*Katt v. City of New York*,
  151 F. Supp. 2d 313 (S.D.N.Y.2001)........................................................................................3

*Koch v. Koch Indus., Inc.*,
  2 F. Supp. 2d 1385 (D. Kan. 1998).........................................................................................24

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)........................................................3

*LinkCo, Inc. v. Fujitsu Ltd.*,
  No. 00 CIV 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002).....................................8

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
  97 F. Supp. 3d 485 (S.D.N.Y. 2015).........................................................................................5

*McCullock v. H.B. Fuller Co.*,
  61 F.3d 1038 (2d Cir. 1995)......................................................................................................3

*Micro Chem., Inc. v. Lextron, Inc.*,
   317 F.3d 1387 (Fed. Cir. 2003)....................................................................................... 7

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
   691 F. Supp. 2d 448 (S.D.N.Y. 2010)....................................................................... 4, 5

*Pinterest, Inc. v. Pintrips, Inc.*,
   2015 WL 2268498 (N.D. Cal. May 14, 2015) .............................................................. 5

*S.E.C. v. Johnson*,
   525 F. Supp. 2d 70 (D.D.C. 2007) ............................................................................ 6, 7

*Scentsational Techs., LLC v. Pepsi, Inc.*,
   No. 13-cv-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ......................... 5

*SEC v. Conaway*,
   2009 WL 1583546 (E.D. Mich. June 5, 2009)........................................................... 24

*Sec. & Exch. Comm'n v. Ferrone*,
   163 F. Supp. 3d 549 (N.D. Ill. 2016) ........................................................................ 23

*Silverman v. Motorola, Inc.*,
   798 F. Supp. 2d 954 (N.D. Ill. 2011) ........................................................................ 23

*Taylor v. Evans*,
   No. 94 CIV. 8425 (CSH), 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ......................... 8

*TSC Industries v. Northway, Inc.*,
   426 U.S. 438 (1976).................................................................................................. 23

*U.S. S.E.C. v. Snyder*,
   No. CIVA H-03-04658, 2006 WL 1806164 (S.D. Tex. June 29, 2006)...................... 24

*United States Sec. & Exch. Comm'n v. ITT Educ. Servs., Inc.*,
   311 F. Supp. 3d 977 (S.D. Ind. 2018) ...................................................................... 22

*United States v. Martoma*,
   993 F. Supp. 2d 452 (S.D.N.Y. 2014)....................................................................... 23

*Wechsler v. Hunt Health Sys.*,
   381 F.Supp.2d 135 (S.D.N.Y. 2003).......................................................................... 6, 7

## **Rules**

Fed. R. Evid. 104(a)....................................................................................................... 3

Fed. R. Evid. 702 ...................................................................................................... 3, 4, 5

Fed. R. Civ. Proc. 702 .................................................................................................... 3

## **Other Authorities**

Amendments to the Conceptual Framework for Financial Reporting, "Amendments to Statement of
   Financial Accounting Concepts No. 8," dated August 2018 ....................................... 22

*Division of Corporation Finance - Financial Reporting Manual*, Topic 9, § 9610 (SEC 2008)..... 11

Staff Accounting Bulletin No. 99 .................................................................................... 22

## I.  INTRODUCTION

Defendants' entire motion to exclude John Barron ("Barron") rests on an array of false premises. In response to Barron's expert opinions that ███████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████ Defendants assert that Barron's methodology is "unreliable" and "usurps" the fact-finder. Their arguments are rooted in misreading of Barron's reports and testimony, misunderstanding of the technical subject matter, and misidentification and misapplication of the applicable law.

Barron ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████ Defendants assail these conclusions on the ground that Barron fails to credit Defendants Niv and Ahdout and Dittami's own self-serving, *post hoc* statements, prepared strictly in contemplation of and in the course of litigation charging each of them with fraud —unsupported by the contemporaneous documentary evidence and, indeed, in contravention of it.

Defendants' next argument—that Barron's conclusions regarding materiality "usurp" the fact-finder—is rooted in their own gross conflation of the ***accounting*** concept of materiality with the ***legal*** standard of materiality. ███████████████████████████ ████████████████████████████████████   ████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████ Preparers
and auditors of financial statements make such judgments routinely in determining whether
accounting treatments may cause financial statements to be materially misstated under GAAP. The
determination of materiality in the context of an audit of financial statements is a critical step in
designing the scope and nature of audit procedures to be performed by the auditor. The guidelines
for determining materiality with respect to financial statements are based on SEC rules and
regulations, GAAP, and PCAOB standards—highly technical and specialized subject matter,
which is *not* within the realm of common knowledge and experience of the average juror.
Accountants and auditors—including Mr. Barron—apply these standards to make determinations
regarding accounting materiality on a daily basis. Such determinations are wholly within the scope
of Barron's expertise, and such expertise is necessary and appropriate to assist the jury in engaging
with such complex subject matter.

Defendants do *not* challenge Barron's decades of relevant experience. They do *not*
challenge his qualifications or his expertise in accounting, and specifically in the interpretation
and application of GAAP and auditing standards. They do *not* claim that the documents he
reviewed, including FXCM's own documents and internal emails and information obtained from
FXCM's own annual and quarterly reports to the SEC, are not relevant to an evaluation of whether
FXCM's alleged misstatements were material. They simply object to the substance of his
conclusions.

Barron's expert reports and testimony are relevant, likely to be useful to the factfinder, and rooted in reliable methodology under GAAP. This Court should summarily deny Defendants' ill-conceived and ill-founded motion to exclude them.

## II.    LEGAL STANDARD

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 596 (1993), the Supreme Court established a liberal approach to admitting expert testimony. Expert testimony will be admitted if it is both relevant and reliable. *Id.* at 594-95. "The focus [of the *Daubert* analysis] must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Civ. Proc. 702 (Adv. Cmte. Notes to 2000 Amendments).

This Court's gatekeeping function applies not only to proffered scientific expert testimony, but also to "testimony based on `technical' and `other specialized' knowledge." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *see also, Katt v. City of New York,* 151 F. Supp. 2d 313, 353-57 (S.D.N.Y.2001). In this role, district judges have broad discretionary authority "to determine [the] reliability [of an expert's testimony] in light of the particular facts and circumstances of the particular case." *Kumho,* 526 U.S. at 158.

"The 'admissibility' and 'sufficiency' of scientific evidence necessitate different inquiries and involve different stakes. Admissibility entails a *threshold* inquiry over whether a certain piece of evidence ought to be admitted at trial." *In re Joint Eastern & Southern District Asbestos Litigation,* 52 F.3d 1124, 1132 (2d Cir. 1995) (emphasis in original); *see* Fed.R.Evid. 104(a). Rule 702 of the Federal Rules of Evidence and *Daubert,* discussed below, govern the admissibility of

expert testimony. The trier of fact, on the other hand, is tasked with considering the sufficiency, or weight, of admitted expert testimony, and does so only after an opponent has an opportunity to challenge the expert testimony with "vigorous cross-examination, presentation of contrary evidence," and summation. *Daubert,* 509 U.S. at 596, 113 S. Ct. 2786; *Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir.2002); *Campbell v. Metropolitan Property & Casualty Ins. Co.,* 239 F.3d 179, 186 (2d Cir.2001) ("[T]he weight of the evidence is a matter to be argued to the trier of fact...."); *Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir.1995) ("[T]he Court [in *Daubert*] expressed its faith in the power of the adversary system to test shaky but admissible evidence." (internal quotations omitted)); *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir.1995) ("[Defendant's] quibble with [plaintiff's expert's] academic training ... and his other alleged shortcomings ... were properly explored on cross-examination and went to his testimony's weight.")

## III.   ARGUMENT

### A.  Barron is Qualified to Offer His Opinions as an Accounting Expert

Barron is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC,* 691 F. Supp. 2d 448, 479 (S.D.N.Y. 2010).

---

[1] See Curriculum Vitae of John E. Barron ("Barron CV"), attached as Exhibit A to the Expert Report of John E. Barron, CPA (the "Barron Rep."), which is itself attached as Exhibit 1 to the Declaration of Israel Dahan in Support of Defendants' Motion to Exclude the Reports, Testimony, and Opinions of John E. Barron (ECF No. 240-1), pp. 71-74.

███████████████████████████████████████████████████████

████████████████████████████████. Barron Rep. ¶¶14-16. Given his extensive

knowledge, skill, experience, training and education in the accounting field, Barron is qualified

to give the opinions that he has proffered in this action. Particularly so in light of the "liberal

view of the qualification requirements of Rule 702" in the Second Circuit. *In re Rezulin Prods.*

*Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004).

### B. Barron's Factual Narrative Is Appropriate and Necessary to Explain the Basis for His Expert Opinions

Defendants criticize Barron's comprehensive presentation of the evidence that forms the

basis of, and supports, his expert opinions in this matter. Memorandum of Law in Support of the

Defendants' Motion to Exclude the Testimony of John Barron (ECF No. 238) ("Mot.") at 7-8.

But defendants' contention that Barron is improperly "narrating" evidence is wrong because his

accounting opinions are intertwined with and based upon his analysis of the facts and

circumstances. *Pension Committee of U. of Montreal Pension Plan v. Banc of America*

*Securities, LLC.*, 691 F. Supp.2d 448, 468, n.113 (S.D.N.Y. 2010) ("To the extent that Weiser's

testimony is intertwined with his opinions about the adequacy of Plaintiffs' due diligence, such

testimony will not constitute impermissible factual narrative."). To be admissible, Rule 702

requires expert opinion testimony to be both "***based on sufficient facts or data***" and to apply

"the principles and methods ***to the facts of the case***." Fed. R. Evid. 702. By anchoring his

accounting and disclosure opinions to the facts pertinent to those opinions, Barron has done

exactly what the Federal Rules require.[2] Courts in this district have previously acknowledged

---

[2] *See also Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 507 (S.D.N.Y. 2015)
("While a juror may be able to understand each individual source that Matlins cites, Matlins 'synthesizes
this material and pulls together common themes in reaching his conclusions.'"); *Pinterest, Inc. v. Pintrips,
Inc.*, 2015 WL 2268498, at *3 (N.D. Cal. May 14, 2015) ("[An] expert witness is permitted to compile

that experts may, often must, and do rely on facts and state them in their report. *Scentsational Techs., LLC v. Pepsi, Inc., at al.,* 2018 WL 1889763, at *4 (Forrest, J.) ("It is certainly the case that an expert may and often must rely on facts—and that the expert will state them in a report.").

The documents relied on in his reports are the same type of documents that Barron has relied upon in the past to make determinations as an auditor and as an expert witness. Defendants' rebuttal expert, Dr. Thomas Linsmeier, relies upon the same types and sources of evidence to support his own analysis and incorporates a similarly detailed narrative of facts and documents considered—he simply structures his report differently to incorporate this narrative throughout, mainly through voluminous footnotes. See, Expert Report of Thomas Linsmeier, Ph.D. ("Linsmeier Rep.")[3], ¶¶ 68-92, 99-103, 109, 115-117. Defendants (and Dr. Linsmeier) thus tacitly acknowledge that this means and mode of analysis are valid and reliable.

### i.  Barron's Presentation of the Facts Supporting His Opinions Is Proper

Defendants claim that Barron's "lengthy factual narrative" "cherry picks deposition testimony and documents out of context" and "ignores other sworn testimony", and summarized facts that Defendants contend are "wholly immaterial," and should therefore be excluded. They suggest that courts in this Circuit "routinely exclude" factual narratives that a "lay juror is equally capable of constructing," citing several cases. Upon closer examination, none of the cases they cite actually support the relief they request.

Defendants' assertions of "cherry-picking" and relying upon "immaterial" evidence misses the mark. The court in *S.E.C. v. Johnson,* 525 F. Supp. 70, 75 (D.D.C. 2007), was confronted with a strikingly similar argument to that offered by Defendants here—alleging the

---

documents, even materials that a lay person would understand, and then explain how those materials inform and support his or her expert opinions.").
[3] Attached as Exhibit 2 to the Declaration of Israel Dahan in Support of Defendants' Motion to Exclude the Reports, Testimony, and Opinions of John E. Barron (ECF No. 240-2)

plaintiff's accounting expert "failed to reliably apply a cognizable methodology", "cherry-picking" evidence relied upon, and ignoring evidence that the defendant's counsel proffered as contrary. The court there correctly recognized that these arguments presented questions for the jury. "Failing to review all relevant evidence is not a ground for excluding [an expert's] testimony; rather, it provides subject matter for cross-examination. In short, Defendants' arguments 'go to the weight of [the expert's] testimony rather than the admissibility.'" *S.E.C. v. Johnson* (quoting *Wechsler v. Hunt Health Sys.,* 381 F.Supp.2d 135, 144-45 (S.D.N.Y. 2003). In another striking parallel, the *Johnson* defendants argued that plaintiffs' expert impermissibly usurped the jury by reaching "witness and evidentiary credibility determinations." *Id.* at fn. 6. The court likewise rejected this argument: "Although Defendants' criticism is couched in terms of [the expert's] invading the jury's province by making credibility determinations, ***in fact, Defendants are attacking the evidence he relied upon in reaching his conclusions***. … It is not grounds for exclusion that he evaluated the credibility of the evidence in reaching his conclusions…" *Id.* (emphasis added). Similarly, the *Johnson* court rejected the suggestion that an expert should be excluded for relying upon evidence that the defendants deemed immaterial. "It is for the jury, not the Court, to determine whether his opinions are suspect because facts upon which he relied were shown to be inaccurate or unproven." *Id. See  Micro Chemical, Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed.Cir.2003) ("[w]hen, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony"); *Wechsler,* 381 F.Supp.2d at 144-45 (rejecting exclusion of an expert based on his purported reliance on "the wrong documents").

Defendants' reliance upon Judge Kaplan's opinion in *In re Rezulin Prod. Liab. Litig*., 309 F. Supp. 2d 531 (S.D.N.Y. 2004), is misplaced. Mot. at 7. In *Rezulin*, the experts admitted their

opinions were based on their personal, subjective views, *Rezulin* at 543; here Barron ███████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

Barron Rep., ¶¶ 18 – 114. ███████████████████████████████████████

██████████████████████ Barron Rep., ¶¶ 115 – 126 and 136 – 142. He then applies the

applicable standards to the relevant facts and circumstances. Barron Rep., ¶¶ 127 – 135 and 143

– 150. This approach is sound, reliable and exactly how an expert should reach admissible

opinions, as numerous other courts have found in admitting similar accounting testimony. *See,*

*e.g.*, *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010) (admitting

accountant's report because it "explains precisely why he believes REMEC used inappropriate

assumptions and then supports his reasons for selecting alternative inputs" and overruling in

connection with summary judgment "[d]efendants' laundry list of evidentiary objections").

Furthermore, in *Rezulin*, this Court excluded the experts' opinions on ethics because they were

not relevant to the principal issue in that case - an issue not present here. *Rezulin*, 309 F. Supp. at

544.

Likewise inapposite is *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551,

(S.D.N.Y. July 16, 2002), where the court excluded a putative software expert because the expert

report failed to address "technical questions that may be difficult for a juror to comprehend," and

stated ultimate legal conclusions. With respect to the witness's narrative, the court held only that

where the "report [did] no more than counsel [would] do in argument, i.e. propound a particular

interpretation of [defendant's] conduct," this would not provide an *independent justification* for

the admission of expert testimony. *Id.* at *2-*3. Likewise, the court excluded a putative expert on

intellectual property licensing negotiations, on grounds that he offered impermissible opinions on

ultimate questions of law and failed to offer any expertise that would assist the jury in

determining an issue of fact "outside common understanding." *Id.* at \*3-\*4.[4]

      ii. **The Applicable GAAP, SEC Rules and Other Professional Guidelines Required Barron to Consider Relevant Evidence**

The facts and circumstances presented within Barron's report provide the basis for his

opinions under GAAP, ████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████

██████████████████████████████████████

█████████████████████████████████████████ Barron Rep. ¶125.

██████████████████████████████████████████████████████

██████████████████████████████████████████

---

[4] The other authorities Defendants offer are taken wholly out of context and offer no support for Defendants' positions. *Highland Cap. Mgmt., L.P. v. Schneider,* 379 F. Supp. 2d 461 (S.D.N.Y 2005) held only that an expert cannot be presented for the *sole purpose* of "constructing a factual narrative based on the record evidence", relying in part upon *Rezulin.* "While an expert *must of course rely on facts or data in formulating an expert opinion*… an expert cannot be presented to the jury *solely for the purpose* of constructing a factual narrative based upon record evidence." (emphases added) In *Taylor v. Evans*, No. 94 Civ. 8425, 1997 WL 154010, (S.D.N.Y. Apr. 1, 1997), the experts' report was filled with "baldly stated legal conclusions" and lay matters. *Id.* at \*1-\*2. ("Virtually all of Wayburn's report falls into one of these categories, either setting forth opinions on whether defendants violated a legal standard or presenting a narrative of the case which a lay juror is equally capable of constructing."). Neither is applicable here.
[5] Attached as Exhibit 203 to the Declaration of Joshua Baker ("Baker Decl."), filed contemporaneously herewith.

███████████████████████████████████████████████

████ Barron Rep. ¶126, quoting ASC 850-10-10-1. █████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

Barron Rep. ¶¶138 and 140, quoting ASC 810, 810-15-14, 810-10-20, 810-10-05-8A and ASC 810-10-25-38A. These are fact-intensive inquiries and Barron's analysis of facts pertinent to his assessment is no ground for exclusion.

With respect to the relevant issues of materiality, consolidation of variable interest entities, and of related party disclosures, the need to consider facts and circumstances when making these determinations is fundamental to financial reporting under GAAP.[6]

---

[6] The requirement to base accounting judgments on pertinent facts and circumstances appears throughout U.S. GAAP and SEC Guidance, including in connection with evaluation of materiality, variable interests, and related-party transactions:

- The predominant view is that materiality judgments can properly be made only by those *who have all the facts*. SAB 99/ASC 250-10-S99-1.
- *[A]n assessment of materiality requires that one views the facts in the context* of the 'surrounding circumstances,' as the accounting literature puts it, or the 'total mix' of information. SAB 99/ASC 250-10-S99-1.

- ***Judgment, based on consideration of all the facts and circumstances, is needed to distinguish substantive terms, transactions, and arrangements from nonsubstantive terms, transactions, and arrangements***. ASC 810-10-15-13B
- The determination of whether an implicit variable interest exists ***is a matter of judgment that depends on the relevant facts and circumstances***. ASC **810-10-25-52**
- The reporting entity shall consider whether it holds an implicit variable interest in the VIE or potential VIE. ***The determination of whether an implicit variable interest exists shall be based on all facts and circumstances*** in determining whether the reporting entity may absorb variability of the VIE or potential VIE. ASC 810-10-25-54
- The identification of a primary beneficiary, if any…***is based solely on the specific facts and circumstances presented***. ASC 810-10-55-94
- The design of the legal entity (for example, its capital structure) and the apparent intentions of the parties that created the legal entity are important qualitative considerations, as are ratings of its outstanding debt (if any), the interest rates, and other terms of its financing arrangements. ***Often, no single factor will be conclusive and the determination will be based on the preponderance of evidence.*** ASC **810-10-25-47**
- Transactions that because of their nature may be indicative of the existence of related parties include… ***[b]orrowing or lending on an interest-free basis or at a rate of interest significantly above or below market rates prevailing at the time of the transaction… [and] [m]aking loans with no scheduled terms for when or how the funds will be repaid***. Statement on Auditing Standards ("AU") 334.03

(emphases added).

The SEC concurs; in its financial reporting manual for evaluating a related party transaction:

- Disclosure of the following may be necessary, where related party transactions are material:
    1. ***The business purpose of the arrangement***;
    2. ***Identification of the related parties*** transacting business with the registrant;
    3. ***How transaction prices were determined*** by the parties;
    4. If disclosures represent that transactions have been evaluated for fairness, a description of how the evaluation was made; and
    5. ***Any ongoing contractual or other commitment*** as a result of the arrangement.

- Consideration should also be given to whether disclosure is necessary about parties that fall outside of the definition of "related parties" … but ***with whom the registrant has a relationship that enables the parties to negotiate terms of material transactions that may not be available for other, more clearly independent, parties on an arm's-length basis***. An example of this type of entity might be a company established and operated by former management of the registrant.

*Division of Corporation Finance - Financial Reporting Manual*, Topic 9, § 9610 (SEC 2008)(relevant excerpts attached as Exhibit 202 to the Baker Decl.); citing ASC 850-10-50-5 and ASC-MG (emphases added).

Accordingly, Barron properly analyzed documents detailing the course of dealing between FXCM and Effex to reach conclusions ████████████████████████████████

███████████████████████████████████████████████████████████████████████

███████████████████████████████ Barron's factual analysis is proper, and indeed required, under GAAP. ██████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████

As Barron articulated in his Report, ██████████████████████████████████████

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████ Barron. Rep. ¶¶119-120 (emphasis added).

**C. Barron's Accounting Opinions are Reliable, Supported by Evidence, Likely to be Helpful to the Factfinder, and Should Be Admitted**

    **i. Barron's VIE Opinions are Supported by Evidence and Reasonable Inferences from Evidence in the Record and Grounded in Extensive Experience and Subject-Matter Expertise**

Barron analyzed FXCM's documents with the same intellectual rigor he would use in his practice as an accountant and an auditor. Defendants' arguments thus go to the weight of his testimony, rather than the admissibility. Barron reasonably relied on documents supplied by defendants to make a determination of how defendants should have assessed, accounted for, and reported their business relationships and transactions with Effex and Dittami in accordance with GAAP, and determined ████████████████████████████████████████████

██████████████████████████ *See, e.g.* Barron Rep. ¶¶ 143-150; Rebuttal Expert Report

by John E. Barron ("Rebuttal")[7] ¶¶ 10-15 and 49-87. In this case, Barron examined ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████ Transcript of the Deposition of John

E. Barron, CPA, on June 7, 2021 ("Barron Dep.")[8] at 15:19-17:15; 34:5-13; 45:3-10; 65:7-23;

69:18-70:7; 77:14-78:20; 93:3-94:4; Barron. Rep. ¶¶ 18-109; Rebuttal ¶¶ 52-54, 73 and 104-117.

Barron reviewed voluminous documents and testimony to familiarize himself with the

nature and history of the FXCM-Effex relationship and issue expert reports and opinions. Barron

Rep. ¶¶4-5 and Exhibit B; Rebuttal ¶7 and Exhibit B. ████████████████████████

████████████████████████████████████████████████████████

Barron Report ¶¶143-150. Defendant's expert reviewed the same types of documents in reaching

his expert opinions, and applied a similar methodology.

Defendants' rebuttal expert, Linsmeier, proceeded in substantially the same fashion.

Linsmeier Rep. ¶8, Appendix B.[9] Linsmeier has critiqued Barron's expert report, and Barron has

rebutted his criticisms.[10] Because Linsmeier's criticisms miss the mark, Barron reaffirmed his

---

[7] Attached as Exhibit 3 to the Declaration of Israel Dahan in Support of Defendants' Motion to Exclude
the Reports, Testimony, and Opinions of John E. Barron (ECF No. 240-3)
[8] Relevant excerpts are attached as Exhibit 200 to the Baker Decl.
[9] ███████████████████████████████████████████ *Id.* ¶10.
[10] For example, Barron points out ██████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████
Rebuttal ¶¶ 44 – 46, quoting ASC Topic 810-10-25-37.

opinions that ███████████████████████████████████████████████

███████████████████████████████████████████████████████████

████████████ Barron concluded that the defense rebuttals gave him no reason to revise his opinions.[11]

The procedure by which Barron performed his analysis—ascertaining relevant evidence, stating the governing standards under prevailing U.S. GAAP, and analyzing the stated facts pursuant to those standards—is perfectly reasonable, reliable, and typical of experts in the accounting field. Defendants can explore any deficiencies they posit exist in the weight and interpretation of evidence on cross-examination.

### ii.   Barron's VIE Opinions Apply and Are Supported by U.S. GAAP

#### 1.   Barron Systematically Analyzed Relevant Guidance on U.S. GAAP to Determine that Effex was a VIE

Barron analyzed ████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

Defendant's position that Barron failed to consider certain "steps" in reaching his conclusions also fails to take into consideration that certain "steps" were not relevant (i.e., the result would be the same either way), were unnecessary based on the either/or nature of the requirements, or were, in the final analysis, based on preponderance of the evidence. Barron Rep. ¶¶ 138-139, 143-144, Rebuttal ¶¶ 49 – 53.

---

[11] "████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

Rebuttal ¶ 6.

████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ Barron Report ¶139, 143-144. Barron Rebuttal

¶¶ 42, 44. ██████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████████. Barron Report ¶¶34, 35 - 37, 40, 72.

85 – 89 and 105; Plaintiff's Rule 56.1 Statement of Additional Material Facts ("Plaintiff 56.1") ¶¶

171-176, 240-248. ███████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ Barron Rebuttal ¶ 52-54.

Barron also relied upon testimony that ████████████████████████████████

██████████████████████████████████████████████████████████

███████████████████ Barron Report ¶ 37.

     Defendants next argue that Barron "skips" the "second step" of the VIE analysis,

suggesting that to have a variable interest in Effex, ████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████ Mot. at 11. However, Defendants' themselves tacitly admit that Barron

didn't "skip" this step at all—they acknowledge that Barron analyzed this issue, █████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████ Barron Rep. ¶45-68; Rebuttal ¶¶68–70. ████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████ Barron Rep. ¶¶45–68, Rebuttal ¶¶65–70. A basic understanding of the accounting

model leads to the conclusion that an arrangement resulting in the sharing of profits represents an

expected residual return as defined in ASC 810-10-20. Rebuttal ¶52.

Defendants' argument that Barron's conclusion "eludes comprehension" because they are

unable to identify "████████████████████████████████████████████████████

is willfully obtuse. Barron's analysis on this point is clear—Defendants simply dislike his quite

reasonable conclusions. Their criticisms go to the weight to be accorded to evidence, a

quintessential issue for the finder of fact. Defendants will have their opportunity to challenge the

expert testimony with "vigorous cross-examination, presentation of contrary evidence," and

summation. *Daubert,* 509 U.S. at 596, 113 S. Ct. 2786; *Amorgianos v. National R.R. Passenger*

*Corp.,* 303 F.3d 256, 267 (2d Cir.2002); *Campbell v. Metropolitan Property & Casualty Ins. Co.,* 239 F.3d 179, 186 (2d Cir.2001) ("[T]he weight of the evidence is a matter to be argued to the trier of fact...."); *Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir.1995) ("[T]he Court [in *Daubert*] expressed its faith in the power of the adversary system to test shaky but admissible evidence." (internal quotations omitted)).

Defendants emphasize that ████████████████████████████████████ ████████████████ However, the initial determination of whether an entity is a VIE, and whether a reporting entity is the primary beneficiary of the VIE, is made ***as of the date that the reporting entity first became involved*** with the legal entity. At that date, ████████████████████ ████████████████████████████████ Even after this period, ██████████████ ████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████ ████████████████████████████ Barron Rep. ¶¶ 69-72.

### 2. Barron's Conclusion that Effex Should have been Consolidated and Reported as a VIE is Supported by the Evidence

Defendants next contend that the Court should exclude Barron's opinions because they are "conclusory," speculative, and/or unsupported. They accuse Barron of "cherry-picking" facts and giving inadequate consideration to contrary testimony rendered by Niv, Ahdout, and Dittami. Defendants also assert ████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ████████████████████████████████████████████████████ ██████████████████████████████████████████████ However, they fail to acknowledge that ████████████████████████████████

17

███████████████████████████████████████████████████████████████

███████████. Barron Rep. ¶¶32, 48, 60. Each of defendants' arguments goes to the weight and credibility of the evidence, which is properly to be evaluated by the jury, and not a legitimate basis to exclude testimony of an otherwise qualified expert.

Defendants fail to acknowledge the specific facts supporting Barron's analysis, in favor of implicitly crediting Dittami's testimony (which is itself conclusory and unsupported). ████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████. Barron Rep. ¶ 145.[13] ████████████████████████████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████████

████████████████████████████████████████████████████

---

[12] This remained the case through at least ████████████████████████████████ Barron Rep. ¶¶69-72. At the same time, FXCM was providing significant competitive advantages to Effex in the form of █████████████████████████████████████████████████████████████ Barron Rep. ¶¶ 92-101.

[13] GAAP is clear that a "reporting entity does not need to *exercise* its power in order to **have** power. (ASC 810-10-25-38). The fact that ███████████████████████████ to does not mean that FXCM did not have the power to do so. Rebuttal ¶ 78.  Mr. Dittami's testimony that he made all decisions does not diminish the power that FXCM had to direct the activities that most significantly impacted Effex's economic performance.

was created. ███████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████ Barron Rep. ¶¶

38, 104-109.

Likewise, their argument against Barron's opinion ████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████.[14] The conclusion is further supported by

████████████████████████████████████████████████

████████████████ Rebuttal ¶ 52 (quoting ██████████████████

████████████████████████████████████████████████

██████████████████████████████████████

Defendants next question the sufficiency of the evidence Barron cites to support a

conclusion that FXCM took steps to avoid consolidating Effex, and relatedly, whether such

omission may have been material to the mind of a reasonable investor. However, there is ample

evidence (cited in the Barron report) that FXCM's decision ████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████ Barron Rep. ¶¶ 30-32.

---

[14] The actions of FXCM at the date the FXCM's initial involvement with Effex, including ███████████████
████████ demonstrates the insufficiency of Effex's equity at risk. This conclusion is supported by ███
████████████████████████████████████████ Barron Report ¶¶34, 35-37, 40, 72, 85-
89 and 105.

Finally, taking issue with Barron's statement that ███████████████ Defendants

again hold up ████████████████████████ However, it was FXCM's decision to

████████████████████████████████████████████████

██████████████████████████ Barron Report ¶¶ 30-32.

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

### D. Barron's Conclusion That FXCM Should Have Disclosed Effex and Dittami as Related Parties Is Supported by Ample Evidence and  Informed by Barron's Extensive Experience

Defendants next weakly argue that the Court should exclude Barron's expert testimony

that ███████████████████████████████████████████

████████████ they are based on the "conclusory premise" that ████████████████

███████████████████████████████████████████

████████████████████████ Mot. at 17. They then go on to argue—curiously—that this

putatively "conclusory premise" is based on four specific factual findings: ████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ *Id.,* citing

Barron Rep. ¶127.

Defendants then attack each of these "findings" on the same grounds—████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████.[15] However, experts are indisputably permitted to draw

conclusions from disputed evidence. *Ajala v. W.M. Barr & Co. Inc.*, 2018 WL 6322147, at \*4

(S.D.N.Y. Dec. 4, 2018) ("If the ***jury*** is authorized to so conclude, then it cannot be that

Defendants' fire investigator Long is not."). And, defendants are free to cross examine Barron

with any testimony they would like at trial. *Daubert*, 509 U.S. at 596.

Barron properly reviewed and considered the available evidence[16] - including both the

witnesses' testimony and the contemporaneous evidence. See, Exhibit B to the Barron Rep.

---

[15] Defendants' Motion is shot through with iterations of this argument—that Barron gives insufficient
shrift to ████████████████████████████. It is here that it
appears to be most prominently and straightforwardly stated, so in the interest of brevity, here is where
Plaintiffs shall respond to it. The same arguments apply with equal force to each and every one of
Defendants' assertions in this vein. ████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████. Plaintiffs note that each of
these conclusory statements is controverted directly or by implication in contemporaneous documentary
evidence cited and relied upon in the Barron Report. The same arguments presented above apply in each
case.
[16] Barron properly considered all facts relevant to the evaluation of ████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████. For example, FXCM's 2011 Form 10-K, filed during the Class Period,
contained FXCM's 2010 financial statements████████████████████████████
████████. See Barron Dep. 116:5-120:22; Rebuttal ¶8, 43-46.

(citing ████████████████████████████████████████████████

████████████████████████████████. Defendants' disagreement with the weight Barron

accords to the respective species of evidence is not proper grounds for the exclusion of expert

testimony under *Daubert.*

### E. Barron Is Qualified to Opine on Materiality under U.S. GAAP, and Such Opinion Will Assist the Factfinder in Ascertaining Materiality of Defendants' Misstatements Under the Securities Laws

Defendants claim that Barron's analysis is not reliable because Barron examines evidence

of events occurring before the Class Period which Defendants unilaterally deem "immaterial",

relies on inferences from documents in the factual record rather than giving what Defendants

consider adequate credit ██████████████████████████████████████

████████████████████ and reaches conclusions regarding the substance of FXCM's business

relationship with Effex and Dittami from the plain reading of contemporaneous documents that

Defendants have subsequently attempted to mischaracterize and disclaim. Defendants continue

that Barron's testimony usurps the role of the Court and the trier of fact because Barron offers

"legal conclusions", regarding the issue of materiality and, perhaps alternatively, the trier of fact

does not need Barron's testimony to understand the technical accounting determinations at issue.

None of Barron's opinions constitutes a legal conclusion[17] that any of the Defendants'

alleged misstatements was material as a matter of law, and admission of Barron's conclusions

---

[17]   *Feinberg v. Katz,* 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007), upon which Defendants rely for the proposition that an accountant's opinion that misrepresentations were "material" constituted an "impermissible legal conclusion," is inapposite. *Feinberg* is distinguishable not only because the expert's opinions there were conclusory, but also because the expert opined that defendants violated the ***legal*** standard of materiality, *i.e.,* the expert merely told the jury what decision to reach. *Feinberg,* at \*9-\*11 (expert testimony precluded if it "cross[es] the line between a permissible conclusion as to an ultimate issue of fact and an impermissible legal conclusion."). Here, Barron goes only so far as to reach and support conclusions as to the accounting standard of materiality to the financial statements, which is necessary to reach any conclusion under GAAP.

concerning U.S. GAAP materiality presents no danger of confusion. Accounting experts (including Barron) routinely offer similar testimony as to materiality.[18]

GAAP provides a definition of materiality for accountants to utilize: "Materiality concerns the significance of an item to users of a registrant's financial statements. A matter is 'material' if there is a substantial likelihood that a reasonable person would consider it important." ASC 250-10-S99-1. SAB 99. This is strictly an accounting judgment. In fact, SAB 99 provides substantial guidance directed uniquely to those responsible for preparing and auditing of financial statements.[19]

As Barron explains, . See, e.g., Barron Rep. ¶119 quoting AS 11.[20])

The determination as to whether a misstatement or omission contained in a financial statement may cause the financial statement not to be "presented, in all material respects, in

---

[18] If Defendants' purported concern of juror confusion had any merit (it does not) it could easily be cured: "To the extent that Defendants object to the use of the word 'material' as a legal term of art . . . "a word other than 'material' " " may be used. *United States Sec. & Exch. Comm'n v. ITT Educ. Servs., Inc.*, 311 F. Supp. 3d 977, 995 (S.D. Ind. 2018).

[19] In fact, a recent proposal to modify the GAAP definition of materiality to include a statement that materiality is a "legal concept" was ultimately rejected by the FASB, which observed: "***Preparers and practitioners objected to stating that materiality is a legal concept because it may imply that only legal professionals can make materiality judgments and that materiality should be considered an accounting concept***." *See* Amendments to the Conceptual Framework for Financial Reporting, "Amendments to Statement of Financial Accounting Concepts No. 8," dated August 2018 (attached as Exhibit 201 to the Baker Decl.), citing BC3.18B.

[20] The provisions of AU 312, the predecessor standard, are consistent with AS 11.

conformity with U.S. GAAP" is guided by (among other sources) interpretations contained in Supreme Court and other legal precedents, but it is fundamentally an accounting question. It is inappropriate for resolution as a matter of law unless the factual evidence is so lopsided that "reasonable minds cannot differ." *TSC Industries v. Northway, Inc*., 426 U.S. 438, 449-450 (1976).

Because courts recognize that "the accounting principles underlying . . . materiality . . . are not the type of knowledge within the 'ken' of the average juror," they routinely admit expert testimony from accountants to assist the trier of fact in understanding and applying the accounting concept of materiality. *U.S. v. Martoma*, 993 F. Supp. 2d 452, 457 (S.D.N.Y. 2014) ("Expert testimony concerning materiality is often introduced in cases involving allegations that a company misrepresented or wrongfully withheld information from investors"); *SEC v. Ferrone*, 163 F. Supp. 3d 549, 565 (N.D. Ill. 2016) (SEC could present expert testimony regarding materiality of allegedly false and misleading statements because "[t]he jury cannot determine whether the statements were false and misleading unless it knows the actual facts [surrounding the statements and] . . . the total mix of information related to these topics"). *See also Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 966 (N.D. Ill. 2011) (rejecting motion for summary judgment based on immateriality where "the expert report… squarely contradicts it, thus creating a genuine dispute requiring trial.")[21]

---

[21] CPAs are commonly admitted to offer expert testimony on Management discussion and analysis ("MD&A") disclosures and whether they comply with SEC Regulation S-K. *See, e.g.*, *SEC v. Conaway*, 2009 WL 1583546, at *2-*3 (E.D. Mich. June 5, 2009) (finding a certified public accountant qualified to issue expert opinion on the adequacy of Kmart's MD&A disclosures); *S.E.C. v. Snyder*, 2006 WL 1806164, at *8 (S.D. Tex. June 29, 2006) (discussing competing certified public accountants' expert testimony concerning adequacy of MD&A in context of good faith reliance defense); *Koch v. Koch Indus., Inc.*, 2 F. Supp. 2d 1385, 1401 (D. Kan. 1998) (the court specifically acknowledged that an accountant was qualified to opine on the adequacy of disclosure of unusual and infrequent items), *aff'd*, 203 F.3d 1202 (10th Cir. 2000). Such opinions are not legal opinions (as defendants claim), but

**IV.** **Conclusion**

Barron's expert report is thoroughly grounded in the evidentiary record, supported by extensive citations to specific evidence and well-explained logical inferences from that evidence, methodologically sound, and likely to be of assistance to the factfinder. Therefore, the of Court should deny Defendants' motion to exclude the testimony of Plaintiffs' expert John Barron.

---

materiality assessments "as an accountant would understand this standard in preparing financial statements." *Id*. at 1398.

Dated: December 9, 2021

**THE ROSEN LAW FIRM, P.A.**

By: */s/ Joshua Baker*
Laurence M. Rosen
Phillip Kim
Joshua Baker
Brent LaPointe
275 Madison Ave, 40th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
          pkim@rosenlegal.com
          jbaker@rosenlegal.com
          blapointe@rosenlegal.com

*Lead Counsel for Plaintiffs and the Class*

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Email: guiney@whafh.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 9, 2021, I electronically transmitted the attached using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

<em>/s/ Joshua Baker</em>_____