# Exhibit 5

SERVICES AGREEMENT

This Service Agreement (this "Agreement"), dated as of March 1st, 2010 (the "Effective Date"), is by and between Effex Capital, LLC, a Delaware limited liability company, with an address of 98 Constitution Way, Jersey City, NJ 07305 ("Effex"), and the undersigned Forex Capital Markets, LLC, a Delaware limited liability company, with an address of 32 Old Slip, 10th Floor, NY, NY 10005, and each of its affiliates ("FXCM") (each, a "Party" and, collectively, the "Parties").

*RECITALS*

A.   **WHEREAS**, FXCM desires to obtain executable prices from Effex at which Effex may enter into spot foreign exchange and precious metals transactions with immediate give-up to one or more prime broker banks, such as Citibank N.A., as agreed to by the Parties independent of this Agreement ("Prime Broker").

B.   **WHEREAS**, Effex will publish executable prices to FXCM and FXCM will send a response to Effex ("Orders") via Effex's Proprietary Execution Environment System ("Trading System"). Effex may accept or reject an Order and each Order accepted by Effex as evidenced by the Trading System, shall be considered a valid binding trade governed by the terms and conditions contained herein ("Transactions").

**NOW THEREFORE**, In consideration of the foregoing recitals and the mutual covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

*AGREEMENT*

1. **Trading System.**

   1.1   Trade Prices. Effex shall provide to FXCM executable trade prices through the Trading System for entering into Transactions with Effex. For each financial product where executable prices are provided to the Trading System, Effex will disseminate a bid and offer.

   1.2   License. Subject to the terms and conditions of this Agreement, Effex hereby grants to FXCM, for the term hereof, a non-exclusive, non-transferable, non-sublicenseable, revocable license to access the Trading System and any additional services and materials necessary to utilize the Trading System as contemplated herein under this Agreement for FXCM's business purposes and on behalf of FXCM's customers, including but not limited to, receive executable prices from Effex, enter Orders on the Trading System to receive status updates on Orders, cancel Orders, execute Transactions, and to receive data feeds containing only FXCM's information regarding open Orders and Transactions.

   1.3   Access Methods. The Trading System may be accessed only by using such access methods as are assigned by Effex (collectively, "Access Methods") and Effex must provide FXCM's Access Methods confidentially and shall not intentionally or unintentionally disclose such Access Methods to any other party.

   1.4   ISDA/Prime Broker. Effex must at all times maintain in good standing its ISDA Master Agreement and prime brokerage relationship with its Prime Broker and at all time must avoid any Event of Default (as defined in the ISDA Master Agreement and/or prime broker agreement). Effex must immediately notify FXCM of any Event of Default (as defined in the ISDA Master Agreement and/or prime broker agreement) that occurs under such ISDA Master Agreement and/or prime broker agreement,

and must notify FXCM immediately of any termination of such ISDA Master Agreement and/or prime broker agreement. All Transactions effected via the services provided by Effex to FXCM, shall be immediately given-up by Effex to its Prime Broker, and Effex must immediately notify FXCM if such give up is not completed for any reason.

2. **Trading Obligations.**

    2.1    Instructions. Both Parties acknowledge and agree that all instructions issued by either Party hereunder, including Orders entered via the Trading System and Transactions entered into via the Trading System, may be relied upon by the other Party, and any prime broker as duly authorized and binding.

    2.2    Reporting and Settlement of Transactions. Each Party acknowledges and agrees to the other that each Party shall have the absolute, unconditional, and unassignable obligation, in connection with each Transaction effected through the Trading System, to make and ensure timely settlement of the subject funds as well as any required remittance of interest, and/or other distributions, free and clear of any liens, claims, interests or restrictions of any sort. Each Party shall be responsible for any obligations, including reporting obligations under its agreements with its own prime broker(s), if any.

3. **Fees.**

    3.1    FXCM shall receive from Effex a fee equal to $21.00 USD per one million units of Base Currency (defined below) for the aggregated volume of Transactions executed via the Trading System (the "Fees"). The Fee shall be calculated by FXCM on a monthly basis. FXCM shall provide Effex an invoice for all unpaid Fees. Upon request, Effex shall deliver to FXCM a written report (in form and substance and with such detail as FXCM shall reasonably request) setting forth its calculation of volume of Transactions executed by FXCM via the Trading System in Base Currency, for such month, which FXCM shall reconcile against its own records to calculate the Fee. As used herein, "Base Currency" means the first currency of the given currency pair as displayed on the FXCM Trade Station II platform.

    3.2    Payment Terms. The Fee shall be due seventy-five (75) days after the receipt of the monthly invoice from FXCM, payable in United States dollars, unless otherwise agreed by the Parties in writing. Failure to provide an invoice shall not waive FXCM's rights to any Fees and shall not relieve Effex from its obligation to pay in full all Fees earned. All payments shall be made by wire transfer of immediately available funds to an account designated by FXCM. The Fees shall be exclusive of all taxes, levies, duties or similar charges, which may be assessed by any jurisdiction (collectively "Taxes"). Each party shall be responsible for their own Taxes.

    3.3    Records and Audits. Effex shall maintain complete and accurate books and records in sufficient detail for the determination of the Fee payable to FXCM pursuant to this Agreement. Effex agrees to maintain such books and records for a period of five (5) years from the date of Transaction or for not less than two (2) years from the termination or expiration of this Agreement, whichever is greater, and at any time during the term of this Agreement or such period after termination of the Agreement, to make such books and records available for inspection by FXCM or its designee upon request. Any underpayment revealed by such an audit shall be paid to FXCM within ten (10) days of the audit results. FXCM shall be responsible for the auditor's costs unless an error in excess of five percent (5%), in the aggregate of amounts that should have been paid is revealed, in which case Effex shall reimburse FXCM for the cost of such audit.

    3.4    Late Payment. In the event that Effex does not make payment to FXCM on or before the date such payment is due, in addition to all other rights and remedies of FXCM, FXCM shall be entitled

CONFIDENTIAL

GLBR_00110665

to interest on the amount owing at a rate of 1.5% per month or the highest rate allowed by applicable law, whichever is less, compounded on a monthly basis from the due date of payment until the date of actual payment.

4. **Term; Termination.**

The term of the Agreement shall commence upon the Effective Date and shall continue until terminated by either party. Either Party may terminate this Agreement, for any or no reason, upon 30 days written notice to the other Party.

5. **Consequences of Termination.**

Upon termination of this Agreement for any reason, FXCM shall (i) cease immediately all uses of the Trading System, (ii) destroy or return to Effex all tangible materials (and all copies thereof) provided by Effex (or its third party service providers) hereunder, upon request, except copies of material FXCM is required to maintain for regulatory record keeping requirements, and (iii) certify in writing to Effex that such materials have been destroyed and/or returned and no portion thereof remain in FXCM's possession or control. The termination of this Agreement for any reason will not affect the accrued rights of the Parties or the right of either Party to sue for damages arising from a breach of this Agreement. Section 3.2, 3.3, 3.4, 6, 7, 8.3, 10, 11, and 17 through 22, shall survive termination of the Agreement.

6. **Proprietary Rights.**

Effex or its third party service providers, as applicable, shall own and retain ownership of all rights, title and interest in and to (i) the Trading System and all underlying technology and all materials provided by Effex (or its third party service providers) in connection therewith; (ii) all updates, modifications, enhancements and new versions to or of the foregoing, and all derivative works based thereon; and (iii) all copyrights, patents, trade secrets, database rights and other intellectual property associated with the foregoing property. Except as expressly set forth in this Agreement, no licenses or other intellectual property rights are granted to FXCM under this Agreement.

7. **Confidentiality.**

Except as is expressly permitted hereunder, Effex shall not, without FXCM's prior written consent, disclose any confidential information or data transmitted via the Trading System or otherwise disclosed to Effex, including without limitation any information about FXCM's business, financials, customers, prospective customers, or any other information that by its nature and circumstances surrounding its disclosure ought to be recognized by Effex as confidential ("Confidential Information") to any third party (i) other than to any subcontractors or third party service providers who are subject to nondisclosure obligations at least as protective of the Confidential Information as those set forth in this Section 7 and to whom disclosure is reasonably necessary to facilitate the performance of the Trading System; or (ii) unless Effex is required to do so pursuant to a judicial, governmental or regulatory requirement, request or order under law. Notwithstanding the foregoing, Confidential Information will not include information (a) independently developed by Effex or lawfully received free of restriction from another source that, to Effex's knowledge, has the right to furnish such information; (b) after it has become generally available to the public by acts not attributable to Effex; or (c) that, at the time of disclosure to Effex, was known to Effex free of restriction.

CONFIDENTIAL                                                                                              GLBR_00110666

8. **Warranties.**

    8.1    Each Party represents and warrants that: (i) it has the power and authority, corporate and otherwise, to execute and perform this Agreement; (ii) its execution and performance of this Agreement will not violate any other agreement or obligation to which it is bound; (iii) it is duly registered and in good standing with all appropriate regulatory authorities, and will remain duly registered and in good standing throughout the term of this Agreement, if applicable; (iv) it is registered and/or qualified to do business in those states and other jurisdictions where its business requires such registration and/or qualifications ("Required Jurisdictions"), and will remain so registered or qualified at all times; (v) it will comply with all applicable laws, rules and regulations in performing its obligations and exercising its rights under this Agreement; and (vi) it will be solely responsible for complying with any new or existing, laws, rules, and regulations for Transactions. Each Party shall immediately notify the other if any of the foregoing representations or warranties cease to be true.

    8.2    In addition to the above, Effex represents and warrants that: (i) it will provide the Trading System in a commercially reasonable and professional manner, without negligence, fraud, or willful misconduct; (ii) it will provide the Trading System without introducing any viruses, malicious content, or causing any harm or disruption to FXCM's computer systems; (iii) it will respond to accept or reject Orders in a timely fashion; (iv) it will maintain the prime broker relationship with Prime Broker to give up all Transactions and shall not cause an Event of Default (as defined in the prime broker agreement); (v) it will at all times maintain in good standing the ISDA Master Agreement in place between Effex and Prime Broker, and shall not cause an Event of Default (as defined in the ISDA Master Agreement); and (vi) it has all rights, title and authority to grant the rights and licenses granted hereunder without conflict with the intellectual property rights of any third party.

    8.3    Effex makes the following covenants to FXCM: (i) during the term of this Agreement John Dittami ("Owner") shall remain the sole owner actual and beneficial of 100% of the membership interest of Effex, excluding any interest FXCM may negotiate to purchase at a later time; (ii) during the term of this Agreement, and for a period of two (2) years after this Agreement shall expire or terminate, neither Effex nor Owner shall, directly or indirectly (including, without limitation, through the ownership, management, operation or control of any person or entity, or by having any interest as a member, stockholder, investor, agent, constituent or employee of any other person or entity) employ or retain, or attempt to employ or retain, whether as an employee, consultant, representative, or agent, any person who has or had been employed or retained (or who as at any time during the preceding six (6) month period prior to any attempted solicitation, employment or retention) as an employee, consultant, representative or agent of FXCM.

9. **Disclaimer.**

    EXCEPT AS DETAILED HEREIN, FXCM'S USE OF THE TRADING SYSTEM, AND ANY OTHER INFORMATION AND MATERIALS PROVIDED BY EFFEX, IS AT FXCM'S OWN RISK, AND THE TRADING SYSTEM AND SUCH OTHER INFORMATION AND MATERIALS ARE PROVIDED BY EFFEX ON AN "AS IS" AND "AS AVAILABLE" BASIS, WITHOUT WARRANTIES OR REPRESENTATIONS OF ANY KIND, EXPRESS OR IMPLIED, BY STATUTE, COMMON LAW OR OTHERWISE, INCLUDING ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE AND ANY WARRANTIES ARISING FROM A COURSE OF DEALING, USAGE OR TRADE PRACTICE.

CONFIDENTIAL    GLBR_00110667

10. **Limitation of Liability.**

EXCEPT FOR LIABILITY BASED ON THE INDEMNIFICATION PROVISIONS CONTAINED HEREIN, CONFIDENTIALITY OBLIGATIONS HEREIN, THE COVENANTS IN SECTION 2.2 AND 8.3, AND ANY LIABILITY OF EFFEX TO FXCM FOR NEGLIGENCE, FRAUD, OR WILLFUL MISCONDUCT, NEITHER PARTY SHALL BE LIABLE TO THE OTHER PARTY FOR ANY INDIRECT, SPECIAL, PUNITIVE, EXEMPLARY OR CONSEQUENTIAL DAMAGES, INCLUDING DAMAGES FOR LOSS OF PROFITS OR LOSS OF REVENUE ARISING IN ANY MANNER WHATSOEVER OUT OF OR IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF WHETHER SUCH DAMAGES ARISE IN TORT, CONTRACT, OR OTHERWISE, AND EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES. NOTHING IN THIS AGREEMENT SHALL LIMIT EFFEX'S LIABILITY TO FXCM FOR ACTUAL OR DIRECT DAMAGES BASED UPON ERRORS, MALFUNCTIONS, OR DELAYS OF THE TRADING SYSTEM.

11. **Indemnification.**

Effex shall defend, indemnify and hold FXCM, its affiliates, and the officers, directors, employees, agents, and representatives of FXCM and its affiliates ("FXCM Indemnitees") harmless from and against all costs, claims, demands, losses, expenses and liabilities of any nature whatsoever (including reasonable attorney's fees) incurred or suffered by such FXCM Indemnitees ("Losses") arising out of, or in connection with, any third party claim, demand, or cause of action based upon or arising out of (i) breach of any of Effex's obligations, representations, warranties or covenants under this Agreement, (ii) Effex' infringement of any third party trade secret copyright, patent, or registered trademark or other intellectual property rights, and/or (iii) Effex's negligence, fraud, or willful misconduct.

FXCM shall defend, indemnify and hold Effex, its affiliates, and the officers, directors, employees, agents and representatives of Effex harmless from all Losses arising out of, or in connection with, any third party claim, demand, or cause of action based upon or arising out of (i) breach of any of FXCM's obligations, representations, warranties or covenants under this Agreement, or (ii) FXCM's negligence, fraud, or willful misconduct.

12. **Notices.**

Except as otherwise expressly provided herein, all notices and other communications hereunder: (i) shall be in writing; (ii) may be delivered by hand, by any nationally recognized private courier or by facsimile; (iii) shall be effective on the date of delivery; and (iv) shall be addressed as follows (or to such other address or addresses as may hereafter be specified by notice given by one Party to the other):

If to Effex:

Effex LLC
98 Constitution Way
Jersey City, NJ 07305
Attn: John Ditami
Email: john@effexcapital.com

If to FXCM:

CONFIDENTIAL                                                                                                  GLBR_00110668

Forex Capital Markets, LLC
32 Old Slip, 10th Floor
New York, NY 10005
Attn: Dealing
Facsimile: 212-897-7669

With copy to:
Forex Capital Markets, LLC
32 Old Slip, 10th Floor
New York, NY 10005
Attn: General Counsel

13. **Agreement.**

Each of the exhibits attached hereto is a part of, and incorporated into, this Agreement. The Parties agree that no oral negotiations or other writings are intended to form part of this Agreement. Unless otherwise indicated therein, all capitalized terms contained within the exhibits shall have the meanings ascribed to them in the main body of this Agreement.

14. **Amendments.**

Any modification, amendment or waiver to this Agreement shall not be effective unless in writing and signed by both Parties.

15. **Binding Provisions/Third Party Beneficiaries.**

This Agreement is binding upon, and shall inure to the benefit of, the Parties and their respective administrators, legal representatives, successors, and permitted assigns. The Parties agree that no provision of this Agreement is intended, expressly or by implication, to purport to confer a benefit or right of action upon a third party (whether or not in existence, and whether or not named, as of the Effective Date).

16. **Relationship.**

Nothing in this Agreement shall constitute or be deemed to establish a partnership, joint venture, association or employment relationship between the Parties hereto, and neither Party shall have the authority or power to bind the other Party, or to contract in the name of the other Party, in any manner or for any purpose.

17. **Assignment.**

Neither party may assign this Agreement without the prior written consent of the other Party. Any purported assignment in violation of this Section shall be null and void and of no effect.

18. **Separability of Provisions.**

Each provision of this Agreement shall be considered separable; and if, for any reason, any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, unlawful, or unenforceable, such determination shall not affect the enforceability of the remainder of this Agreement or the validity, lawfulness, or enforceability of such provision in any other jurisdiction.

CONFIDENTIAL                                                                                                    GLBR_00110669

19. **Waiver.**

The failure of a Party to exercise or enforce any right conferred upon it by this Agreement shall not be deemed to be a waiver of any such right or operate so as to bar the exercise or enforcement thereof at any time or times thereafter. No waiver by either Party hereunder shall be effective unless agreed to pursuant to a writing signed by an authorized representative of each Party.

20. **Remedies Not Exclusive.**

No remedy conferred by any provision of this Agreement is intended to be exclusive of any other remedy, except as expressly provided in this Agreement, and each and every remedy shall be cumulative and shall be in addition to every other remedy given hereunder or now or hereafter existing in law or in equity or by statute or otherwise.

21. **Interpretation.**

References to sections and exhibits are to sections of, and exhibits to, this Agreement, unless otherwise indicated. Section headings are inserted for convenience of reference only and shall not affect the construction of this Agreement. The singular number shall include the plural, and vice versa. Any use of the word "including" will be interpreted to mean "including, but not limited to," unless otherwise indicated. In the event of any inconsistency between the terms of the main body of this Agreement and any exhibit hereto, the terms of the main body of this Agreement will govern to the extent of the inconsistency.

22. **Governing Law, Jurisdiction.**

The validity and effectiveness of this Agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of New York, without giving effect to the provisions, policies or principles of any state law relating to choice or conflict of laws. The Parties hereby consent to the jurisdiction and venue of the federal and state courts located in New York City, NY, and hereby waive an objection to such jurisdiction and venue. The Parties hereby irrevocably and unconditionally waive trial by jury in any legal action or proceeding relating to this Agreement on any other agreement entered into in connection therewith and for any counterclaim with respect thereto.

23. **Counterparts.**

This Agreement may be executed in two counterparts, each of which when so executed and delivered shall be deemed an original, and both of which together shall constitute one and the same instrument. A complete set of counterparts shall be lodged with each Party.

*[Remainder of page intentionally left blank.*
*Signature page follows.]*

CONFIDENTIAL

GLBR_00110670

Case 1:17-cv-00916-RA-BCM   Document 293-4   Filed 08/25/22   Page 9 of 9



IN WITNESS WHEREOF, the Parties have executed this Agreement as of the Effective Date.

**EFFEX LLC.,** a Delaware Limited Liability Company

By: _[signature]_
Name: _John Dittami_
Title: _CCO, Effex Capital_

**FOREX CAPITAL MARKETS, LLC,** a Delaware Limited Liability Company

By: _[signature]_
Name: _William Ahdout_
Title: _MD_

8

CONFIDENTIAL                                                                                                          GLBR_00110671