## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 17-CV-00916-RA-BCM |
| This Document Relates To: All Actions | CLASS ACTION |

## PLAINTIFFS' RESPONSE TO DEFENDANTS' *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY OF PLAINTIFFS' EXPERT JOHN BARRON

## <u>**TABLE OF CONTENTS**</u>

I.    INTRODUCTION ................................................................................................... 1

II.   LEGAL STANDARD ............................................................................................ 3

III.  ARGUMENT ........................................................................................................ 4

  A.   Barron is Qualified to Offer His Opinions as an Accounting Expert .................................... 4

  B.   Barron's Factual Narrative Is Appropriate and Necessary to Explain the Basis for His Expert Opinions ................................................................................................. 5

  i.    Barron's Presentation of the Facts Supporting His Opinions Is Proper .............................. 6

  ii.   The Applicable GAAP, SEC Rules and Other Professional Guidelines Required Barron to Consider Relevant Evidence ................................................................................... 9

  C.   Barron's Accounting Opinions are Reliable, Supported by Evidence, Likely to be Helpful to the Factfinder, and Should Be Admitted ..................................................................... 12

  i.    Barron's VIE Opinions are Supported by Evidence and Reasonable Inferences from Evidence in the Record and Grounded in Extensive Experience and Subject-Matter Expertise .......................................................................................................... 12

  ii.   Barron's VIE Opinions Apply and Are Supported by U.S. GAAP .................................... 14

  1.    Barron Systematically Analyzed Relevant Guidance on U.S. GAAP to Determine that Effex was a VIE ................................................................................................. 14

  2.    Barron's Conclusion that Effex Should have been Consolidated and Reported as a VIE is Supported by the Evidence .................................................................................... 17

  D.   Barron's Conclusion That FXCM Should Have Disclosed Effex and Dittami as Related Parties Is Supported by Ample Evidence and  Informed by Barron's Extensive Experience 20

  E.   Barron Is Qualified to Opine on Materiality under U.S. GAAP, and Such Opinion Will Assist the Factfinder in Ascertaining Materiality of Defendants' Misstatements Under the Securities Laws .................................................................................................. 22

IV.   Conclusion .......................................................................................................... 25

i

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

<u>Cases</u>

*Ajala v. W.M. Barr & Co., Inc.*,
 No. 16-CV-2615 (VEC), 2018 WL 6322147 (S.D.N.Y. Dec. 4, 2018).......................................... 20

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
 303 F.3d 256 (2d Cir. 2002)............................................................................................................ 3, 16

*Borawick v. Shay*,
 68 F.3d 597 (2d Cir. 1995)............................................................................................................... 3, 16

*Campbell ex rel. Campbell v. Metro. Prop. & Cas. Ins. Co.*,
 239 F.3d 179 (2d Cir. 2001)............................................................................................................ 3, 16

*Daubert v. Merrell Dow Pharm., Inc.*,
 509 U.S. 579 (1993)................................................................................................. 2, 3, 16, 21

*Feinberg v. Katz*,
 No. 01 CIV. 2739(CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ..................................... 22

*Highland Cap. Mgmt., L.P. v. Schneider*,
 379 F. Supp. 2d 461 (S.D.N.Y. 2005)............................................................................................... 8

*In re Joint E. & S. Dist. Asbestos Litig.*,
 52 F.3d 1124 (2d Cir. 1995)............................................................................................................. 3

*In re REMEC Inc. Sec. Litig.*,
 702 F. Supp. 2d 1202 (S.D. Cal. 2010).............................................................................................. 7

*In re Rezulin Prod. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004)....................................................................................... 4, 7, 8

*Katt v. City of New York*,
 151 F. Supp. 2d 313 (S.D.N.Y.2001)............................................................................................... 3

*Koch v. Koch Indus., Inc.*,
 2 F. Supp. 2d 1385 (D. Kan. 1998).................................................................................................. 24

*Kumho Tire Co. v. Carmichael*,
 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999)............................................................... 3

*LinkCo, Inc. v. Fujitsu Ltd.*,
 No. 00 CIV 7242 (SAS), 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ...................................... 8

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
 97 F. Supp. 3d 485 (S.D.N.Y. 2015).................................................................................................. 5

*McCullock v. H.B. Fuller Co.*,
 61 F.3d 1038 (2d Cir. 1995)............................................................................................................. 3

*Micro Chem., Inc. v. Lextron, Inc.*,
  317 F.3d 1387 (Fed. Cir. 2003) ............................................................................. 7

*Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*,
  691 F. Supp. 2d 448 (S.D.N.Y. 2010) ................................................................. 4, 5

*Pinterest, Inc. v. Pintrips, Inc.*,
  2015 WL 2268498 (N.D. Cal. May 14, 2015) .......................................................... 5

*S.E.C. v. Johnson*,
  525 F. Supp. 2d 70 (D.D.C. 2007) ....................................................................... 6, 7

*Scentsational Techs., LLC v. Pepsi, Inc.*,
  No. 13-cv-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. Apr. 18, 2018) ........................ 5

*SEC v. Conaway*,
  2009 WL 1583546 (E.D. Mich. June 5, 2009) ........................................................ 24

*Sec. & Exch. Comm'n v. Ferrone*,
  163 F. Supp. 3d 549 (N.D. Ill. 2016) ................................................................... 23

*Silverman v. Motorola, Inc.*,
  798 F. Supp. 2d 954 (N.D. Ill. 2011) ................................................................... 23

*Taylor v. Evans*,
  No. 94 CIV. 8425 (CSH), 1997 WL 154010 (S.D.N.Y. Apr. 1, 1997) ........................ 8

*TSC Industries v. Northway, Inc.*,
  426 U.S. 438 (1976) ......................................................................................... 23

*U.S. S.E.C. v. Snyder*,
  No. CIVA H-03-04658, 2006 WL 1806164 (S.D. Tex. June 29, 2006) ...................... 24

*United States Sec. & Exch. Comm'n v. ITT Educ. Servs., Inc.*,
  311 F. Supp. 3d 977 (S.D. Ind. 2018) .................................................................. 22

*United States v. Martoma*,
  993 F. Supp. 2d 452 (S.D.N.Y. 2014) .................................................................. 23

*Wechsler v. Hunt Health Sys.*,
  381 F.Supp.2d 135 (S.D.N.Y. 2003) ................................................................... 6, 7

## **Rules**

Fed. R. Evid. 104(a) ............................................................................................ 3

Fed. R. Evid. 702 .......................................................................................... 3, 4, 5

Fed. R. Civ. Proc. 702 ......................................................................................... 3

## **Other Authorities**

Amendments to the Conceptual Framework for Financial Reporting, "Amendments to Statement of
  Financial Accounting Concepts No. 8," dated August 2018 ..................................... 22

*Division of Corporation Finance - Financial Reporting Manual*, Topic 9, § 9610 (SEC 2008) ..... 11

Staff Accounting Bulletin No. 99 .......................................................................... 22

## I.      INTRODUCTION

Defendants' entire motion to exclude John Barron ("Barron") rests on an array of false premises. In response to Barron's expert opinions that Defendants' failure to (1) disclose FXCM's relationship with Effex and Dittami as related parties, and (2) account for and report their relationship with Effex as a variable-interest entity ("VIE") of FXCM violated U.S. Generally-Accepted Accounting Principles ("GAAP") and caused FXCM's financial reports to be materially misstated, Defendants assert that Barron's methodology is "unreliable" and "usurps" the fact-finder. Their arguments are rooted in misreading of Barron's reports and testimony, misunderstanding of the technical subject matter, and misidentification and misapplication of the applicable law.

Barron opines—based on his review of the contemporaneous documents produced in discovery, largely by Defendants themselves—that Defendants directed the formation of Effex by and through their employee, Dittami, and exercised material control over Effex from the time it was founded. Defendants assail these conclusions on the ground that Barron fails to credit Defendants Niv and Ahdout and Dittami's own self-serving, *post hoc* statements, prepared strictly in contemplation of and in the course of litigation charging each of them with fraud —unsupported by the contemporaneous documentary evidence and, indeed, in contravention of it.

Defendants' next argument—that Barron's conclusions regarding materiality "usurp" the fact-finder—is rooted in their own gross conflation of the ***accounting*** concept of materiality with the ***legal*** standard of materiality. Barron has over thirty-four years of experience in the field of accounting and auditing, doing the very work he performs here.  Barron concluded that the information that FXCM omitted to disclose and failed to properly report in its financial statements in accordance with GAAP was clearly "material" to FXCM's consolidated financial statements as

the term is understood and applied every day by preparers of financial statements, auditors of financial statements, and public oversight entities including the Securities and Exchange Commission (SEC) and the Public Company Accounting Oversight Board (PCAOB). Preparers and auditors of financial statements make such judgments routinely in determining whether accounting treatments may cause financial statements to be materially misstated under GAAP. The determination of materiality in the context of an audit of financial statements is a critical step in designing the scope and nature of audit procedures to be performed by the auditor. The guidelines for determining materiality with respect to financial statements are based on SEC rules and regulations, GAAP, and PCAOB standards—highly technical and specialized subject matter, which is *not* within the realm of common knowledge and experience of the average juror. Accountants and auditors—including Mr. Barron—apply these standards to make determinations regarding accounting materiality on a daily basis. Such determinations are wholly within the scope of Barron's expertise, and such expertise is necessary and appropriate to assist the jury in engaging with such complex subject matter.

Defendants do *not* challenge Barron's decades of relevant experience. They do *not* challenge his qualifications or his expertise in accounting, and specifically in the interpretation and application of GAAP and auditing standards. They do *not* claim that the documents he reviewed, including FXCM's own documents and internal emails and information obtained from FXCM's own annual and quarterly reports to the SEC, are not relevant to an evaluation of whether FXCM's alleged misstatements were material. They simply object to the substance of his conclusions.

Barron's expert reports and testimony are relevant, likely to be useful to the factfinder, and rooted in reliable methodology under GAAP. This Court should summarily deny Defendants' ill-conceived and ill-founded motion to exclude them.

## II.     LEGAL STANDARD

In *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 588, 596 (1993), the Supreme Court established a liberal approach to admitting expert testimony. Expert testimony will be admitted if it is both relevant and reliable. *Id.* at 594-95. "The focus [of the *Daubert* analysis] must be solely on principles and methodology, not on the conclusions that they generate." *Id.* at 595. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Id.* at 596. "[T]he rejection of expert testimony is the exception rather than the rule." Fed. R. Civ. Proc. 702 (Adv. Cmte. Notes to 2000 Amendments).

This Court's gatekeeping function applies not only to proffered scientific expert testimony, but also to "testimony based on `technical' and `other specialized' knowledge." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 141, 119 S. Ct. 1167, 143 L. Ed. 2d 238 (1999); *see also, Katt v. City of New York,* 151 F. Supp. 2d 313, 353-57 (S.D.N.Y.2001). In this role, district judges have broad discretionary authority "to determine [the] reliability [of an expert's testimony] in light of the particular facts and circumstances of the particular case." *Kumho,* 526 U.S. at 158.

"The 'admissibility' and 'sufficiency' of scientific evidence necessitate different inquiries and involve different stakes. Admissibility entails a *threshold* inquiry over whether a certain piece of evidence ought to be admitted at trial." *In re Joint Eastern & Southern District Asbestos Litigation,* 52 F.3d 1124, 1132 (2d Cir. 1995) (emphasis in original); *see* Fed.R.Evid. 104(a). Rule 702 of the Federal Rules of Evidence and *Daubert,* discussed below, govern the admissibility of

expert testimony. The trier of fact, on the other hand, is tasked with considering the sufficiency, or weight, of admitted expert testimony, and does so only after an opponent has an opportunity to challenge the expert testimony with "vigorous cross-examination, presentation of contrary evidence," and summation. *Daubert,* 509 U.S. at 596, 113 S. Ct. 2786; *Amorgianos v. National R.R. Passenger Corp.,* 303 F.3d 256, 267 (2d Cir.2002); *Campbell v. Metropolitan Property & Casualty Ins. Co.,* 239 F.3d 179, 186 (2d Cir.2001) ("[T]he weight of the evidence is a matter to be argued to the trier of fact...."); *Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir.1995) ("[T]he Court [in *Daubert*] expressed its faith in the power of the adversary system to test shaky but admissible evidence." (internal quotations omitted)); *McCulloch v. H.B. Fuller Co.,* 61 F.3d 1038, 1043 (2d Cir.1995) ("[Defendant's] quibble with [plaintiff's expert's] academic training ... and his other alleged shortcomings ... were properly explored on cross-examination and went to his testimony's weight.")

## III.   ARGUMENT

### A.  Barron is Qualified to Offer His Opinions as an Accounting Expert

Barron is "qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702; *Pension Comm. of Univ. of Montreal Pension Plan v. Banc of Am. Sec., LLC*, 691 F. Supp. 2d 448, 479 (S.D.N.Y. 2010). Barron's curriculum vitae reveals that his extensive knowledge, skill, experience, training and education in the accounting and auditing fields qualify him to provide expert accounting testimony in this litigation.[1] He has practiced as a CPA for more than 34 years. *Id*. Barron has been directly involved in performing and overseeing hundreds of audits of financial statements prepared in accordance with GAAP, provided consulting

---

[1] See Curriculum Vitae of John E. Barron ("Barron CV"), attached as Exhibit A to the Expert Report of John E. Barron, CPA (the "Barron Rep."), which is itself attached as Exhibit 1 to the Declaration of Israel Dahan in Support of Defendants' Motion to Exclude the Reports, Testimony, and Opinions of John E. Barron (ECF No. 240-1), pp. 71-74.

services on application of technical accounting and auditing standards, and conducted professional training in accounting and auditing. Barron Rep. ¶¶14-16. Given his extensive knowledge, skill, experience, training and education in the accounting field, Barron is qualified to give the opinions that he has proffered in this action. Particularly so in light of the "liberal view of the qualification requirements of Rule 702" in the Second Circuit. *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004).

### B. Barron's Factual Narrative Is Appropriate and Necessary to Explain the Basis for His Expert Opinions

Defendants criticize Barron's comprehensive presentation of the evidence that forms the basis of, and supports, his expert opinions in this matter. Memorandum of Law in Support of the Defendants' Motion to Exclude the Testimony of John Barron (ECF No. 238) ("Mot.") at 7-8. But defendants' contention that Barron is improperly "narrating" evidence is wrong because his accounting opinions are intertwined with and based upon his analysis of the facts and circumstances. *Pension Committee of U. of Montreal Pension Plan v. Banc of America Securities, LLC.*, 691 F. Supp.2d 448, 468, n.113 (S.D.N.Y. 2010) ("To the extent that Weiser's testimony is intertwined with his opinions about the adequacy of Plaintiffs' due diligence, such testimony will not constitute impermissible factual narrative."). To be admissible, Rule 702 requires expert opinion testimony to be both "***based on sufficient facts or data***" and to apply "the principles and methods ***to the facts of the case***." Fed. R. Evid. 702. By anchoring his accounting and disclosure opinions to the facts pertinent to those opinions, Barron has done exactly what the Federal Rules require.[2] Courts in this district have previously acknowledged

---

[2] *See also Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485, 507 (S.D.N.Y. 2015) ("While a juror may be able to understand each individual source that Matlins cites, Matlins 'synthesizes this material and pulls together common themes in reaching his conclusions.'"); *Pinterest, Inc. v. Pintrips, Inc.*, 2015 WL 2268498, at *3 (N.D. Cal. May 14, 2015) ("[An] expert witness is permitted to compile

that experts may, often must, and do rely on facts and state them in their report. *Scentsational Techs., LLC v. Pepsi, Inc., at al.,* 2018 WL 1889763, at *4 (Forrest, J.) ("It is certainly the case that an expert may and often must rely on facts—and that the expert will state them in a report.").

The documents relied on in his reports are the same type of documents that Barron has relied upon in the past to make determinations as an auditor and as an expert witness. Defendants' rebuttal expert, Dr. Thomas Linsmeier, relies upon the same types and sources of evidence to support his own analysis and incorporates a similarly detailed narrative of facts and documents considered—he simply structures his report differently to incorporate this narrative throughout, mainly through voluminous footnotes. See, Expert Report of Thomas Linsmeier, Ph.D. ("Linsmeier Rep.")[3], ¶¶ 68-92, 99-103, 109, 115-117. Defendants (and Dr. Linsmeier) thus tacitly acknowledge that this means and mode of analysis are valid and reliable.

### i. Barron's Presentation of the Facts Supporting His Opinions Is Proper

Defendants claim that Barron's "lengthy factual narrative" "cherry picks deposition testimony and documents out of context" and "ignores other sworn testimony", and summarized facts that Defendants contend are "wholly immaterial," and should therefore be excluded. They suggest that courts in this Circuit "routinely exclude" factual narratives that a "lay juror is equally capable of constructing," citing several cases. Upon closer examination, none of the cases they cite actually support the relief they request.

Defendants' assertions of "cherry-picking" and relying upon "immaterial" evidence misses the mark. The court in *S.E.C. v. Johnson,* 525 F. Supp. 70, 75 (D.D.C. 2007), was confronted with a strikingly similar argument to that offered by Defendants here—alleging the

---

documents, even materials that a lay person would understand, and then explain how those materials inform and support his or her expert opinions.").
[3] Attached as Exhibit 2 to the Declaration of Israel Dahan in Support of Defendants' Motion to Exclude the Reports, Testimony, and Opinions of John E. Barron (ECF No. 240-2)

plaintiff's accounting expert "failed to reliably apply a cognizable methodology", "cherry-picking" evidence relied upon, and ignoring evidence that the defendant's counsel proffered as contrary. The court there correctly recognized that these arguments presented questions for the jury. "Failing to review all relevant evidence is not a ground for excluding [an expert's] testimony; rather, it provides subject matter for cross-examination. In short, Defendants' arguments 'go to the weight of [the expert's] testimony rather than the admissibility.'" *S.E.C. v. Johnson* (quoting *Wechsler v. Hunt Health Sys.,* 381 F.Supp.2d 135, 144-45 (S.D.N.Y. 2003). In another striking parallel, the *Johnson* defendants argued that plaintiffs' expert impermissibly usurped the jury by reaching "witness and evidentiary credibility determinations." *Id.* at fn. 6. The court likewise rejected this argument: "Although Defendants' criticism is couched in terms of [the expert's] invading the jury's province by making credibility determinations, ***in fact, Defendants are attacking the evidence he relied upon in reaching his conclusions***. … It is not grounds for exclusion that he evaluated the credibility of the evidence in reaching his conclusions…" *Id.* (emphasis added). Similarly, the *Johnson* court rejected the suggestion that an expert should be excluded for relying upon evidence that the defendants deemed immaterial. "It is for the jury, not the Court, to determine whether his opinions are suspect because facts upon which he relied were shown to be inaccurate or unproven." *Id. See  Micro Chemical, Inc. v. Lextron, Inc.,* 317 F.3d 1387, 1392 (Fed.Cir.2003) ("[w]hen, as here, the parties' experts rely on conflicting sets of facts, it is not the role of the trial court to evaluate the correctness of facts underlying one expert's testimony"); *Wechsler,* 381 F.Supp.2d at 144-45 (rejecting exclusion of an expert based on his purported reliance on "the wrong documents").

Defendants' reliance upon Judge Kaplan's opinion in *In re Rezulin Prod. Liab. Litig*., 309 F. Supp. 2d 531 (S.D.N.Y. 2004), is misplaced. Mot. at 7. In *Rezulin*, the experts admitted their

opinions were based on their personal, subjective views, *Rezulin* at 543; here Barron objectively assessed the relevant facts and circumstances to analyze the context and substance of the transactions between the parties, including the underlying intent, and compliance with GAAP. Barron Rep., ¶¶ 18 – 114. He sets forth the applicable GAAP and PCAOB guidance and FXCM's reporting responsibilities. Barron Rep., ¶¶ 115 – 126 and 136 – 142. He then applies the applicable standards to the relevant facts and circumstances. Barron Rep., ¶¶ 127 – 135 and 143 – 150. This approach is sound, reliable and exactly how an expert should reach admissible opinions, as numerous other courts have found in admitting similar accounting testimony. *See, e.g.*, *In re REMEC Inc. Sec. Litig.*, 702 F. Supp. 2d 1202, 1220 (S.D. Cal. 2010) (admitting accountant's report because it "explains precisely why he believes REMEC used inappropriate assumptions and then supports his reasons for selecting alternative inputs" and overruling in connection with summary judgment "[d]efendants' laundry list of evidentiary objections"). Furthermore, in *Rezulin*, this Court excluded the experts' opinions on ethics because they were not relevant to the principal issue in that case - an issue not present here. *Rezulin*, 309 F. Supp. at 544.

Likewise inapposite is *LinkCo, Inc. v. Fujitsu Ltd.*, No. 00 Civ. 7242, 2002 WL 1585551, (S.D.N.Y. July 16, 2002), where the court excluded a putative software expert because the expert report failed to address "technical questions that may be difficult for a juror to comprehend," and stated ultimate legal conclusions. With respect to the witness's narrative, the court held only that where the "report [did] no more than counsel [would] do in argument, i.e. propound a particular interpretation of [defendant's] conduct," this would not provide an *independent justification* for the admission of expert testimony. *Id.* at *2-*3. Likewise, the court excluded a putative expert on intellectual property licensing negotiations, on grounds that he offered impermissible opinions on

ultimate questions of law and failed to offer any expertise that would assist the jury in

determining an issue of fact "outside common understanding." *Id.* at \*3-\*4.[4]

### ii. The Applicable GAAP, SEC Rules and Other Professional Guidelines Required Barron to Consider Relevant Evidence

The facts and circumstances presented within Barron's report provide the basis for his

opinions under GAAP, including FASB ASC 810 and 850, and SEC Rules, including Staff

Accounting Bulletin No. 99 ("SAB 99")[5] and PCAOB standards, including Auditing Standard

("AS") 11 and its predecessor, Interim Auditing Standard ("AU") 312. Rendering an opinion

under both ASC 810 and 850 requires an understanding of the facts and circumstances

surrounding a reporting entity's business relationship with its relevant counterparties, the context

in which transactions occur, the substance of those transactions, and the intentions of the parties

to the transactions. As detailed in Barron's report, GAAP required FXCM to disclose, for any

related party (including Effex and Dittami), "the nature of the relationship involved, a

description of the transactions… and such other information deemed necessary to an

understanding of the effects of the transactions on the financial statements…" Barron Rep. ¶125.

"Information about transactions with related parties that would make a difference in decision

making shall be disclosed so that users of the financial statements can evaluate their

---

[4] The other authorities Defendants offer are taken wholly out of context and offer no support for Defendants' positions. *Highland Cap. Mgmt., L.P. v. Schneider,* 379 F. Supp. 2d 461 (S.D.N.Y 2005) held only that an expert cannot be presented for the **sole purpose** of "constructing a factual narrative based on the record evidence", relying in part upon *Rezulin*. "While an expert **must of course rely on facts or data in formulating an expert opinion**… an expert cannot be presented to the jury **solely for the purpose** of constructing a factual narrative based upon record evidence." (emphases added) In *Taylor v. Evans*, No. 94 Civ. 8425, 1997 WL 154010, (S.D.N.Y. Apr. 1, 1997), the experts' report was filled with "baldly stated legal conclusions" and lay matters. *Id.* at \*1-\*2. ("Virtually all of Wayburn's report falls into one of these categories, either setting forth opinions on whether defendants violated a legal standard or presenting a narrative of the case which a lay juror is equally capable of constructing."). Neither is applicable here.
[5] Attached as Exhibit 203 to the Declaration of Joshua Baker ("Baker Decl."), filed contemporaneously herewith.

significance… Relevant information is omitted if the disclosures required by this Topic are not made." Barron Rep. ¶126, quoting ASC 850-10-10-1. Similarly, GAAP prescribes an intensive review of relevant facts and circumstances to evaluate whether a reporting entity may be required to consolidate the results of an entity in which it holds a variable interest, including whether the legal entity (which may be a VIE) has sufficient equity at risk "to permit the legal entity to finance its activities without additional subordinated financial support", or whether the putative equity holders of the legal entity "lack any one of… (1) the power… to direct the activities of a legal entity that most significantly impact the entity's economic performance, (2) [t]he obligation to absorb the expected losses of the legal entity… [or] [t]he right to receive the expected residual returns," and whether the reporting entity possesses "power to direct the activities of the VIE that most significantly impact the VIE's economic performance" and "the obligation to absorb losses… or the right to receive benefits… that could potentially be significant to the VIE." Barron Rep. ¶¶138 and 140, quoting ASC 810, 810-15-14, 810-10-20, 810-10-05-8A and ASC 810-10-25-38A. These are fact-intensive inquiries and Barron's analysis of facts pertinent to his assessment is no ground for exclusion.

With respect to the relevant issues of materiality, consolidation of variable interest entities, and of related party disclosures, the need to consider facts and circumstances when making these determinations is fundamental to financial reporting under GAAP.[6]

---

[6] The requirement to base accounting judgments on pertinent facts and circumstances appears throughout U.S. GAAP and SEC Guidance, including in connection with evaluation of materiality, variable interests, and related-party transactions:

- The predominant view is that materiality judgments can properly be made only by those **who have all the facts**. SAB 99/ASC 250-10-S99-1.
- **[A]n assessment of materiality requires that one views the facts in the context** of the 'surrounding circumstances,' as the accounting literature puts it, or the 'total mix' of information. SAB 99/ASC 250-10-S99-1.

- ***Judgment, based on consideration of all the facts and circumstances, is needed to distinguish substantive terms, transactions, and arrangements from nonsubstantive terms, transactions, and arrangements***. ASC 810-10-15-13B
- The determination of whether an implicit variable interest exists ***is a matter of judgment that depends on the relevant facts and circumstances***. ASC **810-10-25-52**
- The reporting entity shall consider whether it holds an implicit variable interest in the VIE or potential VIE. ***The determination of whether an implicit variable interest exists shall be based on all facts and circumstances*** in determining whether the reporting entity may absorb variability of the VIE or potential VIE. ASC 810-10-25-54
- The identification of a primary beneficiary, if any…***is based solely on the specific facts and circumstances presented***. ASC 810-10-55-94
- The design of the legal entity (for example, its capital structure) and the apparent intentions of the parties that created the legal entity are important qualitative considerations, as are ratings of its outstanding debt (if any), the interest rates, and other terms of its financing arrangements. ***Often, no single factor will be conclusive and the determination will be based on the preponderance of evidence.*** ASC **810-10-25-47**
- Transactions that because of their nature may be indicative of the existence of related parties include… ***[b]orrowing or lending on an interest-free basis or at a rate of interest significantly above or below market rates prevailing at the time of the transaction… [and] [m]aking loans with no scheduled terms for when or how the funds will be repaid***. Statement on Auditing Standards ("AU") 334.03

(emphases added).

The SEC concurs; in its financial reporting manual for evaluating a related party transaction:

- Disclosure of the following may be necessary, where related party transactions are material:
    1. ***The business purpose of the arrangement***;
    2. ***Identification of the related parties*** transacting business with the registrant;
    3. ***How transaction prices were determined*** by the parties;
    4. If disclosures represent that transactions have been evaluated for fairness, a description of how the evaluation was made; and
    5. ***Any ongoing contractual or other commitment*** as a result of the arrangement.

- Consideration should also be given to whether disclosure is necessary about parties that fall outside of the definition of "related parties" … but ***with whom the registrant has a relationship that enables the parties to negotiate terms of material transactions that may not be available for other, more clearly independent, parties on an arm's-length basis***. An example of this type of entity might be a company established and operated by former management of the registrant.

*Division of Corporation Finance - Financial Reporting Manual*, Topic 9, § 9610 (SEC 2008)(relevant excerpts attached as Exhibit 202 to the Baker Decl.); citing ASC 850-10-50-5 and ASC-MG (emphases added).

11

Accordingly, Barron properly analyzed documents detailing the course of dealing between FXCM and Effex to reach conclusions as to whether FXCM was required to consolidate Effex's results of operations as a VIE and/or disclose its transactions with Effex as related-party transactions under applicable U.S. GAAP. Barron's factual analysis is proper, and indeed required, under GAAP. FXCM's historical relationship and dealings with Effex and Dittami, along with its historical and contemporaneous dealings with liquidity providers before and after it began utilizing Effex, need to be analyzed to assess FXCM's compliance with GAAP.

As Barron articulated in his Report, "Both SEC SAB 99 and PCAOB standards address the need to consider the materiality of certain accounts or disclosures within the financial statements …. the evaluation of whether a misstatement or omission in financial statements is material is viewed from the standpoint of a reasonable investor and the likelihood that a misstatement or omission would have significantly altered decisions of the investor, ***considering the circumstances, including both quantitative and qualitative factors***, and the nature of the item and its location within the financial statements." Barron. Rep. ¶¶119-120 (emphasis added).

### C. Barron's Accounting Opinions are Reliable, Supported by Evidence, Likely to be Helpful to the Factfinder, and Should Be Admitted

#### i. Barron's VIE Opinions are Supported by Evidence and Reasonable Inferences from Evidence in the Record and Grounded in Extensive Experience and Subject-Matter Expertise

Barron analyzed FXCM's documents with the same intellectual rigor he would use in his practice as an accountant and an auditor. Defendants' arguments thus go to the weight of his testimony, rather than the admissibility. Barron reasonably relied on documents supplied by defendants to make a determination of how defendants should have assessed, accounted for, and reported their business relationships and transactions with Effex and Dittami in accordance with GAAP, and determined that Defendant's contemporaneous financial reporting violated GAAP in

failing to account for Effex as a VIE. *See, e.g.* Barron Rep. ¶¶ 143-150; Rebuttal Expert Report by John E. Barron ("Rebuttal")[7] ¶¶ 10-15 and 49-87. In this case, Barron examined numerous documents produced by FXCM and its external auditor, Ernst & Young, during the Class Period and conducted a thorough and detailed analysis. He reviewed FXCM internal and published reports, records, emails, and other communications, including various draft and executed agreements between and among FXCM, Effex, and Dittami. Transcript of the Deposition of John E. Barron, CPA, on June 7, 2021 ("Barron Dep.")[8] at 15:19-17:15; 34:5-13; 45:3-10; 65:7-23; 69:18-70:7; 77:14-78:20; 93:3-94:4; Barron. Rep. ¶¶ 18-109; Rebuttal ¶¶ 52-54, 73 and 104-117.

Barron reviewed voluminous documents and testimony to familiarize himself with the nature and history of the FXCM-Effex relationship and issue expert reports and opinions. Barron Rep. ¶¶4-5 and Exhibit B; Rebuttal ¶7 and Exhibit B. He then applied his thirty-four years of experience in as a subject-matter expert on U.S. GAAP to the facts he had gathered and analyzed. Barron Report ¶¶143-150. Defendant's expert reviewed the same types of documents in reaching his expert opinions, and applied a similar methodology.

Defendants' rebuttal expert, Linsmeier, proceeded in substantially the same fashion. Linsmeier Rep. ¶8, Appendix B.[9] Linsmeier has critiqued Barron's expert report, and Barron has rebutted his criticisms.[10] Because Linsmeier's criticisms miss the mark, Barron reaffirmed his

---

[7] Attached as Exhibit 3 to the Declaration of Israel Dahan in Support of Defendants' Motion to Exclude the Reports, Testimony, and Opinions of John E. Barron (ECF No. 240-3)

[8] Relevant excerpts are attached as Exhibit 200 to the Baker Decl.

[9] After reviewing those documents, Linsmeier applied his "analysis of the SEC filings, documentary records, and accounting literature" and formulated his expert opinions. *Id.* ¶10.

[10] For example, Barron points out that Linsmeier misapplied terminology from ASC 810, governing consolidation and the determination whether an entity should be reported as a VIE, to the question of whether an entity must be disclosed as a related party, which is governed by ASC 850. Rebuttal ¶¶ 24 – 26. Linsmeier also mistakenly imputes evidence drawn from years after Effex's formation in 2010 into his analysis of whether Effex qualified as a VIE and should have been consolidated by FXCM, ignoring the provisions of ASC 810 that the initial determination of whether an entity is a VIE shall be made on the circumstances existing "on the date at which the reporting entity becomes involved with the legal entity." Rebuttal ¶¶ 44 – 46, quoting ASC Topic 810-10-25-37.

opinions that "…Effex was a variable interest entity, of which FXCM was the primary beneficiary, and FXCM failed to consolidate the financial statements of Effex and make disclosures required by GAAP." Barron concluded that the defense rebuttals gave him no reason to revise his opinions.[11]

The procedure by which Barron performed his analysis—ascertaining relevant evidence, stating the governing standards under prevailing U.S. GAAP, and analyzing the stated facts pursuant to those standards—is perfectly reasonable, reliable, and typical of experts in the accounting field. Defendants can explore any deficiencies they posit exist in the weight and interpretation of evidence on cross-examination.

### ii.  Barron's VIE Opinions Apply and Are Supported by U.S. GAAP

#### 1.  Barron Systematically Analyzed Relevant Guidance on U.S. GAAP to Determine that Effex was a VIE

Barron analyzed the key provisions of ASC 810, including whether Effex was a VIE and whether FXCM was the primary beneficiary of Effex as a VIE, including whether FXCM was entitled to receive benefits from Effex that could potentially be significant to Effex.

Defendant's position that Barron failed to consider certain "steps" in reaching his conclusions also fails to take into consideration that certain "steps" were not relevant (i.e., the result would be the same either way), were unnecessary based on the either/or nature of the requirements, or were, in the final analysis, based on preponderance of the evidence. Barron Rep. ¶¶ 138-139, 143-144, Rebuttal ¶¶ 49 – 53.

---

[11] "After reading the Linsmeier Report and the documents referred to therein, I reaffirm my opinions that (a) Effex was a related party to FXCM, and FXCM failed to make related party disclosures as required by GAAP; and (b) Effex was a variable interest entity, of which FXCM was the primary beneficiary, and FXCM failed to consolidate the financial statements of Effex and make disclosures required by GAAP." Rebuttal ¶ 6.

"The initial determination of whether a legal entity is a VIE shall be made on the date at which a reporting entity becomes involved with the legal entity... That determination shall be based on the circumstances on that date including future changes that are required in existing governing documents and existing contractual arrangements." Barron Report ¶139, 143-144. Barron Rebuttal ¶¶ 42, 44. At the date of initial involvement, and for a period of time thereafter, FXCM expended funds and provided services to Effex at FXCM's expense allowing Effex to commence operations, including: (1) setting up a trading line of credit on behalf of Effex allowing Effex to start trading which required FXCM to post $2 million collateral in a Prime of Prime account (the $2 million note payable by Effex to FXCM securing the Prime of Prime account was dated April 8, 2010). (2) turning over the trading system infrastructure to Effex so that Mr. Dittami could continue its build-out following his separation from FXCM; (3) providing office space rent-free for a period of time following Mr. Dittami's departure; and (4) providing FXCM personnel to Effex for technical support and monitoring of Effex's trading system. Barron Report ¶¶34, 35 - 37, 40, 72. 85 – 89 and 105; Plaintiff's Rule 56.1 Statement of Additional Material Facts ("Plaintiff 56.1") ¶¶ 171-176, 240-248. All of these actions required the outlay of funds by FXCM. Given the support that FXCM provided to Effex at the time of its startup in 2010, FXCM management concluded that Effex likely did not have sufficient equity to fund its activities. Barron Rebuttal ¶ 52-54. Barron also relied upon testimony that FXCM's collateralization of the Prime of Prime account was done to allow Effex access to the FX market which Effex would not have been able to do as an independent entity. Barron Report ¶ 37.

Defendants next argue that Barron "skips" the "second step" of the VIE analysis, suggesting that to have a variable interest in Effex, "FXCM would have had to hold investments or other interests that would have absorbed portions of Effex's expected losses or received portions

of… residual returns…" Mot. at 11. However, Defendants' themselves tacitly admit that Barron didn't "skip" this step at all—they acknowledge that Barron analyzed this issue, finding that the Services Agreement (and the documents surrounding its drafting) demonstrated that the effect (and intent) of the Services Agreement was to grant FXCM a (significant) share of Effex's operating profits. Mr. Dittami's employment agreement provided FXCM with a 70% share of profits of EES, the internal operating division of FXCM which became Effex. A side letter to Mr. Dittami's resignation letter included the understanding that he and FXCM would enter into a license agreement on economic terms similar to the employment agreement, including the 70/30 profits split. Barron Rep. ¶¶45-68; Rebuttal ¶¶68–70. Due to FXCM's desire to avoid the perception of ownership, the parties entered into a services agreement providing for a fixed rate applied to variable order flow volume between FXCM and Effex. However, FXCM believed that the fixed rate of payment based on variable order flow would be in the "ballpark" of the 70/30 split. Thus, it was the intent of the parties that payments under the pay-for-flow arrangement would result in profit-sharing. Barron Rep. ¶¶45–68, Rebuttal ¶¶65–70. A basic understanding of the accounting model leads to the conclusion that an arrangement resulting in the sharing of profits represents an expected residual return as defined in ASC 810-10-20. Rebuttal ¶52.

Defendants' argument that Barron's conclusion "eludes comprehension" because they are unable to identify "language obligating FXCM to absorb any losses… [or] share in… profits…" is willfully obtuse. Barron's analysis on this point is clear—Defendants simply dislike his quite reasonable conclusions. Their criticisms go to the weight to be accorded to evidence, a quintessential issue for the finder of fact. Defendants will have their opportunity to challenge the expert testimony with "vigorous cross-examination, presentation of contrary evidence," and summation. *Daubert,* 509 U.S. at 596, 113 S. Ct. 2786; *Amorgianos v. National R.R. Passenger*

*Corp.,* 303 F.3d 256, 267 (2d Cir.2002); *Campbell v. Metropolitan Property & Casualty Ins. Co.,* 239 F.3d 179, 186 (2d Cir.2001) ("[T]he weight of the evidence is a matter to be argued to the trier of fact...."); *Borawick v. Shay,* 68 F.3d 597, 610 (2d Cir.1995) ("[T]he Court [in *Daubert*] expressed its faith in the power of the adversary system to test shaky but admissible evidence." (internal quotations omitted)).

Defendants emphasize that Effex made profits by acting as a liquidity provider for entities besides FXCM. However, the initial determination of whether an entity is a VIE, and whether a reporting entity is the primary beneficiary of the VIE, is made ***as of the date that the reporting entity first became involved*** with the legal entity. At that date, in April 2010, and as late as November 15, 2010, FXCM was Effex's only customer. Even after this period, approximately 90% of Effex's business came from FXCM through 2011, evidencing Effex's near total reliance on FXCM for its profits in April 2010 and for a considerable period thereafter—profits in which FXCM shared through the payments to FXCM for order flow. Barron Rep. ¶¶ 69-72.

### 2. Barron's Conclusion that Effex Should have been Consolidated and Reported as a VIE is Supported by the Evidence

Defendants next contend that the Court should exclude Barron's opinions because they are "conclusory," speculative, and/or unsupported. They accuse Barron of "cherry-picking" facts and giving inadequate consideration to contrary testimony rendered by Niv, Ahdout, and Dittami. Defendants also assert that Barron's reliance upon the Service Agreement and related contemporaneous documents is misplaced, suggesting that the fact that the ultimate version of the Services Agreement doesn't specifically incorporate the parties' contemplated 70/30 profit split should be dispositive, citing Barron's acknowledgment there is no specific language in the Services Agreement explicitly setting a 70/30 profit split (Barron Dep. at 69:2-10). However, they fail to acknowledge that Barron discussed this in his report, concluding from the

contemporaneous documents that parties' intent—and the substantive effect—was to preserve the profit split. Barron Rep. ¶¶32, 48, 60. Each of defendants' arguments goes to the weight and credibility of the evidence, which is properly to be evaluated by the jury, and not a legitimate basis to exclude testimony of an otherwise qualified expert.

Defendants fail to acknowledge the specific facts supporting Barron's analysis, in favor of implicitly crediting Dittami's testimony (which is itself conclusory and unsupported). At the date of FXCM's initial involvement with Effex in April 2010, FXCM was Effex's only customer.[12] As Effex's only customer, had FXCM chosen to exercise it, FXCM had the power to direct the activities of Effex that most significantly impacted Effex's economic performance. This was certainly the case at the date that FXCM initially became involved with Effex. Barron Rep. ¶ 145.[13] The fact that FXCM was able to extract significant payments for order flow from Effex alone among its liquidity providers further supports Barron's conclusion.

Defendants' gloss on the Option Agreement is likewise argumentative, implicitly crediting after-the-fact, self-serving testimony of Niv, Ahdout, and Dittami to negate Barron's conclusions drawn from the Option Agreement itself and related contemporaneous documentary evidence. The fact that the parties "acknowledged" on November 15, 2015, more than five years after the fact, that the option agreement entered into on April 14, 2010 lacked legal force or effect, fails to appreciate the original reason for the option agreement and the context in which it

---

[12] This remained the case through at least November 15, 2010. In its second year of operation, FXCM was still providing approximately 90% of Effex's business. Barron Rep. ¶¶69-72. At the same time, FXCM was providing significant competitive advantages to Effex in the form of the "winning all ties," lowering the spreads or markups on Effex trades, and providing Effex with access to "real time book" information increasing Effex's volume and profits. Barron Rep. ¶¶ 92-101.

[13] GAAP is clear that a "reporting entity does not need to ***exercise*** its power in order to ***have*** power. (ASC 810-10-25-38). The fact that FXCM never made requests that Effex objected to does not mean that FXCM did not have the power to do so. Rebuttal ¶ 78.  Mr. Dittami's testimony that he made all decisions does not diminish the power that FXCM had to direct the activities that most significantly impacted Effex's economic performance.

was created. The option gave FXCM the right to acquire a 70% interest in Effex for $1, indicating FXCM's belief that Effex was worth very little without FXCM, consistent with the 70/30 profit sharing arrangement and Effex's near total dependence on FXCM.. Barron Rep. ¶¶ 38, 104-109.

Likewise, their argument against Barron's opinion that Effex lacked sufficient equity at risk boils down to assuming the credibility of Dittami's subsequent testimony. Mr. Dittami's testimony that Effex was capitalized with his "personal funds," provides no information with respect to the timing or amount of such capitalization.[14] The conclusion is further supported by FXCM management's own documented conclusion that Effex "likely did not have sufficient equity to fund its activities." Rebuttal ¶ 52 (quoting FXCM management's conclusion, in a memorandum provided to their auditors, that, "… FXCM may have had a variable interest in Effex, as "***the entity likely did not have sufficient equity to fund its activities***".)

Defendants next question the sufficiency of the evidence Barron cites to support a conclusion that FXCM took steps to avoid consolidating Effex, and relatedly, whether such omission may have been material to the mind of a reasonable investor. However, there is ample evidence (cited in the Barron report) that FXCM's decision to discontinue the operation of EES as an internal division and to conduct EES's planned dealing desk trading activities in a separate legal entity owned by Mr. Dittami, was done for the specific purpose of ***avoiding the appearance of a conflict*** with FXCM's publicly-stated core business philosophy of operating under a no-dealing desk model. Barron Rep. ¶¶ 30-32.

---

[14] The actions of FXCM at the date the FXCM's initial involvement with Effex, including collateralizing the Prime of Prime account, furnishing Effex with the trading system, and providing other significant support demonstrates the insufficiency of Effex's equity at risk. This conclusion is supported by Mr. Dittami's repayment of the Prime of Prime account collateral and trading system costs in July 2010, months after the date of FXCM's initial involvement with Effex. Barron Report ¶¶34, 35-37, 40, 72, 85-89 and 105.

Finally, taking issue with Barron's statement that "FXCM formed Effex," Defendants again hold up Dittami's testimony as proof to the contrary. However, it was FXCM's decision to have the operations of EES conducted by a separate legal entity rather than continue operating EES using an employee of FXCM, John Dittami. Barron Report ¶¶ 30-32. The fact that Effex was legally formed by Mr. Dittami—with FXCM's material assistance—does not change the fact—supported by contemporaneous evidence reviewed and relied upon by Barron—that the decision rested with FXCM.

>   **D. Barron's Conclusion That FXCM Should Have Disclosed Effex and Dittami as Related Parties Is Supported by Ample Evidence and  Informed by Barron's Extensive Experience**

Defendants next weakly argue that the Court should exclude Barron's expert testimony that Effex and/or Dittami should have been disclosed as related parties under prevailing U.S. GAAP, because they are based on the "conclusory premise" that "FXCM was in a position to significantly influence Effex to the extent that Effex might have been prevented from fully pursuing its own separate interests." Mot. at 17. They then go on to argue—curiously—that this putatively "conclusory premise" is based on four specific factual findings: 1) FXCM created Effex (2) FXCM was Effex's first and only customer at the beginning of Effex's history (3) Effex used FXCM's prime-of-prime account and received certain trading advantages and (4) FXCM had the discretion to terminate the Services Agreement and trading advantages. *Id.,* citing Barron Rep. ¶127.

Defendants then attack each of these "findings" on the same grounds—that they are (1) "controverted by sworn testimony and documents", and (2) that many of the events Barron cites "did not exist during the Class Period." However, the only "document" Defendants actually cite is the conclusory, *post-hoc,* self-serving affidavit issued by John Dittami in connection with his

20

own civil action against the National Futures Association, and the only "sworn testimony" they cite is the likewise conclusory, *post-hoc,* and self-serving testimony of co-conspirators Dittami and Dror Niv. Thus, Defendants criticize Barron for not affording adequate weight to the testimony of Dror Niv and John Dittami.[15] However, experts are indisputably permitted to draw conclusions from disputed evidence. *Ajala v. W.M. Barr & Co. Inc.*, 2018 WL 6322147, at *4 (S.D.N.Y. Dec. 4, 2018) ("If the ***jury*** is authorized to so conclude, then it cannot be that Defendants' fire investigator Long is not."). And, defendants are free to cross examine Barron with any testimony they would like at trial. *Daubert*, 509 U.S. at 596.

Barron properly reviewed and considered the available evidence[16] - including both the witnesses' testimony and the contemporaneous evidence. See, Exhibit B to the Barron Rep.

---

[15] Defendants' Motion is shot through with iterations of this argument—that Barron gives insufficient shrift to testimony provided by FXCM, Dror Niv, William Ahdout, and John Dittami. It is here that it appears to be most prominently and straightforwardly stated, so in the interest of brevity, here is where Plaintiffs shall respond to it. The same arguments apply with equal force to each and every one of Defendants' assertions in this vein. Mot. at 12. (relying entirely upon conclusory statements in Dittami's testimony and affidavit to posit, "In reality, Effex did not make a fixed amount on each customer trade and its profits were not correlated to FXCM customer losses or profits"); Mot. at 14 (again relying exclusively upon Dittami's affidavit for conclusory statements that, e.g., Dittami "made all major decision regarding Effex", "Effex's operations were never controlled by FXCM", Effex "independently capitalized its prime broker relationship" and "supplied all of its operating and risk capital"), Mot. at 15 (relying upon testimony from Dittami and Niv that the Option Agreement was "never in effect or valid", that Effex was capitalized with Dittami's "personal funds", and that Effex "reimbursed" FXCM for funds invested in the development of EES, "ceased using the credit facility" that FXCM capitalized for Effex in June 2010, and "commenced operations in Belfast, Ireland" in October 2010); Mot. at 17-18 (e.g., "Dittami testified that he formed Effex and it was capitalized with his own funds" and Effex "quickly gained a customer base and began working with entities other than FXCM"). Plaintiffs note that each of these conclusory statements is controverted directly or by implication in contemporaneous documentary evidence cited and relied upon in the Barron Report. The same arguments presented above apply in each case.

[16] Barron properly considered all facts relevant to the evaluation of whether Effex should have been treated as a related party in FXCM's financial statements filed during the Class Period, regardless of whether they occurred before the start of or during the Class Period. Moreover, FXCM's SEC filings made during the Class Period contained disclosures pertaining to the periods which contained events included in Barron's analysis. For example, FXCM's 2011 Form 10-K, filed during the Class Period, contained FXCM's 2010 financial statements (the year Effex was created and began doing business with FXCM). See Barron Dep. 116:5-120:22; Rebuttal ¶8, 43-46.

(citing Barron's review of the deposition testimony of Niv, Ahdout, and Dittami), and citations

to said testimony throughout Barron's reports. Defendants' disagreement with the weight Barron

accords to the respective species of evidence is not proper grounds for the exclusion of expert

testimony under *Daubert.*

### E. Barron Is Qualified to Opine on Materiality under U.S. GAAP, and Such Opinion Will Assist the Factfinder in Ascertaining Materiality of Defendants' Misstatements Under the Securities Laws

Defendants claim that Barron's analysis is not reliable because Barron examines evidence

of events occurring before the Class Period which Defendants unilaterally deem "immaterial",

relies on inferences from documents in the factual record rather than giving what Defendants

consider adequate credit the conclusory, self-serving *post hoc* testimony of individual

Defendants and Dittami, and reaches conclusions regarding the substance of FXCM's business

relationship with Effex and Dittami from the plain reading of contemporaneous documents that

Defendants have subsequently attempted to mischaracterize and disclaim. Defendants continue

that Barron's testimony usurps the role of the Court and the trier of fact because Barron offers

"legal conclusions", regarding the issue of materiality and, perhaps alternatively, the trier of fact

does not need Barron's testimony to understand the technical accounting determinations at issue.

None of Barron's opinions constitutes a legal conclusion[17] that any of the Defendants'

alleged misstatements was material as a matter of law, and admission of Barron's conclusions

---

[17]  *Feinberg v. Katz,* 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007), upon which Defendants rely for the proposition that an accountant's opinion that misrepresentations were "material" constituted an "impermissible legal conclusion," is inapposite. *Feinberg* is distinguishable not only because the expert's opinions there were conclusory, but also because the expert opined that defendants violated the ***legal*** standard of materiality, *i.e.*, the expert merely told the jury what decision to reach. *Feinberg,* at *9-*11 (expert testimony precluded if it "cross[es] the line between a permissible conclusion as to an ultimate issue of fact and an impermissible legal conclusion."). Here, Barron goes only so far as to reach and support conclusions as to the accounting standard of materiality to the financial statements, which is necessary to reach any conclusion under GAAP.

concerning U.S. GAAP materiality presents no danger of confusion. Accounting experts (including Barron) routinely offer similar testimony as to materiality.[18]

GAAP provides a definition of materiality for accountants to utilize: "Materiality concerns the significance of an item to users of a registrant's financial statements. A matter is 'material' if there is a substantial likelihood that a reasonable person would consider it important." ASC 250-10-S99-1. SAB 99. This is strictly an accounting judgment. In fact, SAB 99 provides substantial guidance directed uniquely to those responsible for preparing and auditing of financial statements.[19]

As Barron explains, SAB 99 and related PCAOB standards require accountants to consider the materiality of accounts and disclosures within the financial statements. See, e.g., Barron Rep. ¶119 ("The auditor should evaluate whether, in light of the particular circumstances, there are certain accounts or disclosures for which there is a substantial likelihood that misstatements of lesser amounts than the materiality level established for the financial statements as a whole would influence the judgment of a reasonable investor…such as conflicts of interest in related party transactions… .", quoting AS 11.[20])

The determination as to whether a misstatement or omission contained in a financial statement may cause the financial statement not to be "presented, in all material respects, in

---

[18] If Defendants' purported concern of juror confusion had any merit (it does not) it could easily be cured: "To the extent that Defendants object to the use of the word 'material' as a legal term of art . . . "a word other than 'material' " " may be used. *United States Sec. & Exch. Comm'n v. ITT Educ. Servs., Inc.*, 311 F. Supp. 3d 977, 995 (S.D. Ind. 2018).

[19] In fact, a recent proposal to modify the GAAP definition of materiality to include a statement that materiality is a "legal concept" was ultimately rejected by the FASB, which observed: "***Preparers and practitioners objected to stating that materiality is a legal concept because it may imply that only legal professionals can make materiality judgments and that materiality should be considered an accounting concept***." *See* Amendments to the Conceptual Framework for Financial Reporting, "Amendments to Statement of Financial Accounting Concepts No. 8," dated August 2018 (attached as Exhibit 201 to the Baker Decl.), citing BC3.18B.

[20] The provisions of AU 312, the predecessor standard, are consistent with AS 11.

conformity with U.S. GAAP" is guided by (among other sources) interpretations contained in

Supreme Court and other legal precedents, but it is fundamentally an accounting question. It is

inappropriate for resolution as a matter of law unless the factual evidence is so lopsided that

"reasonable minds cannot differ." *TSC Industries v. Northway, Inc*., 426 U.S. 438, 449-450

(1976).

Because courts recognize that "the accounting principles underlying . . . materiality . . .

are not the type of knowledge within the 'ken' of the average juror," they routinely admit expert

testimony from accountants to assist the trier of fact in understanding and applying the

accounting concept of materiality. *U.S. v. Martoma*, 993 F. Supp. 2d 452, 457 (S.D.N.Y. 2014)

("Expert testimony concerning materiality is often introduced in cases involving allegations that

a company misrepresented or wrongfully withheld information from investors"); *SEC v.

Ferrone*, 163 F. Supp. 3d 549, 565 (N.D. Ill. 2016) (SEC could present expert testimony

regarding materiality of allegedly false and misleading statements because "[t]he jury cannot

determine whether the statements were false and misleading unless it knows the actual facts

[surrounding the statements and] . . . the total mix of information related to these topics"). *See

also Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 966 (N.D. Ill. 2011) (rejecting motion for

summary judgment based on immateriality where "the expert report… squarely contradicts it,

thus creating a genuine dispute requiring trial.")[21]

---

[21] CPAs are commonly admitted to offer expert testimony on Management discussion and
analysis ("MD&A") disclosures and whether they comply with SEC Regulation S-K. *See, e.g.*, *SEC v.
Conaway*, 2009 WL 1583546, at *2-*3 (E.D. Mich. June 5, 2009) (finding a certified public accountant
qualified to issue expert opinion on the adequacy of Kmart's MD&A disclosures); *S.E.C. v. Snyder*, 2006
WL 1806164, at *8 (S.D. Tex. June 29, 2006) (discussing competing certified public accountants' expert
testimony concerning adequacy of MD&A in context of good faith reliance defense); *Koch v. Koch
Indus., Inc.*, 2 F. Supp. 2d 1385, 1401 (D. Kan. 1998) (the court specifically acknowledged that an
accountant was qualified to opine on the adequacy of disclosure of unusual and infrequent items), *aff'd*,
203 F.3d 1202 (10th Cir. 2000). Such opinions are not legal opinions (as defendants claim), but

**IV.    Conclusion**

Barron's expert report is thoroughly grounded in the evidentiary record, supported by extensive citations to specific evidence and well-explained logical inferences from that evidence, methodologically sound, and likely to be of assistance to the factfinder. Therefore, the of Court should deny Defendants' motion to exclude the testimony of Plaintiffs' expert John Barron.

---

materiality assessments "as an accountant would understand this standard in preparing financial statements." *Id*. at 1398.

Dated: December 9, 2021                    **THE ROSEN LAW FIRM, P.A.**

By: *_/s/ Joshua Baker_____*
Laurence M. Rosen
Phillip Kim
Joshua Baker
Brent LaPointe
275 Madison Ave, 40th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com
        jbaker@rosenlegal.com
        blapointe@rosenlegal.com


*Lead Counsel for Plaintiffs and the Class*

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Avenue
New York, NY 10016
Tel: (212) 545-4600
Email: guiney@whafh.com


*Additional Counsel*

## CERTIFICATE OF SERVICE

I hereby certify that on December 9, 2021, I electronically transmitted the attached using the ECF system for filing, which will send notification of such filing to all counsel registered through the ECF System.

*/s/ Joshua Baker*