# EXHIBIT 185

CONFIDENTIAL

Page 1

1          CONFIDENTIAL - DAVID STOLLOW, CPA

2             UNITED STATES DISTRICT COURT

          FOR THE SOUTHERN DISTRICT OF NEW YORK

3

     In re:                         :

4                                   :   Master File No.

     Global Brokerage, Inc.   :   1:17-cv-00916-RA

5    F/k/a FXCM, Inc.              :

     Securities Litigation     :

6    ---------------------    :

7

8        REMOTE VIDEO DEPOSITION VIA ZOOM OF:

9                DAVID STOLLOW, CPA

10             MONDAY, JANUARY 25, 2021

11

12

13

14

15

16

17

18

19

20

21

22

23

24   REPORTED BY:

     SILVIA P. WAGE, CCR, CRR, RPR

25   JOB NO. 4398807

CONFIDENTIAL

Page 103

1           CONFIDENTIAL - DAVID STOLLOW, CPA
2      were aware in which E&Y, specifically, evaluated
3      or looked into whether Effex, specifically,
4      should be disclosed in FXCM's financial
5      statements as a related party?
6           A.   Uh-huh.  So this gets into a broader
7      conversation.  When we start in 2015 and 2016 as
8      the NFA and CFTC allegations are being brought
9      forth more publically, the discussion and
10     analysis in the 2016 work papers, which you
11     started to refer to before, became more
12     prominent.  We did assess the allegations in
13     relation to our financial statements that were
14     publically available still in 2014, in 2015, in
15     2016 based on those allegations and for a host of
16     reasons believed that they were fairly presented
17     and accurate from an audit financial statement
18     opinion.
19          Q.   So, prior to the NFA and CFTC
20     investigations --
21          A.   Uh-huh.
22          Q.   -- was there any year in which E&Y,
23     specifically, inquired as to whether Effex should
24     be disclosed as a related party in FXCM's
25     financial statements?

CONFIDENTIAL

Page 104

1          CONFIDENTIAL - DAVID STOLLOW, CPA

2          A.   If we inquired, I do not recall.

3          Q.   Do you recall whether E&Y had any

4    discussions with FXCM management in that period

5    prior to the CFTC and NFA investigations about

6    Effex, specifically, with FXCM's management?

7          A.   There was no recollection of

8    discussions about Effex in relation to -- as you

9    just said, prior to the NFA and CFTC items being

10   referenced in 2015 and 2016.

11         Q.   In the course of auditing FXCM's

12   annual and periodic financial statements in the

13   period between Fiscal Year 2010 and Fiscal

14   Year 2016, did E&Y consider or determine whether

15   FXCM should be reporting Effex as presenting a

16   potential conflict of interest?

17              MR. TABAK:   Objection to form.

18              MS. COREY:   Objection to form.

19   Joined.

20         A.   That's a very broad question, but

21   let's -- as it relates to the financial

22   statements that we were opining on as it relates

23   to the financial statements in the public domain

24   for 2014, 2015 and 2016, we did assess that and

25   for a host of reasons did not -- we concurred.  I

CONFIDENTIAL

Page 107

1          CONFIDENTIAL - DAVID STOLLOW, CPA
2               MR. LaPOINTE:  Sorry.  That's -- both
3     I and other Counsel in this have had that issue.
4     There's similarity between FXCM and Effex.  So
5     I'll strike the question and attempt to rephrase.
6          Q.  In the course of auditing FXCM's
7     annual and periodic financial statements in
8     Fiscal Years 2010 through 2013, did E&Y consider
9     or determine whether FXCM should be reporting its
10    relationship with Effex as a potential VIE?
11              MR. TABAK:  Objection to form.
12              MS. COREY:  Joined.
13         A.  Based on our recollection, there was
14    no recollection of discussion of Effex as it
15    relates to related party considerations.
16         Q.  Did E&Y at anytime discuss with FXCM
17    management whether Effex should be disclosed or
18    reported as a VIE?
19         A.  Not to our knowledge during 20 --
20    you're referring to 2010 to 2013, correct?
21         Q.  This one is during anytime.  So I'm
22    asking about really if there were such
23    discussions in the 2014 through 2016 period.
24         A.  In the 2014 through 2016 period, we
25    did have discussions, obviously, looking at the

CONFIDENTIAL

1          CONFIDENTIAL - DAVID STOLLOW, CPA

2     overall evaluation.

3          Q.  Thank you.

4               So I direct your attention down to

5     the last paragraph on the first page beginning,

6     "In 2009, FXCM management hired an algorithmic

7     trader named John Dittami" --

8          A.  Yes.

9          Q.  -- ('Dittami') for the purpose of

10    developing an algorithm to address the need for

11    liquidity in the market for retail customers."

12              Do you see that?

13         A.  I do.

14         Q.  When did E&Y first learn of this

15    arrangement described here between John Dittami

16    and FXCM?

17         A.  When did we first learn it?  I cannot

18    tell you, specifically, but it's generally over

19    the course of the CFTC and NFA communications,

20    which is primarily the 2015, 2016 time frames.

21         Q.  So would it be fair to say that in

22    2010 through 2013 E&Y had not, specifically,

23    discussed Mr. Dittami with anybody from FXCM?

24         A.  So we were -- and this is from

25    recollection and discussions with the previous

```
                                            Page 115
 1            CONFIDENTIAL - DAVID STOLLOW, CPA
 2     audit partners as well -- aware of Effex as a
 3     liquidity provider from a transactional
 4     perspective.  So I can comment as to that.
 5                As to the specifics of what you're
 6     asking for here, no.  But I just want to make
 7     sure the context of the response is appropriate.
 8          Q.  And I appreciate the clarification
 9     again.
10                Just to be very clear --
11          A.  Uh-huh.
12          Q.  -- is the testimony that E&Y was
13     aware that there was a liquidity provider called
14     Effex during that 2010 to 2013 period?
15          A.  Yes.
16          Q.  Was E&Y aware of Effex's relationship
17     with John Dittami or in connection with John
18     Dittami in that period between 2010 and 2013?
19                MR. TABAK:  Objection to form.
20                MS. COREY:  Joined.
21                MR. TABAK:  I just want to make sure
22     -- can the Court Reporter can read back the
23     question there.  I just want to make sure, Brent,
24     it's the one that you intended to ask.  It may
25     be.  I just want to make sure.
```

CONFIDENTIAL

```
 1            CONFIDENTIAL - DAVID STOLLOW, CPA
 2      the view that operating this algorithm within
 3      Forex would be inconsistent with the no dealing
 4      desk arrangement that FXCM used to market itself
 5      to customers but operating the model as an
 6      independent liquidity provider would not."
 7                Do you see that?
 8            A.  Yes.
 9            Q.  And it continues, "Thus the company
10      determined that Dittami would operate under a
11      services agreement whereby Forex would be
12      compensated based on the volume of transactions
13      sent to Dittami (an arrangement referred to as
14      "pay for flow')."
15                Do you see that?
16            A.  I do.
17            Q.  Did FXCM disclose to E&Y this
18      arrangement described in this paragraph in Fiscal
19      Years 2010 through 2013?
20                MR. TABAK:  Object to form.
21            A.  Our recollection is that payment for
22      order flow was mentioned in the services
23      agreement itself in terms of the payment for
24      order flow.  The references to the earlier part
25      of the entire relationship we were not, to our
```

CONFIDENTIAL

```
 1          CONFIDENTIAL - DAVID STOLLOW, CPA
 2     knowledge, aware prior to --
 3          Q.  Go ahead.
 4          A.  -- NFA and CFTC allegations.
 5          Q.  Thank you.
 6               And then it continues a little bit.
 7     A little further down there is a sentence that
 8     begins, "in exchange," about the middle of the
 9     first paragraph on the second page.
10               Do you see that?
11          A.  No -- oh, yes, "in exchange for the"
12     --
13          Q.  "In exchange for the pay for flow
14     compensation that Forex would be receiving from
15     Effex, Forex agreed to make available to Effex
16     certain bid/ask and other market quote
17     information for transactions prior to execution."
18               Do you see that?
19          A.  Yes, I do.
20          Q.  And then it continues, "Under the
21     Forex/Effex arrangement, to the extent Effex can
22     provide more favorable pricing or match the
23     quotes available for a particular transaction,
24     the transaction would be awarded to them as the
25     liquidity provider."
```

CONFIDENTIAL

Page 220

```
 1        CONFIDENTIAL - DAVID STOLLOW, CPA
 2      C E R T I F I C A T E   O F   R E P O R T E R
 3        I, SILVIA P. WAGE, a Certified Shorthand
 4    Reporter, Certified Realtime Reporter and Registered
 5    Reporter, herby certify that the witness in the
 6    foregoing deposition was by me duly sworn to tell
 7    the truth, the whole truth, and nothing but the
 8    truth in the within-entitled cause; that said
 9    deposition was taken down in shorthand by me, a
10    disinterested person, at the time and place
11    therein stated, and that the testimony of the
12    said witness was thereafter reduced to
13    typewriting, by computer, under my direction and
14    supervision; that before completion of the
15    deposition, review of the transcript [X] was [ ]
16    was not requested.  If requested, any changes
17    made by the deponent (and provided to the reporter)
18    during the period allowed are appended hereto.
19        I further certify that I am not of counsel
20    or attorney for either or any of the parties to
21    the said deposition, nor in any way interested in
22    the event of this cause, and that I am not
      related to any of the parties thereto.
23
24      <%9932, Signature%>
      dated:  2/4/2021
25    License No. 30X100182700
```