# Exhibit 18

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM, Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA-BCM<br><br>CLASS ACTION |
| This Document Relates To: All Actions | |

**PLAINTIFFS' RESPONSES AND OBJECTIONS TO**
**DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION**

Pursuant to Federal Rule of Civil Procedure 36, Plaintiffs 683 Capital Partners LP ("683 Capital"), Shipco Transport, Inc. ("Shipco"), and E-Global Trade and Finance Group Inc. ("E-Global"), (collectively, "Plaintiffs"), by and through their undersigned attorneys, hereby submit their responses and objections to the First Set of Interrogatories to Plaintiffs ("Requests") issued by Defendants Global Brokerage, Inc. f/k/a FXCM, Inc., Dror Niv, and William Ahdout ("Defendants"). Plaintiffs' investigation of the facts of the case is ongoing. In accordance with Federal Rule of Civil Procedure 36, Plaintiffs reserve the right to modify, supplement, amend, or revise these responses should Plaintiffs discovery additional relevant information.

**GENERAL OBJECTIONS**

Plaintiffs generally object to the Requests on the following grounds, each of which is incorporated by reference in the responses to the individual Requests below. Any undertaking to search for, or provide information in response to, any Requests remains subject to the General Objections. No objection herein, or lack thereof, is an admission by Plaintiffs as to the existence or non-existence of any information or documents.

1.      Plaintiffs object to the Requests, including the "Definitions" and "Instructions" sections, to the extent that they purport to impose any obligations on Plaintiffs that are not imposed by law, or

are otherwise inconsistent with the Federal Rules of Civil Procedure or the Local Rules of the United States District Court for the Southern District of New York.

2.      Plaintiffs object to the Definitions and Instructions and to the Requests to the extent that they seek information protected from disclosure by the attorney-client privilege, the solicitor-client privilege, the work-product doctrine, the litigation privilege, the joint defense or common-interest privilege, constitutional, statutory, and/or common-law rights of privacy, or any other applicable privilege, protection, or doctrine ("Privileged Information"). Plaintiffs' responses to all or any part of any Request shall not be deemed to be a waiver by Plaintiffs of any applicable privilege or doctrine. Any inadvertent disclosure of Privileged Information shall not be deemed to be a waiver of any applicable privilege or other protection from disclosure.

3.      Plaintiffs object to the Definitions and Instructions and to the Requests to the extent that they seek information that is not within the scope of permissible discovery under Federal Rule of Civil Procedure 26.

4.      Plaintiffs object to the Definitions and Instructions and to the Requests to the extent that they are overly broad, unduly burdensome, vague, or ambiguous.

5.      Plaintiffs object to the Definitions and Instructions and to the Requests to the extent that they seek information that is not within Plaintiffs' possession, custody, or control.

6.      Plaintiffs object to the Definitions and Instructions and to the Requests to the extent that they seek information equally available to Defendants through public sources or records, or to the extent that they seek information already in Defendants' possession, custody, or control on the grounds that they subject Plaintiffs to unreasonable annoyance, oppression, burden, or expense.

7.      Plaintiffs object to the Definitions and Instructions and Requests to the extent that they seek private, personal, or highly confidential information.

8.     Plaintiffs object to the Requests to the extent that they do not have personal knowledge of the information sought therein or to the extent that they lack a sufficient basis to admit or deny the Requests.

9.     No incidental or implied admissions are intended by the Responses herein. The fact that Plaintiffs have answered or objected to any Requests should not be taken as: (a) an admission that Plaintiffs accept or admit the existence of any "facts" or information set forth or assumed by such Request; (b) that any particular fact, document, or thing exists, is relevant, non-privileged, or is admissible in evidence; or (c) that any statement or characterization in a Request is accurate or complete. Moreover, the fact that Plaintiffs have answered all or part of any Request is not intended to be, and shall not be construed to be, a waiver by Plaintiffs of any part of any objection to any Request. Plaintiffs specifically reserve all questions as to admissibility, competency, relevance, privilege, and materiality of the noted information, the right to object to the use of such information on any or all appropriate grounds, the right to object on any and all proper grounds, at any time, to other discovery procedures involving or related to such information, and the right to revise, correct, supplement, or clarify any of the following objections and responses.

10.     Plaintiffs' responses to these Requests are based on Plaintiffs' present knowledge, information, and beliefs and based on Plaintiffs' continuing investigation of the matters that are the subject of this litigation. Plaintiffs reserve the right to supplement, clarify, revise, or correct any or all of the responses and objections and to rely on or use, at trial and otherwise in the litigation, subsequently discovered facts and information (including, but not limited to, information obtained in discove1y herein), or facts and information omitted from these answers as a result of mistake, error, oversight, or inadvertence.

11.     Plaintiffs object to the use of their Responses to the Requests in any proceeding other than the above-captioned action.

12.     Plaintiffs specifically reserve their right to amend their Responses to these Requests pursuant to Fed. R. Civ. Proc. 26(e)(1)(A).

**SPECIFIC RESPONSES AND OBJECTIONS**

The General Objections set forth above are made with respect to the below Requests and are incorporated into the Specific Objections below. Any failure to repeat any General Objection in the Specific Objections shall not be deemed a waiver. In addition to the foregoing General Objections, Plaintiffs submit the following Specific Objections and limitations:

**REQUEST NO. 1:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2011, FXCM disclosed that "[i]n addition to trading fees and commissions, we also earn other forms of revenue such as fees earned from…payments for order flow."

**RESPONSE TO REQUEST NO. 1:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 2:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2011, FXCM disclosed that its retail trading revenue included "payments we receive for order flow from FX market makers."

**RESPONSE TO REQUEST NO. 2:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 3:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2011, FXCM disclosed that it "recognize[d] payments for order flow as earned" and that "[i]ncome earned on order flow represent[ed] payments received from certain FX market makers in exchange for routing trade orders to these firms for execution."

**RESPONSE TO REQUEST NO. 3:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 4:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2011, FXCM disclosed that "[o]ur agency model is fundamental to our core business philosophy because we believe that it aligns our interests with those of our customers [and] reduces our risks."

**RESPONSE TO REQUEST NO. 4:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted

**REQUEST NO. 5:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2012, FXCM disclosed that "we also earn other forms of revenue such as fees earned from…payments for order flow."

**RESPONSE TO REQUEST NO. 5:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 6:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2012, FXCM disclosed that its retail trading revenue included "payments we receive for order flow from FX market makers."

**RESPONSE TO REQUEST NO. 6:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 7:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2012, FXCM disclosed that "[i]ncome earned on order flow represent[ed] payments received from certain FX market makers in exchange for routing trade orders to these firms for execution."

**RESPONSE TO REQUEST NO. 7:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 8:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2012, FXCM disclosed that "[o]ur agency model is fundamental to our core business philosophy because we believe that it aligns our interests with those of our customers and reduces our risks."

**RESPONSE TO REQUEST NO. 8:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 9:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2013, FXCM disclosed that "we also earn other forms of revenue such as fees earned from…payments for order flow."

**RESPONSE TO REQUEST NO. 9:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 10:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2013, FXCM disclosed that its retail trading revenue included "payments we receive for order flow from FX market makers."

**RESPONSE TO REQUEST NO. 10:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 11:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2013, FXCM disclosed that
"[i]ncome earned on order flow represent[ed] payments received from certain FX market makers in
exchange for routing trade orders to these firms for execution."

**RESPONSE TO REQUEST NO. 11:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 12:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2013, FXCM disclosed that "[o]ur
agency model is fundamental to our core business philosophy because we believe that it aligns our
interests with those of our customers and reduces our risks."

**RESPONSE TO REQUEST NO. 12:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 13:**

Admit that, in FXCM's Form 10-Q for the quarterly period ended September 30, 2014, FXCM
disclosed that "[e]ffective August 1, 2014, [FXCM] no longer receive[d] payments for order flow."

**RESPONSE TO REQUEST NO. 13:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 14:**

Admit that, in FXCM's Form 10-Q for the quarterly period ended September 30, 2014, FXCM also disclosed that "[b]eginning in August 2014, [FXCM] no longer receive[d] payments for order flow."

**RESPONSE TO REQUEST NO. 14:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 15:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2014, FXCM disclosed that "[e]ffective August 1, 2014, [FXCM] no longer receive[d] payments for order flow."

**RESPONSE TO REQUEST NO. 15:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 16:**

Admit that, in FXCM's Form 10-K for the year ended December 31, 2014, FXCM disclosed that "[i]n 2013 and through August 2014, we earned revenue on order flow."

**RESPONSE TO REQUEST NO. 16:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 17:**

Admit that, on January 15, 2015, the Swiss National Bank removed the EUR/CHF price peg.

**RESPONSE TO REQUEST NO. 17:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 18:**

Admit that, on January 15, 2015, FXCM announced that, "due to unprecedented volatility in EUR/CHF pair after the Swiss National Bank announcement this morning, clients experienced significant losses, generated negative equity balances owed to FXCM of approximately $225 million."

**RESPONSE TO REQUEST NO. 18:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 19:**

Admit that, on January 15, 2015, FXCM announced that, as a result of negative equity balances of approximately $225 million, the company may have been in breach of some regulatory capital requirements.

**RESPONSE TO REQUEST NO. 19:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 20:**

Admit that, on January 16, 2015, FXCM entered into a credit agreement with Leucadia for a $300 million, two-year term loan.

**RESPONSE TO REQUEST NO. 20:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 21:**

Admit that, on January 19, 2015, FXCM announced the terms of its credit agreement with Leucadia, which had "an initial interest rate of 10% per annum, increasing by 1.5% per annum each quarter for so long as it is outstanding."

**RESPONSE TO REQUEST NO. 21:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 22:**

Admit that, on January 20, 2015, FXCM's common stock closed at $16.00 per share.

**RESPONSE TO REQUEST NO. 22:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 23:**

Admit that, as of March 12, 2015, FXCM had moved to a "hybrid" model rather than a pure "no dealing desk" model.

**RESPONSE TO REQUEST NO. 23:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs object that the phrase "moved to a 'hybrid' model" is vague and ambiguous and that "hybrid model" is undefined. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Plaintiffs lack a sufficient basis to admit or deny this Request with respect to whether or when FXCM moved to a hybrid model.

**REQUEST NO. 24:**

Admit that, in FXCM's Form 10-Q for the quarterly period ended September 30, 2016, FXCM disclosed that the "CFTC and the NFA are currently examining the relationship with US and one of its liquidity providers."

**RESPONSE TO REQUEST NO. 24:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 25:**

Admit that, on February 6, 2017, FXCM announced simultaneous regulatory settlements with the NFA and the CFTC against Defendants.

**RESPONSE TO REQUEST NO. 25:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 26:**

Admit that Defendants neither admitted nor denied the findings or conclusions in the NFA and CFTC Settlements.

**RESPONSE TO REQUEST NO. 26:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Plaintiffs admit that in the NFA and CFTC Settlements, Defendants neither admitted nor denied the findings or conclusions in the NFA and CFTC Settlements. Plaintiffs deny this Request to the extent that Defendants have admitted or denied the findings of the NFA and CFTC Settlements in other venues, including but not limited to discovery in this action.

**REQUEST NO. 27:**

Admit that, pursuant to the NFA and CFTC Settlements, FXCM withdrew from its business in the United States.

**RESPONSE TO REQUEST NO. 27:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs object to the term "pursuant to" as vague and ambiguous. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 28:**

Admit that the NFA and CFTC Settlements did not find that Pay-For-Flow Arrangements were illegal, unlawful, or in violation of any CFTC or NFA regulations.

**RESPONSE TO REQUEST NO. 28:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted that the NFA and CFTC Settlements did not include explicit findings that pay-for-flow arrangements were illegal, unlawful, or in violation of any CFTC or NFA regulations at that time. Denied to the extent that the NFA and CFTC Settlements found that the Pay-For-Flow Arrangement between FXCM and Effex was the mechanism by which FXCM did violate certain laws and regulations.

**REQUEST NO. 29:**

Admit that the NFA and CFTC Settlements did not allege that FXCM violated GAAP.

**RESPONSE TO REQUEST NO. 29:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Plaintiffs admit that the NFA and CFTC Settlements did not expressly allege that FXCM violated GAAP. Plaintiffs deny this Request to the extent that the factual allegations in the NFA and CFTC Settlements nonetheless support a finding of GAAP violations.

**REQUEST NO. 30:**

Admit that the CFTC Settlement stated that John Dittami "formed his new company," Effex, on March 23, 2010.

**RESPONSE TO REQUEST NO. 30:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 31:**

Admit that the CFTC Settlement stated that John Dittami of Effex was the "principal and 100 percent owner of" Effex.

**RESPONSE TO REQUEST NO. 31:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 32:**

Admit that the CFTC Settlement acknowledged that, under the Services Agreement, FXCM was entitled to payment based upon "trading volume."

**RESPONSE TO REQUEST NO. 32:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 33:**

Admit that the NFA and CFTC Settlements did not allege that FXCM had any voting power with Effex.

**RESPONSE TO REQUEST NO. 33:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 34:**

Admit that the NFA and CFTC Settlements did not allege that FXCM's relationship with Effex caused FXCM customers to lose money on their trades.

**RESPONSE TO REQUEST NO. 34:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 35:**

Admit that the NFA and CFTC Settlements did not allege that FXCM's relationship with Effex harmed
FXCM's shareholders.

**RESPONSE TO REQUEST NO. 35:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 36:**

Admit that FXCM has never restated, or been required to restate, its financial statements, including for
fiscal years 2011 through 2014.

**RESPONSE TO REQUEST NO. 36:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Plaintiffs admit that FXCM has never restated its financial statements. Otherwise denied.

**REQUEST NO. 37:**

Admit that, for fiscal year 2011, EY's audit opinion on FXCM's financial statements stated that
FXCM's financial statements "present[ed] fairly, in all material respects, the consolidated financial
position of FXCM Inc. at December 31, 2011…in conformity with U.S. generally accepted accounting
principles."

**RESPONSE TO REQUEST NO. 37:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 38:**

Admit that, for fiscal year 2012, EY's audit opinion on FXCM's financial statements stated that FXCM's financial statements "present[ed] fairly, in all material respects, the consolidated financial position of FXCM Inc. at December 31, 2012…in conformity with U.S. generally accepted accounting principles."

**RESPONSE TO REQUEST NO. 38:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 39:**

Admit that, for fiscal year 2013, EY's audit opinion on FXCM's financial statements stated that FXCM's financial statements "present[ed] fairly, in all material respects, the consolidated financial position of FXCM Inc. at December 31, 2013…in conformity with U.S. generally accepted accounting principles."

**RESPONSE TO REQUEST NO. 39:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 40:**

Admit that, for fiscal year 2014, EY's audit opinion on FXCM's financial statements stated that FXCM's financial statements "present[ed] fairly, in all material respects, the consolidated financial position of FXCM Inc. at December 31, 2014…in conformity with U.S. generally accepted accounting principles."

**RESPONSE TO REQUEST NO. 40:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 41:**

Admit that, after the NFA and CFTC Settlements, EY again issued an audit opinion stating that FXCM's financial statements as of December 31, 2016 "present[ed] fairly, in all material respects, the consolidated financial position of FXCM Inc.…in conformity with U.S. generally accepted accounting principles."

**RESPONSE TO REQUEST NO. 41:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 42:**

Admit that the scope of EY's audit opinions for fiscal years 2011 through 2014 included FXCM's variable interest entities and related party transactions.

**RESPONSE TO REQUEST NO. 42:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 43:**

Admit that the scope of EY's audit opinions for fiscal years 2011 through 2014 included FXCM's retail trading revenue.

**RESPONSE TO REQUEST NO. 43:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 44:**

Admit that GAAP is a set of principles that tolerate a range of reasonable accounting treatments.

**RESPONSE TO REQUEST NO. 44:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 45:**

Admit that pages Bates numbered EY-GBI-WP-00004260-4271 is an EY memorandum authored by
Ankit Varia and David Stollow entitled "FXCM Inc.'s settlements with US regulators," that was sent to
FXCM Inc. and Forex Capital Markets LLC Audit Files on March 1, 2017.

**RESPONSE TO REQUEST NO. 45:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 46:**

Admit that the memorandum authored by Ankit Varia and David Stollow (Bates numbered EY-GBI-
WP-00004260-4271) states that the Effex "arrangement for order flow was included in the income
statement and disclosed in the FXCM Inc. financial reporting in prior Form 10-Ks. The arrangement
was appropriately accounted for and followed the contractual parties to the arrangement."

**RESPONSE TO REQUEST NO. 46:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 47:**

Admit that the memorandum authored by Ankit Varia and David Stollow (Bates numbered EY-GBI-
WP-00004260-4271) states, "Based on the above considerations, we believe that the previously issued
financial statements for [FXCM] continue to be appropriate and are in accordance with US GAAP."

**RESPONSE TO REQUEST NO. 47:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

17

Admitted.

**REQUEST NO. 48:**

Admit that the memorandum authored by Ankit Varia and David Stollow (Bates numbered EY-GBI-WP-00004260-4271) states, "Based on all of the procedures mentioned above, we believe that there was no impact to financial statement reporting as a result of the regulatory matters in the current or prior years . . . ."

**RESPONSE TO REQUEST NO. 48:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 49:**

Admit that that pages Bates numbered EY-GBI-WP-00004035-4041 is a draft FXCM memorandum to file regarding "Evaluation of Regulatory Matters & Impact on 2016 Financial Statements" dated March 14, 2017.

**RESPONSE TO REQUEST NO. 49:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 50:**

Admit that the memorandum to file (Bates numbered EY-GBI-WP-00004035-4041) states, "FXCM had no Board representation, no equity or voting interests, no management representation or rights and had only committed to providing Effex connectivity to its platform in return for a certain $/million of volume traded for volume executed by Effex through a service agreement. It would not appear that FXCM had power over Effex and not consolidating was appropriate."

**RESPONSE TO REQUEST NO. 50:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

18

**REQUEST NO. 51:**

Admit that on May 29, 2019, FXCM entered into a forbearance agreement ("Forbearance Agreement") with holders of 80% of the notional value of the outstanding Notes at that time.

**RESPONSE TO REQUEST NO. 51:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Plaintiffs admit that on May 29, 2019, FXCM entered into a forbearance agreement with certain holders of outstanding notes at that time. Plaintiffs lack a sufficient basis to admit or deny this Request with respect to the amount of notes the holders held as percentage of the notional value of the outstanding notes at that time.

**REQUEST NO. 52:**

Admit that pursuant to the Forbearance Agreement, FXCM obtained a release of claims, including claims for violations of the federal securities laws.

**RESPONSE TO REQUEST NO. 52:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 53:**

Admit that, at the time of 683 Capital's investments in FXCM Securities, 683 Capital's investment strategy included seeking out securities where buyers or sellers are acting for non-economic reasons.

**RESPONSE TO REQUEST NO. 53:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs' object to the phrase "acting for non-economic reasons" as vague and ambiguous. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 54:**

Admit that, at the time of 683 Capital's investments in FXCM Securities, 683 Capital's investment strategy included targeting dislocations and special situations across all industries and geographies.

**RESPONSE TO REQUEST NO. 54:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs object to the term "special situations" as vague and ambiguous. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 55:**

Admit that 683 Capital viewed the SNB Flash Crash as an example of a price dislocation.

**RESPONSE TO REQUEST NO. 55:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs object to the term "price dislocation" as vague and ambiguous. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 56:**

Admit that 683 Capital's first investment in FXCM Securities occurred the day after the SNB Flash Crash.

**RESPONSE TO REQUEST NO. 56:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 57:**

Admit that 683 Capital viewed its investment in FXCM as an investment in a distressed company.

**RESPONSE TO REQUEST NO. 57:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 58:**

Admit that 683 Capital's first investment in FXCM securities occurred after FXCM disclosed that it "no longer receive[d] payments for order flow."

**RESPONSE TO REQUEST NO. 58:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Plaintiffs admit that 683 Capital's first investment in FXCM securities occurred after FXCM disclosed in its Form 10-Q for the quarterly period ended September 30, 2014 that it "no longer receive[d] payments for order flow," but before FXCM made the same disclosure in its Form 10-K for the year ended December 31, 2014.

**REQUEST NO. 59:**

Admit that FXCM Notes could only be traded by Qualified Institutional Buyers.

**RESPONSE TO REQUEST NO. 59:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 60:**

Admit that FXCM Notes did not begin trading until June 24, 2014.

**RESPONSE TO REQUEST NO. 60:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 61:**

Admit that, in order to buy FXCM Notes, 683 Capital would call, instant message, or instant Bloomberg a broker.

**RESPONSE TO REQUEST NO. 61:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 62:**

Admit that FXCM Notes did not trade frequently in 683 Capital's experience.

**RESPONSE TO REQUEST NO. 62:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs object that the term "frequently" is vague and ambiguous. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 63:**

Admit that 683 Capital was not always in a position where it could buy or sell the quantity of FXCM Notes it wanted to buy or sell immediately.

**RESPONSE TO REQUEST NO. 63:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 64:**

Admit that, in 683 Capital's experience in buying or selling FXCM Notes, the bid ask spread could be up to ten points wide.

**RESPONSE TO REQUEST NO. 64:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 65:**

Admit that Shipco's first investment in FXCM Securities occurred after FXCM disclosed that it "no longer receive[d] payments for order flow."

**RESPONSE TO REQUEST NO. 65:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 66:**

Admit that Shipco's first investment in FXCM Securities occurred after the SNB Flash Crash.

**RESPONSE TO REQUEST NO. 66:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 67:**

Admit that Shipco decided to invest in FXCM Securities, in part, due to its belief that it was an opportunity to invest at a low price.

**RESPONSE TO REQUEST NO. 67:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 68:**

Admit that E-Global's first investment in FXCM Securities occurred after FXCM announced that it "no longer receive[d] payments for order flow."

**RESPONSE TO REQUEST NO. 68:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 69:**

Admit that E-Global's first investment in FXCM Securities occurred after the SNB Flash Crash.

**RESPONSE TO REQUEST NO. 69:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 70:**

Admit that E-Global was interested in buying FXCM Securities, in part, because the price was low.

**RESPONSE TO REQUEST NO. 70:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 71:**

Admit that E-Global first became aware that it might have claims against Defendants related to its purchases of FXCM Securities on or around April 2017.

**RESPONSE TO REQUEST NO. 71:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 72:**

Admit that E-Global was not a party to the Litigation until it was added as a named plaintiff in the Third Amended Complaint, filed on April 17, 2020.

**RESPONSE TO REQUEST NO. 72:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied to the extent that E-Global first moved to intervene in this action as a named plaintiff on March 16, 2020, which motion was unopposed and granted on April 14, 2020. Otherwise admitted.

**REQUEST NO. 73:**

Admit that John Dittami testified under oath to the CFTC that he "formed" Effex on March 23, 2010. Dittami CFTC Tr. 30:7-9, 108:13-20.

**RESPONSE TO REQUEST NO. 73:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 74:**

Admit that John Dittami testified under oath to the CFTC that in or about March or April 2011, Effex moved its office location to Jersey City, New Jersey. Dittami CFTC Tr. 58:3-13, 177:20-178:7.

**RESPONSE TO REQUEST NO. 74:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 75:**

Admit that Effex did not operate out of any FXCM office location at any point during the Proposed Class Period.

**RESPONSE TO REQUEST NO. 75:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 76:**

Admit that John Dittami testified under oath to the CFTC that "Deutsche Bank, DBFX had a room" in
FXCM's offices in 2011 from which Deutsche Bank operated at times. Dittami CFTC Tr. 183:17-
184:5.

**RESPONSE TO REQUEST NO. 76:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 77:**

Admit that John Dittami was not an employee or principal of FXCM at any point during the Proposed
Class Period.

**RESPONSE TO REQUEST NO. 77:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs

object that the undefined terms "employee" or "principal" are vague and ambiguous. Subject to and

without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 78:**

Admit that no officer or director of FXCM had an ownership interest in Effex before, during, or after
the Proposed Class Period.

**RESPONSE TO REQUEST NO. 78:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

## REQUEST NO. 79:

Admit that Dror Niv testified under oath to the CFTC that FXCM "rejected" and "did not go forward with" having a contractual option to purchase any percentage of Effex. Niv CFTC Tr. 159:6-19.

## RESPONSE TO REQUEST NO. 79:

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied to the extent that Dror Niv also provided testimony under oath to the CFTC contradicting the testimony quoted in this Request. Otherwise admitted.

## REQUEST NO. 80:

Admit that John Dittami testified under oath to the CFTC that Ken Grossman "would regularly and consistently have to remind [Effex], you guys are per million, you're per million." Dittami CFTC Tr. 165:16-21.

## RESPONSE TO REQUEST NO. 80:

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

## REQUEST NO. 81:

Admit that John Dittami testified under oath to the CFTC that Ken Grossman told Effex that it "would not have 70/30, this has to be negotiated has to be per million." Dittami CFTC Tr. 132:23-133:5.

## RESPONSE TO REQUEST NO. 81:

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 82:**

Admit that John Dittami testified under oath to the CFTC that he tried to "negotiate my per millions lower to make more money for Effex" but was not negotiating a "profit split." Dittami CFTC Tr. 377:2-7.

**RESPONSE TO REQUEST NO. 82:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted that John Dittami testified under oath to the CFTC that he tried to "negotiate my per

millions lower to make more money for Effex." Otherwise denied.

**REQUEST NO. 83:**

Admit that Dror Niv testified under oath to the CFTC that FXCM "wanted Mr. Dittami to separate and form what became Effex Trading, a separate company, they will be a market maker separately and join the other market makers." Niv CFTC Tr. 60:20-61:4.

**RESPONSE TO REQUEST NO. 83:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 84:**

Admit that John Dittami testified under oath to the CFTC that he renegotiated Effex's dollar-per-million fee with FXCM becuase he "felt that it was -- they were getting more value in our business relationship than I was getting." Dittami CFTC Tr. 148:4-7.

**RESPONSE TO REQUEST NO. 84:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 85:**

Admit that William Ahdout testified under oath to the CFTC that he renegotiated Effex's dollar-per-million fee with FXCM because "[a]s spreads tightened, as commission got lower, as the market got

more competitive and pressure on the market altogether John came back and said, I can't survive and pay $21." Ahdout CFTC Tr. 158:22-159:8.

**RESPONSE TO REQUEST NO. 85:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 86:**

Admit that William Ahdout testified under oath to the CFTC that "[t]o pay 70 percent of the profits was not part of [FXCM's] agreement" with Effex. Ahdout CFTC Tr. 114:24-115:4.

**RESPONSE TO REQUEST NO. 86:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 87:**

Admit that William Ahdout testified under oath to the CFTC that it was "not viable" to use John Dittami's employment agreement as a framework in negotiating the $21/million fee for order flow with Mr. Dittami. Ahdout CFTC Tr. 158:3-13.

**RESPONSE TO REQUEST NO. 87:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Denied.

**REQUEST NO. 88:**

Admit that during the period when the Services Agreement was in effect, pay for flow arrangements were permitted under CFTC and NFA rules.

**RESPONSE TO REQUEST NO. 88:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Plaintiffs admit that during the period when the Services Agreement was in effect, pay for flow arrangements were not expressly prohibited under CFTC and NFA rules. Plaintiffs deny this Request to the extent that it implies that any CFTC or NFA rules expressly permitted pay for flow arrangements.

**REQUEST NO. 89:**

Admit that FXCM had pay for flow arrangements with entities other than Effex.

**RESPONSE TO REQUEST NO. 89:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 90:**

Admit that Goldman Sachs paid FXCM for order flow prior to 2010. Ahdout CFTC Tr. 131:13-23, 201:21-202:3; Niv CFTC Tr. 140:16-141:12, 142:14-143:5.

**RESPONSE TO REQUEST NO. 90:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 91:**

Admit that BNP paid FXCM for order flow. Ahdout CFTC Tr. 132:9-12; Niv CFTC Tr. 140:16-141:12, 142:14-143:5, 208:7-14; Dittami CFTC Tr. 527:7-20.

**RESPONSE TO REQUEST NO. 91:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 92:**

Admit that, in the document Bates numbered GLBR_00120647, Baruch Greenbaum states, "As far as I know the only third party payer for order flow, as of October '13, was EEFEX [sic]. There was BNP P3 in FXCM US in the beginning of the year, but that appears to have ceased."

**RESPONSE TO REQUEST NO. 92:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 93:**

Admit that when Goldman Sachs was paying FXCM for order flow, it received advantages from FXCM, including but not limited to "[t]op of book, ties, wider spread on other liquidity providers." Ahdout CFTC Tr. 251:4-11.

**RESPONSE TO REQUEST NO. 93:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 94:**

Admit that, beginning in 2010, Effex was a liquidity provider for FX trading companies other than FXCM. Dittami CFTC Tr. 41:24-43:15.

**RESPONSE TO REQUEST NO. 94:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 95:**

Admit that John Dittami testified under oath to the CFTC that, after separating from FXCM, he "want[ed] to get as close to independent as quickly, looking and feeling -- we're independent now as entities, how let's get -- let's make sure everything is as independent as it can be. . . . Everything we do and we did do, it took time, but continue to grow Effex was now an independent business, continue to

just get as independent as we can be, because we are independent . . . ." Dittami CFTC Tr. 290:14-291:4.

**RESPONSE TO REQUEST NO. 95:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 96:**

Admit that John Dittami testified under oath to the CFTC that FXCM told him that "you have to separate into your own entity, you cannot trade and be part of FXCM." Dittami CFTC Tr. 30:11-16.

**RESPONSE TO REQUEST NO. 96:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 97:**

Admit that the total amount of pay for flow payments from Effex to FXCM during the 2010-2014 period represented less than 5% of FXCM's total revenue during that same period.

**RESPONSE TO REQUEST NO. 97:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Plaintiffs object to the term "that same period" as vague and ambiguous. Plaintiffs interpret "that same period" to mean the years 2010-2014 as opposed to the segment of time during those years when Effex was making pay for flow payments to FXCM. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 98:**

Admit that the pay for flow payment from Effex to FXCM did not increase if Effex made money on a particular trade or decrease if Effex lost money on a particular trade.

**RESPONSE TO REQUEST NO. 98:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 99:**

Admit that the document Bates numbered GLBR_00185443 is a letter agreement signed by David
Sassoon and John Dittami, dated August 25, 2014, regarding "Termination of Services Agreement
dated as of May 1, 2010."

**RESPONSE TO REQUEST NO. 99:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 100:**

Admit that document Bates numbered GLBR_00185443 states that "[e]ffective as of August 1, 2014,
both parties agree to terminate Services Agreement dated May 1, 2010; and both parties waive the
requirement of 30 days prior written notice for termination to be effective."

**RESPONSE TO REQUEST NO. 100:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 101:**

Admit that Merwitz Exhibit 16 (Bates numbered GLBR_00041750-41752) is a memorandum from
Forex Capital Markets, LLC to National Futures Association dated February 13, 2015, with the subject
"Effex Capital LLC ('Effex')."

**RESPONSE TO REQUEST NO. 101:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 102:**

Admit that Merwitz Exhibit 16 states "Effex dramatically improved FXCM's pricing for the benefit of FXCM's clients and created no negative effect or disadvantage for FXCM's clients."

**RESPONSE TO REQUEST NO. 102:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 103:**

Admit that Merwitz Exhibit 16 states "Without Effex as one of FXCM's liquidity providers, FXCM's clients collectively would have paid approximately $123 million dollars more for the same trades, just over the period of April 2011 through January 2015."

**RESPONSE TO REQUEST NO. 103:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 104:**

Admit that Merwitz Exhibit 16 states "FXCM can demonstrate measurable evidence of approximately $123 million dollars of actual savings by FXCM's clients because of Effex's pricing."

**RESPONSE TO REQUEST NO. 104:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 105:**

Admit that Merwitz Exhibit 16 states "FXCM engaged Effex to compete with the banks to dramatically improve pricing offered to FXCM's clients. And Effex did just that, with astonishing benefits for FXCM's clients."

**RESPONSE TO REQUEST NO. 105:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 106:**

Admit that Merwitz Exhibit 16 states that "[t]wo examples of Effex's positive impact for FXCM clients are average spreads and rejection rates."

**RESPONSE TO REQUEST NO. 106:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 107:**

Admit that Merwitz Exhibit 16 states that "[i]n July 2010, FXCM clients experienced average spreads of .7 EUR/USD and .7 USD/JPY, whereas currently, FXCM clients experience average spreads of .2 EIJR/USD and .3 USD/JPY as of Jan 2015."

**RESPONSE TO REQUEST NO. 107:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 108:**

Admit that Merwitz Exhibit 16 states that "[f]rom April 2011 until January 2015, Effex only rejected 2.7% of FXCM orders routed to Effex, whereas 14.7% of orders routed to all other liquidity providers were rejected by the respective liquidity provider."

**RESPONSE TO REQUEST NO. 108:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 109:**

Admit that Merwitz Exhibit 16 states that "Effex generates savings for FXCM clients in three ways: (1) significant reduction in reject rates, (2) added depth of liquidity at top of the book, and (3) spread protection during periods of widened spreads (such as market open or news events)."

**RESPONSE TO REQUEST NO. 109:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

**REQUEST NO. 110:**

Admit that Merwitz Exhibit 16 states that "Effex significantly improved the price execution of FXCM's clients. There is no doubt clients received significantly improved price execution as a result of Effex's prices."

**RESPONSE TO REQUEST NO. 110:**

Plaintiffs incorporate by reference the General Objections as if fully set forth herein. Subject to

and without waiving the foregoing Objections, Plaintiffs respond as follows:

Admitted.

Dated: February 18, 2021

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Joshua Baker
Phillip Kim
Laurence M. Rosen
Joshua Baker
275 Madison Ave, 40th Floor
New York, NY 10016
Phone: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
          lrosen@rosenlegal.com
          jbaker@rosenlegal.com

*Lead Counsel for Lead Plaintiffs*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Avenue

New York, NY 10016
Tel: (212) 545-4600
Email: guiney@whafh.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 18, 2021, a true and correct copy of the foregoing PLAINTIFFS' RESPONSES AND OBJECTIONS TO DEFENDANTS' FIRST SET OF REQUESTS FOR ADMISSION was served by email to counsel for Defendants as follows:

**KING & SPALDING LLP**
Israel Dahan
Peter Isajiw
Evan Claire Ennis
Ryan Gabay
1185 Avenue of the Americas, 34th Floor
New York, NY 10036
Tel: (212) 556-2100
Email: idahan@kslaw.com
          pisajiw@kslaw.com
          eennis@kslaw.com
          rgabay@kslaw.com

Chelsea Corey
300 S Tryon Street, Suite 1700
Charlotte, NC 28202
Tel: (704) 503-2600
Email: ccorey@kslaw.com


                                                       /s/ Joshua Baker
                                                       Joshua Baker