# Exhibit 29

EXECUTION

## SECURED PROMISSORY NOTE

$2,000,000                                                           April 8, 2010
                                                                     New York, New York

      FOR VALUE RECEIVED, Effex Capital, LLC, a Delaware limited liability company, having an address at 98 Constitution Way, Jersey City, NJ 07305 ("Maker"), promises to pay to Forex Capital Markets, a Delaware limited liability company, having an office at 32 Old Slip, 10th Floor, New York, New York 10005 ("Holder"), the principal sum of Two Million Dollars ($2,000,000) (the "Principal Amount") on December 31, 2010 (the "Maturity Date"). [Interest on the outstanding Principal shall accrue at the rate of three percent (3.5%) per annum from the date hereof until the Maturity Date.]

      1.    Security Agreement. This Note is secured by that certain General Security Agreement, by and between Holder and Maker, and that certain Guaranty and Pledge Agreement, issued by John Dittami, an individual and sole member of Maker ("Parent"), each dated as of even date hereof (such documents, together with the Note, as any of the same may be amended, modified, renewed, supplemented, restated, increased or extended, being collectively, the "Loan Documents").

      2.    Payments. [Maker agrees to pay the outstanding Principal Amount and all accrued and unpaid interest thereon on the Maturity Date.]

      3.    Prepayment. Maker may prepay the outstanding balance of the Principal Amount together with unpaid interest thereon, in whole or in part, at any time.

      4.    Default.

      4.1    Events of Default. The occurrence of any event set forth in this section 4.1(a) through (h) herein shall be considered an "Event of Default":

      (a)    Maker fails to make any payment required under this Note when due;

      (b)    If any representation or warranty made by Maker herein, or in any other Loan Document or in any writing furnished in connection with or pursuant to this Note or any other Loan Document shall be false in any material respect on the date made or thereafter; or

      (c)    If Maker defaults in the performance or observance of any agreement, covenant, term or condition contained herein, in any of the Loan Documents or any document furnished pursuant to any thereof; or

      (d)    The filing of any petition or action against Maker seeking reorganization, arrangement, adjustment, or composition of or in respect of Maker under any federal bankruptcy law or any other applicable federal or state bankruptcy, insolvency, or similar law, or the entry of

492879.1

**Effex 000023**

any order granting such petition or action, or the continuance of any such petition or action for a period of 30 days without dismissal; or

 (e) Maker (i) files, or consents by answer or otherwise to the filing against it of, a petition for relief or reorganization of arrangement or any other petition under any federal or state bankruptcy, insolvency, reorganization, moratorium or similar law in any jurisdiction, (ii) makes an assignment for the benefit of its creditors, (iii) consents to the appointment of a custodian, receiver, trustee or other officer with similar powers with respect to it or with respect to any substantial part of its property, or any such custodian, receiver, trustee or other officer is appointed, (iv) is adjudicated as insolvent or is to be liquidated, or (v) takes any action for the purpose or intent of any of the foregoing; or

 (f) Maker ceases to conduct any business; or

 (g) A judgment or judgments for the payment of money in excess of $25,000 in the aggregate shall be rendered by one or more courts, administrative or arbitral tribunals or other bodies against Maker which are not paid stayed or bonded within 15 days of the entry thereof.

 (h) The License Agreement, dated as of the date hereof, between Maker and Holder is terminated for any reason.

Maker shall immediately notify Holder in writing as to the occurrence of any of the events in this Section 4.1 above.

 4.2 Remedies. Upon the occurrence of an Event of Default: (a) interest shall accrue hereunder at the Default Rate (as hereinafter defined), (b) if caused due to any of the events set forth in Sections 4.1(a), (d), (e) or (f), the entire unpaid Principal Amount, together with all interest accrued thereon, shall immediately become due and payable in full, without notice or demand; (c) if caused due to any of the events set forth in Sections 4.1(b), (c), (g), or (h), Holder may, at its option and without notice (such notice being expressly waived), declare and demand this Note immediately due and payable; and (d) Holder may pursue all rights and remedies available hereunder, under any of the Loan Documents, or any other documents between Maker and Holder.

 4.3 Costs of Collection. Maker agrees to pay all costs and expenses of collection incurred by Holder, in addition to Principal and interest at the Default Rate (including, without limitation, reasonable attorneys' fees and expenses), and including all costs and expenses incurred in connection with the pursuit by Holder of any of its rights or remedies hereunder or any other agreement entered into between Holder and Maker.

 4.4 Default Rate. Upon the occurrence of any Event of Default or after maturity, whether by acceleration or otherwise, this Note shall bear interest at the rate of six percent (6%) per annum, compounded monthly (the "Default Rate"), on the outstanding balance of the Principal Amount for each month, or any fraction thereof, computed from said date of maturity to the date of actual repayment. Interest shall continue to accrue at the Default Rate

Effex 000024

E Capital-000028

EXECUTION

(including following the entry of a judgment in favor or Holder) until payment in full of all sums due under this Note.

5. <u>Use of Proceeds</u>. Maker covenants and agrees that the proceeds of this Note shall be used solely for general corporate purposes.

6. <u>Governing Law; Severability</u>. This Note is entered into in The State of New York and shall be construed and enforced in accordance with the internal laws of the State of New York (without giving effect to any principles of conflicts of law). The invalidity, illegality or unenforceability of any provision of this Note shall not affect or impair the validity, legality or enforceability of the remainder of this Note, and to this end, the provisions of this Note are declared to be severable.

7. <u>Waivers</u>. Without limiting any other provisions of the Note or any other Loan Document, Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby waives presentment for payment, demand, notice of nonpayment, notice of dishonor, protest of any dishonor, notice of protest and protest of this Note, and all other notices in connection with the delivery, acceptance, performance, default or enforcement of the payment of this Note and in connection with any suit, action or proceeding brought by Holder on this Note, any and every right it may have to (a) a trial by jury, (b) interpose any counterclaim therein (other than a counterclaim which can only be asserted in a suit, action or proceeding brought by Holder on this Note and cannot be maintained in a separate action), and (c) have the same consolidated with any other or separate suit, action or proceeding, and agrees that their respective liability shall be unconditional and without regard to the liability of any other party and shall not be in any manner affected by any indulgence, extension of time, renewal, waiver or modification granted or consented to by Holder. Maker, for itself and all endorsers, guarantors and sureties of this Note, and their heirs, legal representatives, successors and assigns, hereby consents to every extension of time, renewal, waiver or modification that may be granted by Holder with respect to the payment or other provisions of this Note.

8. <u>Application of Payments</u>. Each and every payment made by Maker to Holder in accordance with the terms of this Note and any other Loan Document and all other proceeds received by Holder with respect to the indebtedness evidenced hereby, shall be applied as follows: (a) <u>first</u>, to the payment of all expenses of enforcement and collection of all amounts due under this Note, (b) <u>second</u>, to the payment of interest (if applicable in accordance with the terms of this Note, to interest at the Default Rate or other premiums and other sums payable hereunder or under any of the Loan Documents (other than pursuant to subdivision (c) of this Section 8)), (c) <u>third</u>, in reduction of the outstanding balance of the Principal, or in such other order and priority as determined by Holder in its sole discretion. To the extent that Maker makes a payment or Holder receives any payment or proceeds for Maker's benefit, which are subsequently invalidated, declared to be fraudulent or preferential, set aside or required to be repaid to a trustee, debtor in possession, receiver, custodian or any other party under any bankruptcy law, common law or equitable cause, then, to such extent, the obligations of Maker hereunder intended to be satisfied shall be revived and continue as if such payment or proceeds had not been received by Holder.

492879.1

**Effex 000025**

E Capital-000029

EXECUTION

9. Miscellaneous.

9.1. Usury. It is the intention of Maker and Holder to conform strictly to the usury and other laws relating to interest from time to time in force, and all agreements between Maker and Holder, whether now existing or hereafter arising and whether oral or written, are hereby expressly limited so that in no contingency or event whatsoever, whether by demand hereunder or otherwise, shall the amount paid or agreed to be paid to Holder, or collected by Holder for the use, forbearance or detention of the money to be loaned hereunder, or for the payment or performance of any covenant or obligation contained herein or in any other agreement given to secure the loan obligations or in any other document evidencing, securing or pertaining to the loan obligations, exceed the maximum amount of interest allowable under applicable law (the "Maximum Amount"). If under any circumstances whatsoever fulfillment of any provision hereof at the time performance of such provision shall be due, shall involve transcending the Maximum Amount, then ipso facto, the obligation to be fulfilled shall be reduced to the Maximum Amount. For the purposes of calculating the actual amount of interest paid and or payable, in respect of laws pertaining to usury or such other laws, all sums paid or agreed to be paid to Holder for the use, forbearance or detention of the indebtedness evidenced hereby shall, to the extent permitted by applicable law, be amortized, allocated and spread from the date of disbursement of the proceeds thereof until payment in full of the loan obligations, so that the actual rate of interest on account thereof is uniform throughout the term hereof. If under any circumstances Holder shall ever receive an amount deemed interest by applicable law, which would exceed the Maximum Amount, such amount that would be excessive interest under applicable usury laws shall be deemed a payment in reduction of the Principal amount owing under this Note and shall be so applied to Principal and not to the payment of interest, or if such excessive interest shall be deemed to have been a payment made by mistake and shall be refunded to Maker or to any other person making such payment on Maker's behalf.

9.2 No Waiver by Holder. Neither the exercise of any provision hereof nor the delay in asserting any right granted to Holder (including the acceptance of past due payments) shall be construed as a waiver by Holder of the right to accelerate the indebtedness evidenced hereby as above provided or to pursue any other remedies available under this Note or under any other Loan Document nor shall the exercise of any single or partial exercise of any right, power, privilege or remedy preclude any further exercise thereof. Any waiver hereunder shall be valid and enforceable only if in writing and signed by the party against whom enforcement is sought, and then only to the extent therein set forth. The rights and remedies herein provided are cumulative and not exclusive of any rights or remedies provided by law and may be exercised singly or concurrently. No executory agreement unless in writing and signed by Holder, and no course of dealing between Maker, the endorser(s) or guarantor(s) hereof, or any of them, shall be effective to change or modify or discharge, in whole or in part, this Note.

9.3 Obligations. Maker acknowledges that this Note and Maker's obligations hereunder are and shall at all times continue to be absolute and unconditional in all respects, and shall at all times be valid and enforceable irrespective of any other agreements or circumstances of any nature whatsoever which might otherwise constitute a defense to this Note and the obligations of Maker hereunder or the obligations of any other person or party relating to this

492879.1

Effex 000026

EXECUTION

Note or the obligations of Maker hereunder. This Note sets forth the entire agreement and understanding of Holder and Maker, and Maker absolutely, unconditionally and irrevocably waives any and all right to assert any defense, setoff with respect hereto or the obligations of Maker hereunder or the obligations of any other person or party relating hereto in any action or proceeding brought by Holder to collect the outstanding balance of the Principal Amount, accrued and unpaid interest, late charges, and other amounts owing, or any portion thereof, or to enforce and realize upon the liens and security interests created any of the Loan Documents.

10. Participations. Holder, at any time and without the consent of Maker, may grant participations in or sell, transfer, assign and convey all or any portion of its right, title and interest in and to the loan obligations, this Note and any guaranties given in connection with this note and any collateral given to secure the obligations.

11. Notices. All notices, requests, demands and other communications provided for hereunder shall be in writing and either sent by first class mail, by certified mail, or by nationally recognized overnight courier service and delivered to the applicable party at the addresses indicated herein or, as to each party, at such other address as shall be designated by such parties in a written notice to the other party complying as to delivery with the terms of this Section. Notices shall be effective (a) if given by first class mail on the fifth day after deposit in the mails with postage prepaid, addressed as aforesaid; (b) if given by certified mail, on the third day after deposit in the mails with postage prepaid, addressed as aforesaid; (c) if given by recognized national overnight delivery service, on the business day following deposit with such service, addressed as aforesaid; provided that all notices to Holder shall be effective on receipt.

12. Venue; Service of Process. ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS NOTE AND THE OTHER LOAN DOCUMENTS SHALL BE TRIED AND LITIGATED ONLY IN THE STATE AND FEDERAL COURTS LOCATED IN THE STATES OF NEW YORK, OR, AT HOLDER'S SOLE OPTION, IN SUCH OTHER COURT IN WHICH HOLDER SHALL INITIATE LEGAL OR EQUITABLE PROCEEDINGS AND WHICH HAS SUBJECT MATTER JURISDICTION OVER THE MATTER IN CONTROVERSY. MAKER, TO THE EXTENT THAT IT MAY LAWFULLY DO SO, HEREBY CONSENTS TO THE JURISDICTION OF ALL SUCH COURTS, AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM SUCH COURTS, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF ANY OF ITS OBLIGATIONS ARISING HEREUNDER OR UNDER THE SECURITY AGREEMENT OR THE LOAN DOCUMENTS OR WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREBY, AND EXPRESSLY WAIVES ANY AND ALL OBJECTIONS IT MAY HAVE AS TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS. IN ADDITION, TO THE EXTENT THAT IT MAY LAWFULLY DO SO, MAKER CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR U.S. CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO MAKER AT THE ADDRESS PROVIDED HEREIN. TO THE EXTENT THAT MAKER HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT ATTACHMENT IN AID OF

*492879.1*

**Effex 000027**

EXECUTION

EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, MAKER HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS NOTE AND THE OTHER LOAN DOCUMENTS TO THE MAXIMUM EXTENT PERMITTED BY LAW.

13. <u>Jury Trial Waiver.</u> MAKER HEREBY WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS NOTE, ANY OF OTHER LOAN DOCUMENT, OR ANY OTHER AGREEMENTS EXECUTED IN CONNECTION HEREWITH. NEITHER MAKER NOR ANY ASSIGNEE OF OR SUCCESSOR TO MAKER, SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION OR PROCEDURE BASED UPON, OR ARISING OUT OF, THIS NOTE, OR ANY OTHER LOAN DOCUMENT ENTERED INTO IN CONNECTION HEREWITH OR THEREWITH OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES HERETO, OR ANY OF THEM. NO PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS SECTION 13 HAVE BEEN FULLY DISCUSSED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NO PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS SECTION 13 WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

*[The Balance Of This Page Is Intentionally Left Blank]*

**Effex 000028**

E Capital-000032

EXECUTION

IN WITNESS WHEREOF, Maker has caused this Secured Promissory Note to be executed by its duly authorized representative as of the day and year first above written.

**MAKER:**

EFFEX CAPITAL, LLC,

By: _____
John Dittami, Sole Member

492879.1

7

**Effex 000029**