# Exhibit 30

EXECUTION

## SOLE RECOURSE GUARANTY AND PLEDGE AGREEMENT

THIS SOLE RECOURSE GUARANTY AND PLEDGE AGREEMENT (this "Guaranty") is made as of April 8, 2010, by John Dittami, an individual, having a mailing address at 98 Constitution Way, Jersey City, NJ 07305 (the "Guarantor"), to and with Forex Capital Markets, LLC, a Delaware limited liability company (the "Lender").

WITNESSETH

WHEREAS, pursuant to that certain Secured Promissory Note, dated as of the date hereof (as the same may be amended, modified, renewed, supplemented, restated or extended from time to time, the "Note"), issued by Effex Capital, LLC, a Delaware limited liability company (the "Borrower"), to the Lender, the Lender has agreed to make certain loans and advances to Borrower; and

WHEREAS, in connection with the issuance of the Note to the Lender, the Lender has required the Borrower to execute and deliver a General Security Agreement, dated as of the date hereof (as the same may be amended, modified, renewed, supplanted, restated or extended from time to time, the "Security Agreement"); and

WHEREAS, the Guarantor owns and holds all of the issued and outstanding membership interests of the Borrower; and

WHEREAS, the Guarantor benefits and will benefit from the loans and advances extended to the Borrower pursuant to the Note; and

WHEREAS, the Guarantor has agreed to guarantee the payment of the indebtedness and obligations of the Borrower to the Lender as hereinafter set forth; and

WHEREAS, the execution and delivery of this Guaranty is a condition to the Lender's obligation to make such loans and advances to the Borrower; and

WHEREAS, as a condition to the Lender's obligation to make such loans and advances to the Borrower, the Guarantor is required to secure the payment of its obligations to the Lender by granting to the Lender a security interest and lien on all right, title and interest of the Guarantor in and to all of the equity interests of the Borrower.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the Guarantor hereby covenants and agrees as follows:

1. Guaranty.

   (a) The Guarantor, as primary obligor and not merely as surety, hereby, absolutely, unconditionally and irrevocably, guarantees: (i) the due and punctual payment in full (and not merely the collectibility) by the Borrower of the principal of the Note, and all interest thereon, when due and payable, according to the terms of the Note, whether at stated maturity, by reason of acceleration or otherwise; (ii) the due and punctual payment in full (and not merely the

493144.1

**Effex 000031**

E Capital-000035

collectibility) of all other sums and charges which may at any time be due and payable by the Borrower, in accordance with, or under the terms of, the Note, whether at stated maturity, by reason of acceleration or otherwise; (iii) the due and punctual payment (and not merely the collectibility), performance and observance of all of the other obligations, terms, covenants and conditions of the Borrower contained in the Note and the Security Agreement, all agreements and instruments at any time executed in connection with the Note, the Security Agreement and any other security instruments and agreements relating to the Note or the Security Agreement, whether now or hereafter existing, on the part of the Borrower, to be performed or observed (the Note, the Security Agreement, all security instruments and all related documents, instruments and agreements, whether now existing or arising hereafter, are collectively referred to herein as the "Loan Documents"), (iv) all costs of collection or enforcement relating to any of the foregoing, including, without limitation, reasonable attorneys' fees incurred in any collection efforts or in any action or proceeding, and (v) all other obligations of the Borrower to the Lender however arising (all of the indebtedness, obligations and liabilities described in this Section 1(a) are collectively hereinafter called the "Obligations").

(b) As collateral security for the payment in full when due of (x) any and all obligations and indebtedness of the Guarantor to the Lender under this Guaranty (the "Guarantor's Obligations"), and (y) all of the Obligations (the Guarantor's Obligations and the Obligations are sometimes hereinafter collectively called the "Secured Obligations"), Guarantor hereby pledges, assigns, grants a security interest in, and transfers and delivers unto the Lender each of the following (the "Collateral"):

(i) all right, title and interest in and to all issued and outstanding membership and ownership interests and equity securities in and of the Borrower (the "Pledged Interests");

(ii) all distributions, other amounts, additional membership or other equity interests and warrants, options and other rights to purchase any of the Pledged Interests of the Borrower and other property to which the Guarantor or any successor in interest to the Guarantor from time to time received, is receivable or otherwise distributed in respect of or in exchange for any or all of the Pledged Interests, including, without limitation (i) all of the Guarantor's right, title and interest in and to the profits and losses of the Borrower, (ii) all rights, privileges, authority and powers of the Guarantor as owner or holder of any Pledged Interests, and (iii) and all documents, instruments or certificates representing or evidencing any Pledged Interests;

(iii) all additional Pledged Interests or other equity interest of the Borrower from time to time acquired by the Guarantor in any manner and the certificates, if any, representing any additional Pledged Interests (the "Additional Interests"), and all distributions, cash, instruments and other property from time to time received, receivable or otherwise distributed or distributable in respect of or in exchange for any or all of the Additional Interests;

Effex 000032

(iv) all other rights appurtenant to the property described in clauses (a), (b), or (c) above (including, without limitation, voting and contract rights); and

(v) all cash and noncash proceeds of any and all of the foregoing.

(c) The Pledged Interests is accurately described on Schedule I hereto. If any of the Collateral shall become represented by certificates or other documents, such certificates or other documents accompanied by proper instruments of assignment duly executed in blank by the Guarantor, shall be promptly delivered to the Lender. Promptly upon The Guarantor's acquisition of any Additional Interests, the Guarantor will (i) deliver proper instruments of assignment duly executed in blank by the Guarantor together with any certificates or documents representing such Additional Interests, if such Additional Interests are certificated or otherwise documented; and (ii) amend Schedule I to include such Additional Interests.

(d) Any Collateral which may at any time be in the possession of the Guarantor shall be promptly delivered to the Lender, and prior thereto, shall be deemed to be held in trust on behalf of the Lender. The Lender is hereby authorized to hold any and all of the Collateral delivered to it in its own name or, at the Lender's option, to cause such items to be transferred to and held in the name of a nominee.

2. Subsequent Changes. The Guarantor expressly agrees that the Lender may, in its sole and absolute discretion, without notice to or further assent of the Guarantor and without in any way releasing, affecting or impairing the obligations and liabilities of the Guarantor hereunder: (i) waive compliance with, or any default under, or grant any other indulgences with respect to, the Note or any other Loan Documents; (ii) modify, amend or change any provisions of the Note or any other Loan Documents (including, without limitation, any changes to the interest rates, payment schedules or maximum amount of the Obligations); (iii) grant extensions or renewals of or with respect to the Note or any other Loan Documents, and/or effect any release, compromise or settlement in connection therewith; (iv) agree to the substitution, exchange, release or other disposition of the Borrower, any guarantor or other obligor of the Obligations or of all or any part of the collateral securing the Obligations (whether or not anything or any amount is received in return therefore); (v) make advances for the purpose of performing any term or covenant contained in any of the Loan Documents, with respect to which the Borrower shall be in default; (vi) assign or otherwise transfer the Note or any other Loan Documents, including, without limitation, this Guaranty, or any interest therein; and (vii) deal in all respects with the Borrower, the Obligations or any Collateral or other guaranty securing the Obligations as if this Guaranty were not in effect. The obligations of the Guarantor under this Guaranty shall be absolute and unconditional, irrespective of the genuineness, validity, regularity, enforceability or priority of the Note or any other Loan Documents or any other circumstances which might otherwise constitute a legal or equitable discharge of a surety or guarantor.

3. Direct and Absolute Obligation. The liability of the Guarantor under this Guaranty shall be primary, direct and immediate and not conditional or contingent upon pursuit by the Lender of any remedies they may have against the Borrower, or any other party or any collateral with respect to the Loan Documents, whether pursuant to the terms thereof or

**Effex 000033**

otherwise. No exercise or nonexercise by the Lender of any right given to them hereunder or under the Loan Documents, and no change, impairment or suspension of any right or remedy of the Lender, shall in any way affect any of the Guarantor's obligations hereunder or give the Guarantor any recourse against the Lender. Without limiting the generality of the foregoing, the Lender shall not be required to make any demand on the Borrower and/or any other party, or otherwise pursue or exhaust its remedies against the Borrower or any other party or any collateral with respect to the other Loan Documents, before, simultaneously with or after, enforcing its rights and remedies hereunder against the Guarantor. Any one or more successive and/or concurrent actions may be brought hereon against the Guarantor, either in the same action, if any, brought against the Borrower and/or any other party, or in separate actions, as often as the Lender, in its sole discretion, may deem advisable.

4. <u>Waivers</u>. The Guarantor hereby expressly waives: (i) diligence, presentment and demand for payment and protest of nonpayment; (ii) notice of acceptance of this Guaranty and of presentment, demand, dishonor and protest; (iii) notice of any default hereunder or under any of the Loan Documents and of all indulgences; (iv) demand for observance or performance of, or enforcement of, any terms or provisions of this Guaranty, the Note or any other Loan Document; (v) notice of extensions of credit by the Lender to the Borrower and of any change in the rate at which interest accrues under the Note or any other Loan Document; (vi) all other notices and demands otherwise required by law which the Guarantor may lawfully waive (including, without limitation, any matter which is described in Section 2 or Section 3 above); (vii) the right to assert in any action or proceeding hereupon any setoff, counterclaim or other claim which it may have against the Lender; (viii) all rights of subrogation, reimbursement or contribution against the Borrower which might otherwise arise by reason of the Guarantor's execution, performance or payment of this Guaranty; (ix) all rights (statutory or otherwise) that require the Lender to make an election of remedies where the Lender holds security interests and liens on both the real and personal property of the Borrower, any guarantor or any other obligor of the Obligations or to take recourse first or solely against any particular collateral securing the Note or any other Loan Document; (x) all rights (statutory or otherwise) that restrict, affect or impair the rights or remedies of the Lender to collect any deficiency after the application to the Obligations of any proceeds arising from the foreclosure under the Security Agreement; and (xi) the benefit of all other principles or provisions of law, statutory or otherwise, which are or might be in conflict with the terms hereof. As further consideration for the loans and advances under the Note by the Lender to the Borrower and as a material inducement to the Lender to make loans and advances under the Note and accept this Guaranty, the Guarantor hereby subordinates to the Lender and agrees not to exercise or pursue, until the Lender have received final payment in full of the Obligations, any and all claims, whether based in equity or law, whether by contract, statute or otherwise, that the Guarantor might now or hereafter have against the Borrower or any other person that is primarily or contingently liable on the Obligations guaranteed hereby or that arise from the existence or performance of the Guarantor's obligations under this Guaranty, including, but not limited to, any right of subrogation, reimbursement, exoneration, contribution, indemnification, or participation in any claim or remedy of the Borrower against the Lender or any collateral security that the Lender now has or hereafter acquire.

5. <u>Delivery of Pledged Interests</u>. All of the Pledged Interests, whether now owned or hereafter acquired by the Guarantor shall be promptly delivered to the Lender by the Guarantor pursuant hereto, and shall, if certificated, be in suitable form for transfer by delivery,

Effex 000034

and shall be accompanied by duly executed instruments of transfer or assignments in blank, and accompanied in each case by any required transfer tax stamps, all in form and substance reasonably satisfactory to the Lender. If the Pledged Interests is not certificated, the Guarantor shall cause the issuer to register the Lender as the registered collateral assignee thereof and enter into a control agreement with the Lender in such form as the Lender shall reasonably require. The Guarantor shall from time to time promptly and in accordance with the foregoing provisions deliver to the Lender any and all Additional Interests.

      6. **Representations and Warranties.** The Guarantor hereby represents and warrants to the Lender (which representations and warranties shall survive the delivery of this Guaranty) that:

      (a) This Guaranty constitutes the valid and binding obligation of the Guarantor enforceable against it in accordance with its terms, subject to applicable bankruptcy, insolvency, fraudulent transfer and similar laws regarding creditors' rights and equitable principles.

      (b) As of the date of this Guaranty, the Guarantor is not required to obtain any consent, approval or authorization from, or to file any declaration or statement with, any Governmental Authority, or any other person or entity, in connection with or as a condition to the execution, delivery or performance of this Guaranty or the other transactions contemplated by the Note.

      (c) The Guarantor is not now insolvent (as defined under any applicable federal or state law relating to bankruptcy, insolvency or fraudulent conveyance or transfer) and the Guarantor's obligations under this Guaranty do not render the Guarantor insolvent; the Guarantor is not contemplating either the filing of a petition by the Guarantor under any state or federal bankruptcy or insolvency laws or the liquidating of all or a major portion of the Guarantor's property.

      (d) The Guarantor is, or to the extent that certain of the Pledged Interests is to be acquired after the date hereof, will be, the owner of the Pledged Interests free from any adverse mortgage, deed of trust, lien (statutory or other), pledge, lease, easement, restriction, covenant, charge, security interest or other encumbrance of any kind or nature in respect of such asset, whether or not filed, recorded or otherwise perfected under applicable law, including any conditional sale or other title retention agreement (collectively, "Liens").

      (e) No financing statement or other Liens covering any of the Collateral is on file in any public office, other than the financing statements filed pursuant to this Guaranty.

      (f) The Guarantor is the sole owner of the Pledged Interests, and the Guarantor has not sold, assigned, transferred, mortgaged, encumbered or pledged the Pledged Interests or any part thereof.

      (g) None of the Pledged Interests is subject to any restriction (other than any applicable federal or state securities or antitrust laws) which would prohibit or restrict the security interest, pledge and assignment hereunder or the exercise of the Lender's remedies hereunder.

Effex 000035

(h) There are no restrictions upon the voting rights or the transfer of all or any of the Pledged Interests existing on the date hereof (other than may appear on the face of the certificate thereof or as may be imposed by the Securities Act of 1933, as amended (the "Securities Act"), or any state or local authorities) and the Guarantor has the right to vote, pledge, or grant a security interest in and otherwise transfer the Pledged Interests free of any encumbrances (other than applicable restrictions imposed by Federal or state securities or antitrust laws or regulations).

7. Covenants. The Guarantor hereby covenants and agrees as follows:

(a) The Guarantor will use all commercially reasonable efforts to defend the Pledged Interests against all claims and demands of all persons at any time claiming any interest therein.

(b) The Guarantor will promptly pay any and all taxes, assessments and governmental charges upon the Pledged Interests prior to the date penalties are attached thereto, except to the extent that such taxes, assessments and charges shall be contested in good faith by the Guarantor and reserves have been set aside therefore in accordance with GAAP.

(c) The Guarantor will promptly notify the Lender of any event (which shall not include changes in general economic conditions) causing a substantial loss or diminution in the value of all or any material part of the Pledged Interests and the amount or an estimate of the amount of such loss or diminution.

(d) Except as otherwise specifically permitted by the Security Agreement, the Guarantor will not sell or offer to sell or otherwise assign, transfer or dispose of any of the Collateral or any interest therein, without the prior written consent of the Lender.

(e) The Guarantor will keep the Collateral free from any and all Liens.

(f) The Guarantor will not change its name, identity or structure, without ten (10) days prior written notice to the Lender and the delivery to the Lender by the Guarantor of all documents and instruments necessary for the Lender to continue its perfected security interest in the Collateral, the form and substance of which documents and instruments shall be acceptable to the Lender in the Lender's reasonable discretion.

8. Record Ownership of Pledged Interests. Upon the occurrence and during the continuance of an Event of Default (as herein defined) and the acceleration of the Obligations: the Lender may upon written notice to the Guarantor cause any or all of the Pledged Interests to be transferred of record into the Lender's name.

9. Right to Receive Distributions on Pledged Interests. Unless an Event of Default shall have occurred, the Guarantor shall from time to time, to collect and receive for its own use all distributions, interest and other payments made upon or with respect to the Pledged Interests, except:

(i) distributions payable in securities or other property,

493144.1

- 6 -

Effex 000036

  (ii) distributions on dissolution, or on partial or total liquidation, or in connection with a reduction of capital, capital surplus or paid-in surplus, and

  (iii) other securities issued with respect to or in lieu of, or upon conversion of, the Pledged Interests (whether upon conversion of the convertible securities included therein or through stock split, spin-off, split-off, reclassification, merger, consolidation, sale of assets, combination of shares or otherwise).

The Lender shall have the right to receive and retain all distributions, interest and other payments made upon or with respect to the Pledged Interests, except those which the Guarantor is authorized to receive as provided above, and the Guarantor shall take all such action as may be necessary or appropriate to give effect to such right. From time to time upon receiving a written request from the Guarantor accompanied by a certificate signed on its behalf stating that no Event of Default has occurred and is continuing, the Lender shall deliver to the Guarantor suitable assignments and orders for the payment to the Guarantor or upon its order of all distributions, interest and other payments to which the Guarantor is entitled as aforesaid, upon or with respect to any Pledged Interests which are registered in the Lender's name. Notwithstanding anything contained in this document to the contrary, once the Guarantor has received any payments (distributions, salary, bonus or otherwise) from the Borrower, such monies are no longer subject to this Agreement or considered collateral for the Loan.

  10. <u>Right to Vote Pledged Interests</u>.

  (a) Unless an Event of Default shall have occurred and be continuing, the Guarantor shall have the right, from time to time, to vote and to give consents, ratifications and waivers with respect to the Pledged Interests, and the Lender shall, upon receiving a written request from the Guarantor accompanied by a certificate signed by its principal financial officer stating that no Event of Default has occurred and is continuing, deliver to the Guarantor or as specified in such request such proxies, powers of attorney, consents, ratifications and waivers as the Guarantor shall reasonably request in respect of any Pledged Interests which is registered in the Lender's name.

  (b) If an Event of Default shall have occurred and be continuing and the Obligations shall be accelerated, and provided the Lender elects to exercise the rights hereinafter set forth by notice to the Guarantor of such election, the Lender shall have the right to the extent permitted by law to vote and to give consents, ratifications and waivers and take any other action with respect to all the Pledged Interests with the same force and effect as if the Lender were the absolute and sole owner thereof.

  11. <u>Events of Default</u>. In each case of happening of any of the following events (each of which is herein sometimes called an "<u>Event of Default</u>"):

  (a) any representation or warranty made in this Guaranty or in any report, certificate, financial statement or other instrument furnished or to be furnished in connection with this Guaranty, shall prove to be false or misleading in any material respect when made or deemed to be made; or

493144.1

- 7 -

Effex 000037

(b) default in the due observance or performance of any covenant, condition or agreement contained in this Guaranty or in any agreement now or hereafter securing payment of this Guaranty, which default shall continue unremedied for ten (10) days after written notice thereof from the Lender to the Guarantor; or

(c) the occurrence of an "Event of Default" as defined in the Note or any other Loan Document;

then and upon any such Event of Default and at any time thereafter during the continuance of such Event of Default, at the election of the Lender, the Note, the Obligations, the Guarantor Obligations and any and all other obligations of the Borrower and the Guarantor, and each of them, to the Lender and the Lender shall for the purposes of this Guaranty immediately become due and payable, both as to principal and interest and other amounts due, without presentment, demand, or protest, all of which are hereby expressly waived, anything contained herein or in the Note or other evidence of such obligations to the contrary notwithstanding.

12. Remedies Upon Event of Default. Subject to Section 15 hereof, if an Event of Default shall have occurred and be continuing, the Lender may take any of the following actions:

(a) The Lender may exercise all the rights and remedies of a secured party under the Uniform Commercial Code ("UCC") (whether or not the UCC is in effect in the jurisdiction where such rights and remedies are exercised) and, in addition, the Lender may, without being required to give any notice, except as herein provided or as may be required by mandatory provisions of law, including provisions that require a secured party to act in a commercially reasonable manner, (i) apply the cash, if any, then held by it as collateral hereunder, for the purposes and in the manner specified in Section 13 hereof, and (ii) if there shall be no such cash or if such cash shall be insufficient to pay all the Secured Obligations in full, sell the Pledged Interests, or any part or component thereof, at one or more public or private sales for cash, upon credit or for future delivery, and at such price or prices as the Lender may reasonably deem satisfactory.

(b) Any such sale shall be held at such time or times within ordinary business hours and at such public or private place or places as the Lender may fix in the notice of such sale. At any sale, the Pledged Interests may be sold in one lot as an entirety or in separate parcels, as the Lender may reasonably determine. The Lender shall not be obligated to make such sale pursuant to any such notice. The Lender may, without notice or publication, adjourn any sale or cause the same to be adjourned from time to time by announcement at the time and placed fixed for the sale, and such sale may be made at any time or place to which the same may be adjourned. In case of any sale of all or any part of the Pledged Interests on credit or for future delivery, the Pledged Interests so sold may be retained by the Lender until the selling price is paid by the purchaser thereof, but the Lender shall not incur any liability in case of the failure of such purchaser to take up and pay for the Pledged Interests so sold and, in case of any such failure, such Pledged Interests may again be sold upon like notice.

(c) The Lender, instead of exercising the power of sale herein conferred upon them, may proceed by a suit or suits at law or in equity to foreclose the security interests and sell

Effex 000038

the Pledged Interests, or any portion thereof, under a judgment or decree of a court or courts of competent jurisdiction.

(d) To enforce the security agreement provisions of this Guaranty, the Lender is empowered to request the appointment of a receiver from any court of competent jurisdiction. The receiver shall have the power to dispose of the Pledged Interests in any manner lawful in the jurisdiction in which his appointment is confirmed, including the power to conduct a public or private sale of the Pledged Interests. The Lender may bid at any such public or private sale.

(e) THE GUARANTOR ACKNOWLEDGES THAT THE APPOINTMENT OF A RECEIVER IS INTEGRAL TO THE LENDER'S REALIZATION OF THE VALUE OF THE PLEDGED INTERESTS, THAT THERE IS NO ADEQUATE REMEDY AT LAW FOR FAILURE BY THE GUARANTOR TO COMPLY WITH THE PROVISIONS OF THIS SECTION AND THAT SUCH FAILURE WOULD NOT BE ADEQUATELY COMPENSABLE IN DAMAGES, AND THEREFORE AGREES THAT THE AGREEMENTS CONTAINED IN THIS SECTION MAY BE SPECIFICALLY ENFORCED.

(f) All rights and remedies contained herein shall be separate and cumulative and in addition to all other rights and remedies available to a secured party under applicable law, and the exercise of one shall not in any way limit or prejudice the exercise of any other such rights or remedies.

(g) If at any time when the Lender shall determine to exercise its right to sell all or any part of the Pledged Interests pursuant to subsection (a)(ii) of this Section 12, the Guarantor recognizes that the Lender may be unable to effect a public sale of the Pledged Interests by the reason of certain prohibitions contained in the Securities Act, or other applicable state or federal laws, and the Lender may therefore resort to one or more private arm's-length sales thereof to a restricted group of purchasers. The Guarantor agrees that any such private sales may be at prices and on other terms less favorable to the seller than if sold at public sales and that such private arm's-length sales shall not by reason thereof be deemed not to have been made in a commercially reasonable manner. The Lender shall sell all or any part of the Pledged Interests at a price which it reasonably deems commercially reasonable under the circumstances. The Lender shall be under no obligation to delay a sale of any of the Pledged Interests for the period of time necessary to permit the issuer of such securities to register such securities for public sale under the Securities Act, or such other applicable laws, even if the issuer would agree to do so. Subject to the foregoing, the Lender agrees that any sale of the Pledged Interests shall be made in a commercially reasonable manner, and the Guarantor agrees to use commercially reasonable efforts to cause the issuer or issuers of the Pledged Interests contemplated to be sold, to execute and deliver, all at the Guarantor's expense, all such instruments and documents, and to do or cause to be done all such other acts and things as may be necessary or, in the reasonable opinion of the Lender, advisable to exempt the Pledged Interests from registration under the provisions of the Securities Act, and to make all amendments to such instruments and documents which, in the opinion of the Lender, are necessary or advisable, all in conformity with the requirements of the Securities Act and the rules and regulations of the Securities and Exchange Commission applicable thereto, and other applicable law.

Effex 000039

(h)   The receipt by the Lender of the purchase money paid at any such sale made by it shall be a sufficient discharge therefor to any purchaser (other than the Lender) of the Pledged Interests, or any portion thereof, sold as aforesaid; and no such purchaser (or his or its representatives or assigns) (other than the Lender), after paying such purchase money and receiving such receipt, shall be bound to see to the application of such purchase money or any part thereof or in any manner whatsoever be answerable for any loss, misapplication or nonapplication of any such purchase money, or any part thereof, or be bound to inquire as to the authorization, necessity, expediency or regularity of any such sale.

(i)   All rights and remedies contained herein shall be separate and cumulative and in addition to all other rights and remedies available to a secured party under Applicable Law, and the exercise of one shall not in any way limit or prejudice the exercise of any other such rights or remedies

13. <u>Application of Collateral and Proceeds</u>.   The proceeds of any sale of, or other realization upon, all or any part of the Collateral shall be applied in the following order of priorities:

(a)   first, to pay the reasonable expenses of such sale or other realization, including reasonable commission to the Lender's agent, and all reasonable expenses, liabilities and advances incurred or made by the Lender in connection therewith, and any other unreimbursed expenses for which the Lender are to be reimbursed pursuant to Section 14;

(b)   second, to the payment of the Secured Obligations then due and payable in such order and manner as the Lender, in its sole discretion, shall determine; and

(c)   finally, unless applicable law otherwise provides, to pay to the Guarantor, or its successors or assigns, or as a court of competent jurisdiction may direct, any surplus then remaining from such proceeds.

14. <u>Expenses; Lender' Lien</u>.   The Guarantor will or will cause the Borrower to forthwith upon demand pay to the Lender:

(a)   the amount of any taxes which the Lender may at any time be required to pay by reason of the security interests granted hereby (including any applicable transfer taxes) or to free any of the Pledged Interests from any lien thereon by reason of such taxes, and

(b)   the amount of any and all reasonable out-of-pocket expenses, including the reasonable fees and disbursements of its counsel and of any agents not regularly in its employ, which the Lender may reasonably incur in connection with (i) the preparation and administration of this Guaranty, (ii) the collection, sale or other disposition of any of the Pledged Interests, (iii) the exercise by the Lender of any of the powers, rights or remedies conferred upon it or them hereunder, or (iv) any default on the Guarantor's part hereunder.

15. <u>Sole Recourse</u>.   Notwithstanding any provision in this Guaranty to the contrary, , the Lender's sole recourse against the Guarantor shall be in respect of the Collateral as contemplated herein and the Guarantor shall not be personally liable for any of the Secured Obligations.

493144.1

- 10 -

Effex 000040

16. <u>Termination of Security Interests; Release of Pledged Interests</u>. Upon the final repayment and performance in full of all the then outstanding Secured Obligations, the security interests and all other rights given to the Lender hereunder shall terminate and all rights to the Collateral shall revert to the Guarantor.

17. <u>Notices</u>. All notices, requests, demands and other communications provided for hereunder shall be in writing and either sent by first class mail, by certified mail, or by nationally recognized overnight courier service and delivered to the applicable party at the addresses indicated herein, or, as to each party, at such other address as shall be designated by such parties in a written notice to the other party complying as to delivery with the terms of this Section. Notices shall be effective (a) if given by first class mail on the fifth day after deposit in the mails with postage prepaid, addressed as aforesaid; (b) if given by certified mail, on the third day after deposit in the mails with postage prepaid, addressed as aforesaid; (c) if given by recognized national overnight delivery service, on the business day following deposit with such service, addressed as aforesaid; provided that all notices to the Lender shall be effective on receipt.

18. <u>Place of Payment</u>.

Any payments made by the Guarantor under the provisions of this Guaranty shall, if made to the Lender be made at its office at 32 Old Slip, 10th Floor, New York, New York 10005, unless some other address is hereafter designated by the Lender.

19. <u>Insolvency</u>. The obligations of the Guarantor to make payment in accordance with the terms of this Guaranty shall not be impaired, modified, changed, released or limited in any manner whatsoever by any impairment, modification, change, release or limitation of the liability of the Borrower or its estate, in bankruptcy or reorganization resulting from the operation of any present or future provision of the Federal Bankruptcy Act or other statute or from the decision of any court. The Guarantor agrees that in the event any amounts referred to herein are paid in whole or in part by the Borrower, the Guarantor or any other party or obligor, the Guarantor's liability hereunder shall continue and remain in full force and effect in the event that all or any part of any such payment is recovered from the Lender as a preference, fraudulent transfer or similar payment under any bankruptcy, insolvency or similar law.

20. <u>Obligation of Guarantor Unconditional</u>. The Guarantor hereby agrees that:

(a) The Guarantor's liability hereunder is unconditional, irrespective of: (i) the legality, validity or enforceability of the Obligations; (ii) the legality, validity or enforceability of any security interest, mortgage or pledge granted by the Borrower or any other person as collateral for the Obligations, any guarantee, suretyship, letter of credit or reimbursement agreement issued by any person secondarily or otherwise liable for any of the Obligations, any right of set-off against any deposit account or credit on the Lender's books in favor of the Borrower or any person secondarily or otherwise liable for any of the Obligations, or any other device providing collateral security for payment of the Obligations (all of the above referenced devices being referred to herein as the "<u>Collateral Security</u>"); (iii) the failure by the Lender for any reason to resort to, enforce or exhaust its remedies under or against the Obligations or the Collateral Security; (iv) the waiver or consent by the Lender with respect to any term or condition of the Obligations or the Collateral Security; or (v) the recovery of any

**Effex 000041**

judgment against the Borrower or any action to enforce such judgment or any other circumstance which might, absent the unconditional nature of this Guaranty, constitute a legal or equitable discharge or defense of a guarantor, a pledgor or a debtor.

(b) The Lender may at any time, or from time to time, in its sole discretion: (i) change, alter, renew, continue, waive, terminate, or extend or accelerate the time of payment of, all or any of the Obligations, or any part or parts thereof or any renewal or renewals thereof; (ii) replace any existing Obligation and the documentation therefor with an amended and restated Obligation and the documentation therefor; (iii) sell, exchange, release, compromise or surrender all or any collateral under any of the other Loan Documents; (iv) sell or purchase any or all of the collateral under any of the other Loan Documents at public or private sale, or at any broker's board, and after deducting all costs and expenses of every kind for collection, sale or delivery, apply the proceeds of any such sale or sales against any of the Obligations; (v) settle or compromise any or all of the Obligations with the Borrower, or any other person or persons liable thereon, or subordinate the payment of same or any part thereof to the payment of any other debts or claims which may at any time be due or owing to the Lender or other person; (vi) make loans and advances to the Borrower; (vii) assign or otherwise transfer the Obligations or any interest therein; and (viii) deal in all respects with the Borrower, the Obligations or any collateral under any of the other Loan Documents securing the Obligations as if this Guaranty were not in effect; all in such manner and upon such terms as the Lender may see fit and without notice to or the consent from the Guarantor, which hereby agrees to be and remain bound upon this Guaranty, irrespective of the effect upon the existence or status of the Obligations or the Collateral Security and extension, acceleration, sale, exchange, release, compromise, surrender, application, settlement, subordination or any other action hereinabove mentioned.

21. Consent to Jurisdiction, Service of Process.

ALL ACTIONS OR PROCEEDINGS ARISING IN CONNECTION WITH THIS GUARANTY AND THE OTHER LOAN DOCUMENTS SHALL BE TRIED AND LITIGATED ONLY IN THE STATE AND FEDERAL COURTS LOCATED IN THE STATES OF NEW YORK, OR, AT THE LENDER'S SOLE OPTION, IN SUCH OTHER COURT IN WHICH THE LENDER SHALL INITIATE LEGAL OR EQUITABLE PROCEEDINGS AND WHICH HAS SUBJECT MATTER JURISDICTION OVER THE MATTER IN CONTROVERSY. THE GUARANTOR, TO THE EXTENT THAT IT MAY LAWFULLY DO SO, HEREBY CONSENTS TO THE JURISDICTION OF ALL SUCH COURTS, AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM SUCH COURTS, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF ANY OF ITS OBLIGATIONS ARISING HEREUNDER OR UNDER THE NOTE OR THE OTHER LOAN DOCUMENTS OR WITH RESPECT TO THE TRANSACTIONS CONTEMPLATED HEREBY, AND EXPRESSLY WAIVES ANY AND ALL OBJECTIONS IT MAY HAVE AS TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS. IN ADDITION, TO THE EXTENT THAT IT MAY LAWFULLY DO SO, THE GUARANTOR CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR U.S. CERTIFIED OR REGISTERED MAIL, RETURN RECEIPT REQUESTED, ADDRESSED TO THE GUARANTOR AT THE ADDRESS PROVIDED HEREIN. TO THE EXTENT THAT THE GUARANTOR HAS OR HEREAFTER MAY ACQUIRE ANY IMMUNITY FROM

Effex 000042

JURISDICTION OF ANY COURT OR FROM ANY LEGAL PROCESS (WHETHER THROUGH SERVICE OR NOTICE, ATTACHMENT PRIOR TO JUDGMENT ATTACHMENT IN AID OF EXECUTION OR OTHERWISE) WITH RESPECT TO ITSELF OR ITS PROPERTY, THE GUARANTOR HEREBY IRREVOCABLY WAIVES SUCH IMMUNITY IN RESPECT OF ITS OBLIGATIONS UNDER THIS GUARANTY AND THE OTHER LOAN DOCUMENTS TO THE MAXIMUM EXTENT PERMITTED BY LAW.

22. Waiver of Jury Trial.

THE GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION BROUGHT ON OR WITH RESPECT TO THIS GUARANTY, THE NOTE OR ANY OTHER AGREEMENTS EXECUTED IN CONNECTION HEREWITH. NEITHER THE GUARANTOR NOR ANY ASSIGNEE OF OR SUCCESSOR TO THE GUARANTOR, SHALL SEEK A JURY TRIAL IN ANY LAWSUIT, PROCEEDING, COUNTERCLAIM, OR ANY OTHER LITIGATION OR PROCEDURE BASED UPON, OR ARISING OUT OF, THIS GUARANTY, THE NOTE OR ANY OF THE OTHER LOAN DOCUMENTS ENTERED INTO IN CONNECTION HEREWITH OR THEREWITH OR THE DEALINGS OR THE RELATIONSHIP BETWEEN OR AMONG THE PARTIES HERETO, OR ANY OF THEM. NO PARTY WILL SEEK TO CONSOLIDATE ANY SUCH ACTION, IN WHICH A JURY TRIAL HAS BEEN WAIVED, WITH ANY OTHER ACTION IN WHICH A JURY TRIAL CANNOT BE OR HAS NOT BEEN WAIVED. THE PROVISIONS OF THIS SECTION 21 HAVE BEEN FULLY DISCUSSED BY THE PARTIES HERETO, AND THESE PROVISIONS SHALL BE SUBJECT TO NO EXCEPTIONS. NO PARTY HAS IN ANY WAY AGREED WITH OR REPRESENTED TO ANY OTHER PARTY THAT THE PROVISIONS OF THIS SECTION 22 WILL NOT BE FULLY ENFORCED IN ALL INSTANCES.

23. Governing Law. This Guaranty shall be construed in accordance with the laws of the State of New York applicable to contracts made and performed in said state.

24. Successors. This Guaranty shall inure to the benefit of, and be enforceable by, the Lender and its successors and assigns, and shall be binding upon, and enforceable against, the Guarantor and his heirs, successors and assigns, provided that, Guarantor may not assign its obligations hereunder, but the Lender may assign its interests hereunder.

25. Severability. Any provision of this Guaranty which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof or affecting the validity or enforceability of such provision in any other jurisdiction.

26. Counterparts. This Guaranty may be executed by the parties hereto in several counterparts hereof and by different parties hereto on separate counterparts hereof, each of which shall be an original and all of which counterparts shall together constitute one and the same agreement. Delivery of an executed signature page of this Guaranty by facsimile transmission shall be effective as an in-hand delivery of an original executed counterpart thereof.

*[The Balance Of This Page Is Intentionally Left Blank]*

**Effex 000043**

EXECUTION

IN WITNESS WHEREOF, the Guarantor has executed this Guaranty as an instrument under seal as of the day and year first above written.

GUARANTOR:

_____
John Dittami

LENDER:

**FOREX CAPITAL MARKETS, LLC**, a Delaware limited liability company

By: _____
Name:
Title:

493144.1

**Effex 000044**