# Exhibit 36

CONFIDENTIAL

Page 1

1      **CONFIDENTIAL - ALEXANDER W. DICK, ESQ.**
2           **UNITED STATES DISTRICT COURT**
        **FOR THE SOUTHERN DISTRICT OF NEW YORK**
3

        In re:                     :
4                                   : Master File No.
        Global Brokerage, Inc.     : 1:17-cv-00916-RA
5       F/k/a FXCM, Inc.           :
        Securities Litigation      :
6       ----------------------    :

7

8        **REMOTE VIDEO DEPOSITION VIA ZOOM OF:**
9              **ALEXANDER W. DICK, ESQ.**
10           **WEDNESDAY, NOVEMBER 18, 2020**
11
12
13
14
15
16
17
18
19
20
21
22
23
24      REPORTED BY:
        SILVIA P. WAGE, CCR, CRR, RPR
25      JOB NO. 4336849

CONFIDENTIAL

Page 294

CONFIDENTIAL - ALEXANDER W. DICK, ESQ.

I would direct you down to (d), stipulate that the record basis for this order is entered shall consist solely of filings -- of findings contained in this order to which respondents have consented in the offer, and, (e) consent solely for the basis of this offer to the commission's entry of this order that makes findings and by the commission and orders respondents to cease and desist, et cetera.

Do you see that language?

A. Yes.

Q. Were you involved in the process of negotiating this offer of settlement?

A. I was not.

Q. And did you see any drafts or previous versions of this order prior to its being filed?

MR. DAHAN: Objection.

A. No, not that I recall, no.

Q. Okay. I have another document for you and then I'm going to take a break and we'll see if we can wrap this up, okay?

A. Yes.

(Deposition Exhibit 27, Order

Page 295

CONFIDENTIAL - ALEXANDER W. DICK, ESQ.

Instituting Proceedings Pursuant to Sections 6(c) and 6(d) of the Commodity Exchange Act and Making Findings and Imposing Remedial Sanctions, was marked for identification.)

Q. Okay. I'm just waiting for loading. We'll just to have wait.

A. No worries.

Q. Alright. I am labeling this Exhibit No. 27.

Just take a moment to review it and let me know when you are ready to discuss.

A. Okay, I've opened it.

Okay, I've reviewed it.

Q. So this appears to me to be an unexecuted un-filed version of the Order Instituting Proceedings Pursuant to Section 6(c) and 6(d)" which we previously went over the final version as Exhibit No. 26.

Does that sound like an accurate description to you?

A. That's what it appears to me.

Q. Did you ever see this version of the document either before or after the filing of the other version?

Page 296

CONFIDENTIAL - ALEXANDER W. DICK, ESQ.

A. Not that I recall, no.

MR. DAHAN: Counsel, just maybe for my clarification, I -- unless I'm looking at the wrong document, Exhibit No. 27, are you suggesting this is a prior version of the February 2017 signed CFTC order?

MR. LaPOINTE: Sorry, no. I'm just trying to see if that -- it's an earlier -- I may have misspoken. It's an earlier document --

MR. DAHAN: This is a totally different investigation.

MR. LaPOINTE: Yeah, earlier document about a different investigation.

MR. DAHAN: But nothing to do with EFFEX and covers the period of time before EFFEX -- I mean, I don't even know what the point of this document is.

But to the extent that you're suggesting this was a draft of the CFTC order that we looked at, which was Exhibit 26, I totally object and I object to its relevance for purposes of --

MR. LaPOINTE: I understand. I'll withdraw the question and I won't have any

Page 297

CONFIDENTIAL - ALEXANDER W. DICK, ESQ.

questions with respect to it.

MR. DAHAN: Thank you. That's fine.

MR. LaPOINTE: If we can take a break now. I just want to make sure that there's nothing else that we need to get to, but I think we can probably wrap up pretty soon.

MR. DAHAN: Okay.

THE VIDEOGRAPHER: Thank you. This is the Videographer.

The time is 5:41. We're going off the record.

(Recess taken 5:41 to 5:45 p.m.)

THE VIDEOGRAPHER: The time is 5:45. We're back on the record. This is the beginning of Media File 8.

Q. I'd just like to direct your attention back to the exhibit previously numbered 19.

Can you bring that up?

A. Okay, yes.

Q. This is the original April 14, 2010 option agreement that was executed in which you testified was -- it is your belief terminated orally shortly thereafter; is that a fair

75 (Pages 294 - 297)

CONFIDENTIAL

| | Page 298 |
|---|---|
| 1 | CONFIDENTIAL - ALEXANDER W. DICK, ESQ. |
| 2 | assessment of your previous testimony? |
| 3 | A. Correct. |
| 4 | Q. Okay. Just a couple of additional |
| 5 | questions on this. |
| 6 | Who made the decision to terminate |
| 7 | this agreement? |
| 8 | A. I don't know who made the decision to |
| 9 | terminate it. |
| 10 | Q. Do you know if Mr. Ahdout was |
| 11 | involved? |
| 12 | A. My understanding is Mr. Ahdout was |
| 13 | the one who orally terminated it. |
| 14 | Q. Okay. But you don't know which party |
| 15 | made the decision to terminate the option? |
| 16 | A. Well, let me ask you to clarify. |
| 17 | Are you saying between FXCM and EFFEX |
| 18 | who terminated? |
| 19 | Q. Yes. |
| 20 | A. My understanding is that FXCM |
| 21 | terminated it. |
| 22 | Q. Okay, that was my question. |
| 23 | A. Well, you know, my understanding was |
| 24 | -- if I can correct my -- my understanding was |
| 25 | both parties mutually agreed to terminate it. My |

| | Page 299 |
|---|---|
| 1 | CONFIDENTIAL - ALEXANDER W. DICK, ESQ. |
| 2 | understanding was that it was FXCM that prompted |
| 3 | that but that both parties mutually agreed. |
| 4 | Q. So how did FXCM prompt the parties to |
| 5 | agree to terminate that agreement? |
| 6 | A. My understanding is that William |
| 7 | Ahdout reached out to John Dittami and said, we |
| 8 | want to terminate this and both parties mutually |
| 9 | agreed orally to terminate it through some oral |
| 10 | conversation. |
| 11 | Q. There was no written memorialization |
| 12 | of it at that time? |
| 13 | A. "At that time," meaning, back in, you |
| 14 | know, April, May or someplace around that 2010; |
| 15 | is that your question? |
| 16 | Q. Yes. |
| 17 | A. Yep. My understanding is that there |
| 18 | was no written memorialization at that time. |
| 19 | Q. And who made the determination not to |
| 20 | exercise this option within FXCM? |
| 21 | MR. DAHAN: Objection. |
| 22 | Are you back to termination? |
| 23 | MR. LaPOINTE: Excuse me? |
| 24 | MR. DAHAN: You asked who made the |
| 25 | decision not to exercise it. He was telling you |

| | Page 300 |
|---|---|
| 1 | CONFIDENTIAL - ALEXANDER W. DICK, ESQ. |
| 2 | it was terminated. |
| 3 | So you're saying who at FXCM made the |
| 4 | decision to terminate? You used the word |
| 5 | "exercise." |
| 6 | MR. LaPOINTE: I meant -- I said, |
| 7 | "not to exercise." |
| 8 | MR. DAHAN: Well, again, it wasn't a |
| 9 | matter of "exercise." It was terminated. |
| 10 | MR. LaPOINTE: There was a time |
| 11 | between when it was executed and when it was |
| 12 | terminated in which FXCM had the option and could |
| 13 | have executed it. |
| 14 | MR. DAHAN: Well, ask him how much |
| 15 | time there was. Maybe that was one day. So why |
| 16 | don't you ask him how long -- you know, when it |
| 17 | set that up, first for a foundation. |
| 18 | MR. LaPOINTE: I don't think I |
| 19 | actually need that foundation. So I'm just going |
| 20 | to ask the question again. |
| 21 | MR. DAHAN: Okay. |
| 22 | Q. Who at FXCM made the determination |
| 23 | not to exercise this option when it was available |
| 24 | to them? |
| 25 | A. My understanding is that the option |

| | Page 301 |
|---|---|
| 1 | CONFIDENTIAL - ALEXANDER W. DICK, ESQ. |
| 2 | -- the opportunity to exercise the option never |
| 3 | existed. I don't know that there was any |
| 4 | decision not to exercise. |
| 5 | Q. And who made the decision not to |
| 6 | execute the 2011 documents with respect to -- |
| 7 | scratch that. |
| 8 | Let me go back in and correct the -- |
| 9 | rephrase the question. And just a moment. |
| 10 | Bringing your attention back to |
| 11 | Exhibit 20. This is the e-mail attaching drafts |
| 12 | of an option agreement, an operating agreement, |
| 13 | an FXCM services agreement and an agreement for |
| 14 | services dated around June 15, 2011. |
| 15 | A. Yes. |
| 16 | Q. Do you recall we previously discussed |
| 17 | this and it attached a number of draft |
| 18 | agreements, which you testified were never |
| 19 | executed or finalized? |
| 20 | A. Yes. |
| 21 | Q. Who made the determination not to |
| 22 | pursue any of those opportunities? |
| 23 | A. You know, I think, we talked about |
| 24 | this and, I think, I answered this already. I |
| 25 | don't know of a formal decision where something |

CONFIDENTIAL

|  |  |
|---|---|
| Page 302 | Page 304 |
| 1  CONFIDENTIAL - ALEXANDER W. DICK, ESQ.<br>2  was decided to not pursue this.<br>3      My recollection is that FXCM never<br>4  was interested in this and that -- well, you<br>5  know, FXCM never finalized any interest in this<br>6  or desire to pursue it and it was dropped.<br>7      But I don't -- my recollection -- I<br>8  don't recall any, you know, finality or line<br>9  drawn.  My recollection is that it just went<br>10  away.  It never came up again.<br>11     Q.  So it was, basically, just put in the<br>12  drawer?<br>13     A.  Well, you know, at least, in my<br>14  perspective, you know, what I did for this which<br>15  was, you know, draft documents, exchanged them at<br>16  the direction of the company.  I don't recall<br>17  doing anything.<br>18     Q.  Do you know who was responsible for<br>19  dropping the ball, if there were conversations<br>20  back and forth, if it just sort of went away?<br>21     A.  No, I don't recall who "dropped the<br>22  ball."<br>23     Q.  So, the April 14, 2010 option, you've<br>24  testified that that was terminated orally shortly<br>25  after its execution in 2010. | 1  CONFIDENTIAL - ALEXANDER W. DICK, ESQ.<br>2  agreement.  It sounds like these were considered<br>3  -- these were plans that were considered by EFFEX<br>4  and FXCM.  But, you know, being just the lawyer<br>5  that drafts documents, I wasn't part of the<br>6  decision to -- so, you know, a decision to pursue<br>7  this.  So I don't know who instigated this or why<br>8  it was pursued.<br>9      Q.  Why, if you know, was the termination<br>10  of the April 2010 option not memorialized in<br>11  writing until 2014, three years after it was<br>12  purportedly terminated early?<br>13     A.  I -- I would say that the company<br>14  didn't consider memorializing in writing<br>15  necessary because the option didn't exist, the<br>16  consideration never occurred.  As we discussed,<br>17  there was never a loan, there was never a license<br>18  agreement.  And the -- both parties orally agreed<br>19  that it was terminated and of no effect, you<br>20  know, proven in point of the fact that they start<br>21  executing -- I mean, both parties, FXCM and<br>22  EFFEX, start negotiating a completely new option<br>23  agreement how many years later.<br>24     So I don't believe that memorializing<br>25  it in writing -- the company didn't believe it |
| Page 303 | Page 305 |
| 1  CONFIDENTIAL - ALEXANDER W. DICK, ESQ.<br>2      After that was terminated in 2010,<br>3  what was the basis for drafting and exchanging<br>4  drafts of this other option agreement attached to<br>5  this e-mail a year later?<br>6      A.  I'm not sure I understand your<br>7  question.<br>8      Q.  So, in Exhibit No. 20, this attached<br>9  a draft option agreement, which was Exhibit<br>10  No. 21 --<br>11     A.  Right.<br>12     Q.  -- that we previously looked at, you<br>13  testified that that was never executed or entered<br>14  into, right?<br>15     A.  Yes.<br>16     Q.  Why was it discussed?  Why was it<br>17  offered?  Why were drafts exchanged after the<br>18  previous option agreement had been terminated by<br>19  mutual agreement in 2011?<br>20     A.  I don't know, personally.  At some<br>21  point it must have been part of some sort of<br>22  proposal for the parties to enter into an<br>23  arrangement where there would be an amendment to<br>24  a services agreement, an option agreement, some<br>25  sort of contemplated different services | 1  CONFIDENTIAL - ALEXANDER W. DICK, ESQ.<br>2  was necessary.<br>3      Q.  So who determined to memorialize<br>4  termination of the 2010 option in 2014?<br>5      A.  Without getting into privileged<br>6  conversations, it was part of outside Counsel's<br>7  representation of FXCM.<br>8      Q.  And why was it determined that the<br>9  termination should be memorialized at that point?<br>10     MR. DAHAN:  Objection to the extent<br>11  that you're asking him to divulge privileged<br>12  communication.<br>13     MR. LaPOINTE:  I will modify the<br>14  previous question.<br>15     Q.  Without divulging privileged<br>16  communications or without getting into any<br>17  privileged material.<br>18     A.  I don't have an answer without<br>19  divulging privileged material.<br>20     Q.  Was there anything else going on at<br>21  that time that contributed to the determination<br>22  to memorialize the termination at that point?<br>23     MR. DAHAN:  Object to the form.<br>24     A.  Again, I don't -- I can't -- without<br>25  divulging privileged conversations with outside |

77 (Pages 302 - 305)