UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM, Inc. Securities Litigation<br><br>This Document Relates To:  All Actions | Master File No. 1:17-cv-00916-RA<br><br>CLASS ACTION<br><br>ORAL ARGUMENT REQUESTED |

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO EXCLUDE THE REPORTS, TESTIMONY, AND OPINIONS OF JOHN E. BARRON**

Israel Dahan
Peter Isajiw
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Tel:  (212) 556.2100
Fax: (212) 556.2200

Chelsea Corey
KING & SPALDING LLP
300 S. Tryon Street, Suite 1700
Charlotte, North Carolina 28202
Tel: (704) 503.2575
Fax: (704) 503.2622

*Attorneys for Defendants Global Brokerage, Inc. f/k/a/ FXCM, Inc., Dror Niv, and William Ahdout*

**TABLE OF CONTENTS**

**PRELIMINARY STATEMENT** ..................................................................................................1

**ARGUMENT**.................................................................................................................................2

    I.   Barron's Improper Factual Narrative Should Be Excluded..................................................2

    II.  Barron's VIE Opinions Are Unreliable ...............................................................................4

        A.  Barron's Analysis Of Effex's Equity At Risk Is Hopelessly Flawed ............................5

        B.  Barron's Focus On Pre-Class Period Facts And Public Filings Is Intentionally Misleading......................................................................................................................6

    III. Barron Improperly Opines On Materiality .........................................................................8

**CONCLUSION** ............................................................................................................................10

i

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Amorgianos v. Nat'l R.R. Passenger Corp.*,
 303 F.3d 256 (2d Cir. 2002)...................................................................................................6

*Feinberg v. Katz*,
 No. 01 CIV. 2739 (CSH), 2007 WL 4562930 (S.D.N.Y. Dec. 21, 2007) ..........................9, 10

*Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*,
 97 F. Supp. 3d 485 (S.D.N.Y. 2015).......................................................................................3

*Malletier v. Dooney & Bourke, Inc.*,
 525 F. Supp. 2d 558 (S.D.N.Y. 2007).....................................................................................7

*Pension Committee of U. of Montreal Pension Plan v. Banc of America
 Securities, LLC*,
 691 F. Supp. 2d 448 (S.D.N.Y. 2010).....................................................................................2

*In re Rezulin Prod. Liab. Litig.*,
 309 F. Supp. 2d 531 (S.D.N.Y. 2004).....................................................................................4

*Ruggiero v. Warner-Lambert Co.*,
 424 F.3d 249 (2d Cir. 2005).....................................................................................................6

*S.E.C. v. Ferrone*,
 163 F. Supp. 3d 549 (N.D. Ill. 2016) ......................................................................................8

*S.E.C. v. Tourre*,
 950 F. Supp. 2d 666 (S.D.N.Y. 2013)...................................................................................10

*Scentsational Techs., LLC v. Pepsi, Inc., at al.*,
 No. 13-cv-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. April 18, 2018)..................................3

*Sec. & Exch. Comm'n v. Lek Sec. Corp.*,
 370 F. Supp. 3d 384 (S.D.N.Y. 2019).....................................................................................7

*Silverman v. Motorola, Inc.*,
 798 F. Supp. 2d 954 (N.D. Ill. 2011) .....................................................................................8

*TSC Indus., Inc. v. Northway, Inc.*,
 426 U.S. 438 (1976)................................................................................................................8

*U.S. v. Martoma*,
 993 F. Supp. 2d 452 (S.D.N.Y. 2014).....................................................................................8

**Other Authorities**

Federal Rule of Evidence 403 ........................................................................................................ 7

Federal Rule of Evidence 702 ..................................................................................................... 5, 7

Defendants respectfully submit this reply memorandum of law in further support of their Motion to Exclude the Reports, Testimony, and Opinions of John E. Barron (the "Motion").

## PRELIMINARY STATEMENT

Plaintiffs' Opposition[1] further confirms why the Court can and should exclude Barron's unreliable opinions and reports. In their Opposition, Plaintiffs utterly fail to justify Barron's 50 pages of pure factual narrative, and the cases Plaintiffs rely on confirm that exclusion is appropriate. Plaintiffs' attempt to use Barron as their mouthpiece to validate their factual narrative must be rejected.

Plaintiffs also fail to demonstrate the reliability of the VIE accounting opinions that Barron seeks to offer. As discussed in the Motion and not genuinely disputed by Plaintiffs, Barron's VIE analysis is based on conclusions he reached regarding Effex's equity at risk. Yet these conclusions lack *any* meaningful factual support and, instead, rely on Barron's suppositions about Effex's 2010 equity position based on vague references to "help" from FXCM and a loan that was repaid mere months later. This is not enough to offer conclusions about Effex's equity position, particularly in the face of Effex's owner's testimony that he capitalized Effex with his own funds. Worse still, Barron's VIE opinions so heavily rely on irrelevant, pre-Class Period facts, they seem designed for the express purpose of confusing a jury about what matters and what does not. A jury should not be forced to sift through "expert" testimony that offers opinions about facts from a time period not implicated by the claims in the case.

And while Plaintiffs claim that Barron's opinions speak to "U.S. GAAP" materiality, rather than legal materiality (two standards that are consistent), closer inspection of Barron's materiality

---

[1] ECF No. 270 ("Opposition" or "Opp."). All capitalized terms not defined herein are adopted from the Motion.

opinions demonstrates that these opinions are so untethered from substantive accounting analysis they can only be offered to the jury as an opinion on the ultimate issue of the materiality of the alleged misstatements and omissions. As such, they improperly usurp the jury's fact-finding role, and they must be excluded.

## ARGUMENT

**I.      Barron's Improper Factual Narrative Should Be Excluded**

In their Opposition, Plaintiffs argue that Barron's 50 pages of factual narrative is acceptable because his "accounting opinions are intertwined with and based upon his analysis of the facts and circumstances." Opp. at 5. Plaintiffs rely on *Pension Committee of U. of Montreal Pension Plan v. Banc of America Securities, LLC*, 691 F. Supp. 2d 448 (S.D.N.Y. 2010) for the premise that so long as the facts are intertwined with the expert's opinions, the factual narrative should not be excluded.[2] But that is not what Barron has done in his Report, which begins with 97 paragraphs of improper factual narrative, followed by 12 paragraphs on general GAAP standards, and a scant 24 paragraphs of "analysis," devoid of a cogent discussion of the VIE or related party analytical framework that should be applied to reach the opinions he offers.[3] *See generally* Ex. 1, Barron

---

[2] Plaintiffs suggest that "Defendants' rebuttal expert, Dr. Thomas Linsmeier, relies upon the same types and sources of evidence to support his own analysis and incorporates a similarly detailed narrative of facts and documents considered—he simply structures his report differently to incorporate this narrative throughout, mainly through voluminous footnotes." Opp. at 6. Yet, Dr. Linsmeier properly intertwines his factual discussion with his expert opinions and analysis, while Barron improperly argues this case for Plaintiffs through a lengthy factual narrative that lacks expert analysis that would be helpful to the trier of fact.

[3] Of note, the *Pension Committee* court *excluded* plaintiffs' expert's factual narrative as it related to the nature of the fraud. *See Pension Committee of U. of Montreal Pension Plan*, 691 F. Supp. 2d at 468. And while the *Pension Committee* court allowed portions of the challenged factual narrative, the court ensured that "both parties are warned that expert testimony should focus on the expert's opinions and factual analysis rather than on a recitation of facts. I will not permit any of the expert witnesses to spend an inordinate amount of time detailing the facts of the case." *Id.* at 467, n.102.

Report.[4] Barron's lengthy, one-sided summary of evidence is precisely the type of factual narrative that courts in this circuit are quick to exclude.

In fact, the very caselaw Plaintiffs rely on in their Opposition affirms the fragility of their argument. For example, Plaintiffs seek support from *Louis Vuitton Malletier S.A. v. Sunny Merch. Corp.*, 97 F. Supp. 3d 485 (S.D.N.Y. 2015) for their assertion that Barron has done what the Federal Rules require "[b]y anchoring his accounting and disclosure opinions to the facts pertinent to those opinions . . . ." Opp. at 5. Yet the passage Plaintiffs quote is entirely inapposite as it addresses the use of commonly available sources rather than the use of improper factual narrative. In fact, in *Louis Vuitton* the court actually *excluded* portions of an experts' testimony "that simply regurgitates evidence already in the record in narrative form . . . ." *Louis Vuitton*, 97 F. Supp. 3d at 507-508. As in *Louis Vuitton*, in his Report, Barron has merely regurgitated Plaintiffs' factual narrative.

And while Plaintiffs rely on *Scentsational Techs., LLC v. Pepsi, Inc., at al.*, No. 13-cv-8645 (KBF), 2018 WL 1889763 (S.D.N.Y. April 18, 2018) for the unremarkable premise that an expert must rely on facts (*see* Opp. at 6), they conveniently omit the sentences immediately following the quote they have chosen, which state:

> But if the statements go beyond recitation of how a document is supportive of an opinion and are instead a characterization of the document for the purposes of having the fact finder accept that interpretation as fact, *the expert goes too far*. Acting simply as a narrator of the facts does not convey opinions that are based on an expert's knowledge and expertise; nor is such a narration traceable to a reliable methodology. . . . In addition, narration of facts of the case may easily invade the province of the jury, providing a separate basis for exclusion.

---

[4] References to exhibits without ECF numbers refer to the exhibits filed alongside Defendant's underlying motion, found under ECF No. 240.

3

*Id.* at *4 (emphasis added). Employing this reasoning, the *Scentsational* court found that the expert's "declaration offers improper factual narrative" that "must be excluded." *Id.* at *6; *see also id.* at *9-*14 (considering various categories of statements to be improper factual narrative). Moreover, the *Scentsational* court took care to add that "[i]t is inappropriate for experts to become a vehicle for a factual or speculative narrative that simply accumulates and puts together pieces of a story." *Id.* at *8.

Finally, Plaintiffs' attempts to distinguish *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531 (S.D.N.Y. 2004) are ineffective. Rather than "objectively assess[ing] the relevant facts and circumstances . . . including the underlying intent" (Opp. at 8), Barron has crafted a narrative to align with Plaintiffs' allegations and has made inappropriate assessments of "the intent or motive of parties [that] lie outside the bounds of expert testimony." *In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d at 547 (reminding that "[t]he question of intent is a classic jury question and not one for the experts," and excluding such testimony) (quoting *In re Diet Drugs*, No. MDL 1203, 2000 WL 876900, at *9 (E.D. Pa. June 20, 2000)).[5]

Accordingly, consistent with the great weight of precedent in this circuit, including that which Plaintiffs rely on, Barron's improper factual narrative must be excluded.

## II.     Barron's VIE Opinions Are Unreliable

Barron's VIE opinions are unreliable and must be excluded because, among other reasons, he (1) reaches conclusions regarding Effex's equity at risk that lack *any* factual support, and (2)

---

[5] Some particularly egregious examples of Barron's intent opinions can be found at paragraph 68 ("Effex shared its profits with FXCM on terms intended to approximate the economic substance of the employment agreement."); 102 ("The draft of the limited put option underscores the significance Mr. Dittami placed on the support Effex received from FXCM . . . ."); and 150 ("The issue from FXCM's standpoint was that consolidation of Effex would require all of the numerous disclosures required above . . . .") of the Barron Report. *See* Ex. 1 at ¶¶ 68, 102, 150.

4

focuses on irrelevant pre-Class Period facts without any consideration of subsequent developments.

### A. Barron's Analysis Of Effex's Equity At Risk Is Hopelessly Flawed

As explained in the Motion, Barron cannot reliably make any conclusions about Effex's amount of equity at risk at *any* moment in time, but this is the necessary first step of a VIE analysis. Mot. at 9-10. Plaintiffs' rejoinder to this argument is that any conclusion that Effex *did* have sufficient equity at risk "boils down to assuming the credibility of Dittami's subsequent testimony." Opp. at 19. This argument entirely misses the point—it is Plaintiffs' obligation to demonstrate that Barron's opinion regarding the sufficiency of Effex's equity at risk is supported by sufficient facts and data. Plaintiffs have failed to meet this burden. And Defendants' flagging of evidence that contravenes Barron's opinions only underscores the weakness of his conclusions.

The primary issue remains that Barron somehow concludes that Effex had insufficient equity at risk from 2011 through 2014 (Ex. 1 at ¶ 11.1) without *any* of the following data points: (1) Effex's financial statements—or indeed any financial information for Effex (including its assets or liabilities)—for *any* year; (2) the amount of money capitalizing Effex in *any* year; or (3) the amount of equity investment that would have been sufficient to permit Effex to finance its activities in *any* year. Instead, Barron's opinion regarding Effex's insufficient equity at risk rests on: (1) the fact that FXCM helped Effex during its formation process in March 2010—two years before the Class Period (Ex. 1 at ¶ 144); (2) the fact that FXCM provided Effex with an initial loan that was repaid mere months later, also well before the Class Period (*id.*); and (3) the fact that in 2017 Lande wrote in a memorandum that Effex "*likely* did not have sufficient equity to fund its activities" in 2010 (Opp. at 19; Ex. 3 ¶ 52 (citing EY-GBI-WP-00003862 – 68 as quoted in Ex. 3

5

¶ 52 (emphasis added))).[6] These few and largely pre-Class Period events are simply insufficient for Barron to reach any conclusion as to Effex's equity at risk during the 2011 through 2014 period.

Daubert and Rule 702 instruct that Barron's VIE opinions must be excluded because they are based on data that is "simply inadequate to support the conclusions reached," and, thus, unreliable. *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 266 (2d Cir. 2002); *see also Ruggiero v. Warner-Lambert Co.*, 424 F.3d 249, 255 (2d Cir. 2005).

### B.  Barron's Focus On Pre-Class Period Facts And Public Filings Is Intentionally Misleading

Throughout his Report, Barron relies on a host of facts that lie well outside the Class Period (March 15, 2012 to February 7, 2017) in an attempt to confuse the reader, and ultimately the jury, as to which facts are even relevant to the misstatements that Plaintiffs have alleged. Plaintiffs argue reliance on these facts is proper because the existence of a VIE or related party is judged at the inception of the relationship. Opp. at 15. This hyper-technical justification for relying on an irrelevant narrative forgets that the assessment of a potential VIE for year-end reporting may be based on circumstances present on the date of first involvement but must include consideration of "future changes that are required in existing governing documents and existing contractual arrangements." Ex. 2 at ¶ 79 (citing ASC Topic 810-10-25-37). Given that FXCM was not a reporting entity until year-end 2010, and that Effex repaid any loans received from FXCM in June 2010 (mere months after that prime-of-prime funding was made available), assessment of VIE

---

[6] Barron did not even bother to cite or quote this document in his Report. It is not until the inadequacies of his Report were brought to his attention by the Linsmeier Report (Ex. 2) that Barron modified his opinions in his Rebuttal.

status for year-end 2010 would have incorporated this change. And, certainly, consideration of the events of 2010 would be even more remote in the 2011 fiscal year (and any year thereafter).[7]

While Defendants dispute that VIE disclosures regarding Effex were ever required, as a result of the Class Period Plaintiffs alleged, the operative question in this case becomes: was Effex a VIE or related party in the *2011 fiscal year or any year thereafter*? But when excluding the irrelevant facts from before FXCM was even a public entity, Barron's flimsy GAAP analysis crumbles—a reality he acknowledges in his own Report, hedging that "[a]t a minimum, such consolidation was required for the year ended, December 31, 2010, the period in which Effex was formed and commenced operations." Ex. 1 at ¶ 12; *see also* Ex. 3 at ¶ 41 (opining that VIE consolidation was required "at the very least for the year ended December 31, 2010, when FXCM first became involved with Effex").

Barron's VIE opinion is founded on at least two such irrelevant facts: (1) that FXCM helped form Effex, and (2) that FXCM provided a $2 million loan through use of its Citibank prime-of-prime account. Ex. 1 at ¶ 144. These two facts allow Barron to conclude that Effex had insufficient equity at risk, a flawed-but-foundational conclusion for his opinion that FXCM should have disclosed Effex as a VIE. *Id.* at ¶ 147. Yet neither fact is even remotely relevant to an analysis of VIE status in fiscal year 2011 (or any year thereafter) as Effex was formed in March 2010 (*id.* at ¶ 33) and the $2 million loan was repaid in July 2010 (Mot. at 17-18). These additional facts are woefully unclear in his report and Barron repeatedly attempts to confuse the timeline in a manner that is tailor-made to confuse a jury not intimately familiar with GAAP reporting. Accordingly, Barron's VIE opinions should be excluded under both Rule 702 and Rule 403. *See Sec. & Exch.*

---

[7] Indeed, "ASC Topic 810 requires a company to reassess conclusions made in relation to whether an entity that should be accounted as a VIE if circumstances suggest that the status of the entity has changed." Ex. 2 at ¶ 80 (citing ASC 810-10-35-4).

7

*Comm'n v. Lek Sec. Corp.*, 370 F. Supp. 3d 384, 410 (S.D.N.Y. 2019), on reconsideration in part, No. 17-cv-1789 (DLC), 2019 WL 2114067 (S.D.N.Y. May 8, 2019) (excluding expert's opinions on layering after finding that "[a]llowing this unreliable testimony to be admitted at trial would be highly misleading"); *Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 558, 582 (S.D.N.Y. 2007) (excluding expert testimony due to "severely flawed methodology" that was unreliable and might "mislead the jury").

### III. Barron Improperly Opines On Materiality

Barron's opinions on materiality improperly usurp the fact-finding role of the jury. Plaintiffs' assertion that Barron is offering an accounting opinion on materiality and not a legal opinion ignores that the standards for determining materiality under GAAP and federal law are consistent: a matter is material if there is a substantial likelihood that a reasonable investor would view the matter as having significantly altered the total mix of information available. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976); *compare* Ex. 1 at ¶ 120 (stating that the standard for materiality is "whether a misstatement or omission in financial statements is material is viewed from the standpoint of a reasonable investor and the likelihood that a misstatement or omission would have significantly altered decisions of the investor . . . ."). Barron even acknowledges that SAB 99 and the statements on auditing standards reference legal opinions when defining materiality. Ex. 1 at ¶ 116.

Contrary to Plaintiffs' assertion, courts do not "routinely admit expert testimony from accountants to assist the trier of fact in understanding and applying the accounting concept of materiality." Opp. at 24. As Plaintiffs' cited cases illustrate, courts allow experts to testify only as to *underlying facts* that bear on materiality, not as to the ultimate question of materiality itself as

8

Barron improperly seeks to do.[8] *See S.E.C. v. Ferrone*, 163 F. Supp. 3d 549, 560, 564 (N.D. Ill. 2016) (allowing testimony by an "expert in the regulation of prescription drug development and marketing" that a "clinical hold" imposed by the FDA "would take several years to resolve" because that testimony was "relevant to helping the jury to understand the materiality of the information the SEC contends [defendant] did not disclose to investors"); *U.S. v. Martoma*, 993 F. Supp. 2d 452, 457-58 (S.D.N.Y. 2014) (considering whether an event study was probative on the central question of the materiality of certain information and excluding the expert testimony at issue); *Silverman v. Motorola, Inc.*, 798 F. Supp. 2d 954, 966 (N.D. Ill. 2011) (noting that "[m]ateriality is usually a question for the jury," but finding that an expert's testimony regarding the defendants' internal forecasts created a genuine dispute of material fact).[9]

Barron's materiality opinions appear to be, *first*, that because FXCM would be required to record 100% of Effex's revenue (rather than what he presumes to be 70% of Effex's revenue in payments for order flow), and because the payments for order flow that FXCM received were quantitatively material, then the entirety of Effex's revenue must also be quantitatively material. Ex. 1 at ¶ 149. Yet Barron also admits that "reported revenues would increase[10] and net income attributable to FXCM's shareholders would remain unchanged"—a conclusion at odds with a

---

[8] *See, e.g.*, Ex. 1 at ¶¶ 115-120 ("Materiality of Misstatements"); ¶¶ 148-150 ("FXCM's Failure to Consolidate the Financial statements of Effex and to Make the Required Disclosures Caused FXCM's Consolidated Financial Statements to Be Materially Misstated").

[9] Plaintiffs do little to address the applicability of *Feinberg v. Katz*, claiming only that it is inapposite because the expert at issue in *Feinberg* offered conclusory opinions and opined on materiality in the legal sense. Opp. at 22, n.17. Yet in *Feinberg*, as here, in Barron's report "for the most part his report opinions simply accept as true the alleged facts forming the basis of [Plaintiffs'] fraud claim, [and] opines impermissibly that the omitted information was material" in a superficial, three-paragraph analysis. *Feinberg v. Katz*, No. 01 CIV. 2739 (CSH), 2007 WL 4562930, at *10 (S.D.N.Y. Dec. 21, 2007); Ex. 1 at ¶¶ 148-150.

[10] Barron does not even attempt to calculate how reported revenues would increase because he cannot. Information regarding Effex's revenues (in any year), including Effex's financial statements, has not been produced in this matter.

9

quantitatively material change to the financial statements. *Id. Second*, with respect to qualitative materiality, Barron improperly opines on FXCM's intent, stating that "the issue from FXCM's standpoint" was that consolidation of Effex would require certain disclosures that revenues were derived from Effex's trading profits, which was inconsistent with FXCM's agency model. *Id.* at ¶ 150. To this opinion Barron adds another entirely improper opinion on FXCM's motives and materiality stating that: "Given the lengths to which FXCM had gone to avoid having trading profits reflected in its consolidated financial statements and being able to say that it operated on a no-dealing desk basis, it is clear that the consolidation of Effex and making the required disclosures related to Effex was qualitatively material to FXCM's financial statements." *Id.*

Thus, Barron's "U.S. GAAP materiality" (Opp. at 23) opinions are simply (1) unsupported assertions about the materiality of unknown revenue and income changes and (2) improper opinions on motive—neither of which is permitted. *See S.E.C. v. Tourre*, 950 F. Supp. 2d 666, 678 (S.D.N.Y. 2013) ("Inserting the word 'economically' material does not somehow transform what is a legal proposition and a finding of fact into an admissible opinion."); *Feinberg*, 2007 WL 4562930, at *9. Accordingly, Barron's opinions concerning materiality must be excluded.

## CONCLUSION

For all the foregoing reasons, and those reasons articulated in Defendants' opening Motion, Defendants respectfully request that the Court grant Defendants' motion to exclude the Report, Rebuttal Report, testimony, and opinions of Plaintiffs' proffered accounting expert, John E. Barron.

Dated: January 20, 2022

                               KING & SPALDING LLP

                               */s/ Israel Dahan*
Israel Dahan
Peter Isajiw
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Tel: (212) 556.2100
Fax: (212) 556.2200
idahan@kslaw.com
pisajiw@kslaw.com
rgabay@kslaw.com

Chelsea Corey
KING & SPALDING LLP
300 S. Tryon Street, Suite 1700
Charlotte, North Carolina 28202
Tel: (704) 503.2575
Fax: (704) 503.2622
ccorey@kslaw.com

*Attorneys for Defendants Global Brokerage, Inc. f/k/a/ FXCM, Inc., Dror Niv, and William Ahdout*

11