# Exhibit 214

## 219

1
2  COMMODITY FUTURES TRADING COMMISSION
3  --------------------------------------------x
4  IN THE MATTER OF:
5  RETAIL FOREX FRAUD
6  --------------------------------------------x
7          140 Broadway
           New York, New York
8
           May 26, 2016
9          9:42 a.m.
10
11
12         Continued Examination of DREW NIV,
13  held at the above-noted time and place, before
14  a Notary Public of the State of New York.
15
16
17
18
19
20
21
22
23
24
25

## 220

1
2  A P P E A R A N C E S :
3  COMMODITY FUTURES TRADING COMMISSION
4      140 Broadway, 19th Floor
5      New York, New York 10005
6  BY: DAVID C. NEWMAN, ESQ.
7      K. BRENT TOMER, ESQ. (to page 341)
8      XAVIER ROMEU-MATTA, ESQ.
9
10 WEIL GOTSHAL & MANGES
11 Attorneys for Witness
12     767 Fifth Avenue
13     New York, New York 10153
14 BY: CHRIS GARCIA, ESQ.
15     RAQUEL KELLERT, ESQ.
16     JONNAH HOLLANDER, ESQ.
17
18
19
20
21
22
23
24
25

## 221

1
2    D R E W   N I V,   resumed as a witness,
3        having been sworn by the Notary Public,
4        was examined and testified further as
5        follows:
6  CONTINUED EXAMINATION
7  BY MR. NEWMAN:
8      Q.  Good morning again, Mr. Niv.
9      A.  Good morning.
10     Q.  We're back on the record for the
11 second day of your testimony. It's Thursday,
12 May 26, 2016.
13         You've been sworn in by the court
14 reporter. As you know, I'm Dave Newman. I'm
15 here with my colleagues Brent Tomer, Xavier
16 Romeu-Matta. Mr. Giglio, who was here
17 yesterday, is not joining today.
18         All the instructions from
19 yesterday remain in effect.
20         We haven't had any substantive
21 conversations about the matter since we went
22 off the record yesterday; is that right?
23     A.  Correct.
24         MR. NEWMAN: I guess, Counsel,
25     can you identify yourselves?

## 222

1            Niv
2          MR. GARCIA: Sure. Christopher
3    Garcia on behalf of Drew Niv and FXCM.
4          MS. KELLERT: Raquel Kellert on
5    behalf of Drew Niv and FXCM.
6          MS. HOLLANDER: Jonnah Hollander
7    on behalf of Drew Niv and FXCM.
8          MR. NEWMAN: Nothing relevant to
9    any of the preliminaries has changed
10   since yesterday.
11     Q.  Mr. Niv, yesterday we were
12 talking about the document that we marked as
13 Exhibit 10, the option agreement dated
14 April 14th of 2010.
15         Looking at documents produced by
16 FXCM I can now tell you that, in fact, a form
17 of the option agreement was circulated by
18 e-mail among Mr. Dittami, Mr. Ahdout and David
19 Sassoon leading up to April 14, 2010, and I
20 can represent to you that on April 14, 2010
21 Mr. Dittami e-mailed Mr. Sassoon and
22 Mr. Ahdout indicating that he was going to
23 sign the option agreement with the terms that
24 are in the document marked as Exhibit 10 that
25 we looked at yesterday.

431

Niv

21.

(E-mail chain with NFA was marked as Exhibit 21, for identification, as of this date.)

Q. Let me show you what's been marked as Exhibit 21. This is a six-page document, an e-mail chain that appears to come from the e-mail of Mark Oldani, O-L-D-A-N-I. Do you know who that person is?

A. Yeah, he's an NFA -- I think he's a supervisor. I don't remember exactly.

Q. Okay. He was involved in the inquiry?

A. Yes.

Q. If I could direct you to page 3 of this document. At the bottom of page 3 do you see there's an e-mail from Mark Oldani to Janelle Lester dated March 13, 2014 saying, Please also include in your response any record of past ownership or affiliation as it relates to owners, principals, APs, employees and affiliates of FXCM along with how things currently stand. Do you see that?

A. Uh-huh.

432

Niv

Q. Feel free to take time to read the whole document or any parts of it that you want. I just want to direct you to that part, but you can read more of the document?

Okay, looking at the first page of the document, the top e-mail being from Janelle Lester to Mark Oldani dated March 24, 2014. She says in the response, We reviewed the liquidity providers on FXCM's retail stream. To my knowledge, there are no present or past owners, principals, APs or employees of affiliates of FXCM, LLC that have direct or indirect ownership interest or affiliation with entities that provide liquidity to retail clients on our no dealing desk model. Do you see that?

A. Yeah.

Q. Is this -- John Dittami was obviously a former employee of FXCM, right?

A. Correct.

Q. John Dittami is -- now has direct ownership over -- as of the time of this e-mail and currently direct ownership of Effex Capital, which is a liquidity provider to

433

Niv

FXCM's retail customers, right?

A. That is correct. I think, you know, from what we were asked is that do we own a piece of our liquidity providers, so is it -- am I benefitting on the side or is there other managers that benefit on the side from that -- from being liquidity providers. Obviously that is not the case. John no longer works at FXCM. He's not working on both sides of the fence. He's working on his side of the fence.

Q. Right. Let me ask you a question: As of March and I'm not -- the fact that I have this e-mail, don't -- I'm not an expert, chapter and verse, in what the NFA did in their investigation or what the timeline is, but at this time in the investigation, March 24, 2014, had FXCM told NFA that John Dittami had been an employee of FXCM?

A. Yes, they knew that before that.

Q. They knew before that time that John Dittami was the owner of Effex Capital?

A. Yes.

Q. And that Effex Capital was one of

434

Niv

the liquidity providers to FXCM retail business?

A. Correct. We spent, like, a year on this. This is not, like, two e-mails. We spent a year on this.

Q. This is fairly -- this is later in the process of your discussions with the NFA?

A. Yes. It was not intended to suggest that no former employees now work at a liquidity providers, because there are, more than John. In other places we have employees that now work at banks.

MR. GARCIA: Was John an employee of an affiliate of FXCM, LLC or was he an employee of FXCM, LLC?

THE WITNESS: I do not know that -- the answer to that question. He was -- yeah, I do not know, but that -- they knew -- this was all part of this. This is part of the investigation that they conducted, you know.

MR. NEWMAN: Chris, I wondered about the same thing. My -- my guess