UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM, Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA

CLASS ACTION |
| This Document Relates To:  All Actions | |

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CERTIFY THE COURT'S AUGUST 17, 2022 ORDER FOR INTERLOCUTORY APPEAL

Israel Dahan
Peter Isajiw
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Tel: (212) 556.2100
Fax: (212) 556.2200

Chelsea Corey
KING & SPALDING LLP
300 S. Tryon Street, Suite 1700
Charlotte, North Carolina 28202
Tel: (704) 503.2575
Fax: (704) 503.2622

*Attorneys for Defendants Global Brokerage, Inc. f/k/a/ FXCM, Inc., Dror Niv, and William Ahdout*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................ii

INTRODUCTION .............................................................................................................. 1

BACKGROUND ................................................................................................................ 2

    A.    Factual Background ............................................................................................. 2

    B.    This Court's Summary Judgment Order ....................................................... 3

ARGUMENT ..................................................................................................................... 5

I.   This Court Should Certify Its Order on Loss Causation for Interlocutory Appeal .................. 5

    A.    Whether Plaintiffs Can Recover Losses Under the Securities Laws That Result From Regulatory Penalties Is a Controlling Question of Law .................................................................................................................. 5

    B.    There Is Substantial Ground for Difference of Opinion Over Whether Plaintiffs Can Recover Losses as a Matter of Law for Regulatory Penalties ........................................................................................................... 8

    C.    Immediate Appeal Would Advance the Ultimate Termination of This Litigation and Promote the Public Interest .................................................. 13

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**CASES**

*Analect LLC v. Fifth Third Bancorp*,
   No. 06-CV-891, 2009 WL 2568540 (E.D.N.Y. Aug. 19, 2009)................................................ 13

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
   477 F. Supp. 3d 88 (S.D.N.Y. 2020)................................................................................. 9, 10

*AUSA Life Ins. Co. v. Ernst & Young*,
   206 F.3d 202 (2d Cir. 2000)............................................................................................. 13

*Balintulo v. Daimler AG*,
   727 F.3d 174 (2d Cir. 2013)............................................................................................... 5

*Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*,
   368 F.3d 86 (2d Cir. 2004).................................................................................................. 8

*Capitol Recs., LLC v. Vimeo, LLC*,
   972 F. Supp. 2d 537 (S.D.N.Y. 2013)................................................................................. 5

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*,
   750 F.3d 227 (2d Cir. 2014)......................................................................................... 10, 11

*Castellano v. Young & Rubicam, Inc.*,
   257 F.3d 171 (2d Cir. 2001).......................................................................................... 6, 13

*Chem. Bank v. Arthur Andersen & Co.*,
   726 F.2d 930 (2d Cir. 1984)................................................................................................ 8

*Credit Suisse Sec (USA) LLC v. Simmonds*,
   556 U.S. 221 (2012)........................................................................................................... 8

*Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*,
   135 F.3d 837 (2d Cir. 1998)................................................................................................ 8

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
   858 F. Supp. 2d 306 (S.D.N.Y. 2012)............................................................................... 14

*First Nationwide Bank v. Gelt Funding Corp.*,
   27 F.3d 763 (2d Cir. 1994)................................................................................................. 6

*Harriscom Svenska AB v. Harris Corp.*,
   947 F.2d 627 (2d Cir. 1991)............................................................................................. 13

*In re Adelphia Comm'ns Corp. Sec. & Derivative Litig.*,
No. 03 MDL 1529, 2006 WL 708303 (S.D.N.Y. Mar. 20, 2006) ......................................... 15

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
No. 11 Civ. 2279, 2012 WL 3758085 (S.D.N.Y. Aug. 29, 2012) ......................................... 9

*In re Currency Conversion Fee Antitrust Litig*,
No. M 21-95, 2005 WL 1871012 (S.D.N.Y. Aug. 9, 2005) .......................................... 13, 14

*In re Duplan Corp.*,
591 F.2d 139 (2d Cir. 1978)................................................................................................ 5, 13

*In re Lions Gate Ent. Corp. Sec. Litig.*,
165 F. Supp. 3d 1 (S.D.N.Y. 2016) ............................................................................... 1, 6, 12

*In re Managed Care Litig.*,
No. MDL 1334, 2002 WL 1359736 (S.D. Fla. Mar. 25, 2002) ........................................... 14

*In re Microsoft Corp. Antitrust Litig.*,
274 F. Supp. 2d 741 (D. Md. 2003) ..................................................................................... 14

*In re Omnicom Grp., Inc. Sec. Litig.*,
541 F. Supp. 2d 546 (S.D.N.Y. 2008), *aff'd,* 597 F.3d 501 (2d Cir. 2010) ....................... 7, 11

*In re Sci. Atlanta, Inc. Sec. Litig.*,
754 F. Supp. 2d 1339 (N.D. Ga. 2010), *aff'd sub nom. Phillips v. Sci.-Atlanta,
Inc.*, 489 F. App'x 339 (11th Cir. 2012) .............................................................................. 12

*In re Williams Sec. Litig.-WCG Subclass*,
558 F.3d 1130 (10th Cir. 2009) ............................................................................................ 12

*Klinghoffer v. S.N.C. Achille Lauro*,
921 F.2d 21 (2d Cir. 1990)............................................................................................. passim

*Lattanzio v. Deloitte & Touche LLP*,
476 F.3d 147 (2d Cir. 2007)................................................................................................... 9

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005).......................................................................................... passim

*Litzler v. CC Invs., L.D.C.*,
362 F.3d 203 (2d Cir. 2004).................................................................................................... 8

*McMahan & Co. v. Wherehouse Ent., Inc.*,
65 F.3d 1044 (2d Cir. 1995).................................................................................................... 8

*Mohawk Indus., Inc. v. Carpenter*,
    558 U.S. 100 (2009)......................................................................................................... 5

*Pen Am. Ctr., Inc. v. Trump*,
    No. 18 Civ. 9433, 2020 WL 5836419 (S.D.N.Y. Oct. 1, 2020) ......................... 12

*Pollack v. Laidlaw Holdings, Inc.*,
    27 F.3d 808 (2d Cir. 1994)............................................................................................. 8

*Primavera Familienstifung v. Askin*,
    139 F. Supp. 2d 567 (S.D.N.Y. 2001)......................................................................... 5

*SEC v. Rio Tinto PLC*,
    No. 17 Civ. 7664, 2021 WL 1893165 (S.D.N.Y. May 11, 2021)......................... 14

*SEC v. Rio Tinto, plc*,
    41 F.4th 47 (2d Cir. 2022) ............................................................................................. 8

*SEC v. U.S. Env't, Inc.*,
    155 F.3d 107 (2d Cir. 1998).......................................................................................... 8

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
    250 F.3d 87 (2d Cir. 2001)................................................................................ 6, 9, 10

*Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*,
    531 F.3d 190 (2d Cir. 2008).......................................................................................... 8

*W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*,
    549 F.3d 100 (2d Cir. 2008).......................................................................................... 8

*Whyte v. Wework Cos.*,
    No. 20-cv-1800, 2020 WL 4383506 (S.D.N.Y. July 31, 2020)........................... 12

## STATUTES

15 U.S.C. § 78u-4 ..................................................................................................................... 9

28 U.S.C. § 1292................................................................................................................. *passim*

## OTHER AUTHORITIES

Cornerstone Rsch.,
    Securities Class Action Filings: 2021 Year in Review (2022),
    https://tinyurl.com/4pkjk4dv............................................................................................. 7

## INTRODUCTION

Defendants respectfully request that the Court certify its order denying summary judgment on the issue of "loss causation" for immediate interlocutory appeal under 28 U.S.C. § 1292(b).  In this case, FXCM disclosed a financial relationship with Effex Capital LLC ("Effex") on the same day that it disclosed severe regulatory penalties, including a $7 million fine and a permanent ban on operating in the United States.  The Court recognized that those regulatory penalties were not information that FXCM "concealed" from investors, but it nevertheless declined to require Plaintiffs to disaggregate losses caused by the announced regulatory penalties from the losses they claim they suffered because of fraud.  The upshot is that the Court's order would permit a jury to decide whether losses caused by the penalties imposed by a regulator are recoverable, even though the information was not "concealed" and even though companies do not have to disclose that they are under investigation by regulators.  *In re Lions Gate Ent. Corp. Sec. Litig.*, 165 F. Supp. 3d 1, 15 (S.D.N.Y. 2016).  Indeed, the Court previously dismissed Plaintiffs' claim that Defendants misrepresented or concealed that they were being investigated by the regulators for their financial relationship with Effex.  ECF No. 135 at 27–29 (Order on Mot. to Dismiss).

Whether a plaintiff may recover losses that result from regulatory penalties imposed on the defendant because of the alleged securities fraud is an important legal question that has significant implications for this case and other securities litigation.  And notwithstanding this Court's opinion, judges could disagree—indeed, *have* disagreed—with the Court's answer.  The Second Circuit has cabined loss causation to circumstances where "the misstatement or omission *concealed* something from the market that, when disclosed, negatively affected the value of the security."  *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 173 (2d Cir. 2005) (emphasis added).  Although regulatory penalties may be a *consequence* of fraud, they are not a risk *concealed* by fraud.  A decision from

the Second Circuit addressing this Court's ruling could materially affect the outcome of this litigation by clarifying whether Plaintiffs here can seek recovery for losses caused by regulatory penalties.  And an immediate appeal could avoid the waste of time and expenses that would result in this and other cases where this loss causation issue may arise if, after a final judgment, the Second Circuit reversed and ordered a new trial.  Because these considerations satisfy all the requirements for certification under § 1292(b), this Court should certify its Order for interlocutory review.

## BACKGROUND

### A.    Factual Background

This securities class action arises from supposed misleading statements that FXCM—an online provider of foreign exchange trading and related services—made in public filings.  Plaintiffs claim that FXCM misled investors because it failed to disclose a financial interest it held from 2010 to 2014 in Effex, a market maker that "won" the largest share of certain kinds of FXCM's trading volume.  *See* ECF No. 181 ¶¶ 2–5.  According to Plaintiffs, the truth of this financial relationship was revealed on February 6, 2017, three years after the relationship ended, when news that FXCM had entered into a "no-admit" settlement with the Commodity Futures Trading Commission (CFTC) and National Futures Association (NFA) relating to its relationship with Effex became public.  *Id.* ¶¶ 79–80.  All parties agree that this news was announced on the same day that FXCM also announced severe regulatory penalties, including a civil monetary penalty of $7 million and that it would withdraw from providing foreign exchange trading services in the

United States.  *See, e.g.*, *id.* ¶ 79; ECF No. 183 ¶ 79 (Answer).  FXCM also announced that same day plans to lay off 18 percent of its workforce.

Even though FXCM's financial relationship with Effex ended in 2014, Plaintiffs claim that they were damaged through an inflated stock price up until the news of such relationship was announced on February 7, 2017.  ECF No. 245-1 ¶¶ 82–83 (Werner Report).  Plaintiffs' expert, Adam Werner, opines that "[t]he alleged misrepresentations and omissions caused the prices of the FXCM stock and FXCM Notes to be artificially inflated over the course of the Class Period."  *Id.* ¶ 7.  He calculates a price decline on February 7, 2017, of $3.39 per share for the FXCM common stock and $16.31 per $100 of par for the FXCM Notes, and then applies those dollar amounts over the class period.  *Id.* ¶¶ 90, 92.  Werner's analysis, however, does not parse what price decline might have been caused by the revelation concerning FXCM's former financial relationship with Effex (which could be recoverable under the securities laws) and what was caused by news of the severe regulatory penalties (which is not) and the laying off of 18 percent of FXCM's workforce (which is not).  Instead, Werner assumes that the regulatory and other ramifications associated with the information concerning FXCM's financial relationship with Effex were the "inextricable ramifications" of the corrective disclosure.  *See, e.g.*, Werner Report ¶¶ 8, 45, 46, 54, 84.

## B.    This Court's Summary Judgment Order

At summary judgment, FXCM challenged Plaintiffs' failure to disaggregate the regulatory penalties from the other pieces of information announced on February 7, 2017.  As FXCM explained in its briefing, a jury cannot tell from Werner's cumulative number what part of the damages "was caused by fraud"—for instance, the failure to disclose a prior financial interest in Effex—and what part was caused by the other news announced on February 7, 2017—the payment

of a $7 million civil monetary penalty, closure of FXCM's US trading operations, and layoff of 18 percent of its workforce.

This Court considered these arguments but nevertheless denied summary judgment on August 17, 2022, for reasons it explained at a hearing two days later. *See* ECF No. 291 (Order). The Court acknowledged that Plaintiffs have the burden to establish loss causation, and that Plaintiffs must "show that their loss was caused by the fraud and not by other intervening events." Aug. 19, 2022 Hr'g Tr. 12:19–22.[1]  And the Court agreed that "[t]o the extent [Plaintiffs raise a 'materialization of risk' theory and characterize the risk as the risk of regulatory penalties, this theory fails."  Citing *Lentell v. Merrill Lynch*, this Court explained that "[t]he risk must be concealed by the misrepresentations and omissions alleged" and that regulatory penalties were not a concealed risk under that theory as a matter of law.  *Id.* at 13:8–12 (citing *Lentell*, 396 F.3d at 173).  The Court nevertheless declined to apply this reasoning to Plaintiffs' "corrective disclosure" theory, which this Court understood to "argu[e] that loss causation can be shown by the market reaction to the February 2017 announcements disclosing the alleged fraud."  *Id.* at 13:13–16.  This Court acknowledged that Plaintiffs "have the burden to disaggregate losses caused by disclosures of the truth behind the alleged misstatements from losses caused by non-fraud-related factors."  *Id.* at 14:8–11.  But it decided that it would "allow a jury to decide whether or not [the regulatory penalties] are confounding events that needed to be disaggregated" rather than decide that question as a matter of law.  *Id.* at 14:20–21.

---

[1] Attached as Exhibit 1 to the Declaration of Israel Dahan filed contemporaneously with this motion.

## ARGUMENT

### I.      This Court Should Certify Its Order on Loss Causation for Interlocutory Appeal

This Court may certify for interlocutory appeal any order that (1) "involves a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" where (3) an immediate appeal "may materially advance the ultimate termination of the litigation."  28 U.S.C. § 1292(b).  "When a ruling satisfies these criteria and 'involves a new legal question or is of special consequence,' then the district court 'should not hesitate to certify an interlocutory appeal.'" *Balintulo v. Daimler AG*, 727 F.3d 174, 186 (2d Cir. 2013) (quoting *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111 (2009)).  The Court's Order satisfies all three conditions and carries grave implications for FXCM and other companies subject to the securities laws.  The Court should thus certify the Order for Second Circuit review.

### C.      Whether Plaintiffs Can Recover Losses Under the Securities Laws That Result From Regulatory Penalties Is a Controlling Question of Law

Plaintiffs' ability (or inability) to recover losses under the securities laws that result from regulatory penalties imposed on FXCM is a pure legal question that will control whether Plaintiffs can prevail at trial.  A "question of law must refer to a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Capitol Recs., LLC v. Vimeo, LLC*, 972 F. Supp. 2d 537, 551 (S.D.N.Y. 2013) (Abrams, J.) (cleaned up).  And it is "'controlling'" if its resolution "may importantly affect the conduct of an action." *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir. 1978); *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001).  The resolution "need not necessarily terminate an action." *Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 24 (2d Cir. 1990).  Instead, courts look to whether "reversal of the district court's opinion, even though not resulting in dismissal, could significantly

affect the conduct of the action."  A significant factor weighing in favor of certification is whether a decision on the question of law would have important application to other cases.  *See Klinghoffer*, 921 F.2d at 24.

This Court's Order involves a "pure question of law" about loss causation, a requirement that is intended to "fix a legal limit on a person's responsibility, even for wrongful acts." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 186 (2d Cir. 2001) (quoting *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 769 (2d Cir. 1994)).  FXCM argued to this Court and would argue in the Second Circuit that, as a matter of law, a plaintiff cannot recover for "losses" that result from financial penalties imposed as a consequence of securities fraud, rather than from the fraud itself.  Penalties imposed by a regulator may be a consequence of a fraud, but they are not a risk *concealed* by fraud.  Under *Lentell*, "to establish loss causation, 'a plaintiff must allege' . . . that the misstatement or omission *concealed* something from the market that, when disclosed, negatively affected the value of the security.  Otherwise, the loss in question was not foreseeable." *Lentell*, 396 F.3d at 173 (emphasis added) (quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 95 (2d Cir. 2001)).  And this argument turns on "legal policy considerations," not the record in this case.  *Castellano*, 257 F.3d at 186 (loss causation informed by "legal policy considerations").  Allowing recovery for regulatory penalties would blow a hole in the rule that a company has no independent duty to disclose that it is under investigation by a regulatory agency—as this Court has already found in this case as well.  *Lions Gate Ent.*, 165 F. Supp. 3d at 15.  And if plaintiffs could recover losses that stem from regulatory penalties, it would chill settlement of regulatory actions more broadly: even in a no-admit settlement, the penalties stemming from the settlement could expose the company to liability under the securities laws. Indeed, that is exactly what happened here.

The question is also "controlling."  *See Klinghoffer*, 921 F.2d at 24.  If the Second Circuit were to hold that the regulatory penalties must be disaggregated, Plaintiffs would have no way to show loss causation or damages, which would likely end this case.  Plaintiffs bear the burden to disaggregate the losses that are not caused by the alleged omission or concealment, but they made no effort to disaggregate losses caused by steep regulatory penalties announced in February 2017 from those caused by more relevant information.  Without that disaggregation, their case cannot go forward.  *See In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008), *aff'd,* 597 F.3d 501 (2d Cir. 2010) (granting summary judgment because plaintiff's expert failed to isolate certain confounding factors from the corrective disclosures at issue).  Moreover, a decision by the Second Circuit would significantly simplify and shorten the litigation by avoiding the prospect of a second trial after appeal of a final judgment.  For that reason, too, this Court's decision on loss causation raises controlling questions of law under § 1292(b).

Finally, a decision on this issue could have significant precedential and persuasive value in many other cases, both in this Circuit and beyond, given the Second Circuit's influential role in developing the law.  Because courts "may properly consider the system-wide costs and benefits of allowing the appeal," "the impact that an appeal will have on other cases is a factor that [courts] may take into account."  *Klinghoffer*, 921 F.2d at 24.  This Circuit is a jurisdiction where a considerable portion of securities suits are filed.  *See* Cornerstone Rsch., Securities Class Action Filings: 2021 Year in Review 30 (2022), https://tinyurl.com/4pkjk4dv (noting that the Second Circuit has a plurality of all securities cases in the United States).  As many cases are filed in this Circuit, development of this question is of vital importance to the development of the securities law.

**B.     There Is Substantial Ground for Difference of Opinion Over Whether Plaintiffs Can Recover Losses as a Matter of Law for Regulatory Penalties**

As to § 1292(b)'s second requirement, there are substantial grounds for a difference of opinion as to whether this Court correctly found that a jury should decide whether regulatory penalties are recoverable as losses in a securities action.  A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution.  A common example is where "the issues are difficult and of first impression," *Klinghoffer*, 921 F.2d at 25. More broadly, the Second Circuit frequently accepts interlocutory appeals to resolve important questions of securities law.[2]

Here, FXCM respectfully submits that there is substantial ground for difference of opinion over whether "losses from regulatory penalties in response to a fraud" must be disaggregated from "losses caused by disclosure of that fraud."  *See* Aug. 19, 2022 Hr'g Tr. 15:7–10.  The Second

---

[2] *See, e.g.*, *SEC v. Rio Tinto, plc*, 41 F.4th 47, 49 (2d Cir. 2022) (addressing impact of *Lentell* with respect to scheme liability claims); *W.R. Huff Asset Mgmt. Co. v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) (addressing an investment advisor's standing to assert securities claims on behalf of its client); *Teamsters Loc. 445 Freight Div. Pension Fund v. Dynex Cap. Inc.*, 531 F.3d 190 (2d Cir. 2008) (addressing the standard for pleading corporate scienter for Exchange Act claims); *Litzler v. CC Invs., L.D.C.*, 362 F.3d 203 (2d Cir. 2004) (addressing the tolling of claims under § 16(b) of the Exchange Act), *abrogated on other grounds by Credit Suisse Sec (USA) LLC v. Simmonds*, 556 U.S. 221 (2012); *Cal. Pub. Emps.' Ret. Sys. v. WorldCom, Inc.*, 368 F.3d 86 (2d Cir. 2004) (addressing whether Securities Act claims can be removed to federal court as "related to" a pending bankruptcy case); *SEC v. U.S. Env't, Inc.*, 155 F.3d 107 (2d Cir. 1998) (addressing the scienter standard for market manipulation claims under the Exchange Act); *Dinsmore v. Squadron, Ellenoff, Plesent, Sheinfeld & Sorkin*, 135 F.3d 837 (2d Cir. 1998) (addressing the viability of private claims for conspiracy to commit securities fraud); *McMahan & Co. v. Wherehouse Ent., Inc.*, 65 F.3d 1044 (2d Cir. 1995) (addressing the measure of damages available under the Securities and Exchange Acts); *Pollack v. Laidlaw Holdings, Inc.*, 27 F.3d 808 (2d Cir. 1994) (addressing whether an instrument constituted a "security" for purposes of the Securities and Exchange Acts); *Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930 (2d Cir. 1984) (Friendly, J.) (addressing whether instruments constituted "securities" and whether certain conduct fell within the scope of § 17(a) of the Securities Act and § 10(b) of the Exchange Act).

Circuit has held that "to establish loss causation, 'a plaintiff must allege' . . . that the misstatement or omission concealed something from the market that, when disclosed, negatively affected the value of the security.  Otherwise, the loss in question was not foreseeable."  *Lentell*, 396 F.3d at 173 (quoting *Suez Equity Invs.*, 250 F.3d at 95).   Other courts in this district have similarly emphasized that loss causation is concerned with information "concealed" from the market and that a plaintiff must disaggregate other potential confounding factors.  *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, 477 F. Supp. 3d 88, 110 (S.D.N.Y. 2020) ("[T]o prove loss causation, [a plaintiff] must show that the concealed information later reached the market and caused their loss."); *see also Lattanzio v. Deloitte & Touche LLP*, 476 F.3d 147, 158 (2d Cir. 2007) (plaintiff pleading loss causation must "ascribe some rough proportion of the whole loss to [the alleged] misstatements"); *In re Advanced Battery Techs., Inc. Sec. Litig.*, No. 11 Civ. 2279, 2012 WL 3758085, at *13 (S.D.N.Y. Aug. 29, 2012) (plaintiff who alleges loss causation based on a "corrective disclosure" must "disaggregate" other potential confounding factors in the decline of the stock's price (quotation marks omitted)).

Reasonable judges might determine that penalties imposed by a regulator may be a consequence of fraud, but they are not a risk *concealed* by fraud.  In fact, this Court reached a similar conclusion in part of its summary judgment order.  *See* Aug. 19, 2022 Hr'g Tr. 13:6–12. It held that Plaintiffs cannot show loss causation on a "materialization of the risk" theory by alleging that the risk that materialized was the risk of regulatory penalties, because the risk of penalties was not a risk that was concealed by the alleged misrepresentations and omissions.  *See id.*  While this Court did not apply that analysis to the "corrective disclosure" theory, FXCM respectfully submits that there is substantial ground for a difference of opinion on this reasoning. *See Klinghoffer*, 921 F.2d at 25.  The loss causation requirement in the securities laws speaks in

terms of "the act or omission of the defendant." 15 U.S.C. § 78u-4(b)(4). If penalty-related losses do not result from the concealed risk, plaintiffs should not be able to recover those losses and should be required to disaggregate them, regardless of whether they are proceeding on a "materialization of the risk" theory or a "corrective disclosure" theory. Those theories are just different ways of proving loss causation; they do not affect the ultimate question of what types of losses are recoverable. *See Lentell*, 396 F.3d at 173 ("to establish loss causation, 'a plaintiff must allege' . . . that the misstatement or omission *concealed* something from the market" (emphasis added) (quoting *Suez Equity Invs.*, 250 F.3d at 95)); *Atlantica Holdings*, 477 F. Supp. 3d at 110 (similar).

Reasonable judges might also read the Second Circuit's decision in *Barclays* to confirm that losses caused by regulatory penalties are not recoverable. *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 235 (2d Cir. 2014). This Court acknowledged as much in its summary judgment order, noting that "the Barclays case *could* be read to suggest that losses from regulatory penalties in response to a fraud should be disaggregated from the losses caused by disclosure of that fraud." Aug. 19, 2022 Hr'g Tr. 15:7–10 (emphasis added). In *Barclays*, the defendants argued that the plaintiffs had failed to plead loss causation because the alleged "misrepresentations were 'stale' at the time of the . . . corrective disclosure, and that the decline in Barclays's stock price . . . should be attributed to the imposition of regulatory penalties against Barclays, rather than to the disclosures contained in the Settlement Agreements." *Barclays*, 750 F.3d at 235. Immediately after this passage, *Barclays* noted that a plaintiff could not recover for "attenuated" losses and then stated that "plaintiffs have adequately pled loss causation with respect to their claims based upon Barclays's false submission rates and defendant Diamond's 2008 remarks." *Id.* The Court did not state that the plaintiffs could plead loss causation based on

regulatory penalties.  *See id.*  Reasonable judges could read *Barclays* to accept FXCM's premise that the imposition of regulatory penalties is a confounding factor that must be disaggregated.

This Court correctly observed that *Barclays* ultimately declined to dismiss the plaintiff's complaint because of a "question of fact," but reasonable judges could conclude that the question of fact to which *Barclays* referred was whether the losses were attributable to the disclosures or the penalties.  *See* Aug. 19, 2022 Hr'g Tr. 15:7–13.  That is not an issue here.  At summary judgment, plaintiffs had the burden to disaggregate losses that might have been caused by fraud from other confounding factors.  *Omnicom Grp.*, 541 F. Supp. 2d at 554 (entering judgment against plaintiffs because plaintiffs' economist had not made a sufficient attempt to isolate certain confounding factors from the corrective disclosures at issue).  Plaintiffs admit that multiple pieces of news about FXCM entered the market on February 6, 2017—not just the CFTC and NFA's allegations about FXCM's financial relationship with Effex, but also FXCM's payment of a $7 million penalty, withdrawal from the U.S. markets, and plan to lay off 18 percent of its workforce.  Yet, Plaintiffs failed to disaggregate the impact of these separate pieces of information.

Although the Court suggested that the jury might be capable of disaggregating confounding factors without any evidence or expert testimony about how to do so, reasonable judges can—and, indeed, *have*—disagreed with this suggestion.  Aug. 19, 2022 Hr'g Tr. 17:6–8.  For starters, Plaintiffs themselves provided no evidence to allow a jury to attribute any portion of the losses to the disclosure of the financial relationship with Effex rather than the steep penalties.  To the contrary, Plaintiffs present the penalties themselves as the main (if not exclusive) cause of their loss.  And without any evidence or guidance on how to disaggregate penalty-related losses from fraud-related losses, any effort by the jury to decide the question would rest on pure speculation.  Significantly, courts in other circuits have required plaintiffs to disaggregate other confounding

11

factors *before* presenting loss causation to the jury, noting that without this evidence, the "jury's conclusion as to whether the loss resulted from the fraud as opposed to other factors 'would be no less speculative and unreliable if reached by jurors than when reached by [plaintiffs' expert].'" *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1373 (N.D. Ga. 2010) (quoting *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1130, 1143 (10th Cir. 2009)), *aff'd sub nom. Phillips v. Sci.-Atlanta, Inc.*, 489 F. App'x 339 (11th Cir. 2012) (per curiam). If Plaintiffs cannot recover losses due to the penalties, then allowing the jury to hear about those losses would be so prejudicial that it would require, at a minimum, a new trial.

The case for excluding these regulatory penalties is particularly strong because a company cannot be liable under the securities laws by failing to disclose that regulators were investigating it. This Court, in fact, previously dismissed Plaintiffs' claims "that FXCM made false or misleading statements with respect to the regulatory investigations that it was undergoing." ECF No. 135 at 27–29 (Order on Mot. to Dismiss). As it explained, there is no independent duty for a company to disclose that it is being investigated by a regulatory agency. *See, e.g.*, *Lions Gate Ent.*, 165 F. Supp. 3d at 15. If a plaintiff cannot pursue claims based on a theory that a company failed to disclose an investigation, it ought not to be able to recover damages connected to penalties resulting from that investigation.

Stepping back, a question creates substantial grounds for a difference of opinion if it is of "first impression" and "particularly difficult" to answer. *Pen Am. Ctr., Inc. v. Trump*, No. 18 Civ. 9433, 2020 WL 5836419, at *2 (S.D.N.Y. Oct. 1, 2020) (quoting *Whyte v. Wework Cos.*, No. 20-cv-1800, 2020 WL 4383506, at *2 (S.D.N.Y. July 31, 2020)); *see also Klinghoffer*, 921 F.2d at 25 (permitting interlocutory appeal to resolve a difficult question of first impression). While FXCM respectfully believes that the best reading of this Circuit's precedents is that losses caused by

regulatory penalties must be disaggregated, this Court appeared to believe that no opinion had squarely and expressly addressed that issue.  Thus, this Court may also certify an interlocutory appeal on the grounds that this is an issue of "first impression."  And loss causation issues are "particularly difficult."  The Second Circuit has candidly admitted that "[w]hile loss causation is easily defined, its application to particular facts has often been challenging." *Castellano*, 257 F.3d at 187.  Indeed, one case in the Second Circuit featured three separate loss causation analyses and conclusions.  *AUSA Life Ins. Co. v. Ernst & Young*, 206 F.3d 202 (2d Cir. 2000).  The complexity and difficulty of loss-causation issues further supports certifying the summary judgment order for immediate appeal.

### C.   Immediate Appeal Would Advance the Ultimate Termination of This Litigation and Promote the Public Interest

Finally, § 1292(b)'s third requirement is satisfied because certifying this Court's ruling for immediate appeal "may materially advance the ultimate termination of the litigation."  The "material advancement" prong is met when a ruling from the Second Circuit would "obviat[e] needless trial time." *In re Currency Conversion Fee Antitrust Litig*, No. M 21-95, 2005 WL 1871012, at *3 (S.D.N.Y. Aug. 9, 2005) (citing *Harriscom Svenska AB v. Harris Corp.*, 947 F.2d 627, 631 (2d Cir. 1991)).  An interlocutory appeal may materially advance the ultimate disposition of the case, for instance, by increasing the efficiency of litigation or hastening the overall conclusion of the litigation.  "Ultimately, '[t]he critical requirement is that [an interlocutory appeal] have the potential for substantially accelerating the disposition of the litigation.'" *Analect LLC v. Fifth Third Bancorp*, No. 06-CV-891, 2009 WL 2568540, at *5 (E.D.N.Y. Aug. 19, 2009) (quoting *In re Duplan Corp.*, 591 F.2d at 148 n.11).

That is precisely the case here.  An interlocutory appeal will greatly reduce the risk that one trial—much less two—will be needed to resolve this litigation.  That is a significant factor weighing in favor of interlocutory review.  *See SEC v. Rio Tinto PLC*, No. 17 Civ. 7664, 2021 WL 1893165, at *3 (S.D.N.Y. May 11, 2021).  If the Court denies certification and FXCM loses at trial, FXCM will challenge this Court's decision on regulatory penalties and loss causation in its appeal from the final judgment.  If the Second Circuit determines that Plaintiffs failed to carry their burden to disaggregate damages because they cannot recover for losses caused by regulatory penalties, the case will have to be re-tried, wasting significant time and resources.  *See In re Currency Conversion*, 2005 WL 1871012, at *3.  The prospect of two trials is especially inefficient in a case like this one, which involves a company that is in financial distress and trial witnesses who are mainly former employees or officers or other third parties.  There would be significant inconvenience to those witnesses of attending two trials—not to mention the significant cost—which could be obviated by certifying the matter for appeal now.  Additionally, immediate interlocutory appeal will "remove a cloud of legal uncertainty" over these proceedings and may "significantly affect the parties' bargaining positions and may hasten the termination of this litigation through settlement."  *Rio Tinto PLC*, 2021 WL 1893165, at *3 (quoting *Fed. Hous. Fin. Agency v. UBS Ams., Inc.*, 858 F. Supp. 2d 306, 338 (S.D.N.Y. 2012)).

Risk of re-trial aside, an interlocutory ruling by the Second Circuit could simplify the litigation by clarifying the rights of the parties.  Interlocutory appeal is permitted where a reversal could impact motions practice and the admissibility of evidence at trial.  *See, e.g.*, *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003) (certifying under § 1292(b) because reversal would affect both the scope of discovery and the evidence admissible at trial); *In re Managed Care Litig.*, No. MDL 1334, 2002 WL 1359736, at *2 (S.D. Fla. Mar. 25, 2002)

14

(certifying a question because "the scope of future discovery, motion practice and trial activities would be limited significantly if the Order were reversed"). Here, if the Second Circuit determines as a matter of law that penalty-related losses must be disaggregated, that ruling will narrow the evidence admissible at trial and the expert testimony, saving trial time. *See id.* Indeed, because Plaintiffs did not make any effort to disaggregate confounding factors, a decision that penalty-related losses must be disaggregated should end this case.

On the other side of the scales, certifying an interlocutory appeal will result in minimal delay. Trial is not scheduled to commence for another five months. To expedite matters, if this Court certifies this matter for appeal under Section 1292(b) and the Second Circuit accepts the appeal, FXCM will commit to submitting its opening appellate brief to the Second Circuit in 30 days, significantly less than the 91 days permitted under the rules. With that, there is time for the Second Circuit to consider these issues with only a short delay in trial. Certification is appropriate where, as here, the appeal would raise a "discrete legal issue not dependent on disputed facts that can easily be briefed promptly," and would significantly affect the future conduct of the action. *In re Adelphia Comm'ns Corp. Sec. & Derivative Litig.*, No. 03 MDL 1529, 2006 WL 708303, at *4 (S.D.N.Y. Mar. 20, 2006).

## CONCLUSION

For all the reasons stated above, the Court should certify its opinion and order denying FXCM's motion for summary judgment on the issue of loss causation for interlocutory appeal.

Dated: September 20, 2022

KING & SPALDING LLP

*/s/ Israel Dahan*
Israel Dahan
Peter Isajiw
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, New York 10036-2601
Tel: (212) 556.2100
Fax: (212) 556.2200

Chelsea Corey
KING & SPALDING LLP
300 S. Tryon Street, Suite 1700
Charlotte, North Carolina 28202
Tel: (704) 503.2575
Fax: (704) 503.2622

*Attorneys for Defendants Global Brokerage,*
*Inc. f/k/a/ FXCM, Inc., Dror Niv, and William*
*Ahdout*