**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1:17-cv-00916(RA)(BCM)<br><br>CLASS ACTION |
| This Document Relates To: All Actions | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL**

## TABLE OF CONTENTS

I.    PRELIMINARY STATEMENT ........................................................................... 1

II.   STATEMENT OF FACTS ................................................................................ 3

III.  ARGUMENT .................................................................................................... 5

    A.  Defendants' Motion is Really a Backdoor Motion for Reconsideration ........................... 7

    B.  Defendants Present a Question of Fact, Not of Controlling Law ...................................... 8

        1.  The Relevant Issue is a Question of Fact .................................................................... 8

        2.  The Relevant Issue is Not a Controlling Question of Law ........................................ 10

    C.  Defendants Fail to Raise Substantial Doubt that the Court's Summary Judgment Decision was Correct, Proffering Only Factual Disputes .................................................. 14

    D.  Resolution of This Issue Would Not Materially Advance the Litigation ........................ 21

IV.  CONCLUSION .................................................................................................... 24

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abortion Rts. Mobilization, Inc. v. Regan,*
   552 F. Supp. 364 (S.D.N.Y. 1982) ............................................................... 9

*Arons v. Lalime,*
   3 F. Supp. 2d 328 (W.D.N.Y. 1998) ........................................................... 9

*Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC,*
   750 F.3d 227 (2d Cir. 2014) ....................................................................... 9

*Caruso v. City of New York,*
   No. 06 CIV. 5997 RA, 2013 WL 6569783 (S.D.N.Y. Dec. 12, 2013) .............. 22, 23

*Castellano v. Young & Rubicam, Inc.,*
   257 F.3d 171 (2d Cir. 2001) ....................................................................... 10

*Century Pac., Inc. v. Hilton Hotels Corp.,*
   574 F. Supp. 2d 369 (S.D.N.Y. 2008) .......................................................... 10, 14

*Chenault v. Gen. Motors LLC,*
   No. 16-CV-3764 (RA), 2017 WL 698387 (S.D.N.Y. Feb. 21, 2017) .................. 8, 14

*Coopers & Lybrand v. Livesay,*
   437 U.S. 463 (1978) .................................................................................. 11

*Ema Fin., LLC v. Vystar Corp.,*
   No. 19-CV-1545, 2021 WL 5998411 (S.D.N.Y. Dec. 20, 2021) ...................... 21

*Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.,*
   343 F.3d 189 (2d Cir. 2003) ....................................................................... 15

*Ferring B.V. v. Allergan, Inc.,*
   No. 12 CIV. 2650 RWS, 2013 WL 4082930 (S.D.N.Y. Aug. 7, 2013) ............... 7

*Florio v. City of New York,*
   No. 06-CV-6473, 2008 WL 3068247 (S.D.N.Y. Aug. 5, 2008) ....................... 21

*Garber v. Off. of the Com'r of Baseball,*
   120 F. Supp. 3d 334 (S.D.N.Y. 2014) .......................................................... 5, 6, 22

*Glickenhaus & Co. v. Household Int'l, Inc.,*
   787 F.3d 408 (7th Cir. 2015) ..................................................................... 18

*Gould v. Winstar Commc'ns, Inc.*,
    692 F.3d 148 (2d Cir. 2012) ................................................................................................ 11, 12, 19

*Gruber v. Gilbertson*,
    No. 16-CV-9727 (JSR), 2022 WL 4232834 (S.D.N.Y. Sept. 14, 2022) ............................ 18, 19

*Haymount Urgent Care PC v. GoFund Advance, LLC*,
    No. 22-CV-1245 (JSR), 2022 WL 3677931 (S.D.N.Y. Aug. 25, 2022) ................................... 10

*In re Ambac Fin. Grp., Inc. Sec. Litig.*,
    693 F. Supp. 2d 241 (S.D.N.Y. 2010) ...................................................................................... 5

*In re Aramid Ent. Fund Ltd.*,
    No. 21-CV-4840, 2022 WL 118293 (S.D.N.Y. Jan. 12, 2022) ............................................... 21

*In re Barclays Liquidity Cross and High Frequency Trading Litig.*,
    No. 14-MD-2589 (JMF), 2019 WL 3202745 (S.D.N.Y. July 16, 2019) ................................. 24

*In re Bristol Myers Squibb Co. Sec. Litig.*,
    586 F. Supp. 2d 148 (S.D.N.Y. 2008) ..................................................................................... 13

*In re Duplan Corp.*,
    591 F.2d 139 (2d Cir. 1978) .................................................................................................... 10

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
    986 F. Supp. 2d 524 (S.D.N.Y. 2014) ....................................................................................... 6

*In re Flor*,
    79 F.3d 281 (2d Cir. 1996) ........................................................................................................ 5

*In re Lehman Bros. Holdings Inc.*,
    No. 13 CIV. 2211 RJS, 2014 WL 3408574 (S.D.N.Y. June 30, 2014) ................................... 21

*In re Lloyd's Am. Tr. Fund Litig.*,
    No. 96 CIV. 1262 (RWS), 1997 WL 458739 (S.D.N.Y. Aug. 12, 1997) ................................ 21

*In re Managed Care Litig.*,
    No. MDL 1334, 2002 WL 1359736 (S.D. Fla. Mar. 25, 2002) ............................................... 23

*In re Microsoft Corp. Antitrust Litig.*,
    274 F. Supp. 2d 741 (D. Md. 2003) ......................................................................................... 23

*In re Omnicom Grp., Inc. Sec. Litig.*,
    541 F. Supp. 2d 546 (S.D.N.Y. 2008) ..................................................................................... 12

*In re Perry H. Koplik & Sons, Inc.*,
    377 B.R. 69 (S.D.N.Y. 2007) .................................................................................................... 6

*In re Sci. Atlanta, Inc. Sec. Litig.*,
    754 F. Supp. 2d 1339 (N.D. Ga. 2010) ................................................................. 17

*In re Take-Two Interactive Sec. Litig.*,
    551 F. Supp. 2d 247 (S.D.N.Y. 2008) ................................................................... 13

*In re Vivendi Universal, S.A. Sec. Litig.*,
    634 F. Supp. 2d 352 (S.D.N.Y. 2009) ................................................................... 13

*In re Vivendi, S.A. Sec. Litig.*,
    838 F.3d 223 (2d Cir. 2016) ................................................................... 9, 15, 17, 19

*In re World Trade Ctr. Disaster Site Litig.*,
    469 F. Supp. 2d 134 (S.D.N.Y. 2007) ............................................................. 21, 24

*In re Worldcom, Inc.*,
    Nos. 02–13533, 04–04338, 2006 WL 3592954 (S.D.N.Y. Dec. 7, 2006) ............... 6

*Klinghoffer v. S.N.C. Achille Lauro*,
    921 F.2d 21 (2d Cir. 1990) ......................................................................... 5, 6, 10, 11

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ............................................................................. 15, 17

*Liberty Media Corp. v. Vivendi Universal, S.A.*,
    923 F. Supp. 2d 511 (S.D.N.Y. 2013) ................................................................. 9, 19

*Link v. Mercedes-Benz of N. Am., Inc.*,
    550 F.2d 860 (3d Cir. 1977) ...................................................................................... 9

*McNeil v. Aguilos*,
    820 F. Supp. 77 (S.D.N.Y. 1993) .............................................................................. 6

*Murray v. UBS Sec., LLC*,
    No. 12 CIV. 5914 KPF, 2014 WL 1316472 (S.D.N.Y. Apr. 1, 2014) ..................... 11

*N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*, No. 91 CIV. 8580 (PKL),
    1993 WL 255101 (S.D.N.Y. July 1, 1993) ............................................................. 14

*New York v. United States Dep't of*,
    *Com.*, 345 F. Supp. 3d 444 (S.D.N.Y. 2018) ........................................................ 24

*Panzirer v. Wolf*,
    No. 79 CIV. 3445, 1980 WL 1395 (S.D.N.Y. Apr. 21, 1980) ................................ 23

*Phillips v.Sci.-Atlanta, Inc.*,
    489 F. App'x 339 (11th Cir. 2012) .......................................................................... 17

*Picard v. Katz*,
   466 B.R. 208 (S.D.N.Y. 2012) ................................................................... 22, 23

*Primavera Familienstifung v. Askin*,
   139 F. Supp. 2d 567 (S.D.N.Y. 2001) ................................................................ 11

*R.F.M.A.S., Inc. v. Mimi So*,
   640 F. Supp. 2d 506 (S.D.N.Y. 2009) .................................................................. 8

*S.E.C. v. First Jersey Sec., Inc.*,
   587 F. Supp. 535 (S.D.N.Y. 1984) ....................................................................... 8

*S.E.C. v. Gruss*,
   No. 11 CIV 2420, 2012 WL 3306166 (S.D.N.Y. Aug. 13, 2012) ....................... 21

*Sacchi v. Verizon Online LLC*,
   No. 14-CV-423 RA, 2015 WL 1729796 (S.D.N.Y. Apr. 14, 2015) ..................... 8

*Schonberger v. Serchuk*,
   742 F. Supp. 108 (S.D.N.Y. 1990) ....................................................................... 7

*Scott v. Chipotle Mexian Grill, Inc.*,
   No. 12 CIV. 8333 ALC SN, 2013 WL 5782440 (S.D.N.Y. Oct. 25, 2013) ........ 22

*Segedie v. The Hain Celestial Grp., Inc.*,
   No. L 4-CV-5029 NSR, 2015 WL 5916002 (S.D.N.Y. Oct. 7, 2015) ............. 6, 14

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995) .................................................................................... 7

*Sikhs for Justice v. Nath*,
   893 F. Supp. 2d 598 (S.D.N.Y. 2012) ................................................................... 7

*SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*,
   No. 06-CV-15375KMK, 2007 WL 1119753 (S.D.N.Y. Apr. 12, 2007) ............. 14

*Suez Equity Invs., L.P. v. Toronto-Dominion Bank*,
   250 F.3d 87 (2d Cir. 2001) .................................................................................. 15

*Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*,
   358 F. Supp. 2d 347 (S.D.N.Y. 2005) ................................................................ 21

*United States v. Gushlak*,
   728 F.3d 184 (2d Cir. 2013) ................................................................... 18, 19, 20

*Weber v. Bartle*,
   272 F. Supp. 201 (S.D.N.Y. 1967) ..................................................................... 23

*Westwood Pharms., Inc. v. Nat'l Fuel Gas Distribution Corp.*,
   964 F.2d 85 (2d Cir. 1992) .......................................................................................... 6

**Statutes**

28 U.S.C. § 1292(b) ................................................................................................... passim

**Other Authorities**

1958 U.S.C.C.A.N. 5255 .................................................................................................. 14

Local Civil Rule 6.3 ........................................................................................................... 7

S. Rep. No. 85–2434 ....................................................................................................... 14

Lead Plaintiff 683 Capital Partners, LP and Class Representatives Shipco Transport Inc. and E-Global Trade and Finance Group, Inc. (collectively, "Plaintiffs"), submit this memorandum of law in opposition to Defendants' Motion to Certify the Court's August 17, 2022 Order for Interlocutory Appeal (ECF. No. 320) ("Motion").[1]

## I.   PRELIMINARY STATEMENT

The Court has already rejected most of the arguments advanced by Defendants in their Motion. Defendants present no grounds on which the Court should reconsider its decision. To be sure, reconsideration is truly what Defendants are requesting in their motion, but recognizing that such a motion would be untimely and face an exceedingly difficult standard, Defendants frame their motion as one to certify part of the Court's Order for interlocutory appeal. The Court should not reward this approach by entertaining Defendants' Motion, and even if it does, Defendants' Motion fails on its own terms and must be denied.

Defendants face a demanding standard on their Motion. Interlocutory appeals are presumptively disfavored, and the Second Circuit has repeatedly cautioned that certification should be strictly limited to only exceptional circumstances. Defendants must establish that: (1) the proposed appeal "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," *and* (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Moreover, even if the Court finds that each of the requirements are satisfied, it retains unfettered discretion to deny certification for any reason. Here, Defendants meet none of the three requirements and certification would not be merited even if they did.

---

[1] References to "Def. Br" are to Defendants' memorandum in support of their Motion. ECF. No. 321. Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

Defendants are seeking to appeal one portion of the Court's order and decision denying Defendants' motion for summary judgment: the finding that Plaintiffs raised a genuine issue of material fact as to the element of loss causation. Defendants' argument—regurgitated from their summary judgment papers—is that because Plaintiffs did not disaggregate the price impact of regulatory penalties, which Defendants assert are unrelated to the settlements in which they were contained, Plaintiffs cannot prove loss causation whatsoever.

The Court has already squarely rejected Defendants' argument on multiple levels, finding that (1) the regulatory penalties were not "undisputedly confounding" but rather "are closely connected to the alleged fraud"; (2) "these are questions for a jury to decide"; and (3) "[e]ven if the losses caused by the penalties must be disaggregated from the losses caused by the [corrective] disclosure, I am not persuaded that this would require granting summary [judgment.]" ECF No. 322-1 (Aug. 19, 2022 Hr'g Tr.) 14:20-16:3. Even if the jury were to find that some portion of the stock price drop should be disaggregated and not attributed to Defendants' fraud, that would not defeat loss causation or eliminate Defendants' liability; it would speak only to the amount of damages which would not merit summary judgment. Likewise, even if Defendants were correct that a failure to disaggregate a purportedly confounding event merits summary judgment, the underlying determination of whether the purported events are, in fact, confounding, is an issue of fact that a reasonable juror could resolve in Plaintiffs' favor. The jury is fully capable of weighing the evidence, including the credibility of the parties' experts, and determining the appropriate measure of damages. Defendants thus do not present a controlling issue of law.

Defendants likewise fail to establish "substantial ground for difference of opinion." The Court cited ample Second Circuit precedent to support its determination that a reasonable juror could find that at least some of the stock price drop was caused by the disclosure of the fraud.

Defendants do not even attempt to refute or distinguish this case law. Conversely, Defendants can point to no relevant precedent adopting their position. They identify only one in-Circuit case, which the Court already expressly distinguished, and one out-of-Circuit case where, unlike here, the confounding nature of the events was clear and undisputed.

Common sense also supports the Court's finding. Defendants crashed their car into a tree, careened into a house, and the tree fell onto the house. They profess that no reasonable juror could find they caused any damage unless the homeowners disaggregate the damage that a hypothetical tree felled by lightning might have caused on its own. The Court rightly rejected Defendants' absurd position. There is no substantial ground here for difference of opinion.

Finally, Defendants fail to show that an immediate appeal would materially advance the litigation. This case is scheduled for trial just four months after this Motion will be fully briefed; the appellate briefing schedule alone will exceed this timeline. An interlocutory appeal will inevitably require substantial postponement of the trial. Defendants will have an opportunity to raise this issue on appeal after the impending trial is completed a few months from now. An appellate court will then be able to review, on a full record, all relevant rulings after a final judgment. No exceptional circumstances merit an interlocutory appeal now. For these reasons, the Court must deny Defendants' Motion.

## II.    STATEMENT OF FACTS

On February 6, 2017, the U.S. Commodity Futures Trading Commission ("CFTC") and the National Futures Association ("NFA") announced settlements that the regulators entered into with Defendants. Those settlements included the regulators' findings of fact, which revealed that FXCM had an undisclosed profit-sharing relationship with one of its main liquidity providers and had lied about it to its customers and investors. While Defendants neither admitted nor denied

3

those findings, the settlements also included, within the very same documents, severe penalties which Defendants had agreed to. Those penalties included that Defendants were barred from conducting FXCM's business in the U.S., as well as a $7 million fine. Immediately following these disclosures, FXCM's stock price fell approximately 50%. The parties agree that no unrelated Company-specific news was revealed on that same day.

Plaintiffs' expert submitted opening and reply reports regarding loss causation and damages. ECF Nos. 295 and 295-2. Defendants do not contest that in calculating per share damages, Plaintiffs' expert accurately and appropriately disaggregated the price impact of overall market and industry effects – which were not related to the fraud. Plaintiffs' expert also found that the regulatory penalties, which were part of the corrective disclosures, were the "inextricable ramifications" of Defendants' fraud. Plaintiffs' expert found that the penalties were not confounding information, but rather that they were foreseeable and sufficiently related to the fraud and corrective disclosures such that there was no reason to attempt to disaggregate any theoretically separate price impact from the penalties, as if they had stood alone. Plaintiffs' expert considered and rejected the contrary position espoused by Defendants' expert.

Defendants' expert submitted a rebuttal report regarding loss causation and damages. ECF No. 295-3. Defendants' expert described the regulatory penalties as "collateral consequences," which Defendants claim must be disaggregated from the corrective disclosures in which they are contained. Defendants' expert offered no alternative model of damages. He made no attempt to calculate or disaggregate the price impact of the regulatory penalties. He provided no example of this disaggregation (of regulatory penalties from the settlements in which they were contained) ever being actually conducted, or being approved by any court. He provided no suggestion as to how this disaggregation might be possible in this particular case, where the penalties were

contained in the same documents as the corrective disclosures, and where Plaintiffs contend the penalties were the proximate result of the alleged fraud, with a single-day stock price drop immediately following the disclosures.

On September 9, 2021, Defendants moved for summary judgment on all of Plaintiffs' claims, and to exclude the opinions and reports of Plaintiffs' experts on accounting and on loss causation and damages. ECF Nos. 237, 242, 247. The parties fully briefed the motions and the Court heard oral argument on July 19, 2022. On August 17, 2022, the Court entered an Order denying each of Defendants' motions. ECF No. 291 ("Order").2 The Court held a hearing on August 19, 2022, where it provided the reasoning and support for its decision, including with respect to its denial of summary judgment as to the loss causation element of Plaintiffs' claims. See ECF No. 322-1 (Aug. 19, 2022 Hr'g Tr.) at 12:17-18:13.

## III.   ARGUMENT

Litigants are generally required to wait for a final judgment to appeal. *See Klinghoffer v. S.N.C. Achille Lauro*, 921 F.2d 21, 25 (2d Cir. 1990). "Interlocutory appeals are strongly disfavored in federal practice." *In re Ambac Fin. Grp., Inc. Sec. Litig.*, 693 F. Supp. 2d 241, 282 (S.D.N.Y. 2010) (certification pursuant to § 1292(b) is an extraordinary procedure only granted in "exceptional circumstances"); *Garber v. Off. of the Com'r of Baseball*, 120 F. Supp. 3d 334, 337 (S.D.N.Y. 2014) ("Interlocutory appeals are presumptively disfavored."). The Second Circuit has repeatedly cautioned that the "use of this certification procedure should be strictly limited because 'only exceptional circumstances [will] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *In re Flor*, 79 F.3d 281, 284 (2d Cir.

---

2 The Court denied in part and granted in part Defendants' motion to exclude Plaintiffs' accounting expert, which has no bearing on this Motion.

1996) (quoting *Klinghoffer*, 921 F.2d at 25); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 986 F. Supp. 2d 524, 529–30 (S.D.N.Y. 2014) (quoting *McNeil v. Aguilos*, 820 F. Supp. 77, 79 (S.D.N.Y. 1993) (Sotomayor, J.)).

In light of these general considerations, "[t]he Second Circuit has repeatedly urged the district courts to exercise great care in making a § 1292(b) certification." *In re Perry H. Koplik & Sons, Inc.*, 377 B.R. 69, 73 (S.D.N.Y. 2007) (quoting *Westwood Pharms., Inc. v. Nat'l Fuel Gas Distribution Corp.*, 964 F.2d 85, 89 (2d Cir. 1992)). The Second Circuit has also emphasized that "the district court's power to grant an interlocutory appeal should not be 'liberally construed.'" *In re Worldcom, Inc.*, Nos. 02–13533, 04–04338, 2006 WL 3592954, at *2 (S.D.N.Y. Dec. 7, 2006) (citing *Klinghoffer*, 921 F.2d at 24–25).

An order should be certified for interlocutory appeal only where: (1) the proposed appeal "involves a controlling question of law," (2) "as to which there is substantial ground for difference of opinion," and (3) "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). "The moving party has the burden of establishing all three elements." *Segedie v. The Hain Celestial Grp., Inc.*, No. L 4-CV-5029 NSR, 2015 WL 5916002, at *1 (S.D.N.Y. Oct. 7, 2015). "These three prerequisites create a significant hurdle to certification, and the barrier is only elevated by the mandate that section 1292(b) be 'strictly limited.'" *McNeil*, 802 F. Supp. at 79.

Moreover, "even when the elements of section 1292(b) are satisfied, the district court retains unfettered discretion to deny certification." *Garber*, 120 F. Supp. 3d at 337. Such unfettered discretion can be for "any reason, including docket congestion" and "the system-wide costs and benefits of allowing the appeal," *Klinghoffer*, 921 F.2d at 24.

### A.     Defendants' Motion is Really a Backdoor Motion for Reconsideration

As an initial matter, the Court should deny Defendants' motion because it is a repackaged and untimely motion for reconsideration. Defendants are attempting to relitigate an issue that the Court already decided in Plaintiffs' favor simply because they disagree with the outcome. That is neither sufficient to support a motion for reconsideration nor grounds for certification of the Court's order for interlocutory appeal.

Local Civil Rule 6.3 allows a party to move for reconsideration as to "matters or controlling decisions which counsel believes the Court has overlooked," and such motion must be served within 14 days after the entry of the Court's determination of the original motion. Recognizing that a motion for reconsideration would now be untimely, Defendants repackaged their motion as one for certification for interlocutory appeal. The Court should not permit them to do so.

Reconsideration of a court's prior order is "an extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *Ferring B.V. v. Allergan, Inc.*, No. 12 CIV. 2650 RWS, 2013 WL 4082930, at *1 (S.D.N.Y. Aug. 7, 2013) (quoting *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 605 (S.D.N.Y. 2012)). Accordingly, the "standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995). "A party seeking reconsideration may neither repeat 'arguments already briefed, considered and decided,' nor 'advance new facts, issues or arguments not previously presented to the Court.'" *Ferring B.V.*, 2013 WL 4082930 at *1 (quoting *Schonberger v. Serchuk*, 742 F. Supp. 108, 119 (S.D.N.Y. 1990)). A motion to reconsider "should not be granted where the moving party seeks solely to relitigate an issue already decided." *Shrader*,

70 F.3d at 257. That is precisely what Defendants are attempting here, simply repeating arguments already rejected by the Court without adducing any new facts or issues.

Defendants have "fail[ed] to identify any 'controlling decisions' which the Court 'overlooked' and instead reprise[] arguments previously made and addressed by the Court, seeking simply to relitigate the same issues. [Their] motion to reconsider therefore fails." *Sacchi v. Verizon Online LLC*, No. 14-CV-423 RA, 2015 WL 1729796, at *1 (S.D.N.Y. Apr. 14, 2015) (Abrams, J.) (also denying motion for certification under Section 1292(b)). *See also R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512 (S.D.N.Y. 2009) ("A party's fundamental disagreement with a court's legal analysis and conclusions as to a matter fully considered does not serve as sufficient ground to warrant reconsideration of the court's decision.").

## B.   Defendants Present a Question of Fact, Not of Controlling Law

### 1.   The Relevant Issue is a Question of Fact

The portion of the Court's Order which Defendants seek to certify for appeal is a question of fact, or the application of facts to law, best suited for determination by a jury. It is not a controlling question of law and is thus unsuitable for certification. The "question of law" certified for interlocutory appeal must refer to "a pure question of law that the reviewing court could decide quickly and cleanly without having to study the record." *Chenault v. Gen. Motors LLC*, No. 16-CV-3764 (RA), 2017 WL 698387, at *2 (S.D.N.Y. Feb. 21, 2017) (Abrams, J.) (denying motion for certification). Here, granting certification pursuant to § 1292(b) would require the Court of Appeals to consider a question of fact, or at best a mixed question of law and fact. *See S.E.C. v. First Jersey Sec., Inc.*, 587 F. Supp. 535, 536 (S.D.N.Y. 1984) (holding that, where an appeal "would necessarily present a mixed question of law and fact, not a controlling issue of pure law," the district court's order was "not appropriate for certification pursuant to 28 U.S.C. § 1292(b)");

*Abortion Rts. Mobilization, Inc. v. Regan*, 552 F. Supp. 364, 366 (S.D.N.Y. 1982) ("Nor is [§ 1292(b) certification] appropriate for securing early resolution of disputes concerning whether the trial court properly applied the law to the facts") (citing *Link v. Mercedes-Benz of N. Am., Inc.*, 550 F.2d 860, 863 (3d Cir. 1977)). As a general matter, a summary judgment ruling is "essentially a fact-based inquiry, making an interlocutory appeal inappropriate." *Arons v. Lalime*, 3 F. Supp. 2d 328, 330 (W.D.N.Y. 1998). Indeed, the Court's denial of Defendants' motion for summary judgment requires a finding that Plaintiffs have raised genuine issues of material fact as to each element of their claims, including loss causation.

Here, the question Defendants present for interlocutory appeal would require the Second Circuit to review this Court's application of the law to the evidence adduced in the summary judgment motion. The Court already found that this is an issue of fact suitable for the jury. Aug. 19, 2022 Hr'g Tr. 14:20-21 ("I am inclined to allow a jury to decide whether or not these are confounding events that needed to be disaggregated."); 15:18-25 ("these are questions for a jury to decide," citing the finding in *Liberty Media Corp. v. Vivendi Universal, S.A.*, 923 F. Supp. 2d 511, 520 (S.D.N.Y. 2013), that (as the Court summarized) "the credibility of expert testimony that there simply were no confounding events was a matter for the jury, and that a reasonable juror could have found that none of the ostensible confounding events put forth by Vivendi were both non-fraud related and affected Vivendi's share price"); 15:7-11 (finding that the defendant's similar argument in *Carpenters Pension Tr. Fund of St. Louis v. Barclays PLC*, 750 F.3d 227, 235 (2d Cir. 2014), "that losses from regulatory penalties in response to a fraud should be disaggregated from the losses caused by disclosure of that fraud," was unsuitable for resolution by the court because it "involved questions of fact"); 16:20-23 ("The court [the Second Circuit in *In re Vivendi, S.A. Sec. Litig.*, 838 F.3d 223, 260 (2d Cir. 2016)] explained that it was up to the jury to determine

how much, if any, of the artificial inflation identified by the expert was caused by Vivendi's alleged fraud"); 17:6-8 ("These cases suggest that even in complex securities litigation, the jury has the capability of disaggregating confounding factors").

Defendants appear to understand this themselves, admitting in their brief that as to the theory of loss causation, "'*its application to particular facts* has often been challenging.'" Def. Br. at 13 (emphasis added) (quoting *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 187 (2d Cir. 2001)). That is precisely what the issue is here – the application of loss causation principles to the facts of this case. The threshold determination that Defendants challenge is whether the regulatory penalties here were confounding information or if they were directly related to the fraud. "Under these circumstances, such questions do not present issues of pure law and therefore are not appropriate for interlocutory review." *Century Pac., Inc. v. Hilton Hotels Corp.*, 574 F. Supp. 2d 369, 372 (S.D.N.Y. 2008).

### 2.   The Relevant Issue is Not a Controlling Question of Law

"[A] question of law is 'controlling' if reversal of the district court's order would terminate the action." *Klinghoffer*, 921 F.2d at 24. While "the resolution of an issue need not *necessarily* terminate an action in order to be 'controlling,'" *id.* (emphasis added), "the likelihood that resolution of an issue would terminate an action is, at least, one important factor in assessing whether a legal question may be 'controlling.'" *Haymount Urgent Care PC v. GoFund Advance, LLC*, No. 22-CV-1245 (JSR), 2022 WL 3677931, at *2 (S.D.N.Y. Aug. 25, 2022) (citing *Klinghoffer*, 921 F.2d at 24, and denying certification). Moreover, this case resembles none of the procedural examples described in the cases Defendants cite. Def. Br. at 5-6; *see Klinghoffer*, 921 F.2d at 24 ("For example, we have granted certification when the order involved issues of *in personam* and subject matter jurisdiction"); *In re Duplan Corp.*, 591 F.2d 139, 148 n.11 (2d Cir.

1978) (referring to a "procedural determination that may importantly affect the conduct of an action," and citing the Supreme Court's decision in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978) n. 27 (1978) regarding the interlocutory appeal of a class certification order); *Primavera Familienstifung v. Askin*, 139 F. Supp. 2d 567, 570 (S.D.N.Y. 2001) to certify part of a summary judgment order).

Likewise, while "the impact that an appeal will have on other cases is a factor that [courts] may take into account … that is not the same as defining a 'controlling question of law' in terms of its precedential value." *Klinghoffer*, 921 F.2d at 24. Defendants have not identified a single similar pending case where an appellate decision on this issue would have precedential value. *See Murray v. UBS Sec., LLC*, No. 12 CIV. 5914 KPF, 2014 WL 1316472, at *4 (S.D.N.Y. Apr. 1, 2014) (denying certification) ("The Court doubts that the January 27 Order will have precedential value over a large number of cases, especially considering that it is not aware, and Plaintiff does not point to, any similar pending cases."); *Primavera*, 139 F. Supp. 2d at 573 ("Even assuming *arguendo* that the DLJ's dramatic characterization of this Court's ruling were correct, it is rather speculative to say that the ruling has precedential value for a large number of cases when those cases have yet to be brought.").

In this case, while a potential reversal of the portion of the Order that Defendants challenge would affect this action, it would not terminate the action. With respect to this case in particular, the Court has already ruled: "[e]ven if the losses caused by the penalties must be disaggregated from the losses caused by the disclosure, I am not persuaded that this would require granting summary [judgment]." Aug. 19, 2022 Hr'g. Tr. 16:1-3. Indeed, in its very next sentence the Court cited controlling precedent for this ruling, *id.* at 16:4-15, noting that:

> In *Gould v. Winstar Commc'ns, Inc.*, 692 F.3d 148, 162 (2d Cir. 2012)] the Second Circuit rejected the argument that summary

judgment must be granted in the face of evidence that declines in stock price may have been caused by other facts, holding that such facts, if established, hardly foreclose the reasonable inference that some part of the decline was substantially caused by the disclosures about the fraud itself and concluding that a jury reasonably could find the requisite causal link between the misconduct and the harm suffered. I find this case analogous, as a juror could find that at least some of the stock price drop was due to the disclosure of the fraud itself, rather than due to other factors.

Even if, *arguendo*, Defendants were correct in their position that Plaintiffs must disaggregate the supposedly independent penalty-related losses from the corrective disclosure losses, that would speak only to the amount of damages available, not whether Plaintiffs have proffered sufficient evidence of loss causation at all. As the Court already recognized, Defendants' argument precisely mirrors the one rejected by the Second Circuit in *Winstar*, that "declines in stock price may have been caused by other facts," which "hardly foreclose[s] the reasonable inference that some part of the decline was substantially caused by the disclosures about the fraud itself." Aug. 19, 2022 Hr'g. Tr. 16:4-10 (discussing *Winstar*, 692 F.3d at 162). Here, Defendants cannot dispute that Plaintiffs' evidence shows that "at least some of the stock price drop was due to the disclosure of the fraud itself," Aug. 19, 2022 Hr'g. Tr. 16:13-14, which suffices to defeat summary judgment as to the element of loss causation.

Defendants' assertion that if "the regulatory penalties must be disaggregated, Plaintiffs would have no way to show loss causation or damages," is devoid of any legal or factual support. In fact, this Court expressly rejected as "distinguishable" on its facts the lone case Defendants cite for this proposition, *In re Omnicom Grp., Inc. Sec. Litig.*, 541 F. Supp. 2d 546, 554 (S.D.N.Y. 2008), *aff'd*, 597 F.3d 501 (2d Cir. 2010). Specifically, the Court found that:

Omnicom, on which FXCM relies, is distinguishable in the Court's view. There, the court granted summary judgment when an expert failed to draw the requisite causal connection between a corrective disclosure and the alleged fraud because his event study merely linked the decline in the value of the company's stock to various

> events. 597 F.3d 501, at 512. But key to the court's ruling was that the alleged corrective disclosure contained no new information that could have caused the loss.

Aug. 19, 2022 Hr'g Tr. 17:12-20. Moreover, as the Court recognized, *Omnicom* actually contradicts Defendants' position. *Id.* at 17:20-25 ("Indeed, the court stated that summary judgment is appropriate only if a plaintiff cannot show that at least some of the price drop was due to the fraud. That's [*Omnicom*, 597 F.3d at] 510, n.3. Here, a reasonable juror could find that at least some rough proportion of the decline in stock price was caused solely by that disclosure.").

While Plaintiffs bear the burden of showing loss causation, "it is important not to confuse causation with damages when comparing competing causes for a stock decline." *In re Vivendi Universal, S.A. Sec. Litig.*, 634 F. Supp. 2d 352, 364 (S.D.N.Y. 2009).[3] "Plaintiffs need only prove that they suffered some damage from the fraud. Liability obviously does not hinge on how much damage." *Id.*; *see also* Aug. 19, 2022 Hr'g Tr. 18:1-4 (quoting the same).[4] Even if Defendants

---

[3] Defendants repeatedly conflate the elements of falsity, loss causation, and damages. For example, they claim that "[a]llowing recovery for regulatory penalties would blow a hole in the rule that a company has no independent duty to disclose that it is under investigation by a regulatory agency." Def. Br. at 6. Whether Defendants had a duty to disclose an investigation speaks only to whether the omission of such an investigation (which Plaintiffs no longer allege) satisfies the "falsity" element of a Section 10(b) claim. *See* ECF No. 135 (decision on Defendants' motion to dismiss) at 27 ("Plaintiffs do not allege sufficient facts to establish that FXCM's decision not to disclose its regulatory investigations constituted a false or misleading statement of material fact."). That has nothing to do with whether the disclosure of a regulatory settlement based on the investigation can serve as a corrective disclosure for loss causation purposes, as this Court and others have found. *See, e.g.*, Aug. 19, 2022 Hr'g Tr. 13:17-23 (finding "the settlement announcements can be corrective disclosures," citing *In re Bristol Myers Squibb Co. Sec. Litig.*, 586 F. Supp. 2d 148, 164 (S.D.N.Y. 2008), and *In re Take-Two Interactive Sec. Litig.*, 551 F. Supp. 2d 247, 282 (S.D.N.Y. 2008)).

[4] Defendants also provide absolutely no support for their assertion that Plaintiffs' recovery here "would chill settlement of regulatory actions more broadly: … the penalties stemming from the settlement could expose the company to liability under the securities laws." Def. Br. at 6. Once again, the penalties *agreed to and contained in the settlements* here are not serving as the basis for liability. Liability here is based on the fraud that the settlements revealed, and the losses caused by the disclosure of the settlements.

were correct, a hypothetical reversal on appeal would eliminate neither liability nor damages. Accordingly, the question at issue is not "controlling" for purposes of § 1292(b). *Century Pac.*, 574 F. Supp. 2d at 372.

### C.    Defendants Fail to Raise Substantial Doubt that the Court's Summary Judgment Decision was Correct, Proffering Only Factual Disputes

"A substantial ground for difference of opinion exists where '(1) there is conflicting authority on the issue, or (2) the issue is particularly difficult and of first impression for the Second Circuit." *Segedie*, 2015 WL 5916002, at *3. "Mere conjecture that courts would disagree on the issue or that the court was incorrect in its holding is not enough; for there to be a 'substantial ground for difference of opinion' under the law ... there must be substantial doubt that the ... court's order was correct." *Chenault*, 2017 WL 698387 at *2; *see also SPL Shipping Ltd. v. Gujarat Cheminex Ltd.*, No. 06-CV-15375KMK, 2007 WL 1119753, at *2 (S.D.N.Y. Apr. 12, 2007) (similar) (quoting *N.F.L. Ins. Ltd. By Lines v. B&B Holdings, Inc.*, No. 91 CIV. 8580 (PKL), 1993 WL 255101, at *2 (S.D.N.Y. July 1, 1993) (in turn quoting S. Rep. No. 85–2434, at 3 (1958), reprinted in 1958 U.S.C.C.A.N. 5255, 5257)). Here, Defendants simply regurgitate the same arguments the Court already expressly rejected and do not even attempt to refute or distinguish the ample precedent cited by the Court for its decision. Defendants thus fail to raise "substantial doubt" that the Court's summary judgment order was correct. *Century Pac.*, 574 F. Supp. 2d at 373 (rejecting motion for certification of summary judgment order for appeal where "[o]n summary judgment, the Court was presented with a fully developed factual record").

Defendants' rehashed arguments once again miss the mark, as they did at summary judgment. The Court correctly found, and Defendants do not contest, that Plaintiffs have shown that the regulatory settlements were corrective disclosures which revealed the alleged fraud concealed from the market and support loss causation. Aug. 19, 2022 Hr'g Tr. 13:17-23. Contrary

14

to Defendants' arguments, Def. Br. at 9, Plaintiffs' expert did disaggregate from the corrective disclosure the **non-fraud-related** confounding factors that affected FXCM's stock price (removing market and industry effects) and ascribed a proportion of the whole loss (in this case, 100% of the residual decline) to the misstatements. As the Court correctly recognized, the parties' disagreement as to whether any price impact from the regulatory penalties contained in the settlements can and/or should be disaggregated from the price impact of the other contents of the settlements is a factual matter best suited to determination by a jury. Aug. 19, 2022 Hr'g Tr. 14:15-15:6 ("a reasonable jury could find that the regulatory penalties relate to the subject or content of the alleged misstatements.").

In addition to the Court's careful analysis of this matter, *see* Aug. 19, 2022 Hr'g Tr. 12:17-18:9, Second Circuit case law amply supports the Court's decision. Establishing loss causation requires a showing that "the *subject* of the fraudulent statement or omission was the cause of the actual loss suffered." *Vivendi*, 838 F.3d at 261 (emphasis in original) (quoting *Suez Equity Invs., L.P. v. Toronto-Dominion Bank*, 250 F.3d 87, 97–99 (2d Cir. 2001)). At its core, "[l]oss causation 'is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff.'" *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (quoting *Emergent Cap. Inv. Mgmt., LLC v. Stonepath Grp., Inc.*, 343 F.3d 189, 197 (2d Cir. 2003)). Indeed, the Court's analysis accords neatly with the Second Circuit's framework for analyzing loss causation, which focuses on whether "the relationship between the plaintiff's investment loss and the information misstated or concealed by the defendant ... is sufficiently direct," or whether "the connection is attenuated, or if the plaintiff fails to 'demonstrate a causal connection between the content of the alleged misstatements or omissions and the harm actually suffered.'" *Vivendi*, 838 F.3d at 261 (quoting *Lentell*, 396 F.3d at 174 and *Emergent*, 343 F.3d at 199).

Here, the Court correctly found that the regulatory penalties were "[u]nlike events that are undisputedly confounding," in that they "are ***closely connected to the alleged fraud itself and to the disclosure of that fraud***. Indeed, one could argue [as Plaintiffs did] that the severity of the regulatory penalties imposed was tied to the nature and severity of the alleged misstatements." Aug. 19, 2022 Hr'g Tr. 14:22-15:3 (emphasis added). An analogous situation would be if a company announced revealed that one of its chief suppliers was severing ties with the company expressly because of allegations of a previously undisclosed fraud perpetrated by the company. While it is true that one might expect to see some impact on the company's stock price from the loss of its major supplier, ***if that were to hypothetically occur independently and irrespective of the fraud***, that is not what actually happened. When the loss of a major supplier (or here, the loss of the Company's U.S. business) is instead ***a direct result of the fraud***, there is no reason to disaggregate the hypothetical impact of a hypothetical independent event from the actual impact of the actual corrective disclosure revealing the fraud and its direct consequences.

Defendants' arguments also speak only to the theory of materialization of concealed risks, which the Court already rejected and expressly did not rely upon in denying Defendants' motion for summary judgment. *See* Aug. 19, 2022 Hr'g Tr. 13:6-16. Defendants insist that because Plaintiffs do not show a materialization of the risk, they cannot prevail on loss causation at all. This argument completely ignores the corrective disclosure theory on which Plaintiffs and the Court's decision rely. Moreover, while Defendants argue that "[r]easonable judges" might disagree on this issue, this is not an issue for judges in the first place. At issue is a factual determination to be made by the jury at trial. *Supra*, Section III(B). Defendants are free to argue to the jury at trial that the regulatory penalties bear only an "attenuated" connection to the settlements in which they are contained, but this dispute is a factual one, not suitable for summary judgment. The parties do

not dispute that confounding factors impacting the stock price drop must be disaggregated. However, whether the impact of the regulatory penalties can and/or must be disaggregated hinges upon the factual determination of whether the regulatory penalties were confounding or whether their connection to Plaintiffs' loss "is sufficiently direct." *Vivendi*, 838 F.3d at 261. As the Second Circuit explained in *Lentell*, 396 F.3d at 174, "the chain of causation ... is a matter of proof at trial."

Defendants suggest that "reasonable judges can—and, indeed, *have*—disagreed" with the Court's finding that a jury is capable of disaggregating confounding factors (a secondary step necessary only if the jury determines that those factors are, in fact, confounding), Def. Br. at 11, but they cite only one out-of-circuit case in support of their position, in which there was no dispute as to whether the confounding information was unrelated to the fraud. In *In re Sci. Atlanta, Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1373 (N.D. Ga. 2010), *aff'd sub nom. Phillips v. Sci.-Atlanta, Inc.*, 489 F. App'x 339 (11th Cir. 2012) (*per curiam*), the plaintiffs alleged that the Defendants had engaged in "channel stuffing" to hide a decrease in sales. The plaintiffs alleged that the fraud was partially revealed on two dates when the company announced that its sales had decreased. *See id.*, 489 F. App'x at 341. However, the court found that the company had also revealed other material information on the same dates which was clearly "confounding information" unrelated to the fraud. *Id.* at 343.[5] As the court described, "the 'corrective disclosures' in this case include multiple pieces of non-fraud-related information…: revelations not about the supposed 'channel stuffing.'" *Id.* at 342. Notably, the *Sci-Atlanta* plaintiffs **did not** argue that this confounding information was related to the fraud and thus did not need to be disaggregated. *See id.* at 343, n.4.[6]

---

[5] The court also found that, unlike here, "analyst reports that came out after pertinent releases included at least some discussion of [the unrelated information]." *Id.*

[6] "Because this argument was first raised on appeal and was not presented to the district court at summary judgment, we will not consider it now." *Id.*

Here, in contrast, Plaintiffs vigorously dispute that the regulatory penalties are "confounding information" unrelated to the fraud. *See also* Aug. 19, 2022 Hr'g Tr. 14:22-15:1 ("Unlike events that are undisputedly confounding… the regulatory penalties here are closely connected to the alleged fraud itself and to the disclosure of that fraud.").

A recent decision in this District spells out how a plaintiff "should go about disaggregating different potential causes of losses. First, such a plaintiff must control for market and industry factors, separating out from the [] price decline … any decline that is in fact attributable to those factors." *Gruber v. Gilbertson*, No. 16-CV-9727 (JSR), 2022 WL 4232834, at *10 (S.D.N.Y. Sept. 14, 2022) (citing *United States v. Gushlak*, 728 F.3d 184, 199 (2d Cir. 2013) and *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408, 421 (7th Cir. 2015)). There is no dispute that Plaintiffs' expert accomplished this first step. "Second, there must be some basis to think that the decline … was not the result of company-specific but non-fraud related factors." *Id.* The Second Circuit in *Gushlak* held that this second step was satisfied where "the district court had a factual basis for concluding that there were no company-specific disclosures concerning non-fraudulent information that would have affected [the company's] stock price." 728 F.3d at 201-02. In *Gruber*, the plaintiffs' expert concluded that no company-specific non-fraud-related events impacted the company's stock price, including his conclusion that "there was no need to disaggregate the losses stemming from [a particular event] because the scheme was related to the fraud." 2022 WL 4232834, at *11 (denying defendant's motions for a new trial and for judgment as a matter of law after the jury verdict). Here, Plaintiffs' expert analyzed the regulatory penalties and found that they were related to the fraud, so any impact they had on the stock price need not be disaggregated.

Defendants' argument that "Plaintiffs themselves provided no evidence to allow a jury to attribute any portion of the losses to the disclosure of the financial relationship with Effex rather

18

than the steep penalties," Def. Br. at 11, is wrong and was already rejected by this Court. Aug. 19, 2022 Hr'g Tr. 16:4-17:11 (citing *Winstar*, 692 F.3d 148, *Vivendi*, 838 F.3d at 260, and *Liberty Media*, 923 F. Supp. 2d at 519, n.49, in finding that "[t]hese cases suggest that even in complex securities litigation, the jury has the capability of disaggregating confounding factors, and that a damages calculation that does not fully disaggregate may still be helpful to a jury"). *See also Gushlak*, 728 F.3d at 201-02. Defendants' bizarre claim that "Plaintiffs present the penalties themselves as the main (if not exclusive) cause of their loss," Def. Br. at 11, is patently false and unsupported by the record.

Likewise, Defendants' claim that "without any evidence or guidance on how to disaggregate penalty-related losses from fraud-related losses, any effort by the jury to decide the question would rest on pure speculation," Def. Br. at 11, is wrong and was already rejected by the Court (Aug. 19, 2022 Hr'g Tr. 16:4-17:11). *Gruber* demonstrates exactly how this case could resolve: upon the jury's factual determinations after weighing the available evidence.

> In the end, the jury found 57% inflation, even though [the expert's] testimony, if totally credited, implied that inflation was 100%. It seems clear, therefore, that the jury accepted some but not all of [the expert's] testimony regarding disaggregation. But this only shows how carefully they parsed the evidence…. The able members of the jury, who gave up their own time to perform their public service of deciding this complicated case, were not required to act as trained economists, but rather to make reasonable estimates based on evidence they credited.

*Id.*, 2022 WL 4232834, at *12. Moreover, this purported lack of "evidence or guidance" on disaggregation merely underscores the frailty of Defendants' all-or-nothing strategic decision to provide no countervailing loss causation analysis or damages model that attempts to calculate or

disaggregate the price impact of the regulatory penalties, nor even a potential methodology.[7] As touched on above, Defendants' misplaced contention that "[i]f a plaintiff cannot pursue claims based on a theory that a company failed to disclose an investigation, it ought not to be able to recover damages connected to penalties resulting from that investigation," conflates the elements of falsity and loss causation. The lack of an affirmative duty to disclose an investigation (an issue of falsity) cannot possibly mean that Defendants can never be liable for the *results* of the investigation when those results reveal Defendants' fraud based on other actionable misstatements. Some investigations might fizzle out and reveal nothing, and in those cases there would not be loss causation because there would be no revelation of fraud. This was not one of those cases.

Finally, Defendants baselessly assert that "this Court appeared to believe that no opinion had squarely and expressly addressed" the issue of whether "losses caused by regulatory penalties must be disaggregated." Def. Br. at 12-13. Defendants cite nothing in the Court's decision to support their inference. *See id.* To the contrary, as noted above the Court repeatedly cited ample precedent from the Second Circuit and this District supporting its decision on multiple grounds. Aug. 19, 2022 Hr'g Tr. 15:18-25, 16:4-15, 16:16-23, 16:24-17:11, 18:1-4.

In any event, even if Defendants were correct that this is a purely legal issue which presents a close or difficult question, that is not sufficient grounds to justify certification. "The mere fact that an issue is difficult and contested is not sufficient to show a substantial ground for difference of opinion," as Section 1292(b) "was not intended as a vehicle to provide early review of difficult

---

[7] In *Gushlak*, 728 F.3d at 202, the Second Circuit rejected the defendant's argument "that the district court erred in failing to credit Dr. Juran and Dr. Lowry, his proffered experts, rather than Dr. DeRosa [the plaintiffs' expert]," where the defendant's experts "offered criticisms of DeRosa's approach, and then described alternatives," but "strikingly, neither Juran nor Lowry actually conducted a loss analysis in this case," and thus "the notion that, had they done so, their models would have been superior to DeRosa's is entirely speculative."

rulings in hard cases." *Transp. Workers Union of Am., Local 100, AFL-CIO v. N.Y.C. Transit Auth.*, 358 F. Supp. 2d 347, 354 (S.D.N.Y. 2005).

### D.    Resolution of This Issue Would Not Materially Advance the Litigation

The third requirement for a district court to certify an order for interlocutory appeal is that "an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).  This requirement "primarily concerns judicial efficiency," *In re Aramid Ent. Fund Ltd.*, No. 21-CV-4840, 2022 WL 118293, at *8 (S.D.N.Y. Jan. 12, 2022), and it is satisfied if the appeal "promises to advance the time for trial or to shorten the time required for trial," *Ema Fin., LLC v. Vystar Corp.*, No. 19-CV-1545, 2021 WL 5998411, at *3 (S.D.N.Y. Dec. 20, 2021) (quoting *Florio v. City of New York*, No. 06-CV-6473, 2008 WL 3068247, at *1 (S.D.N.Y. Aug. 5, 2008)). "[T]he efficiency of both the district court and the appellate court are to be considered, and the benefit to the district court of avoiding unnecessary trial must be weighed against the inefficiency of having the Court of Appeals hear multiple appeals in the same case." *In re Lloyd's Am. Tr. Fund Litig.*, No. 96 CIV. 1262 (RWS), 1997 WL 458739, at *4 (S.D.N.Y. Aug. 12, 1997). "Courts place particular weight on [this factor]." *Ema Fin.*, 2021 WL 5998411, at *3 (quoting *Florio*, 2008 WL 3068247, at *1); *In re Lehman Bros. Holdings Inc.*, No. 13 CIV. 2211 RJS, 2014 WL 3408574, at *1 (S.D.N.Y. June 30, 2014) (referring to the "third criterion" as "the most important"); *S.E.C. v. Gruss*, No. 11 CIV. 2420, 2012 WL 3306166, at *4 (S.D.N.Y. Aug. 13, 2012) (referring to the "the third and most important element of the [§] 1292(b) test").

Defendants have failed to demonstrate that the immediate appeal of this action would result in the saving of judicial resources or otherwise "avoid protracted litigation." *In re World Trade Ctr. Disaster Site Litig.*, 469 F. Supp. 2d 134, 144 (S.D.N.Y. 2007). Indeed, it appears more likely that the granting of an immediate appeal will have the opposite effect, prolonging litigation that commenced in 2017 – one of the oldest cases on this Court's docket. As explained above, even if

Defendants were successful in reversing part of the Court's Order on an interlocutory appeal, it would not merit summary judgment in Defendants' favor. If Defendants were successful on appeal after the final judgment, the case will not "have to be re-tried," Def. Br. at 14, because the ruling would affect only the **_amount_** of damages – not the existence of liability or damages.

Trial is scheduled to commence four months from this Motion being fully briefed. Under the Second Circuit's rules (Local Rule 31.2), even if Defendants submit their appellate brief as promised (Def. Br. at 15) in 30 days from the Second Circuit accepting the appeal, some time *after* this Court's decision certifying this matter for appeal, the appeal will still take as long as 142 days (roughly five months) to be fully briefed, plus however long it takes for the Second Circuit to hear oral argument and then to decide the appeal. An interlocutory appeal would require that the pending trial be postponed by several months, dragging this case out even further.

This Court has previously applied its "unfettered discretion to deny certification," *Garber*, 120 F. Supp. 3d at 337, in finding that "even assuming that this case meets the statutory criteria, it is simply not the 'rare exception' that warrants departure from 'the final judgment rule that generally prohibits piecemeal appeals.'" *Caruso v. City of New York*, No. 06 CIV. 5997 RA, 2013 WL 6569783, at *2 (S.D.N.Y. Dec. 12, 2013) (Abrams, J.) (quoting *Scott v. Chipotle Mexian Grill, Inc.*, No. 12 CIV. 8333 ALC SN, 2013 WL 5782440, at *1 (S.D.N.Y. Oct. 25, 2013)). In *Caruso*, the Court grounded its decision to deny certification on the fact that "[d]iscovery is complete and the case is now ready for trial," finding that the "main effect of granting [Defendants'] motion would be to materially delay, rather than materially advance, the ultimate termination of the litigation." 2013 WL 6569783, at *2 (quoting *Picard v. Katz*, 466 B.R. 208, 210 (S.D.N.Y. 2012)). The Court recognized that, as holds true here, "when the trial of this proceeding is completed and final judgment entered, just a few months from now, an appellate court will be able to review, on

a full record, not just this ruling of which the Defendants now complain, but all relevant rulings." *Id.* (quoting *Picard*, 466 B.R. at 210).

Moreover, the Court found in *Caruso* that the fact that the impending trial "cannot be characterized as protracted or unusually expensive" further supported its decision not to grant certification. *Id.* (citing *Panzirer v. Wolf*, No. 79 CIV. 3445, 1980 WL 1395, at *6–7 (S.D.N.Y. Apr. 21, 1980) (denying § 1292(b) motion and noting that "certification is proper only under the most unusual circumstances where the immediate appeal might avoid protracted and costly litigation"), and *Weber v. Bartle*, 272 F. Supp. 201, 205 (S.D.N.Y. 1967) ("[T]his case does not appear, at present, to be the sort of big and expensive case where an unusual amount of time and money may be expended in the pre-trial phases of the case or where the trial itself is likely to be long and costly.")). The same is true here, where Defendants have made no showing that the impending trial will be protracted or unusually expensive.

Defendants make no attempt to explain how the prospect of two trials is particularly inefficient in light of the company's purported financial distress (of which Defendants have made no showing), and the fact that a trial involves witnesses who are former employees, officers, or third parties is not particularly unusual. *Id.* Defendants offer no support for their claim of "significant inconvenience" to those witnesses, *id.*, many of whom are located in New York City, where the Company was based. Unlike the out-of-circuit cases Defendants cite, *In re Microsoft Corp. Antitrust Litig.*, 274 F. Supp. 2d 741, 743 (D. Md. 2003) and *In re Managed Care Litig.*, No. MDL 1334, 2002 WL 1359736, at *2 (S.D. Fla. Mar. 25, 2002), this case is nearly ready for trial and there would be no impact on the "scope of discovery," *id.*, or any other proceedings save for the impending trial.

The denial of any request for certification inevitably carries some risk that the Second Circuit, following entry of a final judgment and an appropriate appeal at that time, may ultimately disagrees with the Court's rulings. "But that is the price that must be paid in light of the final judgment rule, which serves a variety of other salutary purposes — and which, in light of those purposes, is standard operating procedure in the federal courts." *In re Barclays Liquidity Cross and High Frequency Trading Litig.*, No. 14-MD-2589 (JMF), 2019 WL 3202745, at *3 (S.D.N.Y. July 16, 2019) (citing *New York v. United States Dep't of Com.*, 345 F. Supp. 3d 444, 448 (S.D.N.Y. 2018)). A court's grant of certification "must be carefully made, to avoid too many appeals by too many disappointed litigants who could argue that a different ruling by the district judge would end a litigation and save much expense." *World Trade*, 469 F. Supp. 2d at 144.

## IV.   CONCLUSION

The Court must deny Defendants' Motion because it is an untimely and inadequate motion for reconsideration, fails to demonstrate each of the elements required under 28 U.S.C. § 1292(b), and it is not the "rare exception" that warrants departure from the final judgment rule.

Dated: October 4, 2022

**THE ROSEN LAW FIRM P.A.**

By: */s/Joshua Baker*
Laurence M. Rosen
Phillip Kim
Joshua Baker
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fascimile:  (212) 202-3827
Email: lrosen@rosenlegal.com
        pkim@rosenlegal.com
        jbaker@rosenlegal.com

*Class Counsel for Plaintiffs and the Class*

24

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Ave.
New York, NY 10016
Tel: (212) 545-4600
Email: guiney@whafh.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On October 4, 2022, I served true and correct copies of the foregoing PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO CERTIFY ORDER FOR INTERLOCUTORY APPEAL, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on October 4, 2022, at Jenkintown, Pennsylvania.

*/s/Joshua Baker*