**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA-BCM<br><br>CLASS ACTION |
| This Document Relates To: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS _IN LIMINE_**

## TABLE OF CONTENTS

I.   STANDARDS FOR ADMISSIBILITY ........................................................................ 2

II.  ARGUMENT............................................................................................................... 3

    A.   Motion In Limine No. 1: Preclude Mr. Wilson-Taylor From Testifying ........................ 3

    B.   Motion *In Limine* No. 2: Preclude Defendants From Presenting New Evidence
       Challenging the Market Efficiency of FXCM Common Stock or Rebutting the
       Presumption of Reliance as to Shipco and E-Global ....................................................... 9

    C.   Motion *In Limine* No. 3: Preclude Defendants From Presenting Evidence
       or Argument Regarding Mr. Cozzarelli's 2016 Disbarment ......................................... 13

    D.   Motion *In Limine* No. 4: Preclude Defendants From Presenting Evidence
       or Argument Regarding the "SNB Flash Crash" ........................................................... 15

    E.   Motion *In Limine* No. 5: Preclude Defendants From Presenting Evidence
       or Argument Falsely Claiming the Court Found that the Market for the
       FXCM Notes was "Inefficient" ..................................................................................... 16

III.  CONCLUSION........................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997) .................................................................................................. 11

*Arista Records LLC v. Lime Grp. LLC*,
   No. 06-CV-5936 (KMW), 2011 WL 1674796 (S.D.N.Y. May 2, 2011) ................................... 5

*Basic Inc. v. Levinson*,
   485 U.S. 224 (1988) ............................................................................................. 10, 16

*Bennett v. Sprint Nextel Corp.*, No.,
   09-2122-EFM, 2013 WL 1197124 (D. Kan. Mar. 25, 2013) ................................................ 11

*Cammer v. Bloom*,
   711 F. Supp. 1264 (D.N.J. 1989) ............................................................................... 10

*Coles v. Perry*,
   217 F.R.D. 1 (D.D.C. 2003) ...................................................................................... 12

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ................................................................................................. 3

*Fiacco v. City of Rensselaer, N.Y.*,
   783 F.2d 319 (2d Cir. 1986) ....................................................................................... 3

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014) ............................................................................................... 13

*Harkabi v. SanDisk Corp.*,
   No. 08 CIV. 8203 WHP, 2012 WL 2574717 (S.D.N.Y. June 20, 2012) ................................. 11

*In re Invs. Funding Corp. of New York Sec. Litig.*,
   635 F. Supp. 1262 (S.D.N.Y. 1986) ............................................................................ 14

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008) ................................................................................. 11

*In re Petrobras*,
   *Sec.*, 862 F.3d 250 (2d Cir. 2017) .............................................................................. 10

*In re Vivendi Universal, S.A. Sec. Litig.*,
   765 F. Supp. 2d 512 (S.D.N.Y. 2011) .......................................................................... 13

*Jackson v. City of White Plains*,
  No. 05-CV-0491 (NSR), 2016 WL 234855 (S.D.N.Y. Jan. 19, 2016) ...................................... 3

*Johnson v. Nextel Commc'ns Inc.*,
  780 F.3d 128 (2d Cir. 2015) ........................................................................................... 11, 13

*Krogman v. Sterritt*,
  202 F.R.D. 467 (N.D. Tex. 2001) ......................................................................................... 10

*L.A. Printex Indus., Inc. v. Pretty Girl of California, Inc.*,
  No. 09 CIV. 4206 (KBF), 2012 WL 12886988 (S.D.N.Y. May 24, 2012) ............................ 12

*Lidle v. Cirrus Design Corp.*,
  No. 08 CIV. 1253 BSJ/HBP, 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009) ......................... 12

*Marfia v. T.C. Ziraat Bankasi*,
  874 F. Supp. 560 (S.D.N.Y. 1994) ......................................................................................... 3

*McIntire v. China MediaExpress Holdings, Inc.*,
  38 F. Supp. 3d 415 (S.D.N.Y. 2014) ..................................................................................... 10

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ................................................................................................... 5

*Palmieri v. Defaria*,
  88 F.3d 136 (2d Cir. 1996) ..................................................................................................... 2

*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir. 1997) ............................................................................................... 3, 6

*State v. Deutsche Telekom AG*,
  419 F. Supp. 3d 783 (S.D.N.Y. 2019) .................................................................................... 2

*Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*,
  No. 03 CIV. 8250, 2006 WL 44053 (S.D.N.Y. Jan. 9, 2006) ................................................ 11

*Tardif v. City of New York*,
  344 F. Supp. 3d 579 (S.D.N.Y. 2018) .................................................................................... 5

*U.S. v. Imran*,
  964 F.2d 1313 (2d Cir. 1992) ................................................................................................. 3

*United States v. Bilzerian*,
  926 F.2d 1285 (2d Cir. 1991) ................................................................................................. 5

*United States v. Duncan*,
  42 F.3d 97 (2d Cir. 1994) ....................................................................................................... 5

*United States v. Mulder*,
   273 F.3d 91 (2d Cir. 2001) ............................................................................... 5

*Waggoner v. Barclays PLC*,
   875 F.3d 79 (2d Cir. 2017) ............................................................................... 12

**Statutes**

28 U.S.C. 101 .......................................................................................................... 2

**Rules**

Fed. R. Civ. P. 30(b)(6) .......................................................................................... 13

Fed. R. Evid. 103(c) ................................................................................................ 2

Fed. R. Evid. 401 ........................................................................................... 2, 14, 16

Fed. R. Evid. 402 .................................................................................................... 2

Fed. R. Evid. 403 ............................................................................................. passim

Fed. R. Evid. 702 .................................................................................................... 5

Lead Plaintiff 683 Capital Partners, LP and Class Representatives Shipco Transport Inc. ("Shipco") and E-Global Trade and Finance Group, Inc. (collectively, "Plaintiffs") submit this memorandum in support of Plaintiffs' motions *in limine* for the Court to preclude Defendants Global Brokerage, Inc. f/k/a FXCM, Inc. ("FXCM"), Dror Niv, and William Ahdout (collectively, "Defendants"), and all witnesses tendered by Defendants, from directly or indirectly offering evidence concerning, arguing, presenting, referring, making any statement about, or asking witnesses testifying live any questions about the matters discussed below in the presence of prospective jurors, the jury panel, or the ultimate jury in this case.

Plaintiffs respectfully make the following motions *in limine*:

1. For a ruling that Defendants are precluded from introducing reports, opinions, or testimony from their expert witness, Simon Wilson-Taylor;

2. For a ruling that Defendants are precluded from introducing evidence or making arguments to the jury disputing the existence of an efficient market for FXCM common stock, or attempting to rebut the presumption of reliance as to Shipco or E-Global;

3. For a ruling that Defendants are precluded from introducing evidence or making arguments to the jury about the fact that Frank Cozzarelli, Shipco's corporate representative, was disbarred from the practice of law in the State of New Jersey in 2016 due to conduct preceding his tenure with Shipco;

4. For a ruling that Defendants are precluded from introducing evidence or making arguments to the jury about the "SNB flash crash" event; and

5.   For a ruling that Defendants are precluded from introducing evidence or making arguments to the jury that falsely present the Court's class certification ruling as a finding that the market for FXCM Notes was "inefficient."

## I.   STANDARDS FOR ADMISSIBILITY

Motions *in limine* allow the Court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996). Courts generally encourage the use of *in limine* motions to exclude evidence that is not relevant or is prejudicial. *State v. Deutsche Telekom AG*, 419 F. Supp. 3d 783, 787 (S.D.N.Y. 2019)). If the Court concludes that evidence being offered is irrelevant to the issues being tried or that the prejudicial effect of such evidence outweighs its probative value, the Court may issue and grant the motion *in limine*, thereby limiting or excluding proposed evidence as inadmissible. "In jury cases, proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the jury by any means…." Fed. R. Evid. 103(c).

In order for proposed exhibits or testimony to be admissible at trial under the Federal Rules of Evidence, 28 U.S.C. 101, *et. seq.*, such exhibits or testimony must first be relevant. Relevant evidence means evidence having any tendency to make the existence of any fact that is pertinent to the action more or less probable than it would be without the evidence. Fed. R. Evid. 401. Evidence which is not relevant to the action is not admissible. Fed. R. Evid. 402. However, relevance alone does not ensure admissibility. Relevant evidence may be excluded if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

The Second Circuit has noted that a district court "has broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis." *Fiacco v. City of Rensselaer, N.Y.*, 783 F.2d 319, 327–28 (2d Cir. 1986). In determining whether evidence should be excluded under Rule 403, the Court must conduct the balancing analysis in light of the particular trial circumstances and conditions. *U.S. v. Imran*, 964 F.2d 1313 (2d Cir. 1992). "[W]here the evidence is of very slight (if any) probative value," it should be excluded under Rule 403 "if there's even a modest likelihood of unfair prejudice or a small risk of misleading the jury." *Marfia v. T.C. Ziraat Bankasi*, 874 F. Supp. 560, 566 (S.D.N.Y. 1994), *vacated and remanded on other grounds*, 100 F.3d 243 (2d Cir. 1996). Essentially, relevant evidence will not be admitted if such evidence will hinder, distract, or confuse the jury. *See Perry v. Ethan Allen, Inc.*, 115 F.3d 143 (2d Cir. 1997); *Jackson v. City of White Plains*, No. 05-CV-0491 (NSR), 2016 WL 234855, at *3 (S.D.N.Y. Jan. 19, 2016) ("In making a Rule 403 determination, courts should ask whether the evidence's proper value is more than matched by the possibility that it will divert the jury from the facts which should control their verdict").

The Supreme Court has cautioned that Rule 403 "exercises more control over experts than over lay witnesses" because of the significant value juries may place on expert testimony. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993).

## II.   ARGUMENT

### A.   Motion In Limine No. 1: Preclude Mr. Wilson-Taylor From Testifying

The Court should preclude Defendants' expert, Simon Wilson-Taylor, from testifying at trial for several reasons. First, the opinions expressed by Mr. Wilson-Taylor in his expert report are irrelevant to the issues in this case. Second, Mr. Wilson-Taylor's opinions would not be helpful to a jury. Third, any minimal probative value of Mr. Wilson-Taylor's testimony is outweighed by

the danger of unfair prejudice and jury confusion by prejudicially cloaking with an expert's

authority arguments and evidence not requiring an expert's opinion to aid the jury.

Mr. Wilson-Taylor's offers six opinions in his expert report:

a.  Business relationships based on payments for order flow were common in the FX industry during the Class Period.

b.  Providing preferential treatment to liquidity providers who can offer customers tighter spreads, lower rejection rates, and better overall execution is a reasonable retail FX practice and can be beneficial to customers.

c.  FXCM's payment for order flow agreement with Effex, memorialized in the Services Agreement and its subsequent amendment, was not atypical.

d.  A No Dealing Desk (or agency) model, is characterized by the general absence of market risk exposure for the agent.

e.  FXCM's payment for order flow agreement with Effex and use of Effex as a liquidity provider did not affect FXCM's market risk exposure.

f.  FXCM's business relationship with Effex, specifically the payment for order flow agreement and other business practices concerning Effex's role as a liquidity provider, did not convert FXCM's No Dealing Desk platform into a Dealing Desk or otherwise create a conflict of interest between FXCM and its retail No Dealing Desk customers. In particular, FXCM's business relationship with Effex did not make FXCM the liquidity provider, the market maker, or the counterparty on trades with its retail No Dealing Desk customers.

Baker Decl., Ex. 1 (Expert Report of Simon Wilson-Taylor) ¶ 11.[1] Mr. Wilson-Taylor's testimony

regarding each of these opinions should be excluded.

Even if an expert is qualified and their testimony is reliable, "Rule 702 requires the district

court to make a third inquiry: whether the expert's testimony (as to a particular matter) will 'assist

---

[1] References to "Baker Decl." are to the Declaration of Joshua Baker and exhibits thereto, filed concurrently with Plaintiffs' motions.

4

the trier of fact.'" *Nimely v. City of New York*, 414 F.3d 381, 397 (2d Cir. 2005) (quoting Fed. R. Evid. 702); *Tardif v. City of New York*, 344 F. Supp. 3d 579 (S.D.N.Y. 2018). The Second Circuit has "consistently held, in that respect, that expert testimony that 'usurp[s] … the role of the jury in applying that law to the facts before it,'… by definition does not 'aid the jury in making a decision'; rather, it 'undertakes to tell the jury what result to reach,' and thus 'attempts to substitute the expert's judgment for the jury's.'" *Nimely*, 414 F.3d at 397 (quoting *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991) and *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)). An expert's testimony must be relevant, and it should not be "directed solely to lay matters which a jury is capable of understanding and deciding without the expert's help.'" *Arista Records LLC v. Lime Grp. LLC*, No. 06-CV-5936 (KMW), 2011 WL 1674796, at *4 (S.D.N.Y. May 2, 2011) (quoting *United States v. Mulder*, 273 F.3d 91, 104 (2d Cir. 2001)). The opinions expressed by Mr. Wilson-Taylor in his report are irrelevant to the issues in this case and his testimony will not be helpful to the jury in understanding any relevant issues.

Mr. Wilson-Taylor's first and third opinions, that "[b]usiness relationships based on payments for order flow were common in the FX industry during the Class Period," and that "FXCM's payment for order flow agreement with Effex, memorialized in the Services Agreement and its subsequent amendment, was not atypical," are irrelevant to the issues in this case, and the jury does not require an expert's opinion in its consideration of the evidence. First, there is only one business relationship relevant to this case: the one between FXCM and Effex Capital, LLC ("Effex"). Whether or not the FXCM-Effex relationship was, in fact, "based on payments for order flow" and "memorialized in the Services Agreement," rather than being a secret profit-sharing arrangement is the central dispute in this case.

Mr. Wilson-Taylor's opinions as to whether these general practices were "common" or "not atypical" are irrelevant to whether Defendants' statements about FXCM operating an "agency model," or FXCM receiving payments for order flow from multiple market makers, were false or misleading. An expert's opinion that cars commonly pass through an intersection does not help prove or disprove whether the driver ran a red light. The relevant issue is whether Defendants' statements concerning FXCM's relationship with Effex and the payments FXCM received from Effex were false or misleading, not whether payment for order flow agreements or relationships in general were common in the financial sector. Nor do Mr. Wilson-Taylor's opinions have any probative value as to Defendants' state of mind, as they do nothing to prove or disprove that Defendants acted with knowledge or recklessness in making the false and misleading statements about FXCM's relationship with Effex. Moreover, the relationship in this case concerned retail trading, not institutional trading. Mr. Wilson-Taylor admitted at his deposition that he was unaware of any instances in the industry where a liquidity provider paid for order flow on retail trading volume during the 2010-2014 period, when Effex was making these payments, Baker Decl., Ex. 2 at 86:19-87:6 (excerpts from Wilson-Taylor Dep. Tr.), and that he was unaware of any liquidity providers other than Effex who consistently paid 60% or more of their trading profits to a broker in order flow payments, *id.* at 153:12-154:13, further undermining the relevance of his opinions.

Even if these opinions were relevant, Defendants do not need an expert to explain to a jury whether a business practice was common or typical in Defendants' own industry. Testifying fact witnesses can explain whether what Defendants actually did was commonplace or atypical. Then both sides can argue whether this is a fact, whether it is relevant, and what it means to the jury's deliberations. The jury does not need any help from an expert in making their assessment on this issue.

Mr. Wilson-Taylor's second opinion, that "[p]roviding preferential treatment to liquidity providers who can offer customers tighter spreads, lower rejection rates, and better overall execution is a reasonable retail FX practice and can be beneficial to customers," is completely irrelevant to the issues in this case. Plaintiffs do not claim that the *trading* relationship between FXCM and Effex rendered any of the challenged statements false or misleading, or demonstrates Defendants' scienter. Rather, the *financial* relationship between the companies (*i.e.*, the kickbacks of 70% of its trading profits that Effex paid to FXCM) is what Plaintiffs assert rendered the statements false or misleading and show Defendants' scienter. Defendants have never claimed that the kickbacks played any role in achieving these beneficial outcomes for consumers. Without the kickbacks, Effex would still have had ample incentive to provide superior execution to earn trading advantages and win more trading volume, generating the same purported advantages to customers. Any potential benefits realized by customers as a result of FXCM's *trading* relationship with Effex are irrelevant to the issues in this case, which concern only the companies' *financial* relationship.

Again, even if this opinion were relevant, Defendants do not need an expert to explain to the jury that certain types of business practices can be reasonable and beneficial. Defendants can put forth their own evidence and fact witnesses to try to show that their actual practices actually benefitted their customers. Defendants here are attempting, improperly, to support the factual conclusions it wishes the jury to reach with the veneer of expert authority, when there is no need for an expert to help the jury on this issue.

Mr. Wilson-Taylor's fourth opinion, that "[a] No Dealing Desk (or agency) model, is characterized by the general absence of market risk exposure for the agent," is not relevant and would not be helpful to a jury. Mr. Wilson-Taylor's opinion as to the characteristics of an agency model in general is not relevant because this case concerns only whether Defendants' statements

about *FXCM's* purported "agency model," and the specific characteristics of *FXCM's* model that Defendants touted, were false or misleading. Mr. Wilson-Taylor's testimony would usurp the jury's role in determining what characteristics of FXCM's "agency model" render the challenged "agency model" statements false or misleading. Defendants can put forth fact witnesses to testify about the primary characteristics of FXCM's "agency model"; a jury does not need Mr. Wilson-Taylor's expertise to assist them in assessing whether or not FXCM was truly operating an agency model in the manner that it claimed.

Mr. Wilson-Taylor's fifth opinion, that "FXCM's payment for order flow agreement with Effex and use of Effex as a liquidity provider did not affect FXCM's market risk exposure," is irrelevant. Plaintiffs do not claim that FXCM's use of Effex as a liquidity provider in general or the "payment for order flow agreement" (which Plaintiffs argue was a façade) exposed FXCM to market risk; the fact that FXCM was receiving kickbacks of roughly 70% of Effex's trading profits from FXCM retail trading volume was what exposed FXCM to market risk. Mr. Wilson-Taylor's opinion does not help prove or disprove whether a profit-sharing arrangement existed between FXCM and Effex and whether that arrangement exposed FXCM to market risk. Indeed, Mr. Wilson-Taylor presumed in his report that "[t]he payment for order flow agreement between FXCM and Effex" was a "dollar-per-million fee agreement," as opposed to a "percentage-based agreement," (*see* Baker Decl., Ex. 1 ¶¶ 61, 90) and thus he did not even purport to analyze whether the percentage-based agreement that Plaintiffs allege was in place exposed FXCM to market risk. The jury does not need Mr. Wilson-Taylor's expert testimony to assess whether FXCM and Effex maintained a "dollar-per-million fee agreement," as opposed to a "percentage-based agreement."

Mr. Wilson-Taylor's sixth opinion, that "FXCM's business relationship with Effex, … did not convert FXCM's No Dealing Desk platform into a Dealing Desk or otherwise create a conflict

of interest between FXCM and its retail No Dealing Desk customers," and "did not make FXCM the liquidity provider, the market maker, or the counterparty on trades with its retail No Dealing Desk customers," is not relevant and carries a substantial risk of confusing the jury that outweighs its minimal probative value. Plaintiffs do not claim that FXCM was the liquidity provider, market maker, or the counterparty on retail customer trades, or that FXCM's No Dealing Desk platform was actually a dealing desk. None of those opinions help prove or disprove the falsity of Defendants' agency model statements. To that end, Mr. Wilson-Taylor's opinion is not relevant and would risk confusing a jury as to the reason Plaintiffs claim Defendants' "agency model" statements were false or misleading: that FXCM's 70% stake in Effex's trading profits from trading against FXCM's retail customers meant that FXCM had an undisclosed conflict of interest with those customers. Mr. Wilson-Taylor's opinion that FXCM's business relationship with Effex did not create a conflict of interest between FXCM and its retail customers is not helpful to a jury because he presumed in his report that "[t]he payment for order flow agreement between FXCM and Effex" was a "dollar-per-million fee agreement," as opposed to a "percentage-based agreement," (*see* Baker Decl., Ex. 1 ¶¶ 61, 90) and thus he did not even purport to analyze whether the percentage-based agreement that Plaintiffs allege was in place created a conflict of interest. The jury does not need Mr. Wilson-Taylor's expert testimony to assess whether FXCM and Effex maintained a "dollar-per-million fee agreement," as opposed to a "percentage-based agreement."

The Court should exclude Mr. Wilson-Taylor's testimony.

**B.    Motion *In Limine* No. 2: Preclude Defendants From Presenting New Evidence Challenging the Market Efficiency of FXCM Common Stock or Rebutting the Presumption of Reliance as to Shipco and E-Global**

Defendants conceded at class certification that the market for FXCM Common Stock was efficient. The Court found that Plaintiffs' evidence successfully demonstrated market efficiency for FXCM Common Stock, invoking the *Basic* presumption of reliance. The Court rejected

9

Defendants' attempts to rebut the presumption of reliance as to Plaintiffs and certified the Class. Defendants produced no evidence nor expert opinion during discovery that could serve to challenge market efficiency or to rebut the presumption of reliance. Accordingly, the Court should preclude Defendants from contesting market efficiency or the presumption of reliance at trial, as any new arguments or evidence would only serve to confuse the jury, prejudice Plaintiffs, and waste this Court's and the jury's time. Fed. R. Evid. 403.

Class Representatives Shipco and E-Global, and the Class, have invoked the fraud-on-the-market presumption of reliance set forth in *Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988), which requires proof of an efficient market. When evaluating whether a security trades in an efficient market, courts in this Circuit routinely assess the factors derived from *Cammer v. Bloom*, 711 F. Supp. 1264 (D.N.J. 1989). *See In re Petrobras Sec.*, 862 F.3d 250, 276 (2d Cir. 2017); *McIntire v. China MediaExpress Holdings, Inc.*, 38 F. Supp. 3d 415, 431 (S.D.N.Y. 2014). Courts in the Second Circuit also commonly look at the additional factors discussed in *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001). *See Petrobras*, 862 F.3d at 276; *McIntire*, 38 F. Supp. 3d at 431.

Plaintiffs produced evidence at class certification, primarily the expert reports of Dr. Adam Werner, to demonstrate market efficiency for FXCM Common Stock. ECF Nos. 176-1 and 196-1. Defendants deposed Dr. Werner, submitted their own expert report, and opposed Plaintiffs' motion for class certification on other grounds, but they did *not* dispute the efficiency of the market for FXCM Common Stock, conceding the issue, *see* ECF No. 187 at 18, n.14 ("Defendants are not disputing the market efficiency of FXCM's common stock"),[2] and Defendants' expert did not offer

---

[2] Defendants did not qualify this concession as only applying to the scope of class certification proceedings.

any opinion during discovery as to the efficiency of the market for FXCM Common Stock. Baker Decl., Ex. 3 at 12:3-13:5 (excerpts from Hendershott Dep. Tr.). The Court assessed Plaintiffs' evidence, applied a preponderance of the evidence standard, and found that "these [*Cammer* and *Krogman*] factors all weigh in favor of efficiency as to the market for FXCM Stock (which, as noted above, is not disputed here)." ECF No. 229 at 25 (report and recommendation of magistrate certifying Class); ECF No. 232 (order adopting report and recommendation); *see Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) ("The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements have been met") (citing *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)). Plaintiffs will proffer the same evidence again at trial to prove market efficiency for FXCM's Common Stock.

Defendants have not produced any evidence in discovery—before or after the Class was certified—which would support an argument contesting the market efficiency for FXCM's Common Stock. Determining market efficiency is generally beyond the ken of laypersons and requires expert analysis and opinion. Plaintiffs "typically establish market efficiency through expert testimony." *Bennett v. Sprint Nextel Corp.*, No. 09-2122-EFM, 2013 WL 1197124, at *1 (D. Kan. Mar. 25, 2013); *see also In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 209 n.19 (E.D. Pa. 2008) ("In determining if there is an efficient market for DVI's common stock, the Court must make a legal determination based on the arguments of counsel and supported by expert witness reports.").Defendants' expert will not be allowed to offer a new opinion at trial contesting market efficiency. It is a "noncontroversial position" that "an expert may not testify to an opinion he did not disclose during discovery." *Harkabi v. SanDisk Corp.*, No. 08 CIV. 8203 WHP, 2012 WL 2574717, at *5 (S.D.N.Y. June 20, 2012); *Takeda Chem. Indus., Ltd. v. Mylan Lab'ys, Inc.*, No. 03 CIV. 8250, 2006 WL 44053, at *2 (S.D.N.Y. Jan. 9, 2006) (precluding expert from offering new

opinion at trial not contained in expert report); *Coles v. Perry*, 217 F.R.D. 1, 4 (D.D.C. 2003) (since expert report produced during discovery must contain "complete statement of all opinions to be offered, "the very purpose of the rule is nullified" by allowing expert to supplement opinion after close of discovery, *accord Lidle v. Cirrus Design Corp.*, No. 08 CIV. 1253 BSJ/HBP, 2009 WL 4907201, at *5–*6 (S.D.N.Y. Dec. 18, 2009)).

Defendants should also not be permitted to spring new evidence on Plaintiffs at trial that was not produced in discovery. *See, e.g., L.A. Printex Indus., Inc. v. Pretty Girl of California, Inc.*, No. 09 CIV. 4206 (KBF), 2012 WL 12886988, at *1 (S.D.N.Y. May 24, 2012) (granting motion *in limine*: "To the extent evidence was not produced during discovery, it may not be introduced at trial."). Allowing Defendants to contest an issue they previously conceded by offering lay testimony on market efficiency, for which they have produced no supporting evidence nor expert testimony, would confuse the jury and introduce issues that have never been contested, wasting both the Court's and the jury's resources. For those reasons, Defendants should be precluded from introducing any such evidence at trial. Fed. R. Evid. 403.

Once Plaintiffs offer expert testimony on market efficiency and successfully invoke the presumption of reliance, Defendants may attempt to rebut the presumption by showing that Plaintiffs did not actually rely on the integrity of the market in purchasing the securities. *Waggoner v. Barclays PLC*, 875 F.3d 79, 102 (2d Cir. 2017) ("defendants bear the burden of persuasion to rebut the *Basic* presumption of reliance at the class certification stage."). At class certification, Defendants attempted to do just that, and the Court rejected each of Defendants' arguments. ECF No. 229 at 18-20 (rejecting each of Defendants' arguments that Plaintiffs were subject to unique defenses because they did not rely on the integrity of the market based on the timing of their purchases within the Class Period and that Plaintiffs were supposedly "value investors").

Defendants have produced no evidence since class certification which could possibly support an attempt to rebut the presumption of reliance as to Class Representatives Shipco and E-Global, nor have they produced evidence to rebut the presumption through a showing of lack of price impact or other class-wide basis such as a "truth on the market" defense. *See Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 278 (2014) (explaining price impact argument); *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 584 (S.D.N.Y. 2011) (explaining "truth on the market" defense).

The Court should preclude Defendants from arguing at trial that the presumption of reliance is rebutted on grounds (the timing of Plaintiffs' purchases within the Class Period and that Plaintiffs were purportedly "value investors") that the Court has already rejected, or that Defendants failed to raise when given a full opportunity. As Defendants have failed to produce any evidence that might support an attempt to rebut the presumption on a class-wide basis, the Court should likewise preclude Defendants from wasting time by raising those baseless arguments at trial. Fed. R. Evid. 403.

### C.   Motion *In Limine* No. 3: Preclude Defendants From Presenting Evidence or Argument Regarding Mr. Cozzarelli's 2016 Disbarment

On May 22, 2020, Defendants deposed Shipco's corporate representative, Frank Cozzarelli, pursuant to Fed. R. Civ. P. 30(b)(6). At the deposition, Defendants introduced an exhibit documenting Mr. Cozzarelli's disbarment from the practice of law in New Jersey in 2016, which occurred in connection with his work in private practice prior to joining Shipco. Baker Decl., Ex. 4 (excerpts from Shipco 30(b)(6) Dep. Tr.) 27:8-28:11; 165:12-166:5. Mr. Cozzarelli testified that he was "in the process of seeking reinstatement of my license." *Id.* at 28:9-11. During the deposition, Defendants did not "ask any substantive questions at all about this document," *id.* at 165:22-24, evidencing their intent to use this document solely for impeachment purposes at trial.

The Court should preclude all evidence and testimony concerning Mr. Cozzarelli's disbarment under Federal Rules of Evidence 401 and 403.

Reference to Mr. Cozzarelli's disbarment is irrrelevant to any claims by Shipco (or any other Plaintiffs), and irrelevant to any affirmative defenses Defendants may raise. The only possible use of this information would be for impeachment purposes, and the unfair prejudicial effect it would have on the jury would far outweighs any minimal probative value. No conduct of Mr. Cozzarelli is at issue in this case. Defendants have not contested the truth of any of the facts to which Mr. Cozzarelli has testified. Evidence relating to Mr. Cozzarelli's 2016 disbarment will have negligible probative value as to Mr. Cozzarelli's character for truthfulness, which Defendants have not challenged to this point, and even less so as it relates to his testimony in this action as the designated corporate representative of Shipco.

Information regarding Mr. Cozzarelli's 2016 disbarment would unfairly prejudice Plaintiffs by confusing the jurors, as any such evidence would serve only to elicit a negative reaction from the jury while providing little or no probative value. In *In re Invs. Funding Corp. of New York Sec. Litig.*, 635 F. Supp. 1262, 1265–66 (S.D.N.Y. 1986), the court excluded evidence of a witness' bribery from roughly a decade prior, as its probative worth was substantially outweighed by the danger of unfair prejudice that would result from its admission, as the bribery scheme was likely to induce decision by the jury on a purely emotional basis. As in *Invs. Funding Corp.*, here Mr. Cozzarelli's disbarment had nothing to do with the facts of this case. For these reasons, any evidence concerning Mr. Cozzarelli's 2016 disbarment would be unfairly prejudicial to Plaintiffs and should be precluded pursuant to Rules 401 and 403 of the Federal Rules of Evidence.

### D.    Motion *In Limine* No. 4: Preclude Defendants From Presenting Evidence or Argument Regarding the "SNB Flash Crash"

The Court has repeatedly ruled that the "SNB Flash Crash" event was *not* an intervening cause of Plaintiffs' losses, and it should preclude Defendants from mentioning it at trial or arguing that its occurrence negates proof of any element of any claim in this Action.

The "SNB Flash Crash" refers to the Swiss National Bank's surprise decision on January 15, 2015 to remove its peg of 1.20 Swiss francs to one euro, which caused widespread disruption in the foreign exchange market, causing FXCM to suffer major losses (due to its customers' major losses in highly-leveraged positions and FXCM's no-debit policy) and requiring it to obtain rescue financing to avoid liquidation. Within days after this event, the price of FXCM's common stock fell nearly 90% and the FXCM Notes traded substantially below par.

At the pleading stage the Court rejected Defendants' argument that the SNB Flash Crash "coincided" with the corrective disclosures that came over two years later in February 2017. ECF No. 135 at 36 (decision denying in part Defendants' motion to dismiss, finding loss causation adequately alleged because "this event can hardly be said to 'coincide' with the disclosure of the purported fraud.").

At the class certification stage, as noted above, the Court rejected Defendants' argument that Plaintiffs were subject to unique defenses because they purchased FXCM securities during the Class Period but after the SNB Flash Crash. ECF No. 229 at 18-19 ("[s]ince the proposed Class Representatives made their purchases before [the corrective disclosures in February 2017], it is of no moment that they purchased later rather than earlier in the Class Period.").

In denying Defendants' motion for summary judgment on the element of loss causation, ECF No. 332-1, the Court again rejected Defendants' argument that the SNB Flash Crash

somehow negated or dissipated the inflation in the price of FXCM securities that Plaintiffs allege was present throughout the Class Period until the corrective disclosures in February 2017.

Defendants' thrice-rejected arguments ignore the basic tenets of the fraud-on-the-market theory. Under that theory, which Defendants do not dispute applies here, misrepresentations and omissions introduce artificial inflation into the price of securities and that inflation is not removed absent a corrective disclosure or materialization of the concealed risk. *See Basic Inc. v. Levinson*, 485 U.S. 224 (1988). Defendants do not and cannot claim that the SNB Flash Crash had anything to do with the misrepresentations or omissions at issue in this case, and thus in no way did it remove any of the artificial inflation. Therefore, any evidence concerning the SNB Flash Crash is irrelevant to any outstanding issues in this case and should be excluded under Fed. R. Evid. 401.

Even if the SNB Flash Crash were relevant, Defendants' evidence and arguments regarding the event should be excluded because any minimal probative value they might have is substantially outweighed by the danger of confusing or misleading the jury as to whether the SNB Flash Crash was an intervening cause of Plaintiffs' losses; this Court has repeatedly found it was not. Fed. R. Evid. 403.

### E. Motion *In Limine* No. 5: Preclude Defendants From Presenting Evidence or Argument Falsely Claiming the Court Found that the Market for the FXCM Notes was "Inefficient"

Defendants should be precluded from referring to the Court's class certification decision to argue that the Court found that the market for FXCM Notes was "inefficient." That is not what the Court found. Magistrate Judge Moses's Report and Recommendation found only that Plaintiffs had not met their burden to prove that the market for FXCM Notes was sufficiently *efficient* throughout the entire Notes Period to support a presumption of reliance. ECF No. 229 at 37 ("I further find that, balancing all of the *Cammer* and *Krogman* factors, plaintiffs have not met their

burden of demonstrating that the FXCM Notes traded in an efficient market throughout the Notes Period.").

This finding, of insufficient affirmative evidence of efficiency to support a class-wide presumption of reliance for certification of the FXCM Notes class, should not be confused with an affirmative finding that the market for the FXCM Notes was "inefficient." Market efficiency is not an all-or-nothing proposition— Defendants have not actually disputed that markets may be informationally efficient to varying degrees.

Defendants have repeatedly referenced the non-existent finding that the market for FXCM Notes was "inefficient," and absent a ruling precluding them from doing so they will again at trial. In their summary judgment brief, ECF No. 296 at 43, Defendants inaccurately referred to "inefficiencies the Court observed in the Notes market," where the Court used no such phrasing. *See* ECF No. 229. In Defendants' reply brief on their motion to exclude Plaintiffs' expert on loss causation and damages, ECF No. 307 at 5, Defendants quoted deposition testimony where Plaintiffs' expert was asked about a hypothetical where "the market is inefficient." Most recently, during oral argument on Defendants' motion for summary judgment, Baker Decl. Ex. 5 (excerpts from transcript of July 19, 2022 oral argument) at 36:11-14, defense counsel incorrectly stated: "in an inefficient market, which the notes operated in…."

This is a fine distinction, but an important one. The Court must preclude Defendants from referring to the market for FXCM Notes as "inefficient," or stating or implying that the Court has found the market to be "inefficient," so as not to confuse or mislead the jury, because the Court never made such a finding. Fed. R. Evid. 403.

## III.     CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motions *in limine*.

Dated: December 14, 2022                    Respectfully submitted,

**THE ROSEN LAW FIRM P.A.**

By: */s/ Phillip Kim*
Laurence M. Rosen
Phillip Kim
Joshua Baker
275 Madison Avenue, 40th Floor
New York, New York 10016
Telephone: (212) 686-1060
Fascimile:  (212) 202-3827
Email:  lrosen@rosenlegal.com
          pkim@rosenlegal.com
          jbaker@rosenlegal.com

*Lead Counsel for Plaintiffs and the Proposed Class*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Ave.
New York, NY 10016
Tel: (212) 545-4600
Email:  guiney@whafh.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I, the undersigned say:

I am not a party to the above case, and am over eighteen years old. On December 14, 2022, I served true and correct copies of the foregoing MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTIONS IN LIMINE, by posting the document electronically to the ECF website of the United States District Court for the Southern District of New York, for receipt electronically by the parties listed on the Court's Service List.

I affirm under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 14, 2022, at Jenkintown, Pennsylvania.

*/s/Joshua Baker*