UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM, Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA |
| This Document Relates To:  All Actions | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF THEIR
MOTION *IN LIMINE* TO PRECLUDE PLAINTIFFS FROM USING EXTRINSIC
EVIDENCE TO ALTER OR VARY THE TERMS OF THE SERVICES AGREEMENT**

Defendants Global Brokerage Inc. f/k/a FXCM Inc. ("FXCM"), Dror Niv, and William Ahdout (collectively, "Defendants") submit this memorandum of law in support of their motion *in limine* to preclude Plaintiffs from using extrinsic evidence to alter or vary the terms of the Services Agreement—which is an unambiguous, fully integrated contract.

## INTRODUCTION

Plaintiffs have signaled through their proposed trial exhibits (*e.g.*, PX-33, PX-36, PX-52, PX-62, PX-64, PX-65, and PX-71) and deposition designations that they intend to introduce at trial documents and communications exchanged between FXCM and Effex Capital LLC ("Effex") during the several months of negotiations leading up to their execution of the Services Agreement. It seems Plaintiffs intend to use such negotiation documents and communications to argue to the jury that Effex and FXCM intended to enter into a profit-sharing agreement and not a payment for order flow agreement as expressly provided for in the Services Agreement. Plaintiffs' use of such extrinsic evidence is prohibited under the terms of the Services Agreement and well-settled New York law.

Plaintiffs do not and cannot dispute that the Services Agreement unambiguously provides that FXCM "shall receive from Effex a *fee equal to $21.00 USD per million units of Base Currency* . . . for the aggregated volume of Transactions executed via the Trading System (the 'Fees')." *See* DX-34 § 3.1 (emphasis added); DX-41 § 3.1 (emphasis added).[1] Nowhere in the

---

[1] FXCM's US trading arm, Forex Capital Markets, LLC, entered into an initial Services Agreement with Effex, effective March 1, 2010, under which Effex agreed to pay Forex Capital Markets, LLC a fixed monthly fee of $21 per million units of base currency for execution requests filled by Effex. *See* DX-34. Thereafter, Effex and FXCM Holdings, LLC, a subsidiary of FXCM, executed a second Services Agreement, which terminated and superseded the initial Services Agreement and had a new effective date of May 1, 2010. *See* DX-41. Aside from substituting FXCM Holdings, LLC for Forex Capital Markets, LLC, the Services Agreements are largely identical and contain the same fixed fee, dollar-per-million payment arrangement and merger clause.

Services Agreement is there an agreement to share profits or losses.  The word "profit" appears nowhere in the Services Agreement.  Plaintiffs also do not and cannot dispute that the Services Agreement contains a merger clause establishing that any negotiations, understandings, or agreements between FXCM and Effex that were not memorialized in the Services Agreement ***are not*** part of such agreement.  *See* DX-34 § 13; DX-41 § 14.  Accordingly, given such broad merger clause, and the unambiguous payment structure of the Services Agreement, Plaintiffs should be precluded from introducing any pre-negotiation documents or communications between FXCM and Effex leading up to the execution of the Services Agreement in Plaintiffs' improper effort to alter or vary its unambiguous terms.[2]

## ARGUMENT

Under well-established law in this Circuit, "matters extrinsic to the agreement may not be considered when the intent of the parties can fairly be gleaned from the face of the instrument." *Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000).  "Extrinsic evidence of the parties' intent may be considered only if the agreement is ambiguous."  *Wilder v. World of Boxing LLC*, 220 F. Supp. 3d 473, 478 (S.D.N.Y. 2016).  If the parties' intent "is discernible from the plain meaning of the language of the contract, there is no need to look further."  *Brockhaus v. Gallego Basteri*, 188 F. Supp. 3d 306, 315 (S.D.N.Y. 2016).

Here, it is undisputed that the Services Agreement unambiguously provides as follows:

> FXCM shall receive from Effex a ***fee equal to $21.00 USD per million units of Base Currency*** . . . for the aggregated volume of Transactions executed via the Trading System (the 'Fees').  ***The Fee shall be calculated by FXCM on a monthly***

---

[2] To the extent Plaintiffs seek to introduce evidence or argument at trial suggesting that FXCM and Effex had a profit-sharing relationship based on their conduct *following* the execution of the Services Agreement, Defendants do not seek to preclude Plaintiffs from introducing any such evidence or argument, although Defendants will establish at trial that even their conduct during the term of the Services Agreement was consistent with a payment for order flow arrangement as the contract provided and not a profit-sharing arrangement as Plaintiffs' erroneously contend.

> *basis*.  FXCM shall provide Effex an invoice for all unpaid Fees.  . . . As used
> herein, 'Base Currency' means the first currency of the given currency pair as
> displayed on the FXCM Trade Station II platform.

*See* DX-34 § 3.1 (emphasis added); DX-41 § 3.1 (emphasis added).  Even Plaintiffs' own

accounting expert, John Barron, has admitted that the Services Agreement "was not amended to

incorporate Mr. Dittami's requests to either preserve the 70/30 profit split or to limit FXCM's

share of Effex's profits."  DX-263 ¶ 33.  Thus, under the express terms of the Services Agreement,

the payments Effex made to FXCM under that agreement were based on the volume of order flow

filled by Effex and were not based on how much profit Effex ultimately made on that order flow.

Accordingly, Plaintiffs may not use any extrinsic evidence at trial—including any negotiations

between FXCM and Effex prior to execution of the Services Agreement (*see, e.g.*, PX-33, PX-36,

PX-52, PX-62, PX-64, PX-65, and PX-71)–in an attempt to alter or vary the terms of this

unambiguous agreement.  *Sharma v. Skaarup Ship Mgmt. Corp.*, 916 F.2d 820, 828 (2d Cir. 1990)

("Extrinsic (parol) evidence regarding the terms of the agreement was properly excluded in light

of the absence of any ambiguity.").

Moreover, where, as here, the parties' contract contains a merger clause,

"the parol evidence rule operates to exclude evidence of all prior or contemporaneous negotiations

between the parties offered to contradict or modify the terms of their writing."  *O'Grady v.

BlueCrest Capital Mgmt. LLP*, 111 F. Supp. 3d 494, 502 (S.D.N.Y. 2015); *see also Cytec Indus.

Inc. v. Allnex (Luxembourg) & Cy S.C.A.*, No. 14-CV-1561 (PKC), 2017 WL 2634177, at *6

(S.D.N.Y. June 19, 2017) (merger clause in agreement "bars extrinsic evidence tending to vary the

terms of the agreement in which the merger clause is included"); *Farberware Licensing Co. LLC

v. Meyer Mktg. Co.*, No. 09CIV2570(HB), 2009 WL 2710208, at *1 (S.D.N.Y. Aug. 25, 2009)

(merger clause "expressly supersedes and precludes the introduction of any pre-[agreement]

negotiations, understandings or agreements").

Here, the Services Agreement contains a broad merger clause that makes clear that any prior negotiations or agreements between FXCM and Effex that were not ultimately reflected in the terms of the Services Agreement are not part of the contract. *See* DX-34 § 13 ("The Parties agree that no oral negotiations or other writings are intended to form part of this Agreement."); DX-41 § 14 ("This Agreement, along with the recitals, all exhibits referenced and attached hereto, represents the entire agreement between the Parties with respect to the subject matter hereof and supersedes any prior or contemporaneous oral or written agreements or understandings.").

Accordingly, because the Services Agreement is a fully integrated contract that unambiguously provides that FXCM and Effex entered into a fixed "per million" fee arrangement and ***not*** a profit-sharing agreement, Plaintiffs should be precluded from using any extrinsic evidence at trial, including pre-contract negotiation documents and communications, to suggest that the Services Agreement as executed was a profit-sharing agreement. *Cytec Indus. Inc.*, 2017 WL 2634177, at *7 ("Because the parties agreed to this merger clause, and because the terms of the Agreement are unambiguous, the Court does not consider extrinsic or parol evidence when interpreting the Agreement.").

## **CONCLUSION**

For the foregoing reasons, Plaintiffs should be precluded from using any negotiation documents and communications between FXCM and Effex prior to the execution of the Services Agreement to alter or vary the unambiguous terms of the Services Agreement.

Dated: December 14, 2022

Respectfully submitted,

KING & SPALDING LLP


By: */s/ Israel Dahan*
Israel Dahan
Peter Isajiw
Ryan Gabay
KING & SPALDING LLP
1185 Avenue of the Americas
New York, NY 10036
Telephone No.:  (212) 556-2114
idahan@kslaw.com
pisajiw@kslaw.com
rgabay@kslaw.com

Chelsea J. Corey
KING & SPALDING LLP
300 South Tryon Street
Suite 1700
Charlotte, NC 28202
Telephone No.:  (704) 503-2575
ccorey@kslaw.com

*Counsel for Defendants*

6