**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA-BCM <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND <u>ESTABLISHING NOTICE PROCEDURES</u>**

# TABLE OF CONTENTS

Page(s)

TABLE OF AUTHORITIES .................................................................................................... ii

I.      INTRODUCTION ................................................................................................... 1

II.     SUMMARY OF THE LITIGATION AND THE SETTLEMENT ..................................... 2

III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT
        IS APPROPRIATE ................................................................................................. 5

        A.     Standards for Preliminary Approval ........................................................ 5

        B.     Plaintiffs and Their Counsel Have Adequately Represented the Class ................. 8

        C.     The Proposed Settlement is the Product of Good Faith Arm's-Length
               Negotiations by Informed, Experienced Counsel ................................................ 10

        D.     The Relief Provided for the Class is Adequate ..................................................... 11

               1.     The Substantial Benefits for the Class, Weighed Against the Costs, Risks,
                      and Delay of Trial and Appeal Support Preliminary Approval ............... 11

                      a)     Costs, Risks, and Delay of Trial and Appeal ............................... 12

                      b)     The Risks of Establishing Liability and Damages and
                             Maintaining the Class Through Trial ........................................... 12

               2.     The Stage of the Proceedings and the Amount of Discovery Completed. 14

               3.     The Reasonableness of the Settlement Fund and the Individual
                      Defendants' Ability to Withstand a Greater Judgment ........................... 15

               4.     The Proposed Method for Distributing Relief Is Effective ...................... 17

               5.     Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs .. 18

               6.     The Parties Have Entered a Side Agreement Regarding Opt-Outs .......... 18

        E.     There Was No Preferential Treatment; The Plan Treats All Class Members
               Equitably Based on the Strength of Their Claims ................................................ 19

IV.     THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE
        CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA,
        AND DUE PROCESS ............................................................................................. 20

V.      PROPOSED SCHEDULE OF EVENTS ....................................................................... 23

VI.     CONCLUSION........................................................................................................ 24

# **TABLE OF AUTHORITIES**

**Pages**

**Cases**

*Baker v. SeaWorld Entm't, Inc.*,
   No. 14CV2129-MMA (AGS), 2020 WL 818893 (S.D. Cal. Feb. 19, 2020) ........................... 22

*Cagan v. Anchor Sav. Bank FSB*,
   No. 88 Civ. 3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................................ 16

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ......................... 9, 19

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ....................................................................................... 7, 11, 16

*Consol. Edison, Inc. v. Ne. Utils.*,
   332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................................................... 20

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 10

*Guevoura Fund Ltd. v. Sillerman*,
   No. 1:15-CV-07192-CM, 2019 WL 6889901 (S.D.N.Y. Dec. 18, 2019) ................................ 18

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................... 19

*In re Advanced Battery Techs., Inc. Sec. Litig.*,
   298 F.R.D. 171 (S.D.N.Y. 2014) .......................................................................................... 22

*In re "Agent Orange" Prod. Liab. Litig.*,
   597 F. Supp. 740, 762 (E.D.N.Y. 1984),
   aff'd, 818 F.2d 145 (2d Cir. 1987) ........................................................................................ 16

*In re Am. Bank Note Holographics, Inc.*,
   127 F. Supp. 2d 418 (S.D.N.Y. 2001) .............................................................................. 12, 15

*In re BankAtlantic Bancorp, Inc.*,
   No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................... 13

*In re Blue Apron Holdings, Inc. Sec. Litig.*,
   No. 17-CV-04846-NGG-PK, 2021 WL 345790 (E.D.N.Y. Feb. 1, 2021) .............................. 22

*In re China Med. Corp. Sec. Litig.*,
   No. 8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) .............................. 11

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
   No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ................................ 18

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ........................................................................... 19

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ....................................................... 5, 6

*In re Glob. Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) ........................................................................... 14

*In re GTT Commc'ns, Inc. Sec. Litig.*,
   No. 2:21-CV-00270-DOC-AS, 2021 WL 6618727 (C.D. Cal. Dec. 6, 2021) ................ 22

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ...................................................................... 5, 15

*In re Indep. Energy Holdings PLC*,
   No. 00 Civ. 6689 (SAS), 2003 WL 22244676 (S.D.N.Y. Sept. 29, 2003) ................ 10

*In re Marsh & McLennan Cos., Inc. Sec. Litig.*,
   No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009) .................... 22

*In re MetLife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................. 17

*In re Omnivision Techs., Inc.*,
   559 F. Supp. 2d 1036 (N.D. Cal. 2008) ............................................................... 14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
   991 F. Supp. 2d 437 (E.D.N.Y. 2014) ............................................................. 7, 18

*In re Refco, Inc. Sec. Litig.*,
   No. 05 Civ. 8626 (JSR), 2010 WL 11586941 (S.D.N.Y. May 11, 2010) .................... 8

*In re Rent-Way Sec. Litig.*,
   305 F. Supp. 2d 491 (W.D. Pa. 2003) ................................................................. 14

*In re Signet Jewelers Ltd. Sec. Litig.*,
   No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) .............. 12

*In re Telik, Inc. Sec. Litig.*,
   576 F. Supp. 2d 570 (S.D.N.Y. 2008) ................................................................. 16

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
   No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015) ........................... 19

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
    535 F. Supp. 2d 249 (D.N.H. 2007) ............................................................. 13

*In re Warner Commc'ns Sec. Litig.*,
    798 F.2d 35 (2d Cir. 1986) ............................................................................ 6

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ....................................................... 9

*Lea v. Tal Educ. Grp.*,
    No. 18-CV-5480 (KHP), 2021 WL 5578665, (S.D.N.Y. Nov. 30, 2021) ........................... 10, 18

*Leung v. Home Boy Rest. Inc.*,
    No. 07CIV8779RJSDFE, 2009 WL 398861 (S.D.N.Y. Feb. 18, 2009) ................................. 10

*Mikhlin v. Oasmia Pharm. AB*,
    No. 19CV4349NGGRER, 2021 WL 1259559 (E.D.N.Y. Jan. 6, 2021) .................................. 11

*Morris v. Affinity Health Plan, Inc.*,
    859 F. Supp. 2d 611 (S.D.N.Y. 2012) ......................................................... 16

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) ...................................................................................... 22

*Palacio v. E*TRADE Fin. Corp.*,
    No. 10 Civ. 4030 (LAP) (DCF), 2012 U.S. WL 2384419 (S.D.N.Y. June 22, 2012) ............... 5

*Robbins v. Koger Properties, Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................... 13

*Shapiro v. JPMorgan Chase & Co.*,
    No. 11 Civ. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) .............................. 8, 20

*Vargas v. Cap. One Fin. Advisors*,
    559 F. App'x 22 (2d Cir. 2014) .................................................................. 20

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ............................. 9

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................... 5, 10

## Statutes

15 U.S.C. §78u-4(a)(4) ............................................................................... 20

15 U.S.C. § 78u-4(a)(7) ...................................................................... 20, 21, 23

28 U.S.C. §1715 ........................................................................................................ 22

Fed. R. Civ. P. 23 ................................................................................................. passim

## Other Authorities

*Newberg on Class Actions* (4th ed. 2002) § 11.41 ..................................................... 5

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Shipco Transport Inc. ("Shipco") and E-Global Trade and Finance Group, Inc. ("E-Global" and with Shipco, "Plaintiffs"), on behalf of themselves and the certified Class, submit this memorandum in support of their Motion for Preliminary Approval of the Class Action Settlement.[1]

## I.      INTRODUCTION

Plaintiffs and defendants Dror Niv and William Ahdout ("Individual Defendants" and with Plaintiffs, the "Parties"), have agreed to settle this Action for $6,500,000 by the terms stated in the Stipulation.[2] Plaintiffs are now seeking preliminary approval of the Settlement.

Preliminary approval does not require the Court to determine whether it should grant final approval of the Settlement at this point. Rather, the Court need only determine whether the Settlement is *approvable*, in that it falls within the range that the Court reasonably could approve. If the Court grants preliminary approval, Plaintiffs will provide notice to the Class, soliciting claims, objections to, and exclusions from, the Settlement. At the Settlement Hearing, with Class Members' reactions in hand, the Court will determine whether to grant final approval of the Settlement. By this motion, Plaintiffs request the Court enter an order: (1) preliminarily approving the terms of the Settlement as set forth in the Stipulation; (2) approving the form and method for providing notice of the Settlement; and (3) scheduling a Final Settlement Approval Hearing ("Settlement Hearing") at which the Court will consider the request for final approval of the

---

[1] All capitalized terms not otherwise defined herein have the meanings set forth in the Stipulation of Settlement dated February 1, 2023 ("Stipulation").

[2] The Stipulation provides for the resolution of all claims brought by Shipco, E-Global, and the Class in this Action. Defendants and Lead Plaintiff 683 Capital Partners, LP ("683 Capital") have entered into a separate confidential agreement (not requiring the Court's approval) to resolve the individual claims of 683 Capital, such that final approval of the proposed class Settlement discussed herein will resolve all remaining claims in the Action.

proposed Settlement, the Plan of Allocation (the "Plan") of Settlement proceeds, the request for attorneys' fees, expenses and case contribution awards, and entry of the Final Judgment.

The Settlement provides a fair, reasonable, and adequate result for investors despite significant risk. The Settlement was achieved only after substantial arm's-length negotiations with the aid of highly regarded mediator, Jed Melnick of JAMS. The immediate cash settlement provides a guaranteed recovery for Class Members, which is a favorable result in light of significant obstacles Plaintiffs faced with proving liability and damages at trial. Plaintiffs and Class Counsel believe that the proposed Settlement is fair, reasonable, and adequate, and is in the Class Members' best interest.

The Court should also approve the method by which notice of the Settlement will be communicated to Class Members ("Notice Plan") and the proposed documents that Plaintiffs will use to communicate notice – the Long Notice, Summary Notice, and Postcard Notice (together, the "Notice").[3] Here, the Notice and the Notice Plan closely track the forms and methods routinely used to communicate notice in securities class actions, and they satisfy the requirements imposed by Rule 23, the Private Securities Litigation Reform Act of 1995 ("PSLRA"), and due process.

## II.    SUMMARY OF THE LITIGATION AND THE SETTLEMENT

On February 7, 2017, Tony Khoury filed the first of four related shareholder actions against Defendants and Robert Lande ("Lande"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"). Dkt. No. 1. By Order dated May 3, 2017, the Court consolidated the related actions, appointed 683 Capital and Shipco as Lead Plaintiffs and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 47. The Lead Plaintiffs filed their

---

[3] Proposed versions of the Long Notice, Summary Notice, and Postcard Notice are attached as Exhibits A-1, A-3, and A-4, respectively, to the Stipulation. Exhibit A-2 is the proposed Proof of Claim and Release Form.

Consolidated Securities Class Action Complaint on June 19, 2017. Dkt. No. 48 ("FAC"). Defendants and Lande moved to dismiss the FAC on August 3, 2017. Dkt. No. 88. The Court granted the motion to dismiss without prejudice on March 1, 2017. Dkt. No. 108. Plaintiffs then filed their Second Amended Consolidated Securities Class Action Complaint ("SAC") on April 6, 2018. Dkt. No. 111. Defendants and Lande moved to dismiss the SAC on May 7, 2018. Dkt. No. 117. On March 28, 2019, the Court granted in part and denied in part Defendants' motion to dismiss the SAC, dismissing Lande from the Action. Dkt. No. 135. Defendants filed their answer to the SAC on May 13, 2019. Dkt. No. 139.

On January 6, 2020, Lead Plaintiffs and Sergey Regukh moved for class certification and Appointment of Class Representatives and Class Counsel. Dkt. No. 149. On April 13, 2020, Plaintiffs filed an amended motion for class certification, which was substantively identical but substituted E-Global for Sergey Regukh as a putative class representative. Dkt. Nos. 174-75. Plaintiffs also subsequently filed their Third Amended Consolidated Securities Class Action Complaint ("TAC") on April 17, 2020. Dkt. No. 181. Defendants filed their answer to the TAC on May 21, 2020. Dkt. No. 183. The amended class certification motion was assigned to Magistrate Judge Barbara Moses for a report and recommendation (Dkt. No. 171), which Magistrate Judge Moses issued on March 18, 2021, after holding an evidentiary hearing. Dkt. No. 229. On March 23, 2021, the Court adopted Magistrate Judge Moses' report and recommendation, certifying a class of Global Brokerage, Inc. f/k/a FXCM, Inc. ("FXCM" or the "Company") common stock purchasers, appointing Shipco and E-Global as Class Representatives, appointing The Rosen Law Firm, P.A. as Class Counsel, and denying class certification as to FXCM Notes purchasers. Dkt. No. 232. The certified Class comprises:

> All persons and/or entities that purchased or otherwise acquired publicly traded Global Brokerage, Inc., f/k/a FXCM Inc. ("FXCM") Class A common stock, during the period March 15, 2012 through February 6, 2017, both dates inclusive. Excluded from the Class are: (i) Defendants; (ii) current and former officers, employees, consultants and directors of FXCM and FXCM Holdings, LLC; (iii) siblings, parents, children, spouses, and household members of any person excluded under (i) and (ii); (iv) any entities affiliated with, controlled by, or more than 5% owned by, any person excluded under (i) through (iii); and (v) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iv).

*Id.*

After the Parties completed fact discovery and expert discovery, Defendants filed motions on September 9, 2021, to exclude Plaintiffs' experts from testifying, and for summary judgment on all of Plaintiffs' claims. Dkt. Nos. 237, 242, and 247. On August 17, 2022, after holding oral argument on Defendants' motions, the Court denied Defendants' motion for summary judgment, denied Defendants' motion to exclude the testimony of Plaintiffs' financial expert, and denied in part and granted in part Defendants' motion to exclude the testimony of Plaintiffs' accounting expert. Dkt. No. 291.

On September 7, 2022, the Court scheduled a jury trial to commence on February 13, 2023. Dkt. No. 319. On September 20, 2022, Defendants moved to certify part of the Court's decision denying summary judgment for interlocutory appeal. Dkt. No. 320. The Court denied Defendants' motion on October 31, 2022. Dkt. No. 327. On December 14, 2022, Plaintiffs submitted and filed the Parties' Joint Pretrial Order, Proposed Jury Instructions, Proposed *Voir Dire* Questions, and Proposed Verdict Form. Dkt. Nos. 330-332. On the same date, the Parties each filed respective pretrial memoranda and motions *in limine*. Dkt. Nos. 333-45.

On December 20, 2022, the Parties participated in a private mediation with Mr. Melnick, a well-respected mediator with experience mediating securities class actions.[4] During the mediation, Mr. Melnick proposed, and the Parties accepted, a settlement in principle to resolve this action. On December 23, 2022, the Parties executed a binding term sheet that set forth the material terms and obligations with respect to the settlement.

This Stipulation memorializes the agreement between the Parties to fully and finally settle the Action and to fully release all Released Claims against the Individual Defendants and the Released Parties with prejudice in return for the consideration specified herein.

## III.   PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.   Standards for Preliminary Approval

The law favors settlement, particularly in class actions and other complex cases because they tie up substantial judicial resources, use up the parties' time and money, and, in such cases, litigation resolution is usually significantly delayed. *Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030 (LAP) (DCF), 2012 WL 2384419, at \*7 (S.D.N.Y. June 22, 2012) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005)); *see also In re IMAX Sec. Litig.*, 283 F.R.D. 178, 188 (S.D.N.Y. 2012) ("we emphasize that [] there is a 'strong judicial policy in favor of settlements, particularly in the class action context'"); *Newberg on Class Actions* (4th ed. 2002) § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy."). Due to the presumption in favor of settlement, and "[a]bsent fraud or collusion," courts "should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007

---

[4] The Parties had also participated in a full-day mediation with Mr. Melnick on September 30, 2020, which was unsuccessful.

WL 2230177, at *12 (S.D.N.Y. July 27, 2007). Courts recognize that settlements require significant compromise between negotiating parties, and do not attempt to rewrite settlement agreements or try to resolve issues that are left undecided as a result of the parties' compromise. *See, e.g., In re Warner Commc'ns Sec. Litig.*, 798 F.2d 35, 37 (2d Cir. 1986) ("It is not a district judge's job to dictate the terms of a class settlement.").

Where, as here, the Parties propose to resolve class action litigation through a class-wide settlement, they must request and obtain the Court's approval. Fed. R. Civ. P. 23(e). Pursuant to Rule 23(e)(1), the issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Rule 23(e)(2) provides:

> (2)   ***Approval of the Proposal.***   If the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:
>
> > (A)   the class representatives and class counsel have adequately represented the class;
> >
> > (B)   the proposal was negotiated at arm's length;
> >
> > (C)   the relief provided for the class is adequate, taking into account:
> >
> > > (i)   the costs, risks, and delay of trial and appeal;
> > >
> > > (ii)   the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > >
> > > (iii)   the terms of any proposed award of attorney's fees, including timing of payment; and
> > >
> > > (iv)   any agreement required to be identified under Rule 23(e)(3); and
> >
> > (D)   the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Additionally, in evaluating a settlement, the Second Circuit directs courts to consider the *Grinnell* factors: (1) complexity, expense, and likely duration of the litigation; (2) reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class through the trial; (7) ability of the defendants to withstand a greater judgment; (8) range of reasonableness of the settlement fund in light of the best possible recovery; and (9) range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).[5]

Courts however, cannot "engage in a complete analysis at the preliminary approval stage … as other courts in this Circuit have held, 'it is not necessary to exhaustively consider the factors applicable to final approval'" when considering preliminary approval. *Payment Card Interchange*, 330 F.R.D. at 30 (quoting *In re Platinum & Palladium Commodities Litig.*, No. 10CV3617, 2014 WL 3500655, at \*12 (S.D.N.Y. July 15, 2014)). For instance, it is not possible to evaluate the reaction of the Class to the settlement at this time as notice of the Settlement has not yet been disseminated. *Id.* at 30.

A preview of the factors considered by courts in granting final approval demonstrates that this Settlement is well within the range of possible approval. The proposed Settlement satisfies each of the factors under Rule 23(e)(2) and *Grinnell*. The Court will likely be able to approve the Settlement as fair, reasonable and adequate.

---

[5] The Rule 23(e) factors, as amended in 2018, "add to, rather than displace, the *Grinnell* factors." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). Thus, in determining whether a settlement will likely be approvable under Rule 23(e)(2), the court "considers the Rule 23(e)(2) factors, and then considers additional *Grinnell* factors not otherwise addressed by the Rule 23(e)(2) factors." *Id.*

### B.      Plaintiffs and Their Counsel Have Adequately Represented the Class

Plaintiffs and Class Counsel have adequately represented the Class throughout the pendency of this Action. Plaintiffs have no interests antagonistic to other Class Members, their claims are typical of Class Members' claims, and Plaintiffs share an interest with the other Class Members in obtaining the largest possible recovery for the Class. *See In re Refco, Inc. Sec. Litig.*, No. 05 Civ. 8626 (JSR), 2010 WL 11586941, at *10 (S.D.N.Y. May 11, 2010) ("In this case there is no conflict between Lead Plaintiffs and members of the Settlement Class. Lead Plaintiffs and the Settlement Class share the common objective of maximizing recovery."); *Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331 (CM) (MHD), 2014 WL 1224666, at *15 (S.D.N.Y. Mar. 24, 2014) (same).

Further, Plaintiffs have worked closely with Class Counsel throughout the pendency of this Action to achieve the best possible result for themselves and the Class. Plaintiffs and Class Counsel have diligently prosecuted this Action on the Class's behalf, including by thoroughly investigating the facts to draft the First, Second, and Third Amended Complaints, filing oppositions to Defendants' motions to dismiss, defeating Defendants' motions to dismiss, completing fact discovery and expert discovery (including sitting for Plaintiffs' own depositions), obtaining certification of the Class, defeating Defendants' motions for summary judgment and to exclude Plaintiffs' experts, submitting pretrial motions and proposed jury materials, preparing for trial, and negotiating a favorable settlement that provides a substantial cash recovery for Class Members.

Plaintiffs retained highly experienced counsel with a successful track record of representing investors in similar securities cases. As to the adequacy of Class Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Class Counsel have been involved in this action from the beginning, including, among other things, conducting a pre-filing investigation, filing an initial complaint, retaining an investigator to interview former FXCM employees, filing an amended complaint, retaining a damages expert to evaluate the case, opposing Defendants' motion to dismiss the FAC, reviewing the Court's dismissal order and filing the SAC, opposing Defendants' second motion to dismiss, negotiating and completing fact discovery, seeking and obtaining certification of the Class, preparing a mediation statement for the first mediation and participating in that mediation, completing expert discovery, opposing Defendants' motions for summary judgment and to exclude Plaintiffs' experts, defeating Defendants' motion to certify the summary judgment decision for interlocutory appeal, drafting and negotiating pretrial motions and submissions, preparing for trial, participating in a second mediation, formalizing the settlement, and filing the instant motion for preliminary approval.

Class Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases. Courts in this District and around the country have consistently found Rosen Law to be well-suited as class counsel in securities class actions. *E.g., Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir. Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9

(C.D. Cal. May 6, 2014) (noting that Rosen Law "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement" to secure eve-of-trial settlement); *see also* Dkt. No. 27-4 (Rosen Law Firm Resume). Class Counsel has vigorously prosecuted the Action and will continue to do so through the final settlement approval and distribution process.

### C.   The Proposed Settlement is the Product of Good Faith Arm's-Length Negotiations by Informed, Experienced Counsel

The Rule 23(e)(2)(B) factor is a procedural one – whether "the proposal was negotiated at arm's length." Courts initially presume that a proposed settlement is fair and reasonable when it is the result of arm's-length negotiations. *Wal-Mart Stores, Inc.*, 396 F.3d at 116; *Leung v. Home Boy Rest. Inc.*, No. 07CIV8779RJSDFE, 2009 WL 398861, at *1 (S.D.N.Y. Feb. 18, 2009) (preliminary approval is appropriate where "the proposed settlement appears to be the product of extensive, arms-length negotiations conducted by experienced counsel with input from the parties"); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *8 (S.D.N.Y. Nov. 30, 2021) (similar). Further, a mediator's involvement in settlement negotiations supports a presumption of fairness. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re Indep. Energy Holdings PLC*, No. 00 Civ. 6689 (SAS), 2003 WL 22244676, at *4 (S.D.N.Y. Sept. 29, 2003) ("the fact that the Settlement was reached after exhaustive arm's-length negotiations, with the assistance of a private mediator experienced in complex litigation, is further proof that it is fair and reasonable").

The proposed Settlement followed hard-fought litigation proceeding to the doorstep of trial as well as arm's-length negotiations in two separate mediation sessions. After the Parties' first mediation session in September 2020 was unsuccessful, the Parties continued litigating for

over two more years. On December 20, 2022, the Parties attended a second mediation with Mr. Melnick. During this mediation session, the Parties argued the merits of Plaintiffs' claims and the defenses thereto, including the Parties' view of each sides' strengths, weaknesses, and the risks and expenses involved in the impending trial. After vigorous negotiations, Mr. Melnick proposed, and the Parties accepted, a settlement in principle to resolve this action.

The negotiations were at all times adversarial and conducted at arm's length, producing a result that the Parties believe to be in their respective best interests. The arm's-length nature of the negotiations and Mr. Melnick's involvement support the conclusion that the Settlement is fair and was achieved free of collusion. *See In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### D.     The Relief Provided for the Class is Adequate

Each of the factors set out in Rule 23(e)(2)(C), as well as the non-duplicative factors set out in *Grinnell*, 495 F.2d at 463, weigh in favor of preliminarily approving the Settlement.

#### 1.     The Substantial Benefits for the Class, Weighed Against the Costs, Risks, and Delay of Trial and Appeal Support Preliminary Approval

Under Rule 23(e)(2)(C), when evaluating the fairness, reasonableness, and adequacy of a settlement, the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). This section of Rule 23(e) "subsumes several *Grinnell* factors, including the complexity, expense and likely duration of litigation, the risks of establishing liability, the risks of establishing damages, and the risks of maintaining the class through trial." *Mikhlin v. Oasmia Pharm. AB*, No. 19CV4349NGGRER, 2021 WL 1259559, at *5 (E.D.N.Y. Jan. 6, 2021) (internal citations omitted).

### a) The Costs, Risks, and Delay of Trial and Appeal

Courts generally recognize that securities class actions are complex and expensive. *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *4 (S.D.N.Y. July 21, 2020) ("Courts recognize that '[s]ecurities class actions are generally complex and expensive to prosecute.'"); *In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 424 (S.D.N.Y. 2001) ("most securities fraud cases, are complex and challenging as regards both liability and damages"). The Settlement provides a guaranteed, immediate recovery to FXCM investors. If the Settlement were not reached, the Parties would have to incur additional substantial costs and engage in an upcoming scheduled trial and inevitable appeals. The trial was scheduled to proceed for 12 days, and the Individual Defendants had conceded none of the elements Plaintiffs must prove. Litigation expenses, including discovery costs and expert fees, have already been significant. Reaching this Settlement now not only guarantees recovery for the Class, but also eliminates the risk of incurring further litigation expenses if the pending trial were to take place.

There is no guarantee that Plaintiffs would have been able to obtain a favorable outcome at trial. Even if they secured a favorable verdict, trial would be costly and the inevitable post-verdict motions and appeals would further delay any potential recovery obtained for Class Members. Thus, the potential costs, delay, and complexity of continued litigation favor preliminary approval of the Settlement.

### b) The Risks of Establishing Liability and Damages and Maintaining the Class Through Trial

There were substantial risks in this Action as the Parties were quickly approaching trial and proceeding to trial may have yielded limited or no recovery. Although Plaintiffs were successful in defeating the motions to dismiss, defeating summary judgment, and certifying a class, there was no guarantee they would succeed at trial, where Plaintiffs bear the burden of proving by

a preponderance of the evidence each of the elements of their claims. Plaintiffs believe that their case is strong, but they faced significant obstacles at trial including a lack of friendly witnesses and the potential for key evidence to be excluded by the Individual Defendants' evidentiary objections and pending motions *in limine*. Had the Plaintiffs lost at trial – a very real possibility – the Class would receive no recovery at all.

Proving loss causation and damages at trial would also be risky, complicated, and uncertain, involving conflicting expert testimony. *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260–61 (D.N.H. 2007) ("Proving loss causation would be complex and difficult. Moreover, even if the jury agreed to impose liability, the trial would likely involve a confusing 'battle of the experts' over damages."). Even if Plaintiffs successfully proved the Individual Defendants' liability at trial, the jury might reduce damages significantly. *See Indep. Energy*, 2003 WL 22244676, at *4 (noting few cases tried before a jury result in full amount of damages claimed).

A favorable verdict after trial would not eliminate Plaintiffs' risks. Plaintiffs might still lose their case even after winning at trial. *In re BankAtlantic Bancorp, Inc.*, No. 07-61542-CIV, 2011 WL 1585605, at *38 (S.D. Fla. Apr. 25, 2011), *aff'd on other grounds sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012) (granting motion for judgment as a matter of law against plaintiffs after partial jury verdict in their favor). Even if Plaintiffs win at trial, secure a verdict for damages, and then defend the verdict from the Individual Defendants' inevitable post-trial motions, Plaintiffs might still lose on appeal. *Robbins v. Koger Properties, Inc.*, 116 F.3d 1441 (11th Cir. 1997) (overturning $81 million jury verdict). Thus, even beyond the trial itself Plaintiffs faced additional, substantial risks. Post-verdict motions and appeals would further prolong the time before the Class might obtain a recovery.

By contrast, the Settlement provides a favorable, immediate cash recovery for the Class and eliminates the risk, delay, and expense of continued litigation. *See In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 461 (S.D.N.Y. 2004) (noting that "the certainty of [a] settlement amount has to be judged in [the] context of the legal and practical obstacles to obtaining a large recovery"). While a greater recovery might be a theoretical possibility, evaluating the benefits of settlement must be tempered by recognizing that any compromise involves concessions on the part of all parties. Considering the risks of continued litigation and the time and expense that would be incurred to prosecute the Action through and beyond trial, the $6.5 million Settlement is a reasonable and adequate recovery that serves the best interests of the Class.

Finally, although the Class was certified, there is no guarantee it would remain so through trial, when the Individual Defendants may have presented evidence to upset the Court's ruling. Fed. R. Civ. P. 23(c)(1)(C) ("An order that grants or denies class certification may be altered or amended before final judgment."); *Glob. Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as the Individual Defendants might have sought decertification or modification of the class"). "While this may not be a particularly weighty factor, on balance it somewhat favors approval of the proposed Settlement." *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 506–07 (W.D. Pa. 2003). The Settlement avoids the uncertainty with respect to maintaining class certification and, thus, supports approval of the Settlement.

### 2.   The Stage of the Proceedings and the Amount of Discovery Completed

As discussed above, Plaintiffs conducted a thorough and informed investigation through multiple iterations of the pleading stage, completed fact discovery comprising the review of tens of thousands of documents and over a dozen depositions, completed expert discovery including

ten expert reports between the Parties and seven expert depositions, and submitted pretrial motions and related filings. Plaintiffs have litigated this matter all the way to the eve of a trial. Accordingly, Plaintiffs had more than sufficient information to evaluate the Settlement. Courts find that this factor supports approval even at far earlier stages of the case prior to engaging in any formal discovery.

> To approve a proposed settlement … the Court need not find that the parties have engaged in extensive discovery. Instead, it is enough for the parties to have engaged in sufficient investigation of the facts to enable the Court to intelligently make … an appraisal of the Settlement.

*Am. Bank Note*, 127 F. Supp. 2d at 425-26 (quotation marks and citations omitted); *see also IMAX*, 283 F.R.D. at 190 ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties."). Thus, this factor weighs strongly in favor of preliminarily approving the Settlement.

### 3. The Reasonableness of the Settlement Fund and the Individual Defendants' Ability to Withstand a Greater Judgment

The Settlement provides for a Settlement Fund of $6,500,000 in cash. Plaintiffs' damages expert estimated maximum aggregate damages of $17.5 million in Plaintiffs' best-case scenario. The Settlement represents a strong result for the Class, returning approximately 37% of maximum potential damages to investors. This best-case scenario assumes that Plaintiffs prevail at trial and the Court and jury accept Plaintiffs' damages theory, including proof of loss causation, in the full amount proffered by Plaintiffs' expert. Anything less than a complete victory would decrease, or potentially eliminate, recoverable damages. Courts judge the reasonableness of a settlement "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of

the strengths and weaknesses of plaintiffs' case." *In re "Agent Orange" Prod. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), aff'd, 818 F.2d 145 (2d Cir. 1987).

The percentage of maximum damages recovered here also shows that the Settlement is an excellent result for the Class, well above the range of other securities class action settlements with similar total damages. *See Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason . . . why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) ("It is well-settled that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair."); *Cagan v. Anchor Sav. Bank FSB*, No. 88 Civ. 3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (approving $2.3 million class settlement over objections that the "best possible recovery would be approximately $121 million"). When there are problems facing a case, and here proving liability and damages was no easy feat, "any amount could be deemed reasonable." *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 580 (S.D.N.Y. 2008).

According to Cornerstone Research, approximately 36% of securities class actions settled for less than $5 million in 2021, and that figure was 35% for 2012-2020. Laarni T. Bulan, *et al.*, Securities Class Action Settlements – 2021 Review and Analysis, at 4.[6] The median recovery in cases such as this one alleging Rule 10b-5 claims with damages under $25 million was approximately 12.5% of estimated damages in 2021, and 18.2% between 2012-2020. *Id.* at 6. Between 2017-2021, securities class actions such as this one that settled after a ruling on motion for summary judgment recovered a median of 6.2% of estimated damages. *Id.* at 14. Thus, the

---

[6] *Available at* https://www.cornerstone.com/wp-content/uploads/2022/03/Securities-Class-Action-Settlements-2021-Review-and-Analysis.pdf (last visited Feb. 3, 2023).

amount of the Settlement as a percentage of the maximum possible damages recoverable shows it is a reasonable and adequate result for the Class.

A defendant's ability to withstand a judgment greater than that secured by settlement is generally not one of the determining factors. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'").

### 4.    The Proposed Method for Distributing Relief Is Effective

The method for distributing relief to eligible claimants and for processing Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. The claims process includes a standard claim form that requests the information necessary to calculate a claimant's claim amount pursuant to the Plan. The Plan, prepared with the assistance of Plaintiffs' damages expert, governs how Class Members' claims will be calculated and, ultimately, how money will be distributed to Authorized Claimants.

Plaintiffs request that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator.[7] If SCS is appointed it will, under Class Counsel's guidance, process claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their pro rata share of the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Long Notice. The method proposed here is both effective

---

[7] Plaintiffs decided to retain SCS due to its substantial experience with class notice and claims processing and the competitive cost of SCS's proposal. Additionally, SCS served as the Notice Administrator to alert investors about the certified class. (Dkt. No. 329).

and necessary, as neither Plaintiffs nor Defendants possess the individual investor trading data required for a process to distribute the Net Settlement Fund.

5.      **Attorneys' Fees, Reimbursement of Expenses, and Award to Plaintiffs**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As set out in the Notice, Class Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount, and recover litigation expenses in an amount not to exceed $850,000. This fee request is reasonable and in line with fees awarded in other class settlements approved in similar cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *Payment Card Interchange*, 991 F. Supp. 2d at 445; *In re China MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding attorneys' fees of 33.33% of settlement fund).[8] Class Counsel will receive no payment, and have not, until after the Court issues an order awarding attorneys' fees following the Settlement Hearing.

6.      **The Parties Have Entered a Side Agreement Regarding Opt-Outs**

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of FXCM shares represented by those persons opting out equals or exceeds a certain threshold amount, the Individual Defendants shall have the option to terminate

---

[8] *See also Tal Educ.*, 2021 WL 5578665, at *12 (request for attorneys' fees of one-third of a settlement fund "has been approved as reasonable in this Circuit."); *Guevoura Fund Ltd. v. Sillerman*, No. 1:15-CV-07192-CM, 2019 WL 6889901, at *21 (S.D.N.Y. Dec. 18, 2019) (awarding attorneys' fees award of one-third is "consistent with percentage fees awarded in this Circuit and nationwide for comparable recoveries") (citing cases).

the Settlement. Stipulation ¶9.3. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms are kept confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Christine Asia*, 2019 WL 5257534 at *15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### E. There Was No Preferential Treatment; The Plan Treats All Class Members Equitably Based on the Strength of Their Claims

The Court must also evaluate whether the Settlement treats Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Class Member, including Plaintiffs. Courts preliminarily approve proposed plans of allocation if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Class Member preferentially. *In re Tremont Sec. Law, State Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part,* 699 F. App'x 8 (2d Cir. 2017).

Plaintiffs designed the Plan with the assistance of Plaintiffs' damages expert to distribute the Net Settlement Fund in a manner consistent with the claims alleged and loss causation principles. The Plan, fully disclosed in the Long Notice, provides for distribution of the Net Settlement Fund to Authorized Claimants *pro rata*, based on the amount and timing of each

claimant's transactions during the Class Period. Plaintiffs and all other Class Members will receive their payment pursuant to the same formula, based upon the relative losses they sustained.

As explained in the Notice, in addition to their *pro rata* distribution pursuant to the Plan of Allocation, Plaintiffs will also seek reimbursement of costs incurred representing the Class, as authorized by the PSLRA. 15 U.S.C. §78u-4(a)(4). Plaintiffs will request an amount not to exceed $20,000 for Shipco and $15,000 for E-Global, or $35,000 in total, in connection with their significant efforts representing the Class. These requested awards do not result in inequitable treatment as they are compensation for Plaintiffs' significant expenditures of time and effort in representing the Class and helping to secure the Settlement.

## IV.   THE PROPOSED FORMS AND METHOD OF PROVIDING NOTICE TO THE CLASS ARE APPROPRIATE AND SATISFY FED. R. CIV. P. 23, THE PSLRA, AND DUE PROCESS

Rule 23(e) requires that notice of the Settlement be provided to Class Members in such manner as the Court directs. Fed. R. Civ. P. 23(e). Such notice must meet the requirements of Rules 23, the PSLRA, and due process. Under Rule 23(c)(2), the Court "must direct to class members the best notice that is practicable under the circumstances." *Vargas v. Cap. One Fin. Advisors*, 559 F. App'x 22, 26 (2d Cir. 2014). In addition to how it is delivered, the notice "must fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings," including the opportunity to opt out of or object to the settlement. *Id.* at 27; *Shapiro*, 2014 WL 1224666 at *17 ("Rule 23(e) requires notice that is 'reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections.'"). The PSLRA and the Due Process Clause of the United States Constitution impose similar requirements. *See* 15 U.S.C. § 78u-4(a)(7); *Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y. 2004) ("Due process requires that the notice to class members

fairly apprise the . . . members of the class of the terms of the proposed settlement and of the options that are open to them in connection with [the] proceedings.") (internal citations omitted).

The proposed Notice provides detailed information concerning: (a) the rights of Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) how to file a Claim Form; (e) a description of the Plan; (f) the fees and expenses to be sought by Class Counsel; and (g) the necessary information to examine Court records. The proposed Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the proposed Notice to those persons for whom the nominees held shares in a "street name." The proposed Notice closely tracks a model notice published by the Federal Judicial Center.[9]

The proposed Notice also informs Class Members how to request exclusion from the Settlement and clearly states that all those who do not exclude themselves will be bound by the Settlement and Final Judgment. Furthermore, the PSLRA-mandated disclosures are satisfied as the proposed Notice: (1) states the amount of the Settlement on both an aggregate and average per share basis; (2) provides a brief statement explaining the reasons why the Parties are proposing the Settlement; (3) states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that counsel will seek; and (4) provides the contact information for Claims Administrator and Class Counsel to answer questions from Class Members. 15 U.S.C. § 78u-4(a)(7).

The proposed Notice Plan, as outlined in the proposed Preliminary Approval Order (attached as Exhibit A to the Stipulation), mandates that Class Counsel provide Class Members

---

[9] *Compare* Ex. A-1, *with* Federal Judicial Center, *Securities Class Action Certificate and Settlement: Full Notice*, https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf (last visited Feb. 3, 2023).

notice of the Settlement by either: (a) emailing the Summary Notice to Class Members for whom the Claims Administrator is able to obtain email addresses or (b) mailing the Postcard Notice, if an email address cannot be obtained, by first class mail to Class Members who can be identified with reasonable effort. The Stipulation and its exhibits, the Preliminary Approval Order, and the Long Notice and Claim Form will also be posted on the Claims Administrator's website. The Summary Notice will be published electronically on *GlobeNewswire* and in print in the *Investor's Business Daily*. Defendants will also provide notice pursuant to the Class Action Fairness Act, 28 U.S.C. §1715 *et seq.*

The proposed Notice and its dissemination are "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "The use of a combination of a mailed post card directing class members to a more detailed online notice has been approved by courts." *In re Advanced Battery Techs., Inc. Sec. Litig.*, 298 F.R.D. 171, 183 (S.D.N.Y. 2014) (collecting cases); *Baker v. SeaWorld Entm't, Inc.*, No. 14CV2129-MMA (AGS), 2020 WL 818893, at *2-3 (S.D. Cal. Feb. 19, 2020) (approving postcard notice and similar proposed notice program including website); *In re Blue Apron Holdings, Inc. Sec. Litig.*, No. 17-CV-04846-NGG-PK, 2021 WL 345790, at *3 (E.D.N.Y. Feb. 1, 2021) (notice included emailed summary notice, mailed postcard notice, disseminating summary notice, and website); *In re GTT Commc'ns, Inc. Sec. Litig.*, No. 2:21-CV-00270-DOC-AS, 2021 WL 6618727, at *3 (C.D. Cal. Dec. 6, 2021) (notice included emailed links to long notice and claim form, mailed postcard notice, dissemination of summary notice, and website). Moreover, the proposed notice program satisfies due process because it includes both individual notice and general publication.

*See, e.g., In re Marsh & McLennan Cos., Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *23–24 (S.D.N.Y. Dec. 23, 2009).

Rule 23(h)(1) requires that "[n]otice of the motion [for attorneys' fees] must be served on all parties and, for motions by class counsel, directed to class members in a reasonable manner." Fed. R. Civ. P. 23(h)(1). The Notice alerts Class Members that Class Counsel will apply to the Court for attorneys' fees of up to one third of the Settlement Amount, reimbursement of expenses of up to $850,000, and the awards to Plaintiffs, all to be paid from the Settlement Fund.

The proposed form and manner of providing notice to Class Members are the best practicable methods under the circumstance and satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7).

## V. PROPOSED SCHEDULE OF EVENTS

Plaintiffs propose the following procedural schedule as set forth in the proposed Preliminary Approval Order, paragraphs of which are referenced in the chart. This schedule tracks those used in similar class action settlements and provides due process for potential Class Members with respect to their rights concerning the Settlement. If this schedule is not convenient for the Court, Plaintiffs request the Court use the same or greater intervals between each event listed to allow sufficient time to comply with the Preliminary Approval Order.

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | At least 100 days from Preliminary Approval Order (¶3) |
| Emailing link to Settlement webpage with Long Notice and Proof of Claim; Mailing the Postcard Notice | Within 20 Business Days following entry of the Preliminary Approval Order (¶10) |
| Posting the Stipulation; Preliminary Approval Order; Long Notice; and Proof of Claim on the Settlement website. | Within 16 calendar days following entry of the Preliminary Approval Order (¶13) |
| Publication of the Summary Notice. | Within 10 calendar days from emailing link to Long Notice/mailing Postcard Notice (¶14) |

| Plaintiffs to file papers in support of the Settlement, the Plan, and motion for attorneys' fees and expenses. | No later than 28 days prior to Settlement Hearing (¶25) |
|---|---|
| Deadline for requests for exclusion and for objections | No later than 21 days prior to Settlement Hearing (¶¶18, 22) |
| Deadline for Proof of Claims. | No later than 30 days prior to Settlement Hearing (¶16(a)) |
| Plaintiffs to file reply papers in support of the Settlement, the Plan, and application for attorneys' fees and expenses. | No later than 14 days prior to Settlement Hearing (¶26) |

## VI.   CONCLUSION

For the foregoing reasons, the Court should enter the proposed Preliminary Approval Order, which will: (1) preliminarily approve the Settlement as set forth in the Stipulation; (2) approve the Notice Plan and direct dissemination of the Notice to potential Class Members; and (3) set a Settlement Hearing date to consider final approval of the Settlement and related matters.

Dated: February 3, 2023                      Respectfully submitted,

                                             **THE ROSEN LAW FIRM, P.A.**

                                             By: /s/ *Phillip Kim*
                                             Phillip Kim
                                             Laurence M. Rosen
                                             Joshua Baker
                                             275 Madison Ave., 40th Floor
                                             New York, New York 10016
                                             Tel: (212) 686-1060
                                             Fax: (212) 202-3827
                                             Email: pkim@rosenlegal.com
                                             Email: lrosen@rosenlegal.com
                                             Email: jbaker@rosenlegal.com

                                             *Class Counsel for Plaintiffs and the Class*

                                             **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
                                             Matthew M. Guiney
                                             270 Madison Avenue
                                             New York, New York 10016
                                             Tel: (212) 545-4600

Fax: (212) 686-0114
Email: Guiney@whafh.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 3, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

By: <u>*/s/Phillip Kim*</u>