# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA-BCM <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: All Actions | |

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION <br> <u>FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT</u>

## TABLE OF CONTENTS

I.  PRELIMINARY STATEMENT ................................................................................... 1

II.  SUMMARY OF THE LITIGATION AND SETTLEMENT ........................................... 2

    A.  Procedural History ......................................................................................... 2

    B.  Terms of the Settlement ................................................................................... 5

        1.  Cash Consideration and Release ........................................................... 5

        2.  Notice to the Class ................................................................................. 5

        3.  Exclusions and Objections ..................................................................... 6

        4.  The Plan of Allocation .......................................................................... 6

III.  ARGUMENT ............................................................................................................. 7

    A.  The Court Should Grant Final Approval of the Settlement ....................................... 7

        1.  The Settlement is Presumptively Fair Because it Resulted From Arms-Length Negotiations and is Not the Product of Collusion ...................... 7

        2.  Application of the *Grinnell* Factors Supports the Final Approval of the Settlement as Fair, Adequate, and Reasonable ................................................. 10

            a.  The Case is Complex and Continued Litigation Will be Protracted and Costly ............................................................................... 11

            b.  The Reaction of the Class Supports Final Approval ............................... 13

            c.  Plaintiffs and Class Counsel Were Sufficiently Informed at This Late Stage of the Proceedings ................................................... 13

            d.  Plaintiffs Faced Risks to Establishing Liability and Damages ............... 14

            e.  The Risks of Maintaining Class Action Status Through Trial ............... 16

            f.  The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks ................................................... 17

        3.  The Settlement Satisfies the Remaining Rule 23(e) Factors ........................... 19

            a.  Attorneys' Fees ................................................................................ 19

            b.  With the Exception of a Supplemental Agreement About a Termination Threshold, the Parties Have No Side Agreements ............ 21

    B.  The Court Should Approve the Plan of Allocation ................................................. 21

    C.  The Court Should Approve the Notice Disseminated to the Class as Satisfying the Requirements of Rule 23 and Due Process ....................................... 23

IV.  CONCLUSION ........................................................................................................ 25

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Arbuthnot v. Pierson*,
   607 F. App'x 73 (2d Cir. 2015) ........................................................................... 11, 24

*Cagan v. Anchor Sav. Bank FSB*,
   No. CV-88-3024, 1990 WL 73423 (E.D.N.Y. May 22, 1990) ................................. 18

*Christine Asia Co. v. Yun Ma*,
   No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ................ 15, 21, 22

*City of Detroit v. Grinnell Corp.*,
   495 F.2d 448 (2d Cir. 1974) ........................................................................... passim

*City of Providence v. Aeropostale, Inc.*,
   No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) ...................... 9, 11

*D'Amato v. Deutsche Bank*,
   236 F.3d 78 (2d Cir. 2001) ..................................................................................... 8

*Dura Pharms., Inc. v. Broudo*,
   544 U.S. 336 (2005) ............................................................................................. 23

*Evans v. Jeff D.*,
   475 U.S. 717 (1986) ............................................................................................... 7

*Granada Invs., Inc. v. DWG Corp.*,
   962 F.2d 1203 (6th Cir. 1992) .............................................................................. 19

*Hammon v. Barry*,
   752 F. Supp. 1087 (D.D.C. 1990) ......................................................................... 13

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ..................... 21

*Hicks v. Stanley*,
   No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ............... 12

*In re Agent Orange Prod. Liab. Litig.*,
   611 F. Supp. 1396 (E.D.N.Y. 1985) ..................................................................... 19

*In re Alloy, Inc. Sec. Litig.*,
   No. 03 CIV.1597(WHP), 2004 WL 2750089 (S.D.N.Y. Dec. 2, 2004) ................... 12

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001)................................................................. 16

*In re AOL Time Warner, Inc.*,
    No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................... 11, 12, 14

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    909 F. Supp. 2d 259 (S.D.N.Y. 2012)........................................................... 11, 13, 17

*In re Biolase, Inc. Sec. Litig.*,
    No. SACV131300JLSFFMX, 2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ...................... 23

*In re China MediaExpress Holdings, Inc. S'holder Litig.*,
    No. 11-CV-0804 (VM), 2015 WL 13639423 (S.D.N.Y. Sept. 18, 2015) ................................ 20

*In re China Med. Corp. Sec. Litig.*,
    No. 8:11-1061 JLS (ANX), 2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................ 10

*In re Citigroup Inc. Bond Litig.*,
    296 F.R.D. 147 (S.D.N.Y. 2013) ......................................................................... 8, 21

*In re Citigroup Inc. Sec. Litig.*,
    965 F. Supp. 2d 369 (S.D.N.Y. 2013)................................................................... 11

*In re Datatec Sys., Inc. Sec. Litig.*,
    No. 04-CV-525 (GEB), 2007 WL 4225828 (D.N.J. Nov. 28, 2007)........................................ 23

*In re EVCI Career Colleges Holding Corp. Sec. Litig.*,
    No. 05 CIV 10240 CM, 2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...................................... 7

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
    343 F. Supp. 3d 394 (S.D.N.Y. 2018)............................................................... 8, 17, 18

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ............................... 17

*In re Gilat Satellite Networks, Ltd.*,
    No. CV-02-1510 CPS SMG, 2007 WL 2743675 (E.D.N.Y. Sept. 18, 2007)........................... 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
    225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 14, 15, 16, 22

*In re IMAX Sec. Litig.*,
    283 F.R.D. 178 (S.D.N.Y. 2012) ................................................................ 10, 14, 22

*In re MetLife Demutualization Litig.*,
    689 F. Supp. 2d 297 (E.D.N.Y. 2010) ................................................................... 19

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
 187 F.R.D. 465 (S.D.N.Y. 1998) ................................................................. 13

*In re PaineWebber Ltd. P'ships Litig.*,
 171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................. 16

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
 991 F. Supp. 2d 437 (E.D.N.Y. 2014) ......................................................... 20

*In re Sony Corp. SXRD*,
 448 F. App'x 85 (2d Cir. 2011) ................................................................... 10

*In re Tremont Sec. Law, State Law & Ins. Litig.*,
 No. 08-CV-11117, 2015 WL 5333494 (S.D.N.Y. Sept. 14, 2015).......................... 21

*In re Warner Commc'ns. Sec. Litig.*,
 618 F. Supp. 735 (S.D.N.Y. 1985) .............................................................. 14

*In re WorldCom, Inc. Sec. Litig.*,
 388 F. Supp. 2d 319 (S.D.N.Y. 2005)........................................................... 22

*Kommer v. Ford Motor Co.*,
 No. 117CV0296LEKDJS, 2020 WL 7356715 (N.D.N.Y. Dec. 15, 2020)................. 12

*Maley v. Del Glob. Techs. Corp.*,
 186 F. Supp. 2d 358 (S.D.N.Y. 2002)........................................................... 14

*Marsh & McLennan*,
 2009 WL 5178546 .................................................................................... 22

*Morris v. Affinity Health Plan, Inc.*,
 859 F. Supp. 2d 611 (S.D.N.Y. 2012)........................................................... 18

*Olden v. LaFarge Corp.*,
 472 F. Supp. 2d 922 (E.D. Mich. 2007)........................................................ 13

*Pearlstein v. BlackBerry Ltd.*,
 No. 13CIV7060CMKHP, 2022 WL 4554858 (S.D.N.Y. Sept. 29, 2022)................. 10

*Rodriguez v. CPI Aerostructures, Inc.*,
 No. 20CV982ENVCLP, 2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)...................... 7

*Strougo v. Bassini*,
 258 F. Supp. 2d 254 (S.D.N.Y. 2003)........................................................ 7, 13

*Trief v. Dun & Bradstreet Corp.*,
 840 F. Supp. 277 (S.D.N.Y. 1993) ................................................................ 8

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)............................................................................ passim

*Yang v. Focus Media Holding Ltd.*,
   No. 11 CIV. 9051 CM GWG, 2014 WL 4401280 (S.D.N.Y. Sept. 4, 2014) ............................ 8

**Statutes**

15 U.S.C. §78u-4(a)(7) ................................................................................... 23, 25

15 U.S.C. § 78u-4(a)(4) ........................................................................................ 20

**Rules**

Fed. R. Civ. P. 23 ................................................................................... 23, 24, 25

Fed. R. Civ. P. 23(c)(2) ......................................................................................... 16

Fed. R. Civ. P. 23(c)(2) ......................................................................................... 23

Fed. R. Civ. P. 23(c)(2)(B) .................................................................................... 24

Fed. R. Civ. P. 23(e) ......................................................................................... 7, 19

Fed. R. Civ. P. 23(e)(1) .................................................................................... 23, 24

Fed. R. Civ. P. 23(e)(2) .......................................................................................... 7

Fed. R. Civ. P. 23(e)(2)(C)(ii) ............................................................................... 24

Fed. R. Civ. P. 23(e)(2)(C)(iii) ......................................................................... 19, 20

Fed. R. Civ. P. 23(e)(2)(C)(iv) ............................................................................... 21

Fed. R. Civ. P. 23(e)(2)(D) .................................................................................... 21

## I.     PRELIMINARY STATEMENT

On February 21, 2023, the Court preliminarily approved the Settlement of this Action as fair, reasonable, and adequate.[1] Dkt. No. 357 ("Preliminary Approval Order"). Through the Court-approved Claims Administrator, Plaintiffs timely executed the notice program as the Court ordered. To date, no Class Members have filed an objection to any aspect of the Settlement, and no Class Members have submitted a valid request for exclusion from the Class. Class Representatives Shipco Transport Inc. ("Shipco") and E-Global Trade and Finance Group, Inc. ("E-Global, and together with Shipco, "Plaintiffs") now move for final approval of the Settlement, releasing Claims against all Released Parties in exchange for a cash payment of $6,500,000.

The Settlement resolves this litigation, between Plaintiffs and Defendants Global Brokerage, Inc. f/k/a FXCM, Inc. ("FXCM," or the "Company"), Dror Niv, and William Ahdout (collectively, "Defendants"), that has continued for more than six years.[2] The Settlement is the product of arms-length negotiations after mediation with neutral Jed Melnick of JAMS, including the exchange of detailed mediation statements and the parties' participation in two separate mediation sessions at different stages of the litigation, finally resulting in the parties accepting a mediator's proposal just weeks before trial was scheduled to commence. These arms-length negotiations among experienced counsel with a neutral mediator, along with the positive reaction of the Class render the Settlement presumptively fair.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated February 1, 2023 (Dkt. No. 352) ("Stipulation").

[2] The Stipulation provides for the resolution of all claims brought by Shipco, E-Global, and the Class in this Action. Defendants and Lead Plaintiff 683 Capital Partners, LP ("683 Capital") have entered into a separate confidential agreement (not requiring the Court's approval) to resolve the individual claims of 683 Capital, such that final approval of the proposed Settlement discussed herein will resolve all remaining claims in the Action.

In advance of the Settlement, Plaintiffs, through Class Counsel, thoroughly investigated Plaintiffs' claims and zealously represented the Class, defeating Defendants' motion to dismiss, obtaining certification of the Class, completing extensive fact and expert discovery, defeating Defendants' motions for summary judgment and to exclude the testimony of Plaintiffs' experts, and filing a pretrial memorandum and motions *in limine* on the doorstep of trial. While Plaintiffs believe that they would be able to prove their claims at trial, Defendants have denied and continue to deny liability and damages. Even at this late stage of the litigation Plaintiffs faced significant challenges in obtaining a full judgment on their claims, including defeating Defendants' motions *in limine*, prevailing at trial on complex securities fraud claims, prevailing on Plaintiffs' expert's view of the full measure of damages, and prevailing on the expected post-trial motions and appeal. Thus, even if Plaintiffs were to prevail at trial, absent the Settlement there is no guarantee the Class would have recovered as much, or anything at all.

For the following reasons, therefore, this Court should approve the Settlement as fair, reasonable, and adequate, and it should likewise approve the Plan of Allocation.

## II.    SUMMARY OF THE LITIGATION AND SETTLEMENT

### A.    Procedural History

On February 7, 2017, Tony Khoury filed the first of four related shareholder actions against Defendants and Robert Lande ("Lande"), alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934. Dkt. No. 1. By Order dated May 3, 2017, the Court consolidated the related actions, appointed 683 Capital and Shipco as Lead Plaintiffs and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 47. The Lead Plaintiffs filed their Consolidated Securities Class Action Complaint on June 19, 2017. Dkt. No. 48 ("FAC"). Defendants and Lande moved to dismiss the FAC on August 3, 2017. Dkt. No. 88. The Court granted the motion to dismiss without prejudice on March 1, 2017. Dkt. No. 108. Plaintiffs then filed their Second Amended

Consolidated Securities Class Action Complaint ("SAC") on April 6, 2018. Dkt. No. 111. Defendants and Lande moved to dismiss the SAC on May 7, 2018. Dkt. No. 117. On March 28, 2019, the Court granted in part and denied in part Defendants' motion to dismiss the SAC, dismissing Lande from the Action. Dkt. No. 135. Defendants filed their answer to the SAC on May 13, 2019. Dkt. No. 139.

On January 6, 2020, Lead Plaintiffs and Sergey Regukh moved for class certification and Appointment of Class Representatives and Class Counsel. Dkt. No. 149. On April 13, 2020, Plaintiffs filed an amended motion for class certification, which was substantively identical but substituted E-Global for Sergey Regukh as a putative class representative. Dkt. Nos. 174-75. Plaintiffs also subsequently filed their Third Amended Consolidated Securities Class Action Complaint ("TAC") on April 17, 2020. Dkt. No. 181. Defendants filed their answer to the TAC on May 21, 2020. Dkt. No. 183. The amended class certification motion was assigned to Magistrate Judge Barbara Moses for a report and recommendation (Dkt. No. 171), which Magistrate Judge Moses issued on March 18, 2021, after holding an evidentiary hearing. Dkt. No. 229. On March 23, 2021, the Court adopted Magistrate Judge Moses' report and recommendation, certifying a class of FXCM common stock purchasers, appointing Shipco and E-Global as Class Representatives, appointing The Rosen Law Firm, P.A. as Class Counsel, and denying certification as to the putative subclass of FXCM Notes purchasers. Dkt. No. 232. The Class certified by the Court, *id.*, comprises:

> All persons and/or entities that purchased or otherwise acquired publicly traded Global Brokerage, Inc., f/k/a FXCM Inc. ("FXCM") Class A common stock, during the period March 15, 2012 through February 6, 2017, both dates inclusive. Excluded from the Class are: (i) Defendants; (ii) current and former officers, employees, consultants and directors of FXCM and FXCM Holdings, LLC; (iii) siblings, parents, children, spouses, and household members of any person excluded under (i) and (ii); (iv) any entities affiliated with,

> controlled by, or more than 5% owned by, any person excluded under (i) through (iii); and (v) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iv).

After the Parties completed fact discovery and expert discovery, Defendants filed motions on September 9, 2021, to exclude Plaintiffs' experts from testifying, and for summary judgment on all of Plaintiffs' claims. Dkt. Nos. 237, 242, and 247. On August 17, 2022, after holding oral argument on Defendants' motions, the Court denied Defendants' motion for summary judgment, denied Defendants' motion to exclude the testimony of Plaintiffs' financial expert, and denied in part and granted in part Defendants' motion to exclude the testimony of Plaintiffs' accounting expert. Dkt. No. 291.

On September 7, 2022, the Court scheduled a jury trial to commence on February 13, 2023. Dkt. No. 319. On September 20, 2022, Defendants moved to certify part of the Court's decision denying summary judgment for interlocutory appeal, Dkt. No. 320, which Plaintiffs opposed. The Court denied Defendants' motion on October 31, 2022. Dkt. No. 327. On December 14, 2022, Plaintiffs submitted and filed the Parties' Joint Pretrial Order, Proposed Jury Instructions, Proposed *Voir Dire* Questions, and Proposed Verdict Form. Dkt. Nos. 330-332. On the same date, the Parties each filed respective pretrial memoranda and motions *in limine*. Dkt. Nos. 333-45.

On December 20, 2022, the Parties participated in a private mediation with Mr. Melnick, a well-respected mediator with experience mediating securities class actions.[3] During the mediation, Mr. Melnick proposed, and the Parties accepted, a settlement in principle to resolve this action. On December 23, 2022, the Parties executed a binding term sheet that set forth the material terms and obligations with respect to the settlement.

---

[3] The Parties had also participated in a full-day mediation with Mr. Melnick on September 30, 2020, which was unsuccessful.

On February 3, 2023, Plaintiffs filed their motion for preliminary approval of the Settlement, which included the Stipulation and proposed forms and methods of notice to Class Members. Dkt. Nos. 352-355. On February 21, 2023, the Court entered the Preliminary Approval Order, and set a Settlement Hearing for July 7, 2023, at 3:00 p.m. Dkt. No. 357.

**B.      Terms of the Settlement**

**1.      Cash Consideration and Release**

The Settlement provides for a payment of $6,500,000 in cash to the Class. If the Court grants final approval of the Settlement, Plaintiffs and the Class Members will forever release their claims against the Released Parties that were alleged or could have been alleged in this Action. Defendants will release any claims that could have been brought against the Releasing Parties related to the prosecution of this Action.

**2.      Notice to the Class**

Pursuant to the Preliminary Approval Order, the Court appointed Strategic Claims Services ("SCS") as Claims Administrator. SCS provided potential Class Members, brokers, and nominee holders with notice of the Settlement. *See* Declaration of Margery Craig, ¶¶3-12 ("Craig Decl."), attached as Exhibit 1 to the Declaration of Joshua Baker in Support of Motions for (1) Final Approval of Proposed Class Action Settlement and (2) Award of Attorneys' Fees, Reimbursement of Expenses and Awards to Plaintiffs ("Baker Decl."). The notice advised potential Class Members: (1) of the terms of the Settlement and Plan of Allocation; (2) that Plaintiffs, on behalf of Class Counsel and themselves, would seek: (a) a fee award not to exceed one-third of the Settlement Amount, or $2,166,666.67, (b) recovery of actual litigation expenses, not to exceed $850,000, (c) awards to Plaintiffs not to exceed $35,000 in total; and (3) informed potential Class Members: (a) how to exclude themselves from the Class or object to the Settlement or to the fee and expense requests, and (b) that any request for exclusion or objection to any aspect of the

Settlement or to the fee and expense requests must be filed with the Court and transmitted to counsel no later than June 16, 2023. Craig Decl., Exs. A-D.

To date, SCS has notified 61,306 potential Class Members either by mailed Postcard Notice or emailed a direct link to the Long Notice and Proof of Claim. Craig Decl. ¶8. The Claims Administrator also established and continues to maintain a website dedicated to the Settlement: https://www.strategicclaims.net/FXCM. *Id*. ¶12. The website provides a link for online claim filing and lists important deadlines. *Id*. The Claims Administrator also disseminated the Summary Notice over *GlobeNewswire* and *Investor's Business Daily*. *Id*. ¶10.

### 3.    Exclusions and Objections

The Preliminary Approval Order mandates that members of the Class must request exclusion from the Class no later than June 16, 2023. It also notifies Class Members that, and how, they may object to the Settlement or the requests for fees and expenses. Dkt. No. 357 ¶¶18-24. To date, not one Class Member has objected to any aspect of the Settlement, the Plan of Allocation, or the requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. Craig Decl. ¶14. Not one Class member has submitted a valid request for exclusion from the Settlement. *Id*. ¶13 and Ex. E. Plaintiffs will update the Court about requests for exclusion and respond to objections, if any are filed, in Plaintiffs' reply in further support of their motion for final approval.

### 4.    The Plan of Allocation

The Long Notice describes the Plan of Allocation in full detail. *See* Craig Decl., Ex. A (Long Notice) at 4-7. The Plan of Allocation fairly and reasonably distributes the Net Settlement Fund to Class Members consistent with the federal securities laws and principles of loss causation. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Class Members' *pro rata* share of the Net Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and award to Plaintiffs). *See id*.

### III.     ARGUMENT

#### A.     The Court Should Grant Final Approval of the Settlement

Rule 23(e) requires judicial approval of any class action settlement, which must be "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). It is within the "sound discretion of the district courts to appraise the reasonableness of [] settlements on a case-by-case basis." *Evans v. Jeff D.*, 475 U.S. 717, 742 (1986).[4] Public policy favors settlement, particularly in class actions. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) ("We are mindful of the 'strong judicial policy in favor of settlements, particularly in the class action context'"). Class actions readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of litigation. The settlement of complex cases also conserves scarce judicial resources. When evaluating a proposed settlement under Fed. R. Civ. P. 23(e), courts determine whether a settlement, taken as a whole, is fair, reasonable, and adequate, ensuring that it was not the product of collusion. *Id.*; *see also Rodriguez v. CPI Aerostructures, Inc.*, No. 20CV982ENVCLP, 2023 WL 2184496, at *8 (E.D.N.Y. Feb. 16, 2023).

##### 1.     The Settlement is Presumptively Fair Because it Resulted From Arms-Length Negotiations and is Not the Product of Collusion

A settlement is presumptively fair where it was the product of arms-length negotiations among capable counsel who are well-experienced in class action litigation arising under the federal securities laws. *See, e.g., In re EVCI Career Colleges Holding Corp. Sec. Litig.*, No. 05 CIV 10240 CM, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007); *Strougo v. Bassini*, 258 F. Supp. 2d 254, 257 (S.D.N.Y. 2003). Indeed, "absent evidence of fraud or overreaching, [courts] consistently have

---

[4] Emphasis is added and internal citations and quotations are omitted unless otherwise indicated.

refused to act as Monday morning quarterbacks in evaluating the judgment of counsel." *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993).

Accordingly, this Court may presume that the Settlement is fair, adequate, and reasonable as the product of "arms-length negotiations between experienced, capable counsel." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 155 (S.D.N.Y. 2013) (quoting *Wal-Mart*, 396 F.3d at 116). Because counsel are "most closely acquainted with the facts of the underlying litigation," courts give "great weight" to counsel's settlement recommendations, especially when negotiations are facilitated by an experienced, third-party mediator. *See In re Facebook, Inc. IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 408-09 (S.D.N.Y. 2018) (a settlement procedurally fair where it was "based on the suggestion by a neutral mediator"), *aff'd*, 822 F. App'x 40 (2d Cir. 2020); *see also D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (mediator's involvement in settlement negotiations "helps to ensure that the proceedings were free of collusion and undue pressure"); *Yang v. Focus Media Holding Ltd.*, No. 11 CIV. 9051 CM GWG, 2014 WL 4401280, at *5 (S.D.N.Y. Sept. 4, 2014) ("participation of this highly qualified mediator strongly supports a finding that negotiations were conducted at arms-length and without collusion.").

Before the final mediation and settlement negotiations, Class Counsel had thoroughly investigated and litigated Plaintiffs' claims, including reviewing public news reports, analyst reports, and SEC filings about FXCM, reviewing the National Futures Association's and U.S. Commodity Futures Trading Commission's respective regulatory complaints against, and settlements with, Defendants, using an independent investigator to interview former FXCM employees, filing an amended complaint, opposing Defendants' motion to dismiss the first amended complaint, reviewing the Court's decision granting the motion to dismiss without prejudice, filing a second amended complaint, successfully opposing Defendants' motion to

dismiss the second amended complaint, moving for and obtaining class certification after an evidentiary hearing, reviewing tens of thousands of documents produced by Defendants and third parties in discovery, deposing over a dozen fact witnesses, obtaining expert reports, deposing Defendants' experts, successfully opposing Defendants' motions for summary judgment and to exclude testimony from Plaintiffs' experts, filing a pretrial memorandum and motions *in limine*, and preparing for trial. The Parties attended a mediation session with Mr. Melnick in September 2020, which entailed exchanging extensive mediation briefs and exhibits, as they litigated Plaintiffs' motion for class certification. The Parties were unable to reach an agreement at that time. In December 2022, after the Parties had submitted pretrial memoranda and motions *in limine*, the Parties attended a second mediation session with Mr. Melnick. During the second mediation, the Parties accepted a mediator's proposal to reach a settlement in principle to resolve this action.

Mr. Melnick has considerable experience mediating complex, securities class actions. Baker Decl, Exhibit 8 (Declaration of Jed Melnick, Esq.) ¶¶4-6. Prior to the first mediation session, the Parties exchanged mediation statements which included, among other things, their respective views on the merits of the Action. That mediation session ended without an agreement. *Id*. ¶¶10-12. In December 2022, the parties retained Mr. Melnick once again for a second mediation session, which resulted in an agreement in principle to resolve the Class claims for $6,500,000, alongside a confidential settlement of the individual claims of 683 Capital. *Id*. ¶¶10-12. Mr. Melnick's declaration attests to the integrity of the mediation process and recommends the Settlement as being in the best interests of the Class. *Id.* ¶¶13-14. Mr. Melnick's extended and persistent involvement in arms-length settlement negotiations between experienced counsel support the presumption that the Settlement is fair, adequate, and reasonable. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *4 (S.D.N.Y. May 9, 2014)

("A strong initial presumption of fairness attaches to a proposed settlement if it is reached by experienced counsel after arms-length negotiations"); *In re China Med. Corp. Sec. Litig.*, No. 8:11-1061 JLS (ANX), 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (that settlement was reached as a result of mediation before Mr. Melnick favors approval).

### 2. Application of the *Grinnell* Factors Supports the Final Approval of the Settlement as Fair, Adequate, and Reasonable

With the presumption of fairness, this Court will evaluate the Settlement, "examin[ing] the fairness, adequacy, and reasonableness of a class settlement according to the *Grinnell* factors," including:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Wal-Mart*, 396 F.3d at 117 (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000)); *Pearlstein v. BlackBerry Ltd.*, No. 13CIV7060CMKHP, 2022 WL 4554858, at *3 (S.D.N.Y. Sept. 29, 2022).

While courts consider each *Grinnell* factor, "not every factor must weigh in favor of settlement[. R]ather court[s] should consider the totality of these factors in light of the particular circumstances." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012). "[W]hen evaluating a settlement agreement, the court is not to substitute its judgment for that of the parties, nor is it to turn consideration of the adequacy of the settlement into a trial or a rehearsal of the trial." *In re Sony Corp. SXRD*, 448 F. App'x 85, 87 (2d Cir. 2011). Plaintiffs submit that the proposed

settlement is fair, reasonable and adequate when measured under the foregoing criteria and should be approved by this Court.

### a. The Case is Complex and Continued Litigation Will be Protracted and Costly

In general, "the more complex, expensive, and time consuming the future litigation, the more beneficial settlement becomes as a matter of efficiency to the parties and to the Court." *In re Citigroup Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 381–82 (S.D.N.Y. 2013). This is particularly true here, as "securities class actions are by their very nature complicated and district courts in this Circuit have 'long recognized' that securities class actions are 'notably difficult and notoriously uncertain' to litigate." *Aeropostale*, 2014 WL 1883494, at *5 (quoting *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 909 F. Supp. 2d 259, 266 (S.D.N.Y. 2012)), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). This Action is no exception. While Plaintiffs believe that their claims are meritorious, uncertainty in litigation always remains.

Even at this advanced stage, further litigation would have required substantial additional expenditures of time and resources, with a material risk of a lower recovery, if any. *See In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *9 (S.D.N.Y. Apr. 6, 2006) ("In addition to the complex issues of fact involved in this case, the legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages"). Here, the Parties were preparing for a lengthy 12-day trial. During the trial, Plaintiffs would have had to rely primarily on documents and deposition testimony to establish Defendants' liability, while each of the likely fact witnesses were former employees of FXCM, or of Effex Capital LLC ("Effex")—the entity that Plaintiffs allege was an undisclosed related party to FXCM. A material risk existed that a jury would credit Defendants' and the witnesses' version of the facts and find that Plaintiffs failed to establish the falsity of

Defendants' alleged misrepresentations and omissions concerning FXCM's relationship with Effex. Moreover, Defendants and their expert have strenuously challenged Plaintiffs' theory of loss causation and damages, setting up a "battle of the experts" that could jeopardize some or all of Plaintiffs' claimed damages. As a result of such difficulties and uncertainties, "securities class action litigation is often resolved by settlement, which circumvents the difficulty and uncertainty inherent in long, costly trials." *AOL Time Warner, Inc.*, 2006 WL 903236, at *8.

In the absence of the Settlement, Plaintiffs would have to prepare for and prevail at trial, including the several motions *in limine* already filed, and then prevail on the inevitable post-trial motions and appeals. Throughout each additional step of litigation, Plaintiffs would continue to face a robust defense from experienced and capable counsel. *See In re Alloy, Inc. Sec. Litig.*, No. 03 CIV.1597(WHP), 2004 WL 2750089, at *2 (S.D.N.Y. Dec. 2, 2004) (securities fraud issues are "likely to be litigated aggressively, at substantial expense to all parties").

Even if Plaintiffs prevailed in securing a larger judgment after a trial, the additional delay through post-trial motions and the appellate process could deny the Settlement Class any recovery for years, reducing its value in comparison to the present proposed recovery. *See Kommer v. Ford Motor Co.*, No. 117CV0296LEKDJS, 2020 WL 7356715, at *4 (N.D.N.Y. Dec. 15, 2020) ("even if a shareholder or class member was willing to assume all the risks of pursuing . . . further litigation [.]. . . the passage of time would introduce yet more risks . . . and would in light of the time value of money, make future recoveries less valuable than this current recovery"). Accordingly, material risk exists that further litigation might yield a smaller recovery, years in the future—or no recovery at all. *See*, *e.g.*, *Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005) ("Further litigation would necessarily involve further costs; justice may be best served with a fair settlement today as opposed to an uncertain future settlement or trial of the

action."). The expense, duration, and difficulties of the Action were it to proceed through trial and appeals weigh in favor of final approval of the Settlement.

> **b.      The Reaction of the Class Supports Final Approval**

Courts repeatedly hold that "one indication of the fairness of a settlement is the lack of or small number of objections." *Strougo*, 258 F. Supp. 2d at 258 (citing *Hammon v. Barry*, 752 F. Supp. 1087, 1093 (D.D.C. 1990)); *see also In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 478–80 (S.D.N.Y. 1998) (approving settlement where "minuscule" percentage of the class objected); *Grinnell,* 495 F.2d at 462 (approving settlement where 20 objectors appeared from group of 14,156 claimants); *Olden v. LaFarge Corp.*, 472 F. Supp. 2d 922 (E.D. Mich. 2007) (approving settlement where 82 objectors appeared from a class of 11,000 people).

To date, no Class Members have submitted valid requests for exclusion or objected to any aspect of the Settlement. Craig Decl. ¶13-14.[5] The absence of objections to the Settlement or valid requests for exclusion from the Class supports final approval of the Settlement. Plaintiffs will address any further requests for exclusion or objections in their Reply.

> **c.      Plaintiffs and Class Counsel Were Sufficiently Informed at This Late Stage of the Proceedings**

Courts also evaluate whether Plaintiffs and Class Counsel were sufficiently informed about the merits of the claims and defenses and the value thereof when they entered into the Settlement. *Bear Stearns*, 909 F. Supp. 2d at 267. Considering the stage of the proceedings," *Wal-Mart*, 396 F.3d at 117, discovery need not be comprehensive so long as the Court is satisfied that Plaintiffs

---

[5] SCS received one request for exclusion that was insufficient and invalid pursuant to the Preliminary Approval Order due to, among other things, a lack of transaction information and documentation. SCS sent instructions on how to submit a valid exclusion request to the potential Class Member who transmitted the defective request to SCS. To date, the potential Class Member has not responded. Craig Decl. ¶13 and Ex. E.

"'have engaged in sufficient investigation of the facts to enable the Court to intelligently make …

an appraisal of the settlement'." *AOL Time Warner*, 2006 WL 903236, at *10; *IMAX*, 283 F.R.D.

at 190 (The "sufficiently informed" factor is "not an overly burdensome one to achieve.").

Plaintiffs achieved this Settlement after nearly six years of litigation, including multiple

motions attacking the pleadings, a motion for class certification and an evidentiary hearing,

significant fact and expert discovery including a review of tens of thousands of documents, over a

dozen fact depositions, and multiple expert reports and depositions, defeating motions for

summary judgment and to exclude Plaintiffs' experts, and negotiating pretrial documents and

submitting pretrial memoranda and motions *in limine*. Plaintiffs also prepared a mediation

statement and attended two separate mediations. *See* Baker Decl. ¶¶11-33. *See In re Warner*

*Commc'ns. Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985), *aff'd*, 798 F.2d 35 (2d Cir. 1986)

(settlement approved where the parties "have a clear view of the strengths and weaknesses of their

cases"). Prior to entering into the Settlement, therefore, Class Counsel and Plaintiffs had a

thorough understanding of the strengths and weaknesses of the case, further supporting final

approval of the Settlement.

### d.   Plaintiffs Faced Risks to Establishing Liability and Damages

In evaluating fairness, courts consider the "risks of establishing liability [and] the risks of

establishing damages." *Grinnell*, 495 F.2d at 463; *Wal-Mart*, 396 F.3d at 117. Courts should not

"adjudicate the disputed issues or decide unsettled questions; rather, the Court need only assess

the risks of litigation against the certainty of recovery under the proposed settlement." *In re Glob.*

*Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 459 (S.D.N.Y. 2004); *AOL Time Warner*, 2006

WL 903236, at *11 (same). In other words, "the Court should balance the benefits afforded to

members of the Class and the immediacy and certainty of a substantial recovery for them against

the continuing risks of litigation." *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 364

(S.D.N.Y. 2002). Courts should, therefore, "approve settlements where plaintiffs would have faced significant legal and factual obstacles to proving their case." *Global Crossing*, 225 F.R.D. at 459.

"The difficulty of establishing liability is a common risk of securities litigation." *AOL Time Warner*, 2006 WL 903236, at *11. *See also Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *10 (S.D.N.Y. Oct. 16, 2019). Here, Defendants deny most of Plaintiffs' factual allegations and any liability, raising numerous affirmative defenses. *See* Dkt. No. 183 (Answer). Defendants presented an entirely different version of the facts alleged, supported by former employees of FXCM and Effex—the entity which Plaintiffs allege was an undisclosed related party to FXCM. Defendants did not concede a single element of Plaintiffs' claims going into trial, thus Plaintiffs would bear the burden and risk of establishing each element of securities fraud as to each Defendant. While Plaintiffs survived Defendants' motion for summary judgment, they faced a difficult task of convincing a jury to find that their documentary evidence contradicted Defendants' version of the story and was sufficient to establish liability. Accordingly, trial posed a material risk to the Class of recovering nothing. If a jury found against Plaintiffs at trial, the Settlement Class would recover nothing after expending significantly more time, expense, and judicial resources.

Moreover, the Second Circuit might reverse a favorable jury verdict on appeal. In that case, in addition to all the costs of taking a case through trial, Plaintiffs would have also expended material additional resources defending the verdict in the Second Circuit only to recover nothing.

Even if Plaintiffs were to prove Defendants' liability, this case has already demonstrated how proving damages would be complex, requiring technical expert testimony from financial economist experts from both sides who disagree as to the range or existence of recoverable damages. Indeed, at multiple stages of this litigation including class certification, summary

judgment, and a motion to exclude Plaintiffs' damages expert, Defendants have attacked Plaintiffs' proposed damages methodology and would assert at trial that per share damages are materially lower than the per share amount Plaintiffs seek to prove, or are entirely unprovable. These arguments would also significantly impact Plaintiffs' current estimate of Class-wide damages, a material data point in the determination to settle at this time. *See* Baker Decl. ¶44. Before verdict, neither the Parties nor a court can predict which expert's testimony or methodology the jury would adopt, and thus courts recognize the need for compromise. *See generally In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 426–27 (S.D.N.Y. 2001) (approving settlement based, in part, on counsel's recognizing that a jury might accept defendants' expert and eliminate or reduce damages materially); *see also In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 129 (S.D.N.Y. 1997), *aff'd*, 117 F.3d 721 (2d Cir. 1997). Moreover, Class Members must make individual claims. With over six years having elapsed since the allegations in question—and eleven years since the beginning of the Class Period—the pool of potential Class Members itself may winnow as memories and records of purchases and sales fade.

Accordingly, the material risks of Plaintiffs failing to establish liability or the full amount of per share damages and the Class recovering less than the Settlement Amount or even nothing at all, favors final approval of the Settlement, which eliminates these risks.

### e.    The Risks of Maintaining Class Action Status Through Trial

The Court has already certified the Class. Dkt. No. 232. However, a material risk existed in that Defendants could still have moved to decertify the class upon some unforeseen development at trial. *See* Fed. R. Civ. P. 23(c)(2); *Global Crossing*, 225 F.R.D. at 460 ("[E]ven if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage"). The uncertainty of maintaining class certification thus supports approval of the Settlement.

**f.     The Settlement Amount is Reasonable in Light of the Best Possible Recovery and Attendant Risks**

Courts typically analyze the last two *Grinnell* factors together. *See Grinnell*, 495 F.2d at 463. In so doing, courts "consider[] and weigh[] the nature of the claim, the possible defenses, the situation of the parties, and the exercise of business judgment in determining whether the proposed settlement is reasonable." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *20 (S.D.N.Y. Nov. 8, 2010) (quoting *Grinnell*, 495 F.2d at 462). A court's "determination of whether a given settlement amount is reasonable in light of the best possibl[e] recovery does not involve the use of a mathematical equation yielding a particularized sum." *Bear Stearns*, 909 F. Supp. 2d at 269. Instead, the Second Circuit has held "[t]here is a range of reasonableness with respect to a settlement—a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Wal-Mart*, 396 F.3d at 119.

Here, under the best-case scenario—assuming Plaintiffs overcome all the obstacles noted above at and beyond trial, and Defendants do not prevail on any of their arguments—Plaintiffs' expert's estimate of the maximum, potentially recoverable Class-wide damages is approximately $17,500,000. Baker Decl. ¶34. That maximum damages number is reached only if: (1) Plaintiffs establish Defendants' liability on all alleged misrepresentations and omissions at trial, (2) a jury credits Plaintiffs' expert's calculation of the full amount of per share damages, and (3) every potential Class Member that Plaintiffs' damages expert estimates purchased FXCM stock during the Class Period and held through the corrective disclosure submits a valid claim. Should Plaintiffs fail to establish liability or the full amount of per share damages, or if significantly fewer Class Members file claims than Plaintiffs' expert estimates, recoverable damages could be materially less than that maximum amount, or none at all. *See Facebook,* 343 F. Supp. 3d at 414 ("Because

Plaintiffs face serious challenges to establishing liability, consideration of Plaintiffs' best possible recovery must be accompanied by the risk of non-recovery").

In the context of those risks, the $6,500,000 cash Settlement still represents approximately 37% of the Class's best-case, maximum recoverable damages. *Id*. In light of the material risk that Plaintiffs and the Class might recover less, or nothing, without the Settlement, this Settlement is well within the range of reasonableness. *Grinnell*, 495 F.2d at 455 n.2 ("[T]here is no reason … why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery"); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 621 (S.D.N.Y. 2012) (granting final approval which amounted to 2% of potential recovery); *Cagan v. Anchor Sav. Bank FSB*, No. CV-88-3024, 1990 WL 73423, at *12–13 (E.D.N.Y. May 22, 1990) (granting final approval amounting to approximately 1.9% of best possible recovery).

According to Cornerstone Research, approximately 23% of securities class actions settled for less than $5 million in 2022, and that figure was 33% for 2013-2021. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements – 2022 Review and Analysis*, at 4.[6] The median recovery in cases such as this one, alleging Rule 10b-5 claims with maximum estimated damages under $25 million, was approximately 11.1% of estimated damages in 2022, and 17.4% between 2013-2021. *Id.* at 6. Between 2018-2022, securities class actions such as this one that settled after a ruling on motion for summary judgment recovered a median of 7.5% of estimated damages. *Id.* at 14. Thus, the amount of the Settlement as a percentage of the maximum possible damages recoverable shows it is a reasonable and adequate result for the Class.

---

[6] *Available at* https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf

In factually and legally complex securities class actions, responsible counsel cannot be certain that they will be able to obtain a judgment at or near the full amount of the class-wide damages that they will seek to prove at trial. The possibility that a class "might have received more if the case had been fully litigated is no reason not to approve the settlement." *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1206 (6th Cir. 1992). Money in Class Members' pockets now is more valuable than a speculative recovery that Class Members might obtain after a complex trial, undertaking the substantial risk that the Class may end up with nothing given the challenges that Plaintiffs face in establishing liability and damages. *See In re Agent Orange Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985) ("[M]uch of the value of a settlement lies in the ability to make funds available promptly.").[7]

For the foregoing reasons, the proposed Settlement is both procedurally and substantively fair, reasonable, and adequate, and in the Class's best interests. The *Grinnell* factors weigh in favor of granting final approval of the Settlement.

### 3.      The Settlement Satisfies the Remaining Rule 23(e) Factors

#### a.      Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As discussed in Plaintiffs' memorandum in support of the motion for an award of attorneys' fees, expenses, and awards to Plaintiffs, filed concurrently herewith, Class Counsel seek an award of attorneys' fees of one-third of the Settlement and reimbursement

---

[7] While there were no known significant barriers here to recovering a larger judgment, if Plaintiffs were to secure one, a defendant's ability to withstand a judgment greater than the settlement is generally not one of the determining factors in approving a settlement. *See In re MetLife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010) ("Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'").

for expenses incurred in litigating this Action. The notice program that this Court approved and that Class Counsel, through the Claims Administrator, duly executed fully discloses the maximum amount of fees and costs that Class Counsel and Plaintiffs would seek. *See, e.g.,* Craig Decl., Exs. A (Long Notice) and C (Postcard Notice).

As set out in the Notice, Class Counsel intends to seek an award of attorneys' fees of no more than one-third of the Settlement Amount, or $2,166,666.67, and reimbursement of litigation expenses in an amount not to exceed $850,000. This fee request is reasonable and in line with fees awarded in other class settlements approved in similar cases. "For example, it is very common to see 33% contingency fees in cases with funds of less than $10 million, and 30% contingency fees in cases with funds between $10 million and $50 million." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 445 (E.D.N.Y. 2014); *In re China MediaExpress Holdings, Inc. S'holder Litig.*, No. 11-CV-0804 (VM), 2015 WL 13639423, at *1 (S.D.N.Y. Sept. 18, 2015) (awarding attorneys' fees of 33.33% of settlement fund). The Long Notice, Postcard Notice, and Summary Notice each informed the Class of the maximum attorneys' fees and expenses that Plaintiffs would seek. No Class Member has objected. As such, the Settlement satisfies Rule 23(e)(2)(C)(iii).

Plaintiffs also request awards totaling $35,000 in connection with their efforts in stewarding the Action ($20,000 to Shipco and $15,000 to E-Global) pursuant to 15 U.S.C. § 78u-4(a)(4). Courts in this Circuit "routinely award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *In re Gilat Satellite Networks, Ltd.*, No. CV-02-1510 CPS SMG, 2007 WL 2743675, at *19 (E.D.N.Y. Sept. 18, 2007).

Plaintiffs, through Class Counsel, have detailed in the notice program the attorneys' fees and expenses and awards they seek. No member of the Class has objected. As such, the requests for compensation support approval of the Settlement.

### b.    With the Exception of a Supplemental Agreement About a Termination Threshold, the Parties Have No Side Agreements

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement. The Parties have agreed to a standard supplemental agreement which provides that if Class Members opt out of the Settlement such that the number of FXCM shares represented by those persons opting out equals or exceeds a certain threshold, Defendants shall have the option to terminate the Settlement. Stipulation ¶9.3. As is standard practice in securities class actions, while the supplemental agreement is identified in the Stipulation, the terms are kept confidential to avoid creating incentives for a small group of class members to opt out solely to leverage the threshold to exact an individual settlement. *See Christine Asia*, 2019 WL 5257534 at *15 ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement."); *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("The existence of a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair.").

### B.    The Court Should Approve the Plan of Allocation

The Court must also evaluate whether the Settlement treats Class Members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Class Member, including Plaintiffs. Courts preliminarily approve proposed plans of allocation if the proposed plan has a "reasonable, rational basis." *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 158 (S.D.N.Y. 2013). The Plan is fair, reasonable, and adequate because it does not treat Plaintiffs or any other Class Member preferentially. *In re Tremont Sec. Law, State*

*Law & Ins. Litig.*, No. 08-CV-11117, 2015 WL 5333494, at *6 (S.D.N.Y. Sept. 14, 2015), *aff'd in part, vacated in part*, 699 F. App'x 8 (2d Cir. 2017). In its Preliminary Approval Order, the Court preliminarily approved the Plan of Allocation, which was detailed in the Long Notice. Craig Decl., Ex. A at 4-7. The Plan of Allocation ensures that the Settlement treats Class Members, including Plaintiffs, equitably relative to one another. Plaintiffs now seek final approval of the Plan of Allocation for the purposes of administering the Settlement.

The Plan of Allocation "must be fair and adequate." *In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 (S.D.N.Y. 2005). "When formulated by competent and experienced counsel, a plan for allocation of net settlement proceeds need have only a reasonable, rational basis." *IMAX*, 283 F.R.D. at 192; *see also Christine Asia,* 2019 WL 5257534, at 15-16. A fair and rational plan may take into account "the relative strength and values of different categories of claims." *Global Crossing*, 225 F.R.D. at 462; *see also Marsh & McLennan*, 2009 WL 5178546, at *13 ("In determining whether a plan of allocation is fair, courts look largely to the opinion of counsel").

The Long Notice sets forth the proposed Plan of Allocation, Craig Decl., Ex. A at 4-7, which has a reasonable, rational basis. Class Counsel developed the Plan with the Claims Administrator and Plaintiffs' damages expert. Baker Decl. ¶37. The Plan of Allocation distributes the Net Settlement Fund equitably among Class Members who were injured by Defendants' alleged misconduct and who submit valid Claim Forms. *Id*. Each eligible Class Member who submits a valid Proof of Claim form will receive a *pro rata* distribution pursuant to the Plan. The Plan calculates a claimant's relative loss proximately caused by Defendants' alleged misrepresentations and omissions, based on factors such as when and at what prices the claimant purchased and sold FXCM common stock. The Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.* when shares are sold prior to revelation of the truth.

*Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 342 (2005) ("But if, say, the purchaser sells the shares before the relevant truth begins to leak out, the misrepresentation will not have led to any loss").

The Plan of Allocation closely tracks the form of plans of allocation commonly approved in similar securities class action settlements. In securities class actions, "plans that allocate money depending on the timing of purchases and sales of the securities at issue are common" because they tend to mirror the complaint's allegations. *In re Datatec Sys., Inc. Sec. Litig.*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *5 (D.N.J. Nov. 28, 2007); *see also In re Biolase, Inc. Sec. Litig.*, No. SACV131300JLSFFMX, 2015 WL 12720318, at *5 (C.D. Cal. Oct. 13, 2015) (finding a plan that awarded a pro rata share of the net settlement fund to be "a fair and reasonable method of distributing settlement proceeds").

If any funds remain after the initial distribution from the Net Settlement Fund to Authorized Claimants, SCS will conduct a second distribution to Authorized Claimants who would receive at least $10.00 from such a re-distribution as long as the second distribution is cost effective. Accordingly, it is likely that only a small amount of funds will remain in the Net Settlement Fund after such distribution(s). Any residual funds will be distributed to a non-profit charitable organization selected by Class Counsel.

To date, no Class Member has objected to the Plan of Allocation. Craig Decl. ¶14. Accordingly, the Court should approve the proposed Plan of Allocation.

### C. The Court Should Approve the Notice Disseminated to the Class as Satisfying the Requirements of Rule 23 and Due Process

The notice program, alerting the Class to their rights to file a claim or request exclusion, the right to object, and the consequences of any particular choice, complies with this Court's Preliminary Approval Order and satisfies Fed. R. Civ. P. 23(c)(2) and Rule 23(e)(1), the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4(a)(7), and due process.

Courts evaluate a notice program's compliance with Rule 23 and due process in terms of its reasonableness. Fed. R. Civ. P. 23(e)(1); *Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015). Notice is reasonable where it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Id.* at 73-74. Notice need not be perfect but only "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B) and 23(e)(2)(C)(ii). In its Preliminary Approval Order, the Court approved the notice program and its substance, (Dkt. No. 357 ¶¶10-15), and appointed SCS as Claims Administrator. *Id.* ¶8.

Under Class Counsel's direction, SCS executed the notice program exactly as the Court directed in the Preliminary Approval Order. SCS mailed more than 41,000 copies of the Court-approved Postcard Notice to potential Class Members and their nominees who could be identified with reasonable effort. Craig Decl. ¶6. In addition, one nominee sent over 19,000 email notifications to their customers, including direct links to the Notice and Claims form on the Settlement website. *Id.* ¶7. SCS also published the Court-approved Summary Notice online in *GlobeNewswire* and in print in *Investor's Business Daily*. *Id.* ¶10. SCS also published all information regarding the Settlement online on the Settlement website. *Id.* ¶12.

The Notice provided to the Class also provided all necessary information for Class Members to make an informed decision regarding the proposed Settlement. The notice "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings." *Arbuthnot*, 607 F. App'x at 73-74. The Notice gave Class Members all the information they needed to decide whether to opt out, object, or file a claim. It told Class Members, among other things: (1) the amount of the Settlement;

24

(2) why the parties propose the Settlement; (3) the estimated average recovery per damaged share; (4) the maximum amount of attorneys' fees and expenses that Class Counsel would seek; (5) Class Counsel's contact information; (6) that Class Members could object to the Settlement or exclude themselves from the Class, and the consequences thereof; and (7) the dates and deadlines for certain Settlement-related events. *See* PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice further explained that the Net Settlement Fund would be distributed to eligible Class Members who submit valid and timely claim forms under the Plan of Allocation as described in the Notice.

In sum, the Notice fairly apprised Class Members of their rights, is the best notice practicable under the circumstances, and complies with the Court's Preliminary Approval Order, Federal Rule of Civil Procedure 23, the PSLRA, and due process.

## IV.    CONCLUSION

For the forgoing reasons, the Court should grant final approval of the proposed Settlement, Plan of Allocation, and notice program as executed. The Court should enter the proposed Final Judgment previously filed as Exhibit B to the Stipulation (Dkt. No. 352-6).

Dated: June 9, 2023                    Respectfully submitted,

                                       **THE ROSEN LAW FIRM, P.A.**

                                       By: /s/*Joshua Baker*
                                       Phillip Kim
                                       Laurence M. Rosen
                                       Joshua Baker
                                       275 Madison Ave., 40th Floor
                                       New York, New York 10016
                                       Tel: (212) 686-1060
                                       Fax: (212) 202-3827
                                       Email: pkim@rosenlegal.com
                                       Email: lrosen@rosenlegal.com
                                       Email: jbaker@rosenlegal.com

                                       *Class Counsel for Plaintiffs and the Class*

25

**WOLF HALDENSTEIN ADLER FREEMAN &
HERZ LLP**
Matthew M. Guiney
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
Email: Guiney@whafh.com

*Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/Joshua Baker*