**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA-BCM <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION**
**FOR AN AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF LITIGATION**
**<u>EXPENSES, AND AWARDS TO PLAINTIFFS</u>**

## <u>TABLE OF CONTENTS</u>

I.  INTRODUCTION ................................................................................................................ 1

II.  CASE BACKGROUND ..................................................................................................... 3

III.  ARGUMENT ...................................................................................................................... 3

      A.  The Common Fund Doctrine Entitles Class Counsel to Attorneys' Fees and Reimbursement of Expenses from the Settlement Fund ........................................ 3

      B.  The Court Should Award Class Counsel a Reasonable Percentage of the Settlement Fund ................................................................................................... 4

      C.  The Requested Attorneys' Fees Are Reasonable ................................................. 5

            1.  The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method ................................................................ 5

            2.  A Lodestar Cross-Check Strongly Supports the Reasonableness of the Requested Attorneys' Fees ........................................................................ 6

      D.  The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable ........ 9

            1.  The Time and Effort Expended Support the Requested Fee ...................... 9

            2.  General and Specific Litigation Risks Support the Requested Fee .......... 10

            3.  The Complexity of the Action Supports the Fee ...................................... 14

            4.  The Quality of Representation Supports the Requested Fee .................... 14

            5.  The Amount of Attorneys' Fees in Relation to the Settlement ................ 17

            6.  Public Policy Considerations Support the Requested Fee ....................... 17

      E.  This Court Should Approve Reimbursement of Class Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained ............................................. 18

      F.  The Court Should Approve Compensatory Awards to Plaintiffs ........................ 20

IV.  CONCLUSION ................................................................................................................. 22

# **TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Blum v. Stenson*,
  465 U.S. 886 (1984)..........................................................................................4

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980)..........................................................................................3

*Burns v. FalconStor Software, Inc.*,
  No. 10 CV 4572 (ERK), 2014 WL 12917621 (E.D.N.Y. Apr. 11, 2014) ................8

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .....................................................................13

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............... 14, 20, 21

*City of Detroit v. Grinnell Corp.*,
  495 F.2d 448 (2d Cir. 1974)..............................................................................11

*City of Providence v. Aeropostale, Inc.*,
  No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494 (S.D.N.Y. May 9, 2014).............. 6, 14, 18

*Davis v. J.P. Morgan Chase & Co.*,
  827 F. Supp. 2d 172 (W.D.N.Y. 2011) .................................................................8

*Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*,
  925 F.3d 63 (2d Cir. 2019).................................................................................3

*Glickenhaus & Co. v. Household Int'l, Inc.*,
  787 F.3d 408 (7th Cir. 2015) ............................................................................13

*Goldberger v. Integrated Res., Inc.*,
  209 F.3d 43 (2d Cir. 2000)........................................................................... passim

*Hicks v. Stanley*,
  No. 01 CIV. 10071 (RJH), 2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................ 18, 20

*In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*,
  No. 03 CIV.5755, 2006 WL 3378705 (S.D.N.Y. Nov. 16, 2006) ...........................16

*In re AOL Time Warner, Inc.*,
  No. 02 CIV. 5575 (SWK), 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ...................14

*In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*,
  772 F.3d 125 (2d Cir. 2014)................................................................................................. 20

*In re BankAtlantic Bancorp, Inc.*,
  No. 07–61542–CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ......................................... 13

*In re Bisys Sec. Litig.*,
  No. 04 CIV. 3840(JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) .................................... 8

*In re Cendant Corp. Litig.*,
  264 F.3d 201 (3d Cir. 2001)................................................................................................. 13

*In re China Sunergy Sec. Litig.*,
  No. 07 CIV 7895 DAB, 2011 WL 1899715 (S.D.N.Y. May 13, 2011) ................................. 18

*In re Comverse Tech.,Inc. Sec. Litig.*,
  No. 06-CV-1825 (NGG), 2010 WL 2653354 (E.D.N.Y. June 24, 2010).......................... 7, 11

*In re Deutsche Bank AG Sec. Litig.*,
  No. 109CV01714GHWRWL, 2020 WL 3162980 (S.D.N.Y. June 11, 2020)..................... 6, 20

*In re Facebook, Inc. IPO Sec. & Derivative Litig.*,
  No. MDL 12-2389, 2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)....................................... 6, 10

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
  No. 02-CV-3400 CM PED, 2010 WL 4537550 (S.D.N.Y. Nov. 8, 2010) ................. 11, 18, 19

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
  279 F.R.D. 151 (S.D.N.Y. 2011) ........................................................................................ 11

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... 11, 13, 14, 19

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014)...................................... 7

*In re IMAX Sec. Litig.*,
  283 F.R.D. 178 (S.D.N.Y. 2012) ..................................................................................... 11, 12

*In re Indep. Energy Holdings PLC Sec. Litig.*,
  302 F. Supp. 2d 180 (S.D.N.Y. 2003)................................................................................ 18

*In re Marsh & McLennan Companies, Inc. Sec. Litig.*,
  No. 04 CIV. 8144 (CM), 2009 WL 5178546 (S.D.N.Y. Dec. 23, 2009)..................... 13, 20, 21

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  991 F. Supp. 2d 437 (E.D.N.Y. 2014) .................................................................................. 4

*In re Qudian Inc. Sec. Litig.*,
  No. 1:17-CV-09741-JMF, 2021 WL 2328437, at (S.D.N.Y. June 8, 2021)............................ 20

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)......................................................................................... 5

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ....................... 20

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ...................................................................................... 11

*In re Tupperware Brands Corp. Sec. Litig.*,
  No. 6:20-cv-357-Orl-31GJK, 2020 WL 3259749 (M.D. Fla. May 27, 2020) ........................ 16

*In re Veeco Instruments Inc. Sec. Litig.*,
  No. 05 MDL 01695CM, 2007 WL 4115808, at (S.D.N.Y. Nov. 7, 2007) .............................. 16

*Johnson v. Brennan*,
  No. 10 CIV. 4712 CM, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)................................. 5, 8

*Lea v. Tal Educ. Grp.*,
  No. 18-CV-5480 (KHP), 2021 WL 5578665 (S.D.N.Y. Nov. 30, 2021) ................................. 6

*LeBlanc-Sternberg v. Fletcher*,
  143 F.3d 748 (2d Cir. 1998)............................................................................................. 7

*Lowe v. NBT Bank, N.A.*,
  No. 319CV1400MADML, 2022 WL 4621433 (N.D.N.Y. Sept. 30, 2022) .............................. 7

*Maley v. Del Glob. Techs. Corp.*,
  186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................ 8, 17

*McDaniel v. Cnty. of Schenectady*,
  595 F.3d 411 (2d Cir. 2010).............................................................................................. 4

*Missouri v. Jenkins by Agyei*,
  491 U.S. 274 (1989).......................................................................................................... 7

*Robles v. Luis Furniture #1 Inc.*,
  No. 20-CV-6951 (RA), 2021 WL 4974677 (S.D.N.Y. Oct. 26, 2021)................................... 8

*Rodriguez v. CPI Aerostructures, Inc.*,
  No. 20CV982ENVCLP, 2023 WL 2184496 (E.D.N.Y. Feb. 16, 2023)................................... 4

*Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*,
  No. 13 CIV. 6667 PAE, 2015 WL 5122530 (S.D.N.Y. Aug. 31, 2015)................................... 8

*Shapiro v. JPMorgan Chase & Co.*,
   No. 11 CIV. 7961 CM, 2014 WL 1224666 (S.D.N.Y. Mar. 24, 2014) ............................... 8, 10

*Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*,
   No. 01-CV-11814(MP), 2004 WL 1087261 (S.D.N.Y. May 14, 2004) .................................. 11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
   551 U.S. 308 (2007) ................................................................................................................ 17

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .............................. 16

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) .............................................................................................. 4, 5, 8

*Woburn Ret. Sys. v. Salix Pharms., Ltd.*,
   No. 14-CV-8925 (KMW), 2017 WL 3579892 (S.D.N.Y. Aug. 18, 2017) ............................. 15

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) .............................. 16

*Zhi Li Zhong v. Rockledge Bus Tour Inc.*,
   No. 18-CV-454 (RA), 2018 WL 3733951 (S.D.N.Y. Aug. 6, 2018) ......................................... 7

**Statutes**

15 U.S.C. §78u-4(a)(4) ................................................................................................................ 2, 20

15 U.S.C. §78u-4(a)(6) ...................................................................................................................... 4

**Rules**

Fed. R. Civ. P. 23(h ........................................................................................................................... 1

Fed. R. Civ. P. 54(d) ......................................................................................................................... 1

Pursuant to Rules 23(h) and 54(d) of the Federal Rules of Civil Procedure, Class Representatives Shipco Transport Inc. ("Shipco") and E-Global Trade and Finance Group, Inc. ("E-Global," and together with Shipco, "Plaintiffs") submit this memorandum of law in support of their motion for (i) an award of attorneys' fees to Class Counsel in the amount of one-third of the Settlement Amount, or $2,166,666.67; (ii) reimbursement of necessary and reasonable litigation expenses incurred by Class Counsel in the amount of $662,469.61; and (iii) compensatory awards totaling $35,000, comprised of $20,000 to Shipco and $15,000 to E-Global, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1]

## I.    INTRODUCTION

The proposed Settlement, providing for a cash payment of $6,500,000 in exchange for resolution of Plaintiffs' claims, represents a fair, adequate, and reasonable outcome for the Class given the risks and expenses of continued litigation, including the risk of a smaller recovery years from now, or no recovery at all. Upon final approval of the Settlement and administration of the claims procedures, Class members will promptly receive a substantial cash payment, avoiding further delay, uncertainty, and risk.

Since the inception of the Action in 2017, Class Counsel, The Rosen Law Firm, P.A. ("Rosen Law"), has not received any compensation or reimbursement of out-of-pocket expenses, litigating this case on a contingency basis as it zealously represented Plaintiffs and the Class. Class

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated February 1, 2023 (Dkt. No. 352) ("Stipulation"). Citations to "Baker Decl." are to the Declaration of Joshua Baker, filed herewith. Citations to "Craig Decl." are to the Declaration of Margery Craig, attached as Exhibit 1 to the Baker Decl. Citations to "Rosen Fee Decl." are to the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses, attached as Exhibit 2 to the Baker Decl. Citations to "Guiney Fee Decl." are to the Declaration of Matthew Guiney Concerning Attorneys' Fees and Expenses, attached as Exhibit 3 to the Baker Decl. Citations to "Final Approval Brief" are to the Memorandum of Law in support of Plaintiffs' motion for final approval of the Settlement, filed concurrently herewith.

Counsel therefore request that the Court award attorneys' fees from the common Settlement Fund, in an amount equal to one third of the Settlement Amount, or $2,166,666.67, for Class Counsel's efforts in obtaining this favorable result for the Class. In zealously representing Plaintiffs and the Class, Class Counsel confronted the material risk of non-payment of attorneys' fees and expenses they advanced. Class Counsel defeated Defendants' motion to dismiss, obtained certification of the Class, completed extensive fact and expert discovery, defeated Defendants' motion for summary judgment, and prepared for trial before securing this fair, reasonable, and adequate Settlement for Plaintiffs and the Class.

An award of one third of the Settlement Amount in attorneys' fees properly reflects the risks Class Counsel assumed and the significant recovery they achieved on behalf of Plaintiffs and the Class. To date, not one Class Member has objected to the attorneys' fee request or the request for reimbursement of expenses. The application of the Second Circuit's *Goldberger* factors also supports the requested attorneys' fee award. *See Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000). The requested fee is reasonable and within the range of attorneys' fees awarded in similar cases. In fact, here, awarding one third of the Settlement Fund as attorneys' fees results in a fractional (or "negative") lodestar multiplier, meaning Class Counsel will receive significantly less than the full value of their time.

Class Counsel also seek reimbursement of $662,469.61 of out-of-pocket litigation expenses they incurred in prosecuting this Action. These expenses were reasonable and necessary to prosecute and resolve Plaintiffs' claims successfully, and are the type of litigation expenses that courts regularly reimburse in similar cases.

Finally, during the course of the Action, Plaintiffs have expended many hours of effort leading the Action on behalf of the Class. Pursuant to the PSLRA, 15 U.S.C. §78u-4(a)(4), to

compensate them for their time, Plaintiffs request awards of $35,000 ($20,000 for Shipco and $15,000 for E-Global). This request is reasonable and in line with awards granted in similar cases.

## II.   CASE BACKGROUND

A detailed summary of the procedural history of this Action and the Settlement is set forth in the Final Approval Brief, section II.

## III.   ARGUMENT

### A.   The Common Fund Doctrine Entitles Class Counsel to Attorneys' Fees and Reimbursement of Expenses from the Settlement Fund

"[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *see also Goldberger*, 209 F.3d at 47 (attorneys who create a "common fund" are entitled to "a reasonable fee—set by the court—to be taken from the fund"); *see also Fresno Cty. Employees' Ret. Ass'n v. Isaacson/Weaver Fam. Tr.*, 925 F.3d 63, 68 (2d Cir. 2019), *cert. denied,* 140 S. Ct. 385 (2019).[2] This achieves equity, preventing "unjust enrichment of those benefitting from a lawsuit without contributing to its cost." *Goldberger*, 209 F.3d at 47. Moreover, awarding attorneys' fees from a common fund that counsel's efforts help create "encourage[s] skilled counsel to represent those who seek redress for damages inflicted on entire classes of persons, and to discourage future misconduct of a similar nature." *Id.*

Here, Class Counsel's efforts have conferred a substantial benefit – $6,500,000 in cash – on the Class, warranting payment of attorneys' fees from the common fund. Accordingly, the Court should award attorneys' fees to Class Counsel from the common fund.

---

[2] Unless otherwise noted, citations and quotations are omitted, and emphasis is added.

**B.      The Court Should Award Class Counsel a Reasonable Percentage of the Settlement Fund**

The preferred method for awarding fees from a common fund is the percentage of the fund method. *See Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984) ("[U]nder the 'common fund doctrine,' … a reasonable fee is based on a percentage of the fund bestowed on the class"). The Second Circuit, however, leaves to lower courts whether to award attorneys' fees "under either the 'lodestar' method or the 'percentage of the fund' method." *McDaniel v. Cnty. of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005)). District courts in this Circuit typically award attorneys' fees in class action common fund cases based on the percentage method.

This Court should apply the percentage of the fund method. It is appropriate in this case, and the preference of most district courts, because it "better aligns the incentives of plaintiffs' counsel with those of the class members because it bases the attorneys' fees on the results they achieve for their clients, rather than on the number of motions they file, documents they review, or hours they work…." *See also In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 991 F. Supp. 2d 437, 440 (E.D.N.Y. 2014). In contrast, the lodestar method "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.'" *Wal-Mart*, 396 F.3d at 121. The percentage method also comports with the PSLRA. 15 U.S.C. §78u-4(a)(6) ("[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class"); *see also Rodriguez v. CPI Aerostructures, Inc.*, No. 20CV982ENVCLP, 2023 WL 2184496, at *13 (E.D.N.Y. Feb. 16, 2023) (percentage method "directly aligns interests of class and counsel"). Plaintiffs submit that the percentage method is

4

most apt even though using the percentage method would actually compensate Class Counsel less than the lodestar method, given the fractional (or "negative") lodestar multiplier resulting from Class Counsel's request for one third of the Settlement Amount.

The Court may also evaluate the reasonableness of the percentage of the fund it awards as attorneys' fees by reference to Class Counsel's lodestar. Courts often consider counsel's lodestar as a "cross-check" on the reasonableness of the percentage. *Wal-Mart*, 396 F.3d at 123. For this cross-check, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50 ("[T]he reasonableness of the claimed lodestar can be tested by the court's familiarity with the case."). As a cross-check, this Court "may rely on summaries submitted by the attorneys and need not review actual billing records." *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306–07 (3d Cir. 2005); *see also Johnson v. Brennan*, No. 10 CIV. 4712 CM, 2011 WL 4357376, at *14–15 (S.D.N.Y. Sept. 16, 2011) (courts need not scrutinize time and rate records when using lodestar as a cross-check). Here, the attorneys' fees Class Counsel request are reasonable when considered under either method of calculation.

    C.    **The Requested Attorneys' Fees Are Reasonable**

        1.    **The Requested Attorneys' Fees are Reasonable Under the Percentage-of-the-Fund Method**

Class Counsel's zealous prosecution led to this fair, reasonable, and adequate Settlement. Class Counsel successfully moved for appointment of the Lead Plaintiffs, investigated potential claims, filed an amended complaint, opposed Defendants' motion to dismiss the first amended complaint, reviewed the Court's decision granting the motion to dismiss without prejudice, filed a second amended complaint, successfully opposed Defendants' motion to dismiss the second amended complaint, moved for and obtained class certification after an evidentiary hearing, reviewed tens of thousands of documents produced by Defendants and third parties in discovery,

deposed over a dozen fact witnesses, obtained expert reports, deposed Defendants' experts, successfully opposed Defendants' motions for summary judgment and to exclude testimony from Plaintiffs' experts, successfully opposed Defendants' motion to certify part of the Court's summary judgment decision for interlocutory appeal, filed a pretrial memorandum and motions *in limine*, and prepared for trial, in addition to participating in two separate mediation sessions at different stages of the litigation. Baker Decl. ¶¶11-33.

A fee of one-third of the common fund for Class Counsel's efforts is consistent with the percentages district courts in the Second Circuit have awarded in similar or larger common fund cases. *See, e.g., City of Providence v. Aeropostale, Inc.*, No. 11 Civ. 7132(CM)(GWG), 2014 WL 1883494, at *12 (S.D.N.Y. May 9, 2014), *aff'd sub nom. Arbuthnot v. Pierson*, 607 F. App'x 73 (2d Cir. 2015) (awarding 33% of $15 million); *In re Facebook, Inc. IPO Sec. & Derivative Litig.*, No. MDL 12-2389, 2015 WL 6971424, at *12 (S.D.N.Y. Nov. 9, 2015) (awarding one-third of attorneys' fees of $26,500,000 settlement); *In re Deutsche Bank AG Sec. Litig.*, No. 109CV01714GHWRWL, 2020 WL 3162980, at *1 (S.D.N.Y. June 11, 2020) (awarding attorneys' fees of one-third of $18.5 million settlement); *Lea v. Tal Educ. Grp.*, No. 18-CV-5480 (KHP), 2021 WL 5578665, at *12 (S.D.N.Y. Nov. 30, 2021) (awarding one third of $7.5 million settlement and collecting cases, stating that "one-third … is a percent that has been approved as reasonable in this Circuit"). Applying the percentage-of-the-fund method, this Court should award one-third of the Settlement Amount as attorneys' fees to Class Counsel, which are reasonable under the circumstances.

## 2. A Lodestar Cross-Check Strongly Supports the Reasonableness of the Requested Attorneys' Fees

Cross-checking the requested fee award against Class Counsel's lodestar also supports the reasonableness of the fee request. *See Goldberger*, 209 F.3d at 50. Class Counsel calculated its

lodestar by multiplying the number of hours each attorney or paralegal expended on the litigation by their current reasonable and customary hourly rate, totaling the amounts for all timekeepers.[3] Additionally, "[u]nder the lodestar method, a positive multiplier is typically applied to the lodestar in recognition of the risk of the litigation, the complexity of the issues, the contingent nature of the engagement, the skill of the attorneys, and other factors." *Lowe v. NBT Bank, N.A.*, No. 319CV1400MADML, 2022 WL 4621433, at *12 (N.D.N.Y. Sept. 30, 2022); *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-CV-1825 (NGG), 2010 WL 2653354, at *5 (E.D.N.Y. June 24, 2010) ("Where … counsel has litigated a complex case under a contingency fee arrangement, they are entitled to a fee in excess of the lodestar").

Class Counsel devoted a total of 6,752.44 hours to the prosecution of this Action, resulting in a lodestar of $4,548,190.00. Baker Decl. ¶49. The $2,166,666.67 fee request represents a fractional (or "negative") multiplier on Class Counsel's lodestar of approximately 0.48. Indeed, this holds true even if the lodestar is adjusted to 86.6% of the total, reflecting the percentage of estimated damages attributable to the Class, as opposed to the individual claim of Lead Plaintiff 683 Capital Partners, LP ("683 Capital"), which Class Counsel litigated concurrently alongside the Class's claims. The adjusted lodestar would be $3,938,732.54, producing a multiplier of 0.55. *Id.* ¶50. In these situations, as this Court has previously noted, "[w]hen the lodestar calculation is greater than the attorneys' fee award, the Court 'ordinarily' will approve the fee, at least so long as the percentage of the award is reasonable." *See, e.g., Zhi Li Zhong v. Rockledge Bus Tour Inc.*,

---

[3] "[T]he use of current rates to calculate the lodestar figure has been endorsed repeatedly by the Supreme Court, the Second Circuit and district courts within the Second Circuit as a means of accounting for the delay in payment inherent in class actions and for inflation." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *15 (S.D.N.Y. Dec. 19, 2014); *Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283–84 (1989); *LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 764 (2d Cir. 1998) ("[C]urrent rates, rather than historical rates, should be applied in order to compensate for the delay in payment.").

No. 18-CV-454 (RA), 2018 WL 3733951, at *4 (S.D.N.Y. Aug. 6, 2018) (Abrams, J.) (quoting *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, No. 13 CIV. 6667 PAE, 2015 WL 5122530, at *4 (S.D.N.Y. Aug. 31, 2015)). As this Court has acknowledged, "Courts in this district routinely approve lodestar multipliers above 1.5." *Robles v. Luis Furniture #1 Inc.*, No. 20-CV-6951 (RA), 2021 WL 4974677, at *2 (S.D.N.Y. Oct. 26, 2021) (Abrams, J.) (citing *Johnson v. Brennan*, No. 10-CV-4712 (CM), 2011 WL 4357376, at *20 (S.D.N.Y. Sept. 16, 2011) ("Courts regularly award lodestar multipliers from two to six times lodestar.") and *Shapiro v. JPMorgan Chase & Co.*, No. 11 CIV. 7961 CM, 2014 WL 1224666, at *24 (S.D.N.Y. Mar. 24, 2014) ("Lodestar multipliers of nearly 5 have been deemed 'common' by courts in this District.")).

Even the adjusted lodestar multiplier here is well within the range of multipliers commonly awarded in securities class actions and other complex litigation, and lower than multipliers commonly accepted as sufficient to justify one-third fees. *See Burns v. FalconStor Software, Inc.*, No. 10 CV 4572 (ERK), 2014 WL 12917621, at *10 (E.D.N.Y. Apr. 11, 2014) (finding fee award of 33.3% "reasonable" based on cross-check multiplier of 4.75); *Wal-Mart*, 396 F.3d at 123 (upholding multiplier of 3.5 as reasonable on appeal); *Maley v. Del Glob. Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002) (awarding fee equal to a 4.65 multiplier, which was "well within the range awarded by courts in this Circuit and courts throughout the country"); *In re Bisys Sec. Litig.*, No. 04 CIV. 3840(JSR), 2007 WL 2049726, at *3 (S.D.N.Y. July 16, 2007) (finding a 2.99 multiplier "falls well within the parameters set in this district and elsewhere"); *Davis v. J.P. Morgan Chase & Co.*, 827 F. Supp. 2d 172, 185 (W.D.N.Y. 2011) (awarding fee representing a multiplier of 5, which was "not atypical" in similar cases).

The fee award Class Counsel requests is well within the range of what courts in this Circuit regularly award in class actions such as this one, under a percentage-of-the-fund or lodestar

multiplier method. The lodestar cross-check supports awarding Class Counsel attorneys' fees of one-third of the common fund. This Court should approve the requested amount of attorneys' fees.

### D.    The *Goldberger* Factors Confirm the Requested Fee is Fair and Reasonable

The Second Circuit has set forth the following criteria that courts should consider when reviewing a request for attorneys' fees in a common fund case: (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. *Goldberger*, 209 F.3d at 50. Consideration of these factors, together with the analyses above, demonstrates that the requested fee is reasonable.

### 1.    The Time and Effort Expended Support the Requested Fee

The time and effort Class Counsel expended in prosecuting this Action and achieving the Settlement supports the attorneys' fees they request. Among other things, Class Counsel (a) conducted an extensive factual investigation, which included the review of publicly available documents about Global Brokerage, Inc. f/k/a FXCM, Inc. ("FXCM") and the individual Defendants; (b) researched, kept abreast of news released regarding the allegations, drafted and filed three amended complaints; (c) moved for Lead Plaintiff appointment on behalf of Shipco and 683 Capital Partners, LP; (d) consulted with private investigators relating to the allegations in this action; (e) researched and filed oppositions to the Defendants' motions to dismiss the first and second amended complaints, defeating the latter motion; (f) moved for and successfully obtained class certification after an evidentiary hearing; (g) completed discovery reviewing and analyzing hundreds of thousands of pages of documents; (h) deposed over a dozen fact witness; (i) defended and took several expert depositions; (j) defeated Defendants' motions for summary judgment and to exclude Plaintiffs' experts; (k) defeated Defendants' motion for interlocutory appeal of part of the Court's summary judgment decision; (l) participated in two separate mediations in September

2020 and December 2022; (m) negotiated the Settlement; (n) crafted the plan of allocation in consultation with Strategic Claims Services that treats Plaintiffs and all other members of the Class fairly; (o) moved for preliminary approval of the Settlement; and (p) oversaw provision of notice to the Class; and (q) drafted the motion for final approval of the Settlement. Baker Decl. ¶¶11-33.

Moreover, the legal work Class Counsel provided for the Class's benefit will not end with the Court's approval of the proposed Settlement. Class Counsel will devote additional hours and resources to respond to Class Members' inquiries, address any concerns the Court may have at the Settlement Hearing, and conclude the claims process by filing a motion to distribute the Net Settlement Fund to Class Members. Class Counsel will not seek additional compensation for this work. *See In re Facebook, Inc. IPO Sec. & Deriv. Litig.*, MDL No. 12–2389, 2015 WL 6971424, at *10 (S.D.N.Y. Nov. 9, 2015) (awarding 33% as attorneys' fees, considering time and effort expended thus far and remaining work to oversee claims process and distribution), *aff'd,* 674 F. App'x 37 (2d Cir. 2016).

The time and effort Class Counsel devoted to the Action was critical to secure the $6,500,000 Settlement, supporting the reasonableness of the fee request.

### 2.    General and Specific Litigation Risks Support the Requested Fee

"[T]he risk of success [is] 'perhaps the foremost' factor to be considered in determining" a reasonable award of attorneys' fees. *Goldberger*, 209 F.3d at 54; *see also Shapiro v. JPMorgan Chase & Co.*, No. 11 Civ. 8331(CM)(MHD), 2014 WL 1224666, at *21 (S.D.N.Y. Mar. 24, 2014) ("The Second Circuit long ago recognized that courts should consider the risks associated with lawyers undertaking a case on a contingent fee basis."). "No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success. Nor, particularly in complicated cases producing large recoveries, is it just to make a fee depend solely

on the reasonable amount of time expended." *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 470 (2d Cir. 1974). In applying this factor, "'[l]itigation risk must be measured as of when the case is filed,' rather than with the hindsight benefit of subsequent events." *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 467 (S.D.N.Y. 2004) (quoting *Goldberger*, 209 F.3d at 55).

Courts have recognized that "class actions confront even more substantial risks than other forms of litigation," *Comverse*, 2010 WL 2653354, at *5, and that "in evaluating the settlement of a securities class action, federal courts, including this court, have long noted that such litigation is notably difficult and notoriously uncertain." *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 189 (S.D.N.Y. 2012) (quoting *In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999).[4] This case was no exception. From the outset of the Action, Class Counsel understood that they were embarking on a complex, expensive, and potentially lengthy litigation with no guarantee of ever receiving compensation for the substantial investment of time and money the case would require. In undertaking that responsibility, "plaintiffs' counsel were obligated to assure that sufficient attorney and para-professional resources were dedicated to the prosecution of the Action; counsel also faced the responsibility of advancing litigation and overhead expenses on this case … ." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011). Indeed, "[u]nlike counsel for Defendants, who are paid substantial hourly rates and reimbursed for their expenses on a regular basis, [Lead Counsel] have not been compensated for any time or expenses since this case began …" *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, No. 02-CV-3400 CM PED, 2010 WL 4537550, at *27 (S.D.N.Y. Nov. 8, 2010). Class Counsel's commitments of time and expenses

---

[4] *See also Teachers' Ret. Sys. of Louisiana v. A.C.L.N., Ltd.*, No. 01-CV-11814(MP), 2004 WL 1087261, at *3 (S.D.N.Y. May 14, 2004) ("Little about litigation is risk-free, and class actions confront even more substantial risks than other forms of litigation.").

were significant and would have gone unrewarded and unreimbursed had Class Counsel failed to obtain a recovery.

While Class Counsel believe that Plaintiffs' claims are meritorious and remain confident in their ability to prevail at trial, there remain substantial risks in the litigation. Without the Settlement, Plaintiffs' ability to succeed at trial and to obtain and collect a substantial judgment is far from certain. *See IMAX*, 283 F.R.D. at 189 (securities class actions are "notably difficult and notoriously uncertain").

Although Plaintiffs' claims regarding Defendants' misrepresentations and omissions about FXCM's relationship with Effex Capital LLC ("Effex") survived Defendants' motion for summary judgment, convincing a jury of the falsity of Defendants' statements by a preponderance of the evidence would be a more difficult standard to meet. Plaintiffs were faced with the difficult task of establishing Defendants' liability without the assistance of any friendly fact witnesses. Plaintiffs also faced the difficulty of establishing liability with respect to events that took place over a decade before the trial, so witnesses' memories and testimony would be foggier. Plaintiffs also faced the difficult task of establishing scienter in the face of evidence Defendants had presented purportedly showing that FXCM's relationship with Effex was actually beneficial to FXCM's customers. Defendants also would have relied on the clean audit reports and testimony from FXCM's auditors, Ernst & Young, to say that the relationship between FXCM and Effex was properly accounted for and above-board. Plaintiffs' failure to defeat any of these arguments would result in either no recovery, or a smaller recovery, on behalf of the Class. Even if Plaintiffs prevailed at trial and the jury accepted Plaintiffs' damages model, the verdict would still have to survive Defendants' inevitable appeals. The Settlement avoids these material risks.

With respect to damages specifically, proving damages presents a significant risk in securities class actions. "Calculation of damages is a 'complicated and uncertain process, typically involving conflicting expert opinion ....'" *Global Crossing*, 225 F.R.D. at 459; *see also Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) (in securities class actions, the "complexities of calculating damages increase geometrically"). "There is the undeniable risk that a 'jury could be swayed by experts for the Defendants, who [c]ould minimize the amount of Plaintiffs' losses.'" *In re Marsh & McLennan Companies, Inc. Sec. Litig.*, No. 04 CIV. 8144 (CM), 2009 WL 5178546, at *6 (S.D.N.Y. Dec. 23, 2009); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."). Proving per share damages in this case was therefore far from certain, as the jury might accept Defendants' attempts to discredit Plaintiffs' experts or even Defendants' arguments that part of the stock price decline caused by the disclosure of the regulatory settlements was not related to Defendants' misrepresentations and omissions. Even if Plaintiffs overcame these risks and a jury awarded the full measure of damages, they would still face the risk of an adverse decision on post-trial motions, or reversal on appeal.[5]

The risks Class Counsel overcame in litigating the case to the brink of trial, and the risks Plaintiffs still faced at and after trial, supports awarding the requested amount of attorneys' fees.

---

[5] *See, e.g.*, *Glickenhaus & Co. v. Household Int'l, Inc.*, 787 F.3d 408 (7th Cir. 2015) (reversing jury verdict of $2.46 billion on loss causation and damages grounds, remanding for a new trial on these issues); *In re BankAtlantic Bancorp, Inc.*, No. 07–61542–CIV, 2011 WL 1585605, at *20-22 (S.D. Fla. Apr. 25, 2011) (granting motion for judgment as a matter of law following jury verdict in plaintiffs' favor), *aff'd sub nom. Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012).

### 3.     The Complexity of the Action Supports the Fee

Courts recognize that securities class actions are "notorious[ly] complex[]." *In re AOL Time Warner, Inc.*, No. 02 CIV. 5575 (SWK), 2006 WL 903236, at *8 (S.D.N.Y. Apr. 6, 2006), a factor that further supports an award of attorneys' fees.

This case was no exception. As noted above, this case raised difficult questions concerning liability and damages. Plaintiffs have already filed three amended complaints, briefed two motions to dismiss, obtained class certification, completed extensive document discovery, taken over a dozen depositions, completed expert discovery with multiple experts on each side, defeated motions for summary judgment and to exclude Plaintiffs' experts, and filed pretrial memoranda and motions *in limine*. Baker Decl. ¶¶11-33. After over six years of litigation, Plaintiffs would still have to prevail at trial, and then through post-verdict motions and appeals, on Defendants' arguments concerning falsity, scienter, and loss causation, and the proper measure of damages. This was a protracted and difficult matter—even by the standards of securities class actions.

Similarly, the magnitude of the Action is unquestionable. Tens of millions of dollars in damages are at stake, and the case required considerable skill and resources to litigate. As such, the magnitude and complexity of the litigation support the requested fee. *See Aeropostale*, 2014 WL 1883494, at *16 ("[T]he complex and multifaceted subject matter involved in a securities class action such as this supports the fee request.").

### 4.     The Quality of Representation Supports the Requested Fee

"The quality of      Securities      Lead      Counsel's      representation is      evidenced      by the recovery obtained  for  the  Securities  Class...." *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019) (quoting *Global Crossing*, 225 F.R.D. at 467). Here, the Settlement provides the Class with a guaranteed cash payment of $6,500,000. This is a fair, reasonable, and adequate result. Plaintiffs' damages expert

estimates that if Plaintiffs had fully prevailed on their claims after a jury trial, if the Court and jury accepted Plaintiffs' per share damages calculation, and if beneficial owners of all shares that Plaintiffs' expert estimates were damaged made claims—*i.e.*, Plaintiffs' best-case scenario—the total maximum damages potentially available to the Class would be approximately $17.5 million. Under this scenario, the Settlement represents a recovery of 37% of the maximum estimated damages. Defendants' experts would have asserted at trial that the per share damages Plaintiffs and members of the Class suffered, if any, were materially lower than the amount Plaintiffs estimate. Baker Decl. ¶¶34-35.

According to Cornerstone Research, approximately 23% of securities class actions settled for less than $5 million in 2022, and that figure was 33% for 2013-2021. Laarni T. Bulan, *et al.*, *Securities Class Action Settlements – 2022 Review and Analysis*, at 4.[6] The median recovery in cases such as this one, alleging Rule 10b-5 claims with damages under $25 million, was approximately 11.1% of estimated damages in 2022, and 17.4% between 2013-2021. *Id.* at 6. Between 2018-2022, securities class actions such as this one that settled after a ruling on motion for summary judgment recovered a median of 7.5% of estimated damages. *Id.* at 14.

The result achieved here is even more impressive when juxtaposed against the significant hurdles that, on behalf of Plaintiffs and the Class, Class Counsel has already overcome in this Action. *See Woburn Ret. Sys. v. Salix Pharms., Ltd.*, No. 14-CV-8925 (KMW), 2017 WL 3579892, at *4 (S.D.N.Y. Aug. 18, 2017) (requested fee award warranted where counsel prevailed against motion to dismiss, and prosecuted through highly contested discovery process, against well-represented opponent).

---

[6] *Available at* https://securities.stanford.edu/research-reports/1996-2022/Securities-Class-Action-Settlements-2022-Review-and-Analysis.pdf

The quality of Class Counsel's efforts and commitment to providing Plaintiffs and the Class with the best possible representation, together with their substantial experience in securities class actions, provided leverage necessary to negotiate the Settlement. *See* Baker Decl. Ex. 6 (Rosen Law's firm resume).[7] Courts around the country have recognized the quality of Rosen Law's work. *See, e.g., Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law] is highly experienced in the complex field of securities fraud class action litigation"); *In re Tupperware Brands Corp. Sec. Litig.*, No. 6:20-cv-357-Orl-31GJK, 2020 WL 3259749, at *2–3 (M.D. Fla. May 27, 2020), *report and recommendation adopted sub nom. In Re Tupperware Brands Corp. Sec. Litig.*, No. 620CV357ORL31GJK, 2020 WL 3259086 (M.D. Fla. June 16, 2020) (recognizing that Rosen Law is "well-credentialed" with "significant securities litigation experience"); *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (The Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation"). Thus, Class Counsel's experience and reputation contributed to this successful resolution.

Courts have also recognized that the quality of the opposition faced by plaintiffs' counsel should be taken into consideration in assessing the quality of the counsel's performance. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, No. 05 MDL 01695CM, 2007 WL 4115808, at *7 (S.D. N.Y. Nov. 7, 2007) (fee award supported by fact that defendants were represented by "one of the country's largest law firms"); *In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.*, No. 03 CIV.5755, 2006 WL 3378705, at *3 (S.D.N.Y. Nov. 16, 2006) ("The fact that the settlements were

---

[7] The firm resume of Wolf Haldenstein Adler Freeman & Herz LLP, additional counsel for Plaintiffs, is also attached as Exhibit 7 to the Baker Decl. The time and expenses contributed by additional counsel are detailed in the Guiney Decl.

obtained from defendants represented by 'formidable opposing counsel from some of the best defense firms in the country' also evidences the high quality of lead counsels' work."), *aff'd*, 272 F. App'x 9 (2d Cir. 2008). Here, Defendants were represented by accomplished attorneys from King & Spalding LLP, highly skilled securities practitioners who vigorously represented the interests of their clients. Baker Decl. ¶48.

Notwithstanding formidable opposition, Class Counsel prosecuted the Action vigorously to the doorstep of trial, enabling them to achieve the favorable Settlement and supporting the attorneys' fees they have requested.

### 5.       The Amount of Attorneys' Fees in Relation to the Settlement

Courts have interpreted this factor as requiring the review of the fee requested in terms of the percentage it represents of the total recovery. "When determining whether a fee request is reasonable in relation to a settlement amount, 'the court compares the fee application to fees awarded in similar securities class-action settlements of comparable value.'" *Comverse*, 2010 WL 2653354, at *3. As discussed in detail in Section III.C.1, *supra*, the requested one-third fee is consistent with percentage fees that courts in the Second Circuit have awarded in comparable complex cases. Accordingly, the requested fee is reasonable in relation to the Settlement.

### 6.       Public Policy Considerations Support the Requested Fee

"In considering an award of attorney's fees, the public policy of vigorously enforcing the federal securities laws must be considered." *Maley*, 186 F. Supp. 2d at 373. This is because private actions such as this one serve to further the objective of the federal securities laws to protect investors. "[The Supreme] Court has long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought, respectively, by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007). If

17

the "important public policy [of enforcing the securities laws] is to be carried out, the courts should award fees which will adequately compensate Lead Counsel for the value of their efforts, taking into account the enormous risks they undertook." *Flag Telecom*, 2010 WL 4537550, at *29.

As a practical matter, "[l]awsuits such as this one can only be maintained if competent counsel can be retained to prosecute them. This will occur if courts award reasonable and adequate compensation for such services where successful results are achieved." *City of Providence*, 2014 WL 1883494, at *18; *see also Hicks v. Stanley*, No. 01 CIV. 10071 (RJH), 2005 WL 2757792, at *9 (S.D.N.Y. Oct. 24, 2005) (private securities actions promote securities laws' objectives, but "could not be sustained if plaintiffs' counsel were not to receive remuneration from the settlement fund for their efforts on behalf of the class.").

The integrity of the markets depends on companies and their executives complying with the federal securities laws. Courts must ensure competent counsel with the knowledge and experience to litigate these disputes in an orderly and efficient manner are available to the markets. Public policy thus supports the award of the attorneys' fees requested here. *See In re China Sunergy Sec. Litig.*, No. 07 CIV. 7895 DAB, 2011 WL 1899715, at *6 (S.D.N.Y. May 13, 2011) ("public policy supports granting attorneys' fees 'that are sufficient to encourage plaintiffs' counsel to bring securities class actions that supplement the efforts of the SEC'").

### E.    This Court Should Approve Reimbursement of Class Counsel's Expenses as Reasonable and Necessary to the Benefit Obtained

Class Counsel also requests reimbursement of $662,469.61 in expenses incurred while prosecuting the Action. *Flag Telecom*, 2010 WL 4537550, at *30 ("It is well accepted that counsel who create a common fund are entitled to the reimbursement of expenses that they advanced to a class"); *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) ("Attorneys may be compensated for reasonable out-of-pocket expenses incurred and

customarily charged to their clients, as long as they were 'incidental and necessary to the representation' of those clients.").

Class Counsel incurred total litigation expenses of $764,679.21 in this Action, Rosen Fee Decl. ¶6; Guiney Fee Decl. ¶6, but seek only reimbursement of 86.6% of that amount. This request is commensurate with the percentage of estimated damages attributable to the Class, as opposed to the individual claim of Lead Plaintiff 683 Capital, which Class Counsel litigated concurrently alongside the Class's claims. The $662,469.61 amount requested is well within the $850,000 maximum amount disclosed in the Notice. *E.g.*, Craig Decl., Exs. A (Long Notice) and C (Postcard Notice). No Class Member has objected to the requested reimbursement.

Most of the expenses Class Counsel advanced were for professional services rendered by Plaintiffs' experts. Plaintiffs required experts to craft six separate reports and provide deposition testimony regarding the market efficiency of FXCM's securities, the application of relevant accounting standards, as well as loss causation and damages. Baker Decl. ¶27. The remaining expenses are attributable to document hosting fees, remote deposition video and transcript fees, mediator's fees, legal and factual research, travel, service of process, and other expenses incurred during the litigation. Rosen Fee Decl. ¶6; Guiney Fee Decl. ¶6. These expenses were essential to Plaintiffs' success in achieving the proposed Settlement, are reasonable in amount, and are customary and necessary expenses for a complex securities action. As such, the Court should approve their reimbursement. *See Flag Telecom*, 2010 WL 4537550, at *30; *Global Crossing*, 225 F.R.D. at 468 ("The expenses incurred – which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review – are the type for which 'the paying, arms' length market' reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund.").

For those reasons, the Court should award Class Counsel $662,469.61 from the common fund for unreimbursed litigation expenses.

### F.   The Court Should Approve Compensatory Awards to Plaintiffs

Plaintiffs also request awards of $20,000 to Shipco and $15,000 to E-Global for their time spent prosecuting the Action. The PSLRA specifically provides that an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class" may be made to "any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4).

Courts in this Circuit "routinely award such costs and expenses to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages…." *Christine Asia*, 2019 WL 5257534, at *20 (approving request for award to lead plaintiffs) (quoting *Hicks*, 2005 WL 2757792, at *10; *In re Bank of Am. Corp. Sec., Derivative, & Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132–33 (2d Cir. 2014) (affirming the award of PSLRA expenses and costs to lead plaintiffs totaling $453,000). *See also Marsh & McLennan*, 2009 WL 5178546, at *21 (approving $215,000 total award to two lead plaintiffs); *Deutsche Bank.*, 2020 WL 3162980, at *2 (awarding $10,000 to each class representative); *In re Qudian Inc. Sec. Litig.*, No. 1:17-CV-09741-JMF, 2021 WL 2328437, at *2 (S.D.N.Y. June 8, 2021) (awarding lead plaintiff $25,000, and class representative $12,500, for "reasonable costs and expenses directly related to [their] representation of the Class"); *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-CV-06728-CM-SDA, 2020 WL 4196468, at *24 (S.D.N.Y. July 21, 2020) (collecting cases and awarding $25,410 to lead plaintiff).

As detailed in the Declaration of Frank Cozzarelli, Baker Decl., Ex. 4, Lead Plaintiff and Class Representative Shipco devoted approximately 100 hours to the Action. As one of the Lead Plaintiffs, Shipco took an active role in the litigation by, among other things, communicating with

Rosen Law regarding the progress of the case, completing his certification in connection with its motion to be appointed Lead Plaintiff, reviewing Defendants' discovery requests and providing responsive information, reviewing and discussing with Class Counsel all of the significant pleadings filed in the Action, including two amended complaints, two motions to dismiss, class certification briefing, sitting for a deposition, and consulting with Class Counsel in approving the Settlement. *Id.* at ¶3. These are "precisely the types of activities that support awarding reimbursement of expenses to class representatives." *Marsh & McLennan*, 2009 WL 5178546, at *21, *see also Christine Asia*, 2019 WL 5257534, at *20 (approving award to lead plaintiffs where plaintiffs deposed, reviewed pleadings and briefs, assisted with discovery responses, and evaluated and approved settlement).

As detailed in the Declaration of Sergey Regukh, Baker Decl., Ex. 5, named Plaintiff and Class Representative E-Global also devoted approximately 100 hours to this litigation, including communicating with Class Counsel regarding the posture and progress of the case, reviewing and discussing with Class Counsel all of the significant pleadings filed in the Action, including two amended complaints, two motions to dismiss, class certification briefing, sitting for a deposition, and consulting with Class Counsel in approving the Settlement. *Id.* at ¶3.

The efforts Plaintiffs made on behalf of the Class support granting their requests for compensatory awards. The requested awards of $35,000 in total amount to approximately 0.5% of the Settlement Fund. The Court should grant the requested awards to Plaintiffs because they are reasonable to compensate Plaintiffs for their significant efforts over six years of litigation representing the Class.

## IV.      CONCLUSION

For the foregoing reasons, Plaintiffs and Rosen Law respectfully request that the Court: (a) award Class Counsel attorneys' fees in the total amount of one-third of the Settlement Amount (or $2,166,666.67); (b) reimburse Class Counsel for expenses and costs in the amount of $662,469.61; and (c) reimburse Class Representatives Shipco and E-Global for their time spent on the Action in the amounts of $20,000 and $15,000, respectively.

Dated: June 9, 2023                     Respectfully submitted,

                                        **THE ROSEN LAW FIRM, P.A.**

                                        By: /s/*Joshua Baker*
                                        Phillip Kim
                                        Laurence M. Rosen
                                        Joshua Baker
                                        275 Madison Ave., 40th Floor
                                        New York, New York 10016
                                        Tel: (212) 686-1060
                                        Fax: (212) 202-3827
                                        Email: pkim@rosenlegal.com
                                        Email: lrosen@rosenlegal.com
                                        Email: jbaker@rosenlegal.com

                                        *Class Counsel for Plaintiffs and the Class*

                                        **WOLF HALDENSTEIN ADLER FREEMAN &
                                        HERZ LLP**
                                        Matthew M. Guiney
                                        270 Madison Avenue
                                        New York, New York 10016
                                        Tel: (212) 545-4600
                                        Fax: (212) 686-0114
                                        Email: Guiney@whafh.com

                                        *Additional Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 9, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/Joshua Baker*