UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation<br><br>This Document Relates To: All Actions | Master File No. 1:17-cv-00916-RA-BCM<br><br><u>CLASS ACTION</u> |

**DECLARATION OF JOSHUA BAKER IN SUPPORT OF PLAINTIFFS' MOTIONS FOR (1) FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; AND (2) AWARD OF ATTORNEYS' FEES, REIMBURSEMENT <u>OF EXPENSES, AND AWARDS TO PLAINTIFFS</u>**

I, Joshua Baker, declare the following, to the best of my knowledge, pursuant to 28 U.S.C. §1746.[1]

1.  I am an attorney duly licensed to practice law in the State of New York and before this Court. I am an attorney with The Rosen Law Firm, P.A. ("Rosen Law"), Class Counsel for Class Representatives Shipco Transport Inc. ("Shipco") and E-Global Trade and Finance Group, Inc. ("E-Global" and with Shipco, "Plaintiffs") and the Class in the above-captioned Action. I have personal knowledge of the matters set forth herein and, if called upon, I could and would completely testify thereto. I intend nothing in this Declaration to constitute a specific or general waiver of attorney-client privilege or any other applicable privilege or doctrine.

2.  I submit this Declaration in support of Plaintiffs' Motions, filed concurrently herewith, for: (1) final approval of the proposed class action Settlement; and (2) an award of attorneys' fees, reimbursement of expenses, and awards to Plaintiffs. I set forth herein relevant

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings set forth in the Stipulation of Settlement dated February 1, 2023 (Dkt. No. 352) ("Stipulation").

1

facts concerning the Action against Global Brokerage, Inc. f/k/a FXCM, Inc. ("FXCM" or the "Company"), Dror Niv, and William Ahdout (collectively, "Defendants"). I also set forth herein relevant facts showing that (1) the Settlement is fair, reasonable, and adequate; (2) the notice program satisfied Fed. R. Civ. P. 23(c)(2) and 23(e)(1), the Private Securities Reform Act of 1995, 15 U.S.C. §78u-4(a)(7) ("PSLRA"), and due process; (3) the Plan of Allocation is fair and reasonable; and (4) and that Plaintiffs' requests for attorneys' fees, reimbursement of expenses, and awards to Plaintiffs are reasonable.

3. The Settlement completely resolves the Action as to all claims against all Defendants, providing for a cash payment by and on behalf of Defendants in the amount of $6,500,000, in exchange for full mutual releases.[2]

4. On February 21, 2023, the Court entered an Order preliminarily approving the Settlement and approving the form and manner of providing notice to potential Class Members (Dkt. No. 357) ("Preliminary Approval Order").

5. Plaintiffs now seek final approval of the Settlement, as well as an award of attorneys' fees to Rosen Law of one-third of the Settlement Fund ($2,166,666.67), and reimbursement of counsel's out-of-pocket litigation expenses incurred in prosecuting this Action in the amount of $662,469.61, and awards to Plaintiffs totaling $35,000.

6. Attached hereto as **Exhibit 1** is a true and correct copy of the Declaration of Margery Craig Concerning: (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections ("Craig Decl.").

---

[2] The Stipulation provides for the resolution of all claims brought by Shipco, E-Global, and the Class in this Action. Defendants and Lead Plaintiff 683 Capital Partners, LP ("683 Capital") have entered into a separate confidential agreement (not requiring the Court's approval) to resolve the individual claims of 683 Capital, such that final approval of the proposed class Settlement discussed herein will resolve all remaining claims in the Action.

7. Attached hereto as **Exhibit 2** is a true and correct copy of the Declaration of Laurence M. Rosen Concerning Attorneys' Fees and Expenses ("Rosen Fee Decl.").

8. Attached hereto as **Exhibit 3** is a true and correct copy of the Declaration of Matthew Guiney Concerning Attorneys' Fees and Expenses ("Guiney Fee Decl.").

9. Attached hereto as **Exhibit 4** is a true and correct copy of the Declaration of Frank Cozzarelli on behalf of Shipco ("Cozzarelli Decl.").

10. Attached hereto as **Exhibit 5** is a true and correct copy of the Declaration of Sergey Regukh on behalf of E-Global ("Regukh Decl.").

11. Attached hereto as **Exhibit 6** is a true and correct copy of Rosen Law's firm resume.

12. Attached hereto as **Exhibit 7** is a true and correct copy of the firm resume of Wolf Haldenstein Adler Freeman & Herz LLP, additional counsel for Plaintiffs.

13. Attached hereto as **Exhibit 8** is a true and correct copy of the Declaration of Jed Melnick, Esq.

**Procedural History**

14. This Action commenced on February 7, 2017, with the filing of a putative class action complaint alleging violations of Section 10(b) and 20(a) of the Securities Exchange Act of 1934 against Defendants and Robert Lande ("Lande"), in a case captioned *Khoury v. FXCM, Inc., et. al.,* 17-cv-916. Dkt. No. 1.

15. By Order dated May 3, 2017, the Court consolidated the related actions, appointed 683 Capital Partners LP ("683 Capital") and Shipco as Lead Plaintiffs and The Rosen Law Firm, P.A. as Lead Counsel. Dkt. No. 47.

16. Upon their appointment, the Lead Plaintiffs, through Lead Counsel, further investigated the claims in this action by, among other things, reviewing public information about

FXCM such as U.S. Securities and Exchange Commission ("SEC") filings, press releases, news articles, transcripts, other public statements issued by or concerning Defendants, and notes and research reports of financial analysts concerning FXCM's business and financial performance. With the help of expert consultants, Lead Counsel performed economic, pricing, and damages analyses. Lead Counsel also retained an investigator to locate and to interview witnesses, both former employees of FXCM and others with knowledge of the events surrounding the allegations of the complaint.

17. The Lead Plaintiffs filed their Consolidated Securities Class Action Complaint on June 19, 2017. Dkt. No. 48 ("FAC").

18. Defendants and Lande moved to dismiss the FAC on August 3, 2017. Dkt. No. 88. The Court granted the motion to dismiss without prejudice on March 1, 2017. Dkt. No. 108.

19. Plaintiffs then filed their Second Amended Consolidated Securities Class Action Complaint ("SAC") on April 6, 2018. Dkt. No. 111.

20. Defendants and Lande moved to dismiss the SAC on May 7, 2018. Dkt. No. 117. On March 28, 2019, the Court granted in part and denied in part Defendants' motion to dismiss the SAC, dismissing Lande from the Action. Dkt. No. 135.

21. Defendants filed their answer to the SAC on May 13, 2019. Dkt. No. 139.

22. On January 6, 2020, Lead Plaintiffs and Sergey Regukh moved for class certification and Appointment of Class Representatives and Class Counsel. Dkt. No. 149. On April 13, 2020, Plaintiffs filed an amended motion for class certification, which was substantively identical but substituted E-Global for Sergey Regukh as a putative class representative. Dkt. Nos. 174-75. Plaintiffs also subsequently filed their Third Amended Consolidated Securities Class

Action Complaint ("TAC") on April 17, 2020, adding E-Global as a named Plaintiff. Dkt. No. 181. Defendants filed their answer to the TAC on May 21, 2020. Dkt. No. 183.

23. In September 2020, while Plaintiffs' motion for class certification was pending, the Parties agreed to mediate resolution of the Action. On September 30, 2020, the Parties participated in a remote mediation session with Mr. Melnick after preparing and exchanging detailed mediation statements, including their respective analyses of damages. The September 2020 mediation was unsuccessful, so the Parties continued to litigate.

24. The amended class certification motion was assigned to Magistrate Judge Barbara Moses for a report and recommendation (Dkt. No. 171), which Magistrate Judge Moses issued on March 18, 2021, after holding an evidentiary hearing that involved testimony from the parties' respective expert witnesses on the issue of market efficiency. Dkt. No. 229.

25. On March 23, 2021, the Court adopted Magistrate Judge Moses' report and recommendation, certifying a class of FXCM common stock purchasers, appointing Shipco and E-Global as Class Representatives, appointing The Rosen Law Firm, P.A. as Class Counsel, and denying certification as to the putative subclass of FXCM Notes purchasers. Dkt. No. 232. The Class certified by the Court, *id.*, comprises:

> All persons and/or entities that purchased or otherwise acquired publicly traded Global Brokerage, Inc., f/k/a FXCM Inc. ("FXCM") Class A common stock, during the period March 15, 2012 through February 6, 2017, both dates inclusive. Excluded from the Class are: (i) Defendants; (ii) current and former officers, employees, consultants and directors of FXCM and FXCM Holdings, LLC; (iii) siblings, parents, children, spouses, and household members of any person excluded under (i) and (ii); (iv) any entities affiliated with, controlled by, or more than 5% owned by, any person excluded under (i) through (iii); and (v) the legal representatives, heirs, successors or assigns of any person excluded under (i) through (iv).

26. The Parties completed extensive fact discovery. Defendants produced, and Class Counsel reviewed, tens of thousands of documents. Class Counsel also took more than one dozen fact depositions.

27. The Parties also completed expert discovery, during which Class Counsel submitted two expert reports—on accounting and on loss causation and damages, and Defendants submitted three. The Parties exchanged responsive and reply expert reports, and took the depositions of the opposing side's experts.

28. After the Parties completed fact discovery and expert discovery, Defendants filed motions on September 9, 2021, to exclude Plaintiffs' experts from testifying, and for summary judgment on all of Plaintiffs' claims. Dkt. Nos. 237, 242, and 247. On August 17, 2022, after holding oral argument on Defendants' motions, the Court denied Defendants' motion for summary judgment, denied Defendants' motion to exclude the testimony of Plaintiffs' financial expert, and denied in part and granted in part Defendants' motion to exclude the testimony of Plaintiffs' accounting expert. Dkt. No. 291.

29. On September 7, 2022, the Court scheduled a jury trial to commence on February 13, 2023. Dkt. No. 319.

30. On September 20, 2022, Defendants moved to certify part of the Court's decision denying summary judgment for interlocutory appeal, Dkt. No. 320, which Plaintiffs opposed. The Court denied Defendants' motion on October 31, 2022. Dkt. No. 327.

31. On December 14, 2022, Plaintiffs submitted and filed the Parties' Joint Pretrial Order, Proposed Jury Instructions, Proposed *Voir Dire* Questions, and Proposed Verdict Form. Dkt. Nos. 330-332. On the same date, the Parties each filed respective pretrial memoranda and motions *in limine*. Dkt. Nos. 333-45.

32. On December 20, 2022, the Parties participated in a private mediation with Jed Melnick, Esq. of JAMS, a well-respected mediator with experience mediating securities class actions. During the mediation, Mr. Melnick proposed, and the Parties accepted, a settlement in principle to resolve this action. On December 23, 2022, the Parties executed a binding term sheet that set forth the material terms and obligations with respect to the settlement.

33. On February 3, 2023, Plaintiffs filed their motion for preliminary approval of the Settlement, which included the Stipulation and proposed forms and methods of notice to Class Members. Dkt. Nos. 352-355. On February 21, 2023, the Court entered the Preliminary Approval Order, and set a Settlement Hearing for July 7, 2023, at 3:00 p.m. Dkt. No. 357.

**Settlement Terms**

34. The Settlement provides for a cash payment of $6,500,000 to settle the Class's claims. Under Plaintiffs' best-case scenario – assuming Plaintiffs overcome all of the litigation obstacles detailed below and Defendants do not prevail on any of their arguments – Plaintiffs' expert estimated that Plaintiffs' maximum potentially recoverable class wide damages are $17,500,000. The expert based this class-wide damages estimate on analysis of both a per share damages figure, based on the falls in the price of FXCM common stock less any confounding information, and an estimate of the number of damaged shares. The damaged shares estimate does not account for the possibility that, given the many years that have passed since the events in question, a material number of Class Members will not file claims.

35. The $6,500,000 Settlement therefore represents approximately 37% of the Class's best-case, maximum recoverable damages estimate. If the Court grants final approval of the Settlement, Plaintiffs and all Class Members who remain in the Class will forever release their claims that were alleged or could have been alleged against Defendants in this Action.

36. Requests for exclusion and objections to the Settlement must be received by June 16, 2023. To date, not one member of the Class has objected to any aspect of the Settlement. Craig Decl. ¶14. Not one member of the Class has submitted a valid request for exclusion. Craig Decl. ¶13, Ex. E. The Claims Administrator, Strategic Claims Services ("SCS"), received one request for exclusion that was insufficient and invalid pursuant to the Court's Preliminary Approval Order due to, among other things, a lack of transaction information and documentation. SCS sent instructions on how to submit a valid exclusion request to the potential Class Member who transmitted the defective request to SCS. To date, the potential Class Member has not responded. *Id*.

37. The Long Notice, which the Court approved in the Preliminary Approval Order, describes the Plan of Allocation in full detail. Craig Decl., Ex. A at 4-7. In collaboration with SCS and Plaintiffs' damages expert, and consistent with the federal securities laws, Rosen Law formulated the Plan of Allocation for distributing the Settlement Fund fairly and reasonably to Class Members. The Plan of Allocation does not compensate losses resulting from "in and out" transactions, *i.e.*, losses from sales made prior to the alleged partial or final revelation of the truth. The Plan of Allocation establishes a formula that determines authorized claimants' recognized losses and calculates Class Members' *pro rata* share of the Settlement Fund (*i.e.*, Settlement Amount less attorneys' fees and expenses, and awards to Plaintiffs).

**Complexity, Expense and Likely Duration of the Litigation**

38. Over the course of this litigation, on behalf of Plaintiffs and the Class, Rosen Law devoted significant time and effort prosecuting this action, including:

    a. investigating and analyzing the allegations in preparing several complaints in the Action, including, among other means:

8

      i.      reviewing press releases, news articles, earnings call transcripts, and other public statements issued by or concerning Defendants;

      ii.      researching financial analyst reports concerning FXCM;

      iii.      reviewing and analyzing Defendants' SEC filings;

      iv.      engaging a damages consulting expert to analyze damages;

      v.      retaining a private investigator to locate and to interview potential witnesses; and

      vi.      reviewing the National Futures Association's and U.S. Commodity Futures Trading Commission's respective regulatory complaints against, and settlements with, Defendants

b.      filing the FAC;

c.      opposing Defendants' motion to dismiss the FAC;

d.      reviewing the Court's decision granting the motion to dismiss without prejudice;

e.      filing the SAC;

f.      successfully opposing Defendants' motion to dismiss the SAC;

g.      successfully moving for class certification after an evidentiary hearing;

h.      reviewing tens of thousands of documents produced by Defendants and third parties in discovery;

i.      deposing over a dozen fact witnesses;

j.      obtaining expert reports, deposing Defendants' experts, and defending Plaintiffs' experts in depositions;

k.      successfully opposing Defendants' motions for summary judgment and to

exclude testimony from Plaintiffs' experts;

    l.    filing a pretrial memorandum and motions *in limine*; and

    m.    preparing for trial.

39. Before entering into the Settlement, therefore, Class Counsel and Plaintiffs had a thorough understanding of the strengths and weaknesses of Plaintiffs' case.

**Risks of Continued Litigation**

40. Without a Settlement, Plaintiffs face protracted and expensive litigation that could last for years more, with no guarantee of matching or exceeding the recovery the Settlement provides now.

41. While Plaintiffs and Class Counsel believe that Plaintiffs' claims are meritorious, they recognize the substantial challenges to establishing liability, proving damages, and achieving and collecting a greater recovery. The Settlement provides for a cash payment of $6,500,000, while material risks exist that Plaintiffs and the Class might recover substantially less than the Settlement Amount or nothing at all by continuing to litigate the Action.

42. This Action stood on the doorstep of trial, where Plaintiffs would have to try their case to a jury and obtain a verdict on liability, including loss causation. Even if Plaintiffs prevail at trial on liability, they would still need to parry post-verdict motions and an appeal.

43. Further, Plaintiffs would have to engage in a claims process to cause as many Class members as possible to file claims. Given the passage of time, claims rates might fall materially if the Class waits much longer to receive payment.

44. Establishing damages in securities class actions is difficult. Disentangling the market's reaction to various pieces of news is complicated and requires expert analysis and testimony, from both sides. At multiple stages of this litigation including class certification,

summary judgment, and a motion to exclude Plaintiffs' damages expert, Defendants have attacked Plaintiffs' proposed damages methodology and would assert at trial that per share damages are materially lower than the per share amount Plaintiffs seek to prove, or are entirely unprovable. These arguments, if successful, would significantly impact Plaintiffs' current estimate of Class-wide damages, a material data point in the determination to settle at this time.

45. It is impossible to predict how a jury would react to this "battle of experts." A material risk exists, therefore, that a jury might disagree with Plaintiffs' expert's testimony on per share damages, or the jury might find that Plaintiffs and the Class suffered no damages at all. The Court might rule Plaintiffs' damages expert and/or his theory of damages is either legally or factually insufficient. In any of these circumstances, Plaintiffs could prevail on liability at trial and still the recovery could be materially less than the $6,500,000 Settlement Amount, or nothing at all.

46. Even if Plaintiffs obtained a judgment materially in excess of the Settlement Amount after trial and recover from Defendants, the additional time that it would take to litigate this case through trial, post-trial motions, and the appellate process could deny the Class any recovery for years, further reducing the value of such a judgment.

47. The Settlement eliminates the expense and delay of continued litigation and the risk that the Class could receive a lower or no recovery.

**The Settlement Resulted From Arms-Length Negotiations Between Experienced Counsel**

48. Class Counsel have successfully litigated securities class actions throughout the country, including in the Southern District of New York. *See* Ex. 6 (Rosen Law firm resume). With the assistance of Mr. Melnick as a neutral mediator, Class Counsel negotiated with experienced, high caliber opposing counsel from King & Spalding LLP, a firm experienced in defending similar

securities class actions. Given these factors, we believe that the Settlement is fair, adequate, and reasonable and urge this Court to approve it.

### Class Counsel's Fee Request is Justified

49. Class Counsel have worked diligently to achieve the Settlement, expending 6,752.44 hours (together with additional counsel) for a lodestar value of $4,548,190.00. Ex. 2 ¶5; Ex. 3 ¶5. The $2,166,666.67 in attorneys' fees that Class Counsel requests represent a 0.48 multiplier of Class Counsel's lodestar.

50. Class Counsel litigated the nearly-identical claims of the Class and the claims of 683 Capital alongside each other. The maximum estimated damages attributable to the Class represent approximately 86.6% of the total combined maximum estimated damages attributable to the Class and 683 Capital. Taking 86.6% of Class Counsel's lodestar nets an adjusted lodestar of $3,938,732.54, and an adjusted multiplier of 0.55.

51. Class Counsel's work will not end with final approval of the Settlement. Class Counsel will spend more time and resources drafting and filing replies in support of its Motions, preparing for and appearing at the Settlement Hearing, overseeing the claims process, filing a motion for distribution of the Net Settlement Fund, and overseeing the distribution of the Net Settlement Fund to eligible Class Members.

52. Class Counsel and additional counsel spent a total of $764,679.21 in unreimbursed expenses in connection with the prosecution of this Action. Ex. 2 ¶6; Ex. 3 ¶6. Class Counsel seeks reimbursement of 86.6% of that amount, or $662,469.61, commensurate with the proportional damages attributable to the Class's claims. To date, Class Counsel have received neither compensation for their efforts nor reimbursement of necessary out-of-pocket expenses on behalf of Plaintiffs and the Class.

53. From the outset, Class Counsel embarked on a difficult, expensive, and likely lengthy litigation with no guarantee of being compensated for the investment of time and resources on behalf of Plaintiffs and the Class. In undertaking that responsibility, Class Counsel dedicated sufficient resources to the Action, making funds available to compensate staff and to cover the expenses the Action required.

### The Requested Award to Plaintiffs is Justified

54. For over six years, Plaintiffs have led this action on behalf of the Settlement Class, communicating with Class Counsel regarding the litigation and the Settlement, reviewing briefs and filings in this Court, and participating in two mediation sessions. *See* Exs. 4-5. Plaintiffs request awards of $20,000 to Shipco and $15,000 to E-Global, to compensate them for their time and service. These awards would represent approximately 0.5% of the Settlement Amount.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9th day of June, 2023, in Jenkintown, Pennsylvania.

*/s/Joshua Baker*

## CERTIFICATE OF SERVICE

I hereby certify that on June 9, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

/s/Joshua Baker