**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Global Brokerage, Inc. f/k/a FXCM Inc. Securities Litigation | Master File No. 1:17-cv-00916-RA-BCM <br><br> <u>CLASS ACTION</u> |
| This Document Relates To: All Actions | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DISTRIBUTION OF CLASS ACTION SETTLEMENT FUNDS**

Class Representatives Shipco Transport Inc. and E-Global Trade and Finance Group, Inc. (together, "Plaintiffs") submit this memorandum in support of their motion for entry of the [Proposed] Order for Distribution of Class Action Settlement Funds ("Distribution Order"), submitted herewith.[1] If entered by the Court, the Distribution Order will, among other things: (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; and (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court. The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Declaration of Margery Craig Concerning the Results of the Claims Administration Process ("Craig Declaration"), filed concurrently herewith.

## I.   BACKGROUND

On February 1, 2023, the Parties entered into the Stipulation, the terms of which established a $6,500,000 Settlement Fund on behalf of the Class.

The Court granted preliminary approval of the Settlement on February 21, 2023 ("Preliminary Approval Order"). Dkt. No. 357. Pursuant to the Preliminary Approval Order, the court-appointed Claims Administrator, Strategic Claims Services ("SCS" or "Claims Administrator"), disseminated 61,306 copies of the Postcard Notice and emails with links to the Long Notice and Claim Form on the settlement webpage to potential Class Members or nominees, published the Summary Notice on *GlobeNewswire* and in *Investor's Business Daily*, maintained a

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement dated February 1, 2023 (Dkt. No. 352) ("Stipulation"). Internal citations and quotations are omitted and emphasis is added unless otherwise noted.

toll-free phone line, and established a dedicated website for the Settlement. *See* Craig Declaration ¶¶3-5.

On July 7, 2023, the Court entered the Order and Final Judgment. Dkt. No. 374. This Order approved the Plan of Allocation as a fair and reasonable method to allocate the Net Settlement Fund among the Class Members. *Id.* ¶17.

The Claims Administrator has advised Class Counsel that it has completed all analyses and accounting procedures in connection with the submitted claims and has finalized its determination of which claims are authorized and which are ineligible. *See* Craig Declaration ¶¶6-8. All that remains to complete the Settlement process is to distribute the Net Settlement Fund to the Authorized Claimants. Thus, the Court should authorize the distribution of the Net Settlement Fund to Authorized Claimants, as identified in Exhibits B-1 and B-2 to the Craig Declaration.

## II.     DETERMINATION OF AUTHORIZED CLAIMS

Under the Preliminary Approval Order, Class Members wishing to participate in the Settlement were required to submit a Proof of Claim online or by mail, postmarked or received no later than June 7, 2023. Preliminary Approval Order ¶16(a). The Claims Administrator continued processing all claims received up to August 8, 2023. Craig Declaration ¶6. As a result of an effective notice program, through August 8, 2023, SCS received 8,252 Claim Forms. *Id.* SCS reviewed all 8,252 Claim Forms and has now finalized its determination of which claims are authorized and which are ineligible. *Id.*

### A.     Valid and Properly Documented Claims

SCS analyzed 8,252 Claim Forms received through August 8, 2023 and determined that 452 valid and properly-documented claims were received. Of these 452 claims, 447 were timely (*i.e.*, postmarked or received no later than June 7, 2023) ("Timely Valid Claims") and 5 were

postmarked or received after June 7, 2023 but on or before August 8, 2023 ("Late Valid Claims"). Craig Declaration ¶7(a). These valid claims represent Recognized Losses of $3,950,772.91.[2] *Id.*

Plaintiffs request that the Court approve all 452 valid claims, including the 447 Timely Valid Claims and the 5 Late Valid Claims. The Late Valid Claims have not caused delay to the distribution of the Net Settlement Fund or otherwise prejudiced any Authorized Claimant. Accordingly, Plaintiffs believe it would be unfair to prevent otherwise valid claimants from participating in the Net Settlement Fund solely because their claims were submitted after the June 7, 2023 submission deadline, but while claims were still being processed. *See In re Authentidate Holding Corp. Sec. Litig.*, No. 05 CIV. 5323 LTS, 2013 WL 324153, at *1 (S.D.N.Y. Jan. 25, 2013) (courts have "inherent power to accept late claims"); *In re Crazy Eddie Sec. Litig.*, 906 F. Supp. 840, 845 (E.D.N.Y. 1995) (court allowed late claims postmarked within one month and four days of original deadline to participate in the distribution of settlement funds); *In re Valuevision Int'l Inc. Sec. Litig.*, No. 94-CV-2838, 1997 WL 786457, at *1 (E.D. Pa. Dec. 1, 1997) (allowing claims submitted after claims deadline because there was no delay in claims administration process); *In re "Agent Orange" Product Liability Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitted the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small. No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246 F.3d 315, 321 (3d Cir. 2001) (court allowed late claim on "finite pool of

---

[2] This amount includes Recognized Losses for Timely Valid Claims of $3,825,888.70 and Recognized Losses for Late Valid Claims of $124,884.21. *Id.* ¶7(a).

assets"). Accordingly, Plaintiffs request that the Court approve the 452 properly documented claims as listed in Exhibits B-1 and B-2 to the Craig Declaration.

The Court should also order that no claims received after August 8, 2023, or any responses to deficiency and/or rejection notices received after December 8, 2023, be included in the distribution. SCS has not processed any claims or responses to rejections received after these dates due to extreme lateness and because their inclusion would have delayed the finalization of the administration. Craig Declaration ¶6 n.3. To facilitate the efficient and proportional distribution of the Net Settlement Fund, there must be a final cut-off after which no other claims may be accepted. *See In re Citigroup Sec. Litig.*, No. 09-Md-2070 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) ("[A]t some point in the distribution of a large class action settlement, such as this one, 'a cutoff date is essential and … the matter must be terminated.'"); *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001) ("Drawing a line is essential to achieve certainty and finality in such a large class action.").

### B. Deficient and Ineligible Claims

#### 1. Inadequately Documented Claims

To be eligible for a payment from the proceeds of the Settlement, a Class Member must submit a Claim Form with adequate supporting documentation. *See* Preliminary Approval Order ¶16(b). As detailed in the Preliminary Approval Order, proper documentation may consist of broker confirmation slips, broker account statements, an authorized statement from the broker containing the transactional information found in a broker confirmation slip, or such other documentation as is deemed adequate by the Claims Administrator or Class Counsel. *Id.*

SCS initially identified 81 inadequately documented claims. Craig Declaration ¶7(b). For all inadequately documented claims, SCS sent deficiency notices advising claimants of the inadequacy and giving them the opportunity to cure the deficiency, a sample of which is attached

as Exhibits C to the Craig Declaration. *Id.* Of the 81 claims initially identified as deficient, 32 have been successfully cured and are considered valid. *Id.* The remaining 49 deficient claims either did not respond to the inadequacy notice or responded with insufficient documentation and were sent a rejection notice explaining the reason(s) for their inadequacy. *Id.*, Exhibit D (list of inadequate claims). To date, none of the 49 inadequate claimants have objected to or contested SCS's determination. *Id.*

The Court approved the content of the Long Notice when issuing the Preliminary Approval Order and mandated the documentation necessary to the submission of a valid claim. *See* Preliminary Approval Order ¶16. Each of these 49 claimants have failed to provide proper documentation and the Court should, therefore, accept the Claim Administrator's determination and reject these claimants' Claims.

### 2. Claims Rejected for Reasons Other Than Inadequate Documentation

To be eligible for a payment from the proceeds of the Settlement, a Class Member must evidence transactions that result in a Recognized Loss under the Court approved Plan of Allocation. *See* Long Notice (Dkt. No. 365-1 at 4-7).

SCS has identified 7,751 claims that it recommends for complete rejection. Craig Declaration ¶7(c), Exhibit E (list of ineligible claims). The reasons for rejection included: (i) claims with no Recognized Losses; (ii) claims with shares that were not purchased or otherwise acquired, but were received, granted by gift, inheritance, or operation of law; (iii) claims with shares that were purchased outside of the Class Period; (iv) claims with shares sold short; (v) claims filed for securities other than Global Brokerage, Inc., f/k/a FXCM, Inc. Class A common stock; (vi) duplicate claims filed; (vii) claims withdrawn by the filing entity; and (viii) fraudulent claims. *Id.* SCS sent these claimants rejection notices advising them of SCS's determination. *Id.*,

5

Exhibit F (sample ineligibility notice). To date, none of these 7,751 claimants have contested SCS's determination. *Id.* The Court should accept SCS's determination to reject these claimants.

### III. PLANNED DISTRIBUTION OF THE NET SETTLEMENT FUND

Pursuant to ¶7.1 of the Stipulation, "[a]fter the Effective Date, Class Counsel shall apply to the Court, on notice to the Parties, for the Settlement Fund Distribution Order." Further, pursuant to ¶7.3 of the Stipulation: "Upon and after the Effective Date, the Net Settlement Fund shall be distributed to Authorized Claimants in accordance with the terms of the Plan of Allocation set forth in the Notice and any orders of the Court." Class Counsel now seeks to distribute the Net Settlement Fund to the Class Members whose 452 claims have been accepted by the Claims Administrator as set forth in Exhibits B-1 and B-2 to the Craig Declaration.

Consistent with the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an Initial Distribution of the Net Settlement Fund to all Authorized Claimants on a *pro rata* basis whose distribution payments calculate to $10.00 or more. Craig Declaration ¶9(a). Based on the substantial experience of Class Counsel and SCS in similar distributions, it can be expected that a certain number of the payments to be distributed to Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to unpaid distributions, Class Counsel and SCS propose that all the distribution checks bear a notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION 180 DAYS AFTER ISSUE DATE." *Id.* ¶9(b).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. If, however, after six months any funds remain in the Net Settlement

Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a redistribution of the remaining funds. *Id.* ¶9(c). During the redistribution, any amounts remaining in the Net Settlement Fund after the initial distribution, after payment of amounts mistakenly omitted from the initial distribution to Authorized Claimants, and after payment of Administration Costs incurred in administering the Settlement (including costs or fees of such redistribution), will be redistributed to all Authorized Claimants in the initial distribution who cashed their checks and would receive at least $10.00 from the second distribution, if such redistribution is economically feasible. *Id.*

If six months after the second distribution, if undertaken, or if a second distribution is not undertaken, any funds remain in the Net Settlement Fund, such funds shall be donated to a non-profit charitable organization selected by Class Counsel, with the approval of the Court. *Id.* The Proposed Order filed herewith confirms the Settlement's provisions for such redistribution of the Net Settlement Fund.

### IV.   RELEASE OF CLAIMS

To allow the full and final distribution of the Net Settlement Fund, the Court must bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, the Court should release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement and bar all Class Members, whether or not they receive

payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Plaintiffs, Class Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Plaintiffs or Class Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amounts allocated to them under the terms of the Distribution Order. *See In re Top Tankers, Inc. Sec. Litig.*, No. 1:06-cv-13761-CM (S.D.N.Y Dec. 14, 2009) (ECF No. 123 at 4, Order Authorizing Distribution of Net Settlement Fund).

## V. RECORDS RETENTION AND DESTRUCTION

The Court should order that in no less than one year after all distribution(s) of the Net Settlement Fund to the eligible claimants, the Claims Administrator may destroy the paper and electronic copies of the Claim Forms and all supporting documentation. *See* Craig Declaration ¶9(e).

## VI. CONCLUSION

For the foregoing reasons, the Court should approve and enter the [Proposed] Order for Distribution of Class Action Settlement Funds, submitted herewith.

Dated: December 20, 2023    Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/*Joshua Baker*
Phillip Kim
Laurence M. Rosen
Joshua Baker
275 Madison Ave., 40th Floor
New York, New York 10016
Tel: (212) 686-1060
Fax: (212) 202-3827
Email: pkim@rosenlegal.com
Email: lrosen@rosenlegal.com
Email: jbaker@rosenlegal.com

*Class Counsel for Plaintiffs and the Class*

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
Matthew M. Guiney
270 Madison Avenue
New York, New York 10016
Tel: (212) 545-4600
Fax: (212) 686-0114
Email: Guiney@whafh.com

*Additional Counsel*

9